1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| J.E.F.M., a minor, by and through his Next Friend, Bob Ekblad; J.F.M., a minor, by and through his Next Friend, Bob Ekblad; D.G.F.M., a minor, by and through her Next Friend, Bob Ekblad; F.L.B., a minor, by and through his Next Friend, Casey Trupin; G.D.S., a minor, by and through his mother and Next Friend, Ana Maria Ruvalcaba; M.A.M., a minor, by and through his mother and Next Friend, Rosa Pedro; S.R.I.C., a minor, by and through his father and Next Friend, Hector Rolando Ixcoy; G.M.G.C., a minor, by and through her father and Next Friend, Juan Guerrero Diaz; on behalf of themselves as individuals and on behalf of others similarly situated,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>Eric H. HOLDER, Attorney General, United States; Juan P. OSUNA, Director, Executive Office for Immigration Review; Jeh C. JOHNSON, Secretary, Homeland Security; Thomas S. WINKOWSKI, Principal Deputy Assistant Secretary, U.S. Immigration and Customs Enforcement; Nathalie R. ASHER, Field Office Director, ICE ERO; Kenneth HAMILTON, AAFOD, ERO; Sylvia M. BURWELL, Secretary, Health and Human Services; Eskinder NEGASH, Director, Office of Refugee Resettlement,<br><br>Defendants-Respondents. | Case No. _____<br><br>**COMPLAINT—CLASS ACTION** |

COMPLAINT (No. ___) - 1 of 27

## I.      PRELIMINARY STATEMENT

1.      Plaintiffs are eight immigrant children, ranging in age from ten to seventeen. The Government has begun proceedings to deport each of them; they will soon be called to appear before an Immigration Judge. In court, the Department of Homeland Security ("DHS") will be represented by a trained lawyer who will argue for the child's deportation. But no lawyer will stand with the child. Each will be required to respond to the charges against him or her, and, in theory, will be afforded an opportunity to make legal arguments and present evidence on his or her own behalf. But in reality those rights will be meaningless because children are not competent to exercise them. Each child has attempted to find representation through pro bono legal service providers, but none of them have found anyone with the resources to take on their cases. Absent this Court's intervention, these children will be forced to defend themselves pro se under the immigration laws – a legal regime that, as the courts have recognized, rivals the Internal Revenue Code in its complexity.

2.      The plight of these eight children is not unique. Plaintiffs seek to represent a class of unrepresented children, all of whom face deportation. Each year the Government initiates immigration proceedings against thousands of such children, and in each case the purpose of the proceedings is to determine whether the child may remain in the United States. Although a remarkable network of pro bono service providers, working in concert with (and in some cases funded directly by) the Government, has endeavored to represent as many of these children as possible, the majority of children appearing in immigration court still do so without an attorney.[1] At the present time, legal service organizations representing immigrant children throughout the country have nowhere near the capacity to meet the demand. The rising number of children fleeing to this country will likely worsen that shortfall.[2] The Government, in contrast, is represented in every case.

3.      Neither the Constitution nor the immigration laws permit this state of affairs. More than four

---

[1] Center for Gender and Refugee Studies & Kids in Need of Defense, *A Treacherous Journey: Child Migrants Navigating the U.S. Immigration System* at iii-iv (Feb. 2014) [hereinafter "*A Treacherous Journey*"] *available at* http://www.uchastings.edu/centers/cgrs-ocs/treacherous_journey_cgrs_kind_report.pdf.

[2] *A Treacherous Journey* at 2.

COMPLAINT (No. ___) - 2 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

decades ago, the Supreme Court recognized that when the Government initiates proceedings against children facing juvenile delinquency charges, the Due Process Clause requires the Government to provide those children with legal representation to ensure that the proceedings are fundamentally fair. *In re Gault*, 387 U.S. 1, 41 (1967).  The Court held that "[t]he juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child requires the guiding hand of counsel at every step in the proceedings against him." *Id.* at 36 (citation and quotation marks omitted).. The Constitution guarantees children this safeguard notwithstanding the civil, rather than criminal, character of juvenile delinquency proceedings.

4.      Immigrants, including immigrant children, are also entitled to Due Process when facing deportation. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Both the Constitution and the immigration laws guarantee all children the right to a full and fair removal hearing, including the opportunity to defend against deportation and seek any forms of relief that would enable them to remain in the United States. And just as in juvenile delinquency proceedings, children cannot receive that fair hearing without legal representation. As the Supreme Court stated in discussing proceedings of similarly "tremendous consequences," for children in immigration proceedings "[t]he right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is of the essence of justice." *Kent v. United States*, 383 U.S. 541, 554, 561 (1966) (addressing child's right to appointed counsel in proceedings to determine whether juvenile court should waive its jurisdiction in favor of criminal court).

5.      Yet every day in courts throughout the country, children represent themselves in deportation cases that are often more complex and more serious than most juvenile delinquency cases.[3] The resulting adjudications are fundamentally unfair. Children are forced to admit or deny allegations against them,

---

[3] Julia Preston, *Young and Alone, Facing Court and Deportation*, *N.Y. Times*, Aug. 25, 2012, at A1, *available at* http://www.nytimes.com/2012/08/26/us/more-young-illegal-immigrants-face-deportation.html?pagewanted=all (describing six-year-old child in removal proceedings without counsel); *see also* Julie Myers Wood & Wendy Young, *Children Alone and Lawyerless in a Strange Land*, *The Wall Street Journal*, Sept. 22, 2013, *available at* http://online.wsj.com/news/articles/SB10001424127887324492604579083400349940432 ("We've seen children as young as 5 facing an immigration judge with no representation.").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

compile evidence in support of their claims to remain in the United States, and articulate legal arguments on their own behalf, when in reality they "are unlikely to understand the complex procedures they face and the options and remedies that may be available to them under the law."[4]

6.      To fulfill its statutory and constitutional obligations, the Government must ensure that no child faces the life-altering prospect of deportation without legal representation.

## II.      JURISDICTION AND VENUE

7.      Plaintiffs challenge the federal Government's failure to provide appointed legal representation for children in immigration proceedings on federal statutory and constitutional grounds.[5]

8.      This court has subject matter jurisdiction pursuant to the general federal question statute, 28 U.S.C. § 1331, the federal habeas statute, 28 U.S.C. § 2241, et seq., and the All Writs Act, 28 U.S.C. § 1651.

9.      This court has personal jurisdiction over the Defendants because of, *inter alia*, the nationwide reach of Defendants' conduct and the presence of courts operated by Defendants within the Western District of Washington where immigration proceedings involving members of the Plaintiff Class are held.

10.      Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to this action occurred in this district.  Plaintiffs F.L.B. and G.D.S. reside in this district, and Plaintiffs J.E.F.M., J.F.M., D.G.F.M., F.L.B., and G.D.S. all have immigration proceedings scheduled to occur in this district.  In addition, venue is proper under 28 U.S.C. §§ 2242-43 because Plaintiffs J.E.F.M., J.F.M., D.G.F.M., F.L.B., and G.D.S. are in the constructive custody of immigration authorities by virtue of immigration proceedings in this district.

---

[4] *A Treacherous Journey* at iii.

[5] Plaintiffs define "immigration proceedings" as any proceeding that occurs before an Immigration Judge or the Board of Immigration Appeals ("BIA"). Where the reference is ambiguous, the term "Immigration Judges" should be understood to refer to both individual Immigration Judges and members of the BIA.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

### III.     PARTIES

#### A.     Plaintiffs

11.     Plaintiff J.E.F.M. is a 10-year-old native and citizen of El Salvador.[6] He now resides in Washington State. He has a removal hearing scheduled for September 2014 in Seattle, Washington, and does not have an attorney to represent him in his immigration case. J.E.F.M. appears by his next friend Bob Ekblad, a minister who has worked closely with J.E.F.M. and his family.

12.     Plaintiff J.F.M. is a 13-year-old native and citizen of El Salvador. He is the older brother of J.E.F.M. He now resides in Washington State. He has a removal hearing scheduled for September 2014, in Seattle, Washington, and does not have an attorney to represent him in his immigration case. J.F.M. appears by his next friend Bob Ekblad, a minister who has worked closely with J.F.M. and his family.

13.     Plaintiff D.G.F.M.is a 15-year-old native and citizen of El Salvador. She is the older sister of J.F.M. and J.E.F.M. She now resides in Washington State. She has a removal hearing scheduled for September 2014, in Seattle, Washington, and does not have an attorney to represent her in her immigration case. D.G.F.M. appears by her next friend Bob Ekblad, a minister who has worked closely with D.G.F.M. and her family.

14.     Plaintiff F.L.B. is a 15-year-old native and citizen of Guatemala. He now resides in Seattle, Washington. He has a removal hearing scheduled for September 2014, and does not have an attorney to represent him in his immigration case. F.L.B. appears by his next friend Casey Trupin. Mr. Trupin is the Project Coordinator for the Children and Youth Project at Columbia Legal Services in Seattle, Washington.

15.     Plaintiff G.D.S. is a 15-year-old native and citizen of Mexico. He has resided in the United States since approximately the age of one. He does not have an attorney to represent him in his immigration case. G.D.S. appears by his next friend and mother, Ana Maria Ruvalcaba.

16.     Plaintiff M.A.M. is a 16-year-old native and citizen of Honduras. M.A.M. has resided in the

---

[6] To protect the privacy of the child Plaintiffs in this case, this complaint refers to them using their initials. *See* Fed. R. Civ. P. 5.2(a)(3). For the same reason, this complaint also does not provide as much detail as is available concerning the harms they have suffered in their home countries, during their journeys here, and since their arrivals in the United States.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

United States since he was eight years old. M.A.M. resides in Oxnard, California. M.A.M. has a removal hearing scheduled for August 2014, and does not have an attorney to represent him in his immigration case. M.A.M. appears by his next friend and mother, Rosa Pedro.

17.     Plaintiff S.R.I.C. is a 17-year-old native and citizen of Guatemala. S.R.I.C. came to the United States earlier this year and now resides in Los Angeles, California. S.R.I.C. has a removal hearing scheduled for January 2015, and does not have an attorney to represent him in his immigration case. S.R.I.C. appears by his next friend and father, Hector Rolando Ixcoy Ixcoy.

18.     Plaintiff G.M.G.C. is a 14-year old native and citizen of El Salvador. She came to the United States earlier this year and now resides in Los Angeles, California. G.M.G.C. has a removal hearing scheduled for September 2014, and does not have an attorney to represent her in her immigration case. G.M.G.C. appears by her next friend and father, Juan Guerrero Diaz.

**B.     Defendants**

19.     Defendant Eric H. Holder, Jr., is the Attorney General of the United States and the head of the U.S. Department of Justice ("DOJ"). Mr. Holder shares responsibility for implementing and enforcing the immigration laws. Mr. Holder is sued in his official capacity.

20.     Defendant Juan P. Osuna is the Director of the Executive Office for Immigration Review ("EOIR"), which is the federal agency within DOJ that operates the immigration courts. Mr. Osuna is responsible for the supervision of the Deputy Director, the Chairman of the Board of Immigration Appeals ("BIA"), the Chief Immigration Judge, the Chief Administrative Hearing Officer, and all EOIR agency personnel in the execution of their duties. Mr. Osuna is sued in his official capacity.

21.     Defendant Jeh C. Johnson is the Secretary of DHS and is the highest-ranking member of DHS, which is the arm of the federal government responsible for enforcing the immigration laws. Mr. Johnson is sued in his official capacity.

22.     Defendant Thomas S. Winkowski is the Principal Deputy Assistant Secretary of DHS, and is the head of U.S. Immigration and Customs Enforcement ("ICE"), which is the principal investigative, enforcement, and prosecutorial arm of DHS. ICE attorneys represent the Government in immigration proceedings. Mr. Winkowski is sued in his official capacity.

23.     Defendant Sylvia M. Burwell is the Secretary of Health and Human Services ("HHS") and is the

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

highest-ranking member of HHS, which is the arm of the federal Government responsible for the care and custody of unaccompanied immigrant minors under the Trafficking Victims Protection Reauthorization Act. Ms. Burwell is sued in her official capacity.

24.     Defendant Eskinder Negash is the Director of the Office of Refugee Resettlement ("ORR"), which is the division of HHS directly responsible for the care and custody of unaccompanied immigrant minors. Mr. Negash is sued in his official capacity.

25.     Defendant Nathalie R. Asher is the Field Office Director for the Seattle Field Office of ICE, which has custody of Plaintiffs J.E.F.M., J.F.M., D.G.F.M., F.L.B., and G.D.S., by virtue of immigration proceedings in this district. Ms. Asher is sued in her official capacity.

26.     Defendant Kenneth Hamilton is the Acting Assistant Field Office Director for the Seattle Field Office of ICE, which has custody of Plaintiffs J.E.F.M., J.F.M., D.G.F.M., F.L.B., and G.D.S., by virtue of immigration proceedings in this district. Mr. Hamilton is sued in his official capacity.

## IV.     FACTUAL BACKGROUND

### A.     Children Facing Deportation

27.     Every year, the Government initiates immigration proceedings to deport thousands of children, ranging from toddlers to teenagers.[7] Children enter the immigration enforcement system in several ways. Thousands are arrested at or shortly after crossing the United States-Mexico border, often after having survived treacherous and difficult journeys from their countries of origin. Many of them have fled persecution by their governments or their own families, rising rates of extreme violence (much of it caused by the escalating influence of powerful gangs), or economic conditions that make life unsustainable in their countries of origin.[8] Some of these children have experienced trauma in the form

---

[7] *See supra* note 3 (news articles reporting cases of children as young as five or six years old in removal proceedings); *Matter of Gomez-Gomez*, 23 I. & N. Dec. 522 (BIA 2002) (en banc) (addressing case of eight-year-old child ordered removed in absentia based on report of arresting officer); *Matter of Ponce-Hernandez*, 22 I. & N. Dec. 784, 785 (BIA 1999) (en banc) (describing 15-year-old child charged with removability); *A Treacherous Journey* at 11-12 (noting case stories of girls aged 12 and 14 who appeared before Immigration Judges).

[8] Women's Refugee Commission, *Forced from Home: The Lost Boys and Girls of Central America* 7 (2012). This report found that more than 77% of a sample of 151 children cited violence as their primary

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

of rape, kidnapping, abandonment, or physical abuse inflicted in their home countries or by smugglers and traffickers during their journey to the United States.[9]

28.    Other children are apprehended after spending years in the United States, some having grown up almost entirely in this country. Many of them attend school alongside other children in this country, speak fluent English, and are fully integrated into their communities. Others are not so lucky, suffering abuse, neglect, or abandonment within the United States itself. Some of these children are turned over to DHS after contact with the juvenile justice system, while DHS arrests others during general immigration enforcement activities.

29.    Although they have entered the immigration system in different ways, Plaintiffs and the putative class they seek to represent share two fundamental characteristics. First, the Government has initiated immigration proceedings in order to remove them from the United States and, despite their inability to secure counsel, will force them to appear unrepresented in complex, adversarial court proceedings against trained ICE attorneys. Second, all of them are under the age of 18, and therefore lack the intellectual and emotional capacity of adults.

**B.    The Structure of Immigration Proceedings for Children**

30.    Immigration proceedings pit the Government against the child in an adversarial process where each side is presumed to have the ability to represent its own interests. An attorney trained in substantive immigration law and immigration court procedures represents the Government. This attorney acts as a prosecutor, and seeks to establish the child's removability. Each side is expected to present facts and legal arguments to an Immigration Judge, after which the Judge ultimately makes a determination in favor of the Government or the child. Either side can then appeal the decision to the BIA.

31.    The facts and legal arguments at issue in immigration cases are often complex. The federal

reason for fleeing their countries of origin. *See also* United Nations High Commissioner for Refugees, *Children on the Run: Unaccompanied Children Leaving Central America and Mexico and the Need for International Protection* 6 (2014) [hereinafter UNHCR Report] (finding that no less than 58% of the children interviewed for the report "were forcibly displaced because they suffered or faced harms that indicated a potential or actual need for international protection").

[9] The United States Conference of Catholic Bishops Migration and Refugee Services, *The Changing Face of the Unaccompanied Alien Child* 8 (2012).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

courts have repeatedly observed that "the immigration laws have been termed second only to the Internal Revenue Code in complexity." *Baltazar-Alcanzar v. INS*, 386 F.3d 940, 948 (9th Cir. 2004) (citation and quotation marks omitted); *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010) ("Immigration law can be complex, and it is a legal specialty of its own.").

32.     Even identifying defenses or other avenues to relief from removal, let alone prevailing on them, often requires substantial factual investigation and legal research. For example, a number of children facing removal have fled persecution in their home countries. However, the immigration laws put the burden on the child to prove eligibility for asylum. *See* 8 U.S.C. § 1158(b)(1)(B)(i). Establishing such eligibility requires the child to present significant amounts of evidence and sophisticated legal arguments. As a result, asylum claims brought by pro se children "frequently fail due to burdensome legal standards and incorrect application of legal principles . . . even when it has been determined that the child suffered egregious harm rising to the level of persecution and is likely to suffer persecution in the future."[10]

33.     As with asylum, children bear the burden of demonstrating eligibility for other forms of relief from deportation. *See* 8 U.S.C. § 1229a(c)(4) (stating that applicant for relief from removal in immigration proceedings bears burden to demonstrate both eligibility requirements of the particular form of relief, and, if applicable, merits relief as a matter of discretion). These other forms of relief include Special Immigrant Juvenile Status ("SIJS"), which is available to a child when a state juvenile court declares that the child's reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law, *see* 8 U.S.C. § 1101(a)(27)(J)(i); U-visas, which are available to children who have been the victims of certain serious crimes if they would be helpful to the authorities in an investigation or prosecution, *see id.* §§ 1101(a)(15)(U)(i)(III), 1184(p)(1); T-visas, which protect victims of "severe" forms of human trafficking, *see id.* § 1101(a)(15)(T)(i)(I); family visas, where a parent who is a U.S. citizen or lawful permanent resident is able to file a visa petition on their child's behalf, *see id.* §§ 1151-1154, as well as other forms of relief. Meeting the eligibility requirements for all of these forms of relief requires the child to carefully marshal both facts and law.

---

[10] *A Treacherous Journey* at 20.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

The child must not only demonstrate substantive eligibility for relief, but also be able to follow procedures for submitting the appropriate applications to different agencies of the Government, along with the required supporting evidence.

34. In addition, some children have procedural defenses against removal, including arguments that the immigration proceedings must be terminated because of constitutional or regulatory violations. *See*, *e.g.*, *Matter of Mejia-Andino*, 23 I. & N. Dec. 533, 536 (BIA 2002) (en banc) (concluding that proceedings against seven-year-old child were properly terminated due to failure to properly serve the charging document). However, moving an Immigration Judge to terminate the proceedings on such grounds is no small feat. In particular, a suppression motion requires the ability to gather and understand facts surrounding one's arrest, the interaction between different state and federal agencies, and complex regulatory and constitutional law. Here too, the child bears the burden of establishing that the Government obtained its evidence in a manner that requires suppression. *See Matter of Barcenas*, 19 I. & N. Dec. 609, 611 (BIA 1988).

35. Because of their age, children lack the ability to assert these and other defenses and claims to relief by themselves. "A child's age is far more than a chronological fact. It is a fact that generates commonsense conclusions about behavior and perception . . . [that] apply broadly to children as a class." *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011) (internal quotation marks and citations omitted). These commonsense conclusions are grounded not only in "what any person knows [] about children generally," *id.*, but also in scientific studies that "continue to show fundamental differences between juvenile and adult minds." *Graham v. Florida*, 560 U.S. 48, 68 (2010) (citing amicus briefs from medical and psychological professional associations).

36. For example, children possess a reduced capacity to comprehend the consequences of their actions and decisions, and they are often more receptive to adult influence, in part because many of them have been taught not to challenge authority and to please the adults around them. *See* Dustin Albert & Laurence Steinberg, *Judgment and Decision Making in Adolescence*, 21 J. Research on Adolescence 211, 220 (2011) (noting that "adults tend to make more adaptive decisions than adolescents," in part because "they have a more mature capacity to resist the pull of social and emotional influences and remain focused on long-term goals"). As a result, they are frequently more susceptible to suggestion and

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

leading questions, and at times have difficulty distinguishing between people who are seeking to protect their interests and those who are not. What is more, children in the immigration enforcement system are often even more vulnerable than other children, since many of them arrive in the United States after having experienced serious trauma in their countries of origin or during their journeys to the United States.[11]

37.     The interests at stake in these complex proceedings could scarcely be higher: children face expulsion from this country to a land where they often lack family or other support. Many of them fled their home countries in order to escape persecution, torture, or death; deportation to the country from which the child fled is often not in their best interest.

38.     Moreover, the civil removal orders issued against children in immigration proceedings bear the same consequences as those issued against adults. Those consequences include not only bars to future admission to the United States (if the child would otherwise have been eligible for a visa), but also the prospect of criminal prosecution should they attempt to reenter the United States.

39.     Forcing children to appear in immigration court without representation ensures that thousands of children are deprived of a full and fair opportunity to identify defenses or seek relief for which they qualify. A recent report by the United Nations High Commissioner for Refugees, for example, suggests that over half of all unaccompanied children fleeing to the United States from Central America raised potential international protection needs, while a slightly older report found that as many as 40% of unaccompanied children in removal proceedings were eligible for some form of immigration relief.[12] Despite such estimates, only a small number of children actually receive such relief.[13] This gap is likely due in large part to the absence of counsel. The presence of counsel makes a real difference for the children fortunate enough to receive legal representation. Data from the adult removal hearing context

---

[11] UNHCR Report at 6 (finding that 48% of children interviewed for study had been "personally affected by the augmented violence" in their countries of origin and that 21% had "survived abuse and violence in their homes by their caretakers").

[12] UNHCR Report at 6; Olga Byrne & Elyse Miller, *The Flow of Unaccompanied Children Through the Immigration System*, Vera Institute of Justice 4 (Mar. 2012).

[13] *See*, *e.g.*, *A Treacherous Journey* at 19 n.94, 38, 48.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

confirms what common sense and experience strongly suggest: immigrants with lawyers are far more likely to identify and prevail on defenses to removal that the law makes available to them.[14]

### C.   The Federal Government's Response to the Legal Needs of Children Facing Deportation

40.     Although the Government initiates deportation cases against thousands of children each year, it does not ensure legal representation for the vast majority of them. Numerous advocates have pointed out the injustice of this practice, and called for the Government to provide representation for children facing deportation. *See*, *e.g.*, Wendy Young & Megan McKenna, *The Measure of a Society: The Treatment of Unaccompanied Refugee and Immigrant Children in the United States*, 45 Harv. C.R.-C.L. L. Rev. 247 (Winter 2010); M. Aryah Somers, *Zealous Advocacy for the Right to Be Heard for Children and Youth in Deportation Proceedings*, 15 CUNY L. Rev. 189 (Winter 2011); Julie Myers Wood & Wendy Young, *Children Alone and Lawyerless in a Strange Land*, *The Wall Street Journal*, Sept. 22, 2013, *available at* http://online.wsj.com/news/articles/SB10001424127887324492604579083400349940432;[15] Sonia Nazario, *Child Migrants, Alone in Court*, *N.Y. Times*, Apr. 10, 2013, A23, *available at* http://www.nytimes.com/2013/04/11/opinion/give-lawyers-to-immigrant-children.html?_r=0.

41.     The Government has taken limited steps to afford legal representation to some children facing deportation, but its efforts have fallen well short of ensuring representation for every child it seeks to deport. For the past couple of years, the Government has funded legal representation for a fraction of the children in ORR detention facilities, and more recently has initiated programs in Houston, Texas, and Los Angeles, California to afford legal representation to certain children released from ORR custody. But these programs fail to provide all children even in those two regions with representation.

42.     In October 2013, Plaintiffs' counsel sent a letter to Defendants urging them to take additional

---

[14] One recent study that focused on adults in removal proceedings concluded that they fared substantially better when represented by counsel. *See Accessing Justice: The Availability and Adequacy of Counsel in Immigration Proceedings*, Study Group on Immigrant Representation 4 (Dec. 2011) (finding that 74% of represented non-detained noncitizens received favorable outcomes, as opposed to 13% of unrepresented non-detained noncitizens).

[15] Ms. Myers Wood was the Assistant Secretary of Homeland Security for Immigration and Customs Enforcement under President George W. Bush.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

steps to ensure that all children in immigration proceedings are provided legal representation. Ex. A, Letter regarding Counsel for Immigrants in Removal Proceedings. In January 2014, Plaintiffs' counsel met with officials from DHS, DOJ, and ORR to discuss the concerns expressed in the letter.

43.     Several weeks ago, the Government announced a new "strategic partnership" to "facilitat[e] the effective and efficient adjudication of immigration proceedings involving certain children who have crossed the border without a parent or legal guardian." justice AmeriCorps Legal Services for Unaccompanied Children, Corporation for Nat'l & Comm. Serv., *available at* http://www.nationalservice.gov/build-your-capacity/grants/funding-opportunities/2014/justice-americorps-legal-services (last visited June 9, 2014). Under this program, the Government has set aside $2 million to partner with legal services providers in order to support living allowances for 100 legal fellows who will represent children under 16 in removal proceedings in selected areas of the country. *See* Announcement of Federal Funding Opportunity, Corporation for National and Community Service, 2014 justice AmeriCorps Legal Services for Unaccompanied Children (June 6, 2014), *available at* http://www.nationalservice.gov/sites/default/files/upload/JusticeAmeriCorpsNOFO.pdf.

44.     Assuming that the Government's plan is implemented as announced, it would still fall far short of meeting the need created by the Government's policy of deporting children without representation, for several reasons. First, the geographic reach of the Government's new program appears to exclude certain critical locations, such as Los Angeles, and does not ensure representation for every child even for those populations it explicitly targets. *Id.* at 6-7.[16] Second, the Government's new program will fund representation only for children younger than 16, thereby excluding a substantial number of children who face removal, including several of the Plaintiffs. *Id.* at 31 (defining "[u]naccompanied children" as "children under the age of 16"). And finally, this initiative devotes only limited resources to the problem. Advocates already have noted that the Government's program "at best [] would only touch a fraction of all the unaccompanied minors expected to appear in court in the coming months." Kirk Semple, *Youths Facing Deportation to Be Given Legal Counsel*, *N.Y. Times*, June 6, 2014, A11

---

[16] The Government's announcement indicates that "[p]riority shall be given to programs" in certain immigration court locations. *See* Announcement of Federal Funding Opportunity at 6-7. But the announcement does not pledge that a provider in each of those locations is certain to receive funding.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

*available at* http://www.nytimes.com/2014/06/07/us/us-to-provide-lawyers-for-children-facing-deportation.html?_r=0.

45.     Several important actors within the Government have also indicated more generally that they would support a system that provided representation for all children. In a recent House Committee on Appropriations Report, the Committee commented on the existence of pilot programs created "to explore ways to better serve vulnerable populations such as children and improve court efficiency through pilot efforts aimed at improving their legal representation," but specified "that such pilots shall not require the U.S. Government to bear any expense for legal representation for any alien in removal proceedings, except to the extent required by Federal court order." *See* H.R. Rep. 113-448, at 42 (2014).[17]

46.     Defendant Eric Holder, Attorney General of the United States, has also indicated support for the relief sought in this case, stating that "[i]t is inexcusable that young kids – . . . six-, seven-year-olds, fourteen-year-olds – have immigration decisions made on their behalf, against them, . . . and they're not represented by counsel. That's simply not who we are as a nation. It's not the way in which we do things." Senate Judiciary Committee Hearing on Oversight of the Justice Department (Mar. 6, 2013) (video available at http://www.judiciary.senate.gov/meetings/oversight-of-the-us-department-of-justice-2013-03-06).[18]

47.     The Administration has also asked Congress, as part of an emergency appropriations request, to fund $15 million for "direct legal representation services to children in immigration proceedings." Letter from President Barack Obama to the Hon. John Boehner, Speaker of the House of Representatives at 6 (July 8, 2014), http://www.whitehouse.gov/sites/default/files/omb/assets/budget_amendments/

---

[17] The Administration had previously requested an allocation of $5,824,000 for EOIR to "develop, implement and evaluate a pilot program to provide counsel for unaccompanied alien children." *See* White House Proposed Budget for FY 2015, Department of Justice, General Administration, Federal Funds, *available at* http://www.whitehouse.gov/sites/default/files/omb/budget/fy2015/assets/jus.html.

[18] The Administration also previously supported Senate Bill S. 744, the bipartisan comprehensive immigration reform legislation. That bill includes a provision requiring appointed counsel for a large subset of children in the putative class at issue here—all "unaccompanied alien children." *See* S. 744, 13th Cong. § 3502 (2013).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

emergency-supplemental-request-to-congress-07082014.pdf.[19] It is far from clear that Congress intends to act on this request, in whole or in part. Even assuming it does, the Administration has not specified how this money will be distributed, or whether these funds will come with the same limitations as the Government's recently-announced "strategic partnership" to provide counsel for unaccompanied children. Moreover, it is highly unlikely that any approved funds would be sufficient to meet the need.

48.     In the meantime, the Government continues to send children like the Plaintiffs in this case without lawyers to face off against ICE trial attorneys who argue for their deportation before Immigration Judges.

### D.     The Plaintiffs

**J.E.F.M.**

49.     J.E.F.M. is a 10-year-old boy, and a native and citizen of El Salvador. He presently resides in Washington State. He is the youngest of four children born to his parents. His father was a former gang member, who then converted to Christianity and later became a pastor. J.E.F.M.'s mother was also a pastor. His parents met at church and together they started a rehabilitation center for people leaving gangs. Gang members retaliated against the center for housing young people trying to leave the gangs. First, they warned J.E.F.M.'s parents to stop assisting former gang members. Then they killed J.E.F.M.'s cousin. Two weeks later, gang members murdered J.E.F.M.'s father in the street in front of their house, while J.E.F.M. and his siblings watched. J.E.F.M.'s mother continued to be threatened after this incident, so she fled the country, leaving her children with their grandmother.

50.     Approximately seven years later, the children also became targets of gang members in El Salvador. Gang members demanded that the children join and threatened them with harm if they did not. Rather than enter the gang, J.E.F.M. fled with his two older siblings. At the time he was only nine years old.

51.     J.E.F.M. and his two siblings entered the United States around July 2013, were apprehended by

---

[19] *See also* White House Office of the Press Secretary, *FACT SHEET: Emergency Supplemental Request to Address the Increase in Child and Adult Migration from Central America in the Rio Grande Valley Areas of the Southwest Border* (July 8, 2014), *available at* http://www.whitehouse.gov/the-press-office/2014/07/08/fact-sheet-emergency-supplemental-request-address-increase-child-and-adu.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

U.S. Customs and Border Protection ("CBP"), and then placed in the custody of ORR. They were released to a family member fifteen days later. They have been residing in Washington State since their release.

52.    J.E.F.M. has a removal hearing in September 2014, but has no legal representation in his immigration case because he has no resources to hire private counsel and the legal service providers in the Seattle area are stretched well beyond capacity to take on the cases of children in removal proceedings. J.E.F.M. appears by his next friend, Bob Ekblad. Mr. Ekblad is a minister who has worked closely with J.E.F.M. and his family; he is familiar with J.E.F.M.'s immigration case and is truly dedicated to his best interests in this case.

**J.F.M.**

53.    J.F.M. is a 13-year-old boy and a native and citizen of El Salvador. He presently resides in Washington. He is the older brother of J.EF.M. He also saw his father killed, was later threatened by gang members, and left El Salvador at the same time and for the same reasons as his younger brother.

54.    J.F.M. has a removal hearing in September 2014, but has no legal representation in his immigration case because he has no resources to hire private counsel and the legal service providers in the Seattle area are stretched well beyond capacity to take on the cases of children in removal proceedings. J.F.M. appears by his next friend, Bob Ekblad. Mr. Ekblad is a minister who has worked closely with J.F.M. and his family; he is familiar with J.F.M.'s immigration case and is truly dedicated to his best interests in this case.

**D.G.F.M.**

55.    D.G.F.M. is a 15-year-old girl and a native and citizen of El Salvador. She presently resides in Washington. She is the older sister of J.F.E.M. and J.F.M. She also saw her father killed, was threatened by gang members, and left El Salvador with her two younger brothers at the same time and for the same reasons.

56.    D.G.F.M. has a removal hearing in September 2014, but has no legal representation in her immigration case because she has no resources to hire private counsel, and the legal service providers in the Seattle area are stretched well beyond capacity to take on the cases of children in removal proceedings. D.G.F.M. appears by her next friend, Bob Ekblad. Mr. Ekblad is a minister who has

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

worked closely with D.G.F.M. and her family; he is familiar with D.G.F.M.'s immigration case and is truly dedicated to her best interests in this case.

**F.L.B.**

57.     F.L.B. is a 15-year-old boy, and a native and citizen of Guatemala. He presently resides in Seattle, Washington. He is the fourth of six children born to his parents. Throughout F.L.B.'s childhood, his father, an alcoholic who abused F.L.B. and his siblings, resided in a different city and only visited occasionally. Moreover, F.L.B.'s father did not make any financial contributions to the home.

58.     When he was ten years old, F.L.B. dropped out of school to work with his father in order to provide for himself, his mother, and his two younger siblings. After two years of living and working with his father, F.L.B. returned to his mother's home because he was no longer able to bear his father's abuse and excessive drinking. However, after six months at home he had to leave again due to the family's poor financial situation. F.L.B. moved back to the town where he had worked with his father, but this time lived with acquaintances. He only ever saw his father by chance, and seldom saw his mother.

59.     After more than a year of working and living outside the family's home, F.L.B. set out for the United States, hoping to be able to support himself and have the opportunity to enroll in school. He spent approximately one month traveling through Mexico and crossed the United States border in August 2013, at the age of 14. United States Border Patrol agents apprehended him in the desert and placed him in the custody of ORR. With no family in the United States, F.L.B. was released to the custody of a family acquaintance in October 2013. He has been residing in Seattle, Washington, since his release from ORR custody.

60.     F.L.B. has a removal hearing in September 2014. However, F.L.B. has no resources to retain counsel and the legal service providers in the Seattle area are stretched well beyond capacity to take on the cases of children in removal proceedings. F.L.B. appears by his next friend, Casey Trupin. Mr. Trupin is the Project Coordinator for the Children and Youth Project at Columbia Legal Services in Seattle, Washington; he is familiar with F.L.B.'s ongoing immigration proceedings and is truly dedicated to F.L.B.'s best interests in this case.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

**G.D.S.**

61.   Plaintiff G.D.S. is a 15-year old boy and a native and citizen of Mexico who has lived in the United States since he was approximately one year old. He is the second youngest in a family of five children, all of whom reside in this country. He, his mother, and an older brother all possess U nonimmigrant visa status and are now seeking to adjust their status to become lawful permanent residents.

62.   G.D.S. was in ninth grade when he was placed in a juvenile rehabilitation facility after pleading guilty to charges in juvenile court. ICE then filed a detainer against him, which advised that he faces removal proceedings where the Government will seek to take away his lawful status and deport him from his home. He thus faces the threat of permanent separation from his mother and siblings. He and his mother cannot afford an attorney to represent him in immigration court, and the legal service providers in the Seattle area are stretched well beyond capacity to take on the cases of children in removal proceedings.

63.   G.D.S. appears by his next friend and mother, Ana Maria Ruvalcaba. Ms. Ruvalcaba maintains a close personal relationship with G.D.S., is familiar with his immigration matters, and is truly dedicated to his best interests in this case.

**M.A.M.**

64.   Plaintiff M.A.M. is a 16-year-old boy, and a native and citizen of Honduras. He presently resides in Oxnard, California. M.A.M. has limited communication skills and special education issues, as a result of which he has limited ability to recount the suffering that he and his family endured in Honduras.

65.   M.A.M. spent his first eight years in Honduras, raised primarily by his maternal grandmother. During that time, M.A.M.'s mother left him and came to the United States, where she received Temporary Protected Status ("TPS"). Although M.A.M.'s grandmother cared for him, she could not shield him from life's brutality there. At some point prior to his eighth birthday, someone attacked M.A.M.'s father with a machete, leaving him profoundly disabled. M.A.M.'s half-brothers' father was kidnapped and murdered during those years as well.

66.   Eventually, M.A.M.'s grandmother grew elderly and ill. His father was not involved in his life, and no one else could care for him. As a result, M.A.M. came to the United States at the age of eight.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Since 2006, he has resided with his mother in California. Although she has TPS, the law does not permit her to extend that status to her son.

67.     Despite the lack of an adult conviction, M.A.M. was swept into the net of interior immigration enforcement. ICE arrested M.A.M. and took him into custody in September 2011, when he was only 13 years old and placed him into removal proceedings. Rather than transfer M.A.M. to ORR custody, however, ICE retained custody over him until his mother came forward, after which ICE released him into her care.

68.     The Los Angeles Immigration Court already has held multiple hearings where M.A.M. was unrepresented by counsel. M.A.M.'s next removal hearing is scheduled for August 2014. He and his mother are indigent. They cannot afford to hire private counsel for his upcoming hearing. The Los Angeles-based, Government-funded legal representation program rejected M.A.M.'s immigration court case because he fell outside their scope of service (because M.A.M. was never in ORR custody). M.A.M. appears by his next friend and mother, Rosa Pedro. Ms. Pedro maintains a close personal relationship with M.A.M., is familiar with his ongoing immigration proceedings, and is truly dedicated to his best interests in this case.

**S.R.I.C.**

69.     S.R.I.C. is a 17-year-old boy, and a native and citizen of Guatemala. He presently resides in Los Angeles, California. His father, Hector Rolando Ixcoy Ixcoy, left Guatemala for the United States when S.R.I.C. was a young boy. S.R.I.C. lived in Guatemala with his mother and three siblings. Although Mr. Ixcoy was in the United States during S.R.I.C.'s childhood, he called the family frequently and sent money to support S.R.I.C. and the rest of the family. Mr. Ixcoy became a lawful permanent resident of the United States in 2009.

70.     S.R.I.C. was forced to flee from Guatemala when gang members began attempting to recruit him. The gang members would wait outside of his school and threaten S.R.I.C. During one such confrontation, one of the gang members cut S.R.I.C.'s leg with a knife. He still has the scars from that confrontation. When S.R.I.C. continued to resist their recruitment efforts, the gang threatened to kill S.R.I.C. and his family unless S.R.I.C. agreed to join the gang.

71.     Fearing for his life and for the well-being of his family, S.R.I.C. came to the United States to

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

reunite with his father. Several days later, S.R.I.C. left Guatemala for the United States. In February 2014, CBP apprehended S.R.I.C. and held him in custody near the United States-Mexico border. The Government thereafter initiated removal proceedings against him, and he has a removal hearing date in January 2015.

72.     After several days in detention along the border, S.R.I.C. was sent to a shelter in Houston, Texas, where he remained until he was sent to Los Angeles, California to reunite with his father in March. S.R.I.C. now resides in Los Angeles, where he is currently enrolled in school.

73.     Since arriving in Los Angeles, S.R.I.C. met with legal services providers and inquired about the possibility of obtaining legal representation in his immigration case. However, he was turned away because the legal services provider did not have the capacity to take on his case and could not locate pro bono representation for him. S.R.I.C. and his father also have reached out to private immigration attorneys, but cannot afford to pay the fees charged by such attorneys to take on his immigration case. S.R.I.C. therefore remains unrepresented in his immigration case.

74.     S.R.I.C. appears by his next friend and father, Mr. Ixcoy. Mr. Ixcoy maintains a close personal relationship with S.R.I.C. and is truly dedicated to S.R.I.C.'s best interests in this case.

**G.M.G.C.**

75.     G.M.G.C. is a 14-year-old girl, and a native and citizen of El Salvador. She presently resides in Los Angeles, California. Her parents left El Salvador when she was a young girl, and she grew up living with her grandparents, sisters, and aunts. Although her parents were living in the United States, they called frequently and sent money to support the family. Around 2001, her father, Juan Guerrero Diaz, received TPS in the United States.

76.     G.M.G.C. was forced to leave her home of El Salvador after gang members began threatening the young women in her family. Her uncle in El Salvador, who is a police officer, refused to provide supplies to gang members in their town. In retaliation, the gang members made threats to the young women in the family, surveilled the family home, and harassed the young women. On one occasion, gang members attacked G.M.G.C. and her older sister while they were out buying dinner. After these incidents, the young girls were too scared to leave the family home.

77.     Fearing for their lives, G.M.G.C., her two sisters, and her young aunt, fled El Salvador and came

to the United States. Border Patrol agents apprehended G.M.G.C., her sisters, and her aunt in January 2014. After spending approximately one day at holding facilities near the border, G.M.G.C. was transferred to ORR custody. She remained in ORR custody until February 2014, when she was taken to Los Angeles, California, to reunite with her father. G.M.G.C. has a removal hearing date in September 2014.

78.     After arriving in Los Angeles, G.M.G.C. and her father met with legal services providers and inquired about the possibility of obtaining legal representation for her in her immigration case. However, they never heard back from the legal services providers, and when they inquired further, were told that the legal services providers could not take on G.M.G.C.'s case. G.M.G.C. and her father have also reached out to private immigration attorneys, but cannot afford to pay the fees charged by such attorneys to take on her immigration case. Therefore, G.M.G.C. remains unrepresented in her immigration case.

79.     G.M.G.C. appears by her next friend and father, Mr. Guerrero Diaz. Mr. Guerrero Diaz maintains a close personal relationship with G.M.G.C., is familiar with her immigration matters, and is truly dedicated to her best interests in this case.

## V.       LEGAL BACKGROUND

80.     Plaintiffs and the putative class raise statutory and constitutional claims challenging the Government's failure to ensure legal representation for them in their immigration proceedings. Specifically, Plaintiffs contend that the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment mandate that the Government ensure that all children in immigration proceedings have legal representation.

81.     The INA and immigration regulations require that all persons in removal proceedings have "a reasonable opportunity" to present, examine, and object to evidence. 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.10(a)(4). In addition, all persons in removal proceedings, whatever their age, have the right to be advised of the charges against them, 8 U.S.C. § 1229(a)(1)(D); 8 C.F.R. § 239.1, and "the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing." 8

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

U.S.C. § 1229a(b)(4)(A); 8 C.F.R. §§ 238.1(b)(2), 1240.10(a)(1).[20]

82.     Existing regulations address the rights of children in some respects, but do not come close to ensuring fair hearings. One regulation precludes Immigration Judges from accepting admissions of removability from "an unrepresented respondent who is . . . under the age of 18," but permits such admissions if the child is accompanied by a relative or friend. 8 C.F.R. § 1240.10(c). The BIA has undermined even the minimal protection this regulation provides by holding that Immigration Judges can accept factual admissions from children that, taken together, are sufficient to prove the child's removability. *See Matter of Amaya*, 21 I. & N. Dec. 583, 587 (BIA 1996). Similarly, another regulation requires DHS to serve charging documents for a minor under 14 years of age upon the person with whom the minor resides, and "whenever possible," the minor's "near relative, guardian, committee, or friend." 8 C.F.R. § 103.8(c)(2)(ii). But this regulation does not impose any obligations on such individuals, and the BIA has concluded that these regulations even permit service upon the director of the facility where the minor is currently detained. *See Amaya*, 21 I. & N. Dec. at 585.

83.     At a more general level, the BIA has long interpreted the statutory rights provided in 8 U.S.C. §§ 1229, 1229a as creating a general right to a fair hearing in the deportation context. *Matter of Exilus*, 18 I. & N. Dec. 276, 278-79 (BIA 1982). Similarly, the Ninth Circuit has made clear that "every individual in removal proceedings is entitled to a full and fair hearing" of his claims. *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc).

84.     These statutory rules implement a constitutional command. The Supreme Court held over a century ago that the Fifth Amendment guarantees a noncitizen the right to due process in any proceeding where the Government seeks his deportation. *See Yamataya v. Fisher*, 189 U.S. 86, 100-01 (1903) ["The Japanese Immigrant Case"]. And as applied to children, both prior Supreme Court precedent from the

---

[20] The immigration statutes also contain certain protections specific to "unaccompanied alien children," defined as individuals under the age of 18 without lawful immigration status in the United States "with respect to whom: (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). "Unaccompanied alien children" who are not from "contiguous countries" are entitled to additional legal protections. *See, e.g.*, 8 U.S.C. § 1232(b)-(c) (custody provisions); 8 U.S.C. § 1232(a)(5)(D)(iii) (regarding counsel); 8 U.S.C. § 1232(c)(5) (directing HHS to ensure unaccompanied children are represented "to the greatest extent practicable"); 8 U.S.C. § 1232(c)(6) (regarding child advocates).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

juvenile delinquency context and more recent Ninth Circuit precedent involving a child facing

deportation demonstrate that all children, with their limited capacity to present complex factual and legal

arguments, are entitled to legal representation in immigration proceedings. *In re Gault*, 387 U.S. at 36;

*Lin v. Ashcroft*, 377 F.3d 1014, 1030, 1032-34 (9th Cir. 2004).  This is all the more true given the

adversarial nature of the proceedings and the grave interests at stake. *See generally Turner v. Rogers*,

131 S. Ct. 2507, 2517 (2011).

## VI.   CLASS ACTION ALLEGATIONS

85.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of

themselves and all other similarly situated individuals. Plaintiffs seek injunctive relief that applies

generally to the Plaintiff Class, as described below.

86.     The Plaintiff Class consists of:

- All individuals under the age of eighteen (18) who are or will be in immigration
  proceedings on or after July 9, 2014, without legal representation in their immigration
  proceedings.[21]

87.     The Plaintiff Class is so numerous that joinder of all members is impracticable. Although the

number of individuals under the age of 18 who are pro se in immigration proceedings is not known with

precision, most reports indicate that there are thousands of such children. *See supra* Part IV.A.

88.     Common questions of law and fact bind the members of the Plaintiff Class. These questions

include, but are not limited to, the following:

---

[21] As noted *supra* note 5, Plaintiffs define "immigration proceedings" as any proceeding that occurs
before an Immigration Judge or the Board of Immigration Appeals. Plaintiffs define "legal
representation" as representation by a lawyer, a law student or graduate supervised by a lawyer, or a
BIA-accredited representative. *See Franco-Gonzalez, et al. v. Holder*, 828 F. Supp. 2d 1133, 1147 (C.D.
Cal. 2011) (defining Qualified Representative for purposes of providing legal representation to mentally
incompetent individuals in immigration proceedings as including "(1) an attorney, (2) a law student or
law graduate directly supervised by a retained attorney, or (3) an accredited representative, all as defined
in 8 C.F.R. § 1292.1").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

- Whether the Due Process Clause of the U.S. Constitution and/or federal statutory law requires the Government to provide legal representation for the members of the Plaintiff Class;

- Whether existing procedures suffice to protect the Plaintiff Class members' right to a full and fair hearing as required by the Due Process Clause of the U.S. Constitution and/or federal statutory law.

89.     The claims of the named Plaintiffs are typical of the claims of the Plaintiff Class as a whole. Plaintiffs know of no conflict between their interests and those of the Plaintiff Class. The members of the Plaintiff Class are ascertainable and can be identified through notice and discovery. In defending their own rights, the individual Plaintiffs and their next friends will defend the rights of all proposed Plaintiff Class members fairly and adequately.

90.     Plaintiffs are represented in this case by counsel with deep knowledge of immigration law and extensive experience litigating class actions and complex cases, including the only class action that has secured appointed legal representation for a class of immigrants. Plaintiffs' attorneys have the requisite level of expertise to adequately prosecute this case on their behalf and on behalf of the Class.

91.     Defendants have acted or refused to act on grounds generally applicable to each member of the Plaintiff Class by refusing to recognize that the members of the Plaintiff Class have a statutory and constitutional right to legal representation in their immigration proceedings, and by refusing to provide that representation for such individuals.

92.     A class action is superior to other methods available for the fair and efficient adjudication of this controversy because joinder of all members of the Plaintiff Class is impracticable. Moreover, members of the Plaintiff Class remain unrepresented in immigration proceedings and lack the ability to assert the claims made here. Absent the relief they seek here, there would be no other way for the Plaintiff Class to individually redress the wrongs they have suffered and continue to suffer.

COMPLAINT (No. ___) - 24 of 27

## VII.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### <u>Violation of the Immigration and Nationality Act</u>

### (Against All Defendants by All Plaintiffs)

93.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs.

94.     The Immigration and Nationality Act requires that all individuals in removal proceedings be afforded a reasonable opportunity to, *inter alia*, examine and present evidence and witnesses. *See* 8 U.S.C. § 1229a(b). These provisions require that unrepresented children be provided a fair hearing in their immigration proceedings. The only way to ensure that these children receive a fair hearing is by providing them with legal representation.

95.     Plaintiffs and the Plaintiff Class have suffered and will imminently suffer irreparable injury as a proximate cause of the Government's failure to provide them with legal representation in their immigration proceedings, and are therefore entitled to injunctive relief to avoid any injury.

### SECOND CAUSE OF ACTION

### <u>Violation of the Due Process Clause of the Fifth Amendment</u>

### (Against All Defendants by All Plaintiffs)

96.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs.

97.     The Due Process Clause requires that unrepresented children in immigration proceedings be provided legal representation.

98.     Plaintiffs and the Plaintiff Class have suffered and will imminently suffer irreparable injury as a proximate cause of the Government's failure to provide them with legal representation in their immigration proceedings, and are therefore entitled to injunctive relief to avoid any injury.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

VIII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

    a.  Certify a class pursuant to Federal Rule of Civil Procedure 23 in accordance with this Complaint's allegations and the accompanying Motion for Class Certification;

    b.  Declare that the Defendants' failure to ensure legal representation for Plaintiffs and the Plaintiff Class violates constitutional and statutory law, pursuant to the Court's equitable powers and the Declaratory Judgment Act, 28 U.S.C. § 2201;

    c.  Issue an injunction directing Defendants to ensure that Plaintiffs and other members of the Plaintiff Class receive legal representation in their immigration proceedings;

    d.  Grant any other relief the Court deems just, equitable, and appropriate, including, but not limited to, fees under the Equal Access to Justice Act, and any other applicable statute or regulation.

Dated this 9th day of July, 2014.

Respectfully submitted,

s/ Matt Adams
_____
Matt Adams, WSBA No. 28287
Glenda M. Aldana Madrid, WSBA 46987
NORTHWEST IMMIGRANT
  RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)

Ahilan Arulanantham, Cal. State Bar. No. 237841 (*pro hac vice* motion pending)
ACLU IMMIGRANTS' RIGHTS PROJECT
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Cecillia Wang, Cal. State Bar. No. 187782 (*pro hac vice* motion pending)
Stephen Kang, Cal. State Bar No. 292280 (*pro hac vice* motion pending)
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
(415) 343-0950 (fax)

Carmen Iguina, Cal. State Bar No. 277369 (*pro hac vice* motion pending)
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)

Kristen Jackson, Cal. State Bar. No. 226255 (*pro hac vice* motion pending)
Talia Inlender, Cal. State Bar. No. 253796 (*pro hac vice* motion pending)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
(213) 385-9089 (fax)

Beth Werlin, D.C. Bar No. 1006954 (*pro hac vice* motion pending)
Melissa Crow, D.C. Bar No. 453487 (*pro hac vice* motion pending)
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7500
(202) 742-5619 (fax)

Theodore Angelis, WSBA No. 30300
Todd Nunn, WSBA No. 23267
K&L GATES
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
(206) 623-7580
(206) 623-7022 (fax)

Sarah Dunne, WSBA No. 34869
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184

*Counsel for Plaintiffs-Petitioners*