1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J.E.F.M., a minor, by and through his Next Friend, Bob Ekblad; J.F.M., a minor, by and through his Next Friend, Bob Ekblad; D.G.F.M., a minor, by and through her Next Friend, Bob Ekblad; F.L.B., a minor, by and through his Next Friend, Casey Trupin; G.D.S., a minor, by and through his mother and Next Friend, Ana Maria Ruvalcaba; M.A.M., a minor, by and through his mother and Next Friend, Rosa Pedro; S.R.I.C., a minor, by and through his father and Next Friend, Hector Rolando Ixcoy; G.M.G.C., a minor, by and through her father and Next Friend, Juan Guerrero Diaz; on behalf of themselves as individuals and on behalf of others similarly situated,

Plaintiffs-Petitioners,

v.

Eric H. HOLDER, Attorney General, United States; Juan P. OSUNA, Director, Executive Office for Immigration Review; Jeh C. JOHNSON, Secretary, Homeland Security; Thomas S. WINKOWSKI, Principal Deputy Assistant Secretary, U.S. Immigration and Customs Enforcement; Nathalie R. ASHER, Field Office Director, ICE ERO; Kenneth HAMILTON, AAFOD, ERO; Sylvia M. BURWELL, Secretary, Health and Human Services; Eskinder NEGASH, Director, Office of Refugee Resettlement,

Defendants-Respondents.

Case No. _____

**MOTION FOR CLASS CERTIFICATION**

NOTE ON MOTION CALENDAR:

August 1, 2014

ORAL ARGUMENT REQUESTED

MOT. CLASS CERTIFICATION (No. _) - 1 of 25

## I.    MOTION AND PROPOSED CLASS DEFINITION

Plaintiffs-Petitioners ("Plaintiffs") bring this action to challenge Defendants-Respondents' ("Defendants") unlawful policy and practice of subjecting children to immigration proceedings without providing them with legal representation. Plaintiffs contend that federal statutory and constitutional law requires that children be represented in immigration proceedings—adversarial hearings conducted before an Immigration Judge where the Government is represented by a trained attorney who argues for the child's deportation under a complex set of legal rules. The stakes in these proceedings are extremely high. Judges routinely order children deported to countries where they have little or no family or community support, and in many cases to countries from which they fled in order to escape persecution, torture, or death.

Against this backdrop, this case presents a question of law that is paradigmatically appropriate for class treatment: are children entitled to legal representation at their immigration hearings? Plaintiffs believe the answer is yes, but whether or not the Court ultimately agrees, the question can plainly be resolved on a class-wide basis, making certification appropriate. Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs respectfully move this Court to certify the following class with all named Plaintiffs being appointed class representatives:

> All individuals under the age of eighteen (18) who are or will be in immigration proceedings on or after July 9, 2014 without legal representation in those proceedings.[1]

---

[1] Plaintiffs define "immigration proceedings" as any proceeding that occurs before an Immigration Judge or the Board of Immigration Appeals. Plaintiffs define "legal representation" as "(1) an attorney, (2) a law student or law graduate directly supervised by a retained attorney, or (3) an accredited representative, all as defined in 8 C.F.R. § 1292.1." *Franco-Gonzales, et al. v. Holder*, 828 F. Supp. 2d 1133, 1147 (C.D. Cal. 2011).

MOT. CLASS CERTIFICATION (No. _) - 2 of 25

Plaintiffs seek certification of this class in order to obtain declaratory and injunctive relief, requiring that Defendants provide legal representation to Plaintiffs and all other children in their immigration proceedings.

## II.    BACKGROUND

### A.  Plaintiffs' Legal Claims

Although the Court need not engage in "an in-depth examination of the underlying merits" at this stage, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011), the Court may have to analyze the merits to some extent in order to determine the propriety of class certification. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (internal citations omitted). For that reason, Plaintiffs provide a brief summary of their merits claims here.

Plaintiffs are all children who face immigration proceedings without counsel. They challenge the Government's failure to provide them with legal representation under the immigration laws and the Fifth Amendment.

Plaintiffs' statutory claim arises from the immigration laws' requirement that all deportation hearings be fair. The Immigration and Nationality Act ("INA") and immigration regulations establish that all individuals in removal proceedings must be advised of the charges against them, *see* 8 U.S.C. § 1229(a)(1), 8 C.F.R. § 239.1, and be afforded a reasonable opportunity to, *inter alia*, examine and present evidence and witnesses, *see* 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.10(a)(4). The Board of Immigration Appeals ("BIA") and the federal courts have read these provisions to require that all individuals in immigration proceedings be provided a fair hearing. *See*, *e.g.*, *Matter of Exilus*, 18 I. & N. Dec. 276, 278-79 (BIA 1982); *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc).

MOT. CLASS CERTIFICATION (No. __) - 3 of 25

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Plaintiffs assert that, because children "as a class," "lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them," *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011) (internal quotation marks and citation omitted), they cannot obtain the fair hearing to which the statute entitles them without legal representation, particularly given the "the labyrinthine character of modern immigration law" and its "maze of hyper-technical statutes and regulations." *Drax v. Reno*, 338 F.3d 98, 99 (2d Cir. 2003).

Plaintiffs' constitutional claim follows from two lines of doctrine. First, the Supreme Court held nearly 40 years ago that children facing juvenile delinquency proceedings have a right to appointed counsel. *See In re Gault*, 387 U.S. 1, 34-41 (1967). Subsequent caselaw concerning the right to appointed counsel in non-criminal cases also supports Plaintiffs' position here. *See Turner v. Rogers*, 131 S. Ct. 2507 (2011) (finding no categorical right to appointed counsel in straightforward civil contempt proceedings where state was unrepresented and use of standardized forms could permit fair adjudication in most cases).

Second, Due Process doctrine in the deportation context strongly suggests that all children facing immigration proceedings must be represented. The Supreme Court held over 100 years ago that deportation hearings must satisfy the Fifth Amendment's Due Process Clause, *see Yamataya v. Fisher*, 189 U.S. 86, 100-01 (1903); and it has reiterated that holding specifically in the context of children. *See Reno v. Flores*, 507 U.S. 292, 306 (1993). Courts have recognized that appointed counsel may be required to satisfy that constitutional requirement in at least some removal cases, including those involving children. *See, e.g.*, *Aguilera-Enriquez v. INS*, 516 F.2d 565, 568 n.3 (6th Cir. 1975) ("Where an unrepresented indigent alien would require counsel to present his position adequately to an immigration judge, he must be provided with a lawyer at the Government's expense. Otherwise 'fundamental fairness' would be violated."); *cf. Jie Lin v. Ashcroft*, 377 F.3d

MOT. CLASS CERTIFICATION (No. _) - 4 of 25

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

1014, 1032-34 (9th Cir. 2004) (emphasizing the crucial importance of the right to effective assistance of counsel in order for a minor to have a full and fair hearing in immigration court).

That immigration cases are civil rather than criminal does not obviate the need for counsel in deportation cases involving children. *Gault* itself involved civil proceedings, but it eschewed any formalistic reliance on that distinction. Moreover, as the Third Circuit has explained, "[a]s a matter of formal constitutional doctrine, the Sixth Amendment right to (effective) counsel does not apply in a civil context such as immigration proceedings. Nevertheless, we cannot treat immigration proceedings like everyday civil proceedings, despite their formally civil character, because unlike in everyday civil proceedings, the liberty of an individual is at stake in deportation proceedings." *Fadiga v. Attorney Gen. U.S.*, 488 F.3d 142, 157 n.23 (3d Cir. 2007) (internal quotation marks and citations omitted).

**B.  Named Plaintiffs' Factual Backgrounds**

Plaintiff J.E.F.M. is a 10-year-old boy from El Salvador. In 2013, J.E.F.M. and his two siblings fled their grandmother's home in El Salvador after gang members began to target them. Their parents, both Christian pastors, had previously been persecuted by gang members for their efforts to rehabilitate former gang members; their father was murdered and their mother forced to flee the country as a result. Customs and Border Protection ("CBP") took J.E.F.M. and his siblings into custody after they entered the United States in 2013, when he was only nine years old. He is scheduled to appear before an Immigration Judge in Seattle, Washington in September 2014 to answer to the charges of removability and to assert any defenses against his removal to El Salvador. *See* Ex. A, J.E.F.M. Notice to Appear.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Plaintiff J.F.M. is a 13-year-old boy from El Salvador and the brother of J.E.F.M. He fled El Salvador at the same time and for the same reasons as his brother. He is also scheduled for an immigration proceeding in September 2014. *See* Ex. B, J.F.M. Notice to Appear.

Plaintiff D.G.F.M. is a 15-year-old girl from El Salvador, and the sister of J.E.F.M. and J.F.M. She fled at the same time and for the same reasons as her brothers. She too is scheduled for immigration proceedings in September 2014. *See* Ex. C, D.G.F.M. Notice to Appear.

Plaintiff F.L.B. is a 15-year-old boy from Guatemala. CBP took him into custody after he entered the United States in 2013, when he was only 14 years old. He had been abused and left to fend for himself by his parents and was living on his own when he decided to seek a safer life and made the difficult journey to the United States by himself. He is scheduled to appear before an Immigration Judge in Seattle, Washington in September 2014 to answer to the charges of removability and to assert any defenses against his removal to Guatemala. *See* Ex. D, F.L.B. Notice to Appear.

Plaintiff G.D.S. is a 16-year-old boy from Mexico. He has lived with his family in the United States since he was about one year old. He, his mother, and his older brother successfully applied for U nonimmigrant visa status and are currently seeking to adjust their status to become lawful permanent residents. However, he is now in a juvenile rehabilitation facility after having been adjudicated delinquent in juvenile court. Immigration and Customs Enforcement ("ICE") issued a detainer against him advising that he faces removal proceedings. In proceedings, ICE will seek to strip him of his lawful status and remove him from the only country he has ever known, which could permanently separate him from his mother and siblings. *See* Ex. E, G.D.S. Detainer.

Plaintiff M.A.M. is a 16-year-old boy from Honduras. There, his maternal grandmother raised him from a young age. When she grew elderly and fell ill, M.A.M. came to the United States.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

He was only eight years old at that time and has lived in the United States ever since. ICE took him into custody in September 2011, subsequently returning him to his mother's care. M.A.M. is scheduled to appear before an Immigration Judge in Los Angeles, California in August 2014 to answer to the charges of removability and to assert any defenses against his removal to Honduras. *See* Ex. F, M.A.M. Notice to Appear.

Plaintiff S.R.I.C. is a 17-year-old boy from Guatemala. In February 2014, he was forced to leave his home after receiving threats from gang members because he refused their recruitment efforts. S.R.I.C. was apprehended by CBP after entering the United States. He was eventually released to his father, who is a lawful permanent resident. S.R.I.C. is scheduled to appear before an Immigration Judge in Los Angeles, California in January 2015 to answer to the charges of removability and to assert any defenses against his removal to Honduras. *See* Ex. G, S.R.I.C. Notice to Appear.

Plaintiff G.M.G.C. is a 14-year-old girl from El Salvador. In January 2014, G.M.G.C. fled her grandparents' home in El Salvador after gang members targeted the young women in her family. She traveled to the United States with her sisters and young aunt and was apprehended by CBP after crossing into the United States. She was eventually released into the custody of her father, who has Temporary Protected Status, in Los Angeles, California. G.M.G.C. is scheduled to appear before an Immigration Judge in Harlingen, Texas in September 2014 to answer to the charges of removability and to assert any defenses against her removal to El Salvador. *See* Ex. H, G.M.G.C. Notice to Appear.

MOT. CLASS CERTIFICATION (No. _) - 7 of 25

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

## III.   THE COURT SHOULD CERTIFY A CLASS TO RESOLVE PLAINTIFFS' CLAIMS

Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(2).[2] Both the Ninth

Circuit and this Court routinely order the certification of class actions based on claims challenging

the adequacy of procedural protections under the immigration laws. *See, e.g.*, *Rodriguez v. Hayes*,

591 F.3d 1105 (9th Cir. 2010) (reversing district court order denying class certification for class of

immigration detainees subject to prolonged detention); *Khoury v. Asher*, --F. Supp. 2d--, 2014 WL

954920 (W.D. Wash. 2014) (certifying class and ordering declaratory relief for immigration

detainees).[3] That courts routinely certify classes in this area under Rule 23(b)(2) is unsurprising for

---

[2] In the alternative, Plaintiffs-Petitioners seek certification of a representative habeas corpus action under procedures analogous to those available under Rule 23. It is well established that, in appropriate circumstances, a habeas corpus petition may proceed on a representative or class-wide basis. *See, e.g.*, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 393, 404 (1980) (holding that class representative could appeal denial of nationwide class certification of habeas and declaratory judgment claims); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) ("[T]he Ninth Circuit has recognized that class actions may be brought pursuant to habeas corpus.")(citations omitted). Plaintiffs-Petitioners are in the custody of the federal Government by virtue of the immigration charges to which they must respond in court. *See generally Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

[3] For other Ninth Circuit cases in the immigration context, *see Gete v. INS*, 121 F.3d 1285, 1300 (9th Cir. 1997) (vacating district court's denial of class certification in case challenging inadequate notice and standards in Immigration and Naturalization Service ("INS") vehicle forfeiture procedure); *Walters v. Reno*, No. C94-1204C, 1996 WL 897662, at *5-8 (W.D. Wash. Mar. 13, 1996) (certifying nationwide class of individuals challenging adequacy of notice in document fraud cases), *aff'd*, 145 F.3d 1032 (9th Cir. 1998), *cert. denied*, 526 U.S. 1003 (1999); *Gorbach v. Reno*, 181 F.R.D. 642, 644 (W.D. Wash. 1998) (certifying nationwide class of persons challenging validity of administrative denaturalization proceedings), *aff'd on other grounds,* 219 F.3d 1087 (9th Cir. 2000) (en banc). For other cases from the Western District of Washington, see *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194 (W.D. Wash. 2008) (certifying district-wide class of delayed naturalization cases); *Gonzales v. U.S. Dep't. of Homeland Sec.*, 239 F.R.D. 620, 629 (W.D. Wash. 2006) (certifying Ninth Circuit wide class challenging USCIS policy contradicting binding precedent), *preliminary injunction vacated*, 508 F.3d 1227 (9th Cir. 2007) (establishing new rule and vacating preliminary injunction but no challenge made to class certification); *Ali v. Ashcroft,* 213 F.R.D. 390, 409-10 (W.D. Wash. 2003), *aff'd,* 346 F.3d 873, 889 (9th Cir. 2003), *vacated on other grounds,* 421 F.3d 795 (9th Cir. 2005) (certifying nationwide class of Somalis challenging legality of removal to Somalia in the absence of a functioning government). For another case involving the right to appointed legal representation in the immigration process, see *Franco-Gonzales v. Napolitano*, CV 10-02211 DMG (DTBx), 2011 WL 11705815 (C.D. Cal. 2011) (certifying class of immigrants detained in Washington, California, and Arizona who face immigration proceedings without appointed counsel even though they suffer from a serious mental disorder or defect). For another involving the rights of immigrant children facing deportation, see *Perez-Funez v. District Director, INS*, 611 F. Supp. 990, 994-1001 (C.D. Cal. 1984) (certifying nationwide class of unaccompanied immigrant minors in INS custody challenging implementation of its voluntary departure procedure).

MOT. CLASS CERTIFICATION (No. _) - 8 of 25

at least three reasons. First, the rule was intended to "facilitate the bringing of class actions in the civil-rights area," 7AA WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1775, at 71 (3d ed. 2005), particularly those seeking declaratory or injunctive relief. Second, they often involve claims on behalf of class members who would not have the ability to present their claims absent class treatment. That rationale applies with particular force to civil rights suits like this one, where children are extremely unlikely to be able even to raise, let alone to litigate, the claim at issue here on their own. *See Rodriguez*, 591 F.3d at 1123. Finally, the core issues in these cases often involve questions of law, rather than disparate questions of fact, and therefore are well suited for resolution on a class-wide basis. *See, e.g.*, *Unthaksinkun v. Porter*, CASE NO. C11-0588JLR, 2011 U.S. Dist. LEXIS 111099, at *38 (W.D. Wash. Sept. 28, 2011) (finding that, because all class members were subject to the same process, the court's ruling as to the legal sufficiency of the process would apply to all).

Plaintiffs do not ask this Court to adjudicate their individual immigration cases. Nor do they seek money damages. Rather, Plaintiffs ask only that the Court determine whether Defendants' policy and practice is unlawful, and, if so, order Defendants to implement the procedures necessary to protect Plaintiffs and proposed class members.

**A. This Action Satisfies the Class Certification Requirements of Federal Rule of Civil Procedure 23(a).**

**1. The Proposed Class Members Are so Numerous That Joinder Is Impracticable.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Est., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). No fixed number of class members is required. *Perez-Funez v. District Director, Immigration & Naturalization Service*, 611 F. Supp. 990, 995

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

(C.D. Cal. 1984); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) ("There is no magic number for determining when too many parties make joinder impracticable. Courts have certified classes with as few as thirteen members, and have denied certification of classes with over three hundred members.") (citations omitted).

The Government's own data and announcements make clear that the putative class is far too numerous to make joinder practicable. First, according to data received by Plaintiffs' counsel from Defendant Executive Office for Immigration Review's ("EOIR") Office of Legislative and Public Affairs, there were at least 2,959 *completed* proceedings with unrepresented minor respondents in immigration courts throughout the country in Fiscal Year 2013.[4] Recognizing that many cases take more than one year to complete and that the number of children has increased since 2013, that figure likely underestimates the size of the class. Second, the Government recently announced that approximately 10,000 unaccompanied children are likely to appear in 29 immigration courts in Fiscal Year 2015. Although some of these children will find attorneys and therefore not fall within the putative class, current representation rates suggest that at least several thousand children will remain unrepresented.[5] Furthermore, several groups of children were excluded from the estimate—

---

[4] *See* Ex. I.A., Macleod-Ball Decl., at 55. The data obtained does not measure the number of children who appeared before immigration courts, but rather the number of certain types of "completions," or Immigration Judge determinations. More than one completion can occur over the course of an individual's immigration proceedings. *See* Department of Justice, EOIR FY2013 Statistical Yearbook (2014), Glossary of Terms at 4, http://www.justice.gov/eoir/statspub/fy13syb.pdf.

[5] Current estimates suggest that a majority of children in immigration proceedings are unrepresented and that the number of children fleeing to the United States is rapidly increasing. *See* Center for Gender and Refugee Studies & Kids in Need of Defense, *A Treacherous Journey: Child Migrants Navigating the U.S. Immigration System* at ii-iv, 2 (Feb. 2014), *available at* http://www.uchastings.edu/centers/cgrs-docs/treacherous_journey_cgrs_kind_report.pdf.

MOT. CLASS CERTIFICATION (No. _) - 10 of 25

including all children whose cases will be heard in the busy Los Angeles, California, Houston, Texas, and Harlingen, Texas immigration courts.[6]

The attached declarations filed by several attorneys who work as legal service providers for children facing deportation confirm that the class is numerous. *See* Exs. J, Stotland Decl.; K, Herrera Decl.; L, Sharp. Decl.; M, Contreras Decl. Of course, these declarations come from organizations that interact with only a small sample of children in immigration proceedings around the country. Therefore, this Court can reasonably assume that the numbers in these declarations reflect only a small portion of the total number of putative class members. *See Ali*, 213 F.R.D. at 408 (noting that "the Court does not need to know the exact size of the putative class, 'so long as general knowledge and common sense indicate that it is large'") (quoting *Perez-Funez*, 611 F. Supp. at 995); Newberg on Class Actions § 3:13 (noting that "it is well settled that a plaintiff need not allege the exact number or specific identity of proposed class members").[7]

---

[6] *See* Announcement of Federal Funding Opportunity, Corporation for National and Community Service, 2014 justice AmeriCorps Legal Services for Unaccompanied Children (Jun. 6, 2014), *available at* http://www.nationalservice.gov/sites/default/files/upload/JusticeAmeriCorpsNOFO.pdf. The estimate appeared in conjunction with the Government's plan to fund 100 attorneys and paralegals to represent certain children in immigration proceedings. Based on the text of the relevant announcements, it appears that the Government funded representatives will not be permitted to take on representation of children who are 16 or 17 years old, children who are in proceedings with their parents, or children who are in the custody of the Office of Refugee Resettlement ("ORR") or the Department of Homeland Security ("DHS"). *Id.* at 3. It is unclear if children who are 16 or 17 were included in the estimated number of children likely to appear in immigration court in Fiscal Year 2015.

[7] Joinder is also inherently impractical because of the unnamed, unknown future class members who will be subjected to Defendants' unlawful policy and practices. *Ali*, 213 F.R.D. at 408-09 ("'[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met,' regardless of class size.") (citations omitted). Other factors demonstrating the impracticability of joinder in this case include the geographic dispersion of putative class members and their inability, by virtue of their lack of representation, to pursue their claims individually. *See, e.g.*, *Wong Yang Sung v. McGrath*, 339 U.S. 33, 46 (1950) ("[I]n . . . deportation proceeding[s], . . . we frequently meet with a voteless class of litigants who not only lack the influence of citizens, but who are strangers to the laws and customs in which they find themselves involved and . . . often do not even understand the tongue in which they are accused."), *superseded by statute on other grounds as explained in Hashim v. Immigration and Naturalization Serv.*, 936 F.2d 711, 713 (2d Cir. 1991); *United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) ("Only a representative proceeding avoids a multiplicity

MOT. CLASS CERTIFICATION (No. _) - 11 of 25

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

1

2

3

In any event, Plaintiffs are unaware of any case finding a proposed class of this size insufficiently numerous. There should be no serious dispute that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).

### 2. The Class Presents Common Questions of Law and Fact.

4

5

6

7

8

9

10

11

12

13

Rule 23(a)(2) requires that there be questions of law or fact common to the class. To satisfy the commonality requirement, "'[a]ll questions of fact and law need not be common.'" *Ellis*, 657 F.3d at 981 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Rather, one shared legal issue can be sufficient. *See*, *e.g.*, *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice."); *Rodriguez*, 591 F.3d at 1122 ("[T]he commonality requirements asks us to look only for some shared legal issue or a common core of facts.").

14

15

16

17

18

19

20

21

22

23

24

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted). In determining that a common question of law exists, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted) (first ellipses in original).

25

26

The commonality standard is even more liberal in a civil rights suit such as this one, in which

27

28

of lawsuits and guarantees a hearing for individuals . . . who by reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek one on their own behalf.") (citation omitted).

MOT. CLASS CERTIFICATION (No. _) - 12 of 25

"the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). "[C]lass suits for injunctive or declaratory relief" like this case, "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1763 at 226.

Here, Plaintiffs and the proposed class members—all under the age of 18—allege the same injury caused by the uniform policy and practice of Defendants: denying them appointed legal representation in their immigration proceedings. Every Plaintiff and putative class member has been or will be forced to appear without legal representation in front of an Immigration Judge—whether at the trial or appellate level—and will have to litigate against a trained Government attorney. All of the putative class members make the same legal claim: that by virtue of their age and its attendant limitations it is unlawful to force them to appear in such proceedings without legal representation. Thus, the question whether the immigration laws and the Constitution permit the Government to force children to appear in immigration proceedings without legal representation is common to all class members. Should Plaintiffs prevail, all who fall within the class will benefit; they will all be entitled to legal representation in their immigration proceedings. Thus, a common answer as to the legality of the challenged policy and practice will "'drive the resolution of the litigation.'" *Ellis*, 657 F.3d at 981 (quoting *Wal-Mart*, 131 S. Ct. at 2551).

The Supreme Court has recognized that a child's age "generates commonsense conclusions about behavior and perception" that "apply broadly to children *as a class*." *J.D.B.*, 131 S. Ct. at 2403 (internal quotation marks and citation omitted) (emphasis added). These conclusions "are self-evident to anyone who was a child once himself, including any police officer or judge." *Id.* As a consequence, "[t]he law has historically reflected the same assumption that children

MOT. CLASS CERTIFICATION (No. _) - 13 of 25

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them." *Id.*; *see also Eddings v. Oklahoma*, 455 U.S. 104, 115-16 (1982) ("Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults.").

Children as a class have lesser emotional and cognitive capacities, and therefore are uniquely unable to represent themselves in immigration proceedings. "Although citation to social science and cognitive science authorities is unnecessary to establish these commonsense propositions, the literature confirms what experience bears out." *J.D.B.*, 131 S. Ct. at 2403 n.5. "[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds." *Graham v. Florida*, 560 U.S. 48, 68 (2010). These differences include a reduced ability to understand consequences, make informed judgments, and resist coercion—competencies that are all crucial to the ability to represent oneself in complex legal proceedings. *See* Dustin Albert & Laurence Steinberg, *Judgment and Decision Making in Adolescence*, 21 J. Research on Adolescence 211, 220 (2011) (noting that "[a]dults tend to make more adaptive decisions than adolescents," in part because "they have a more mature capacity to resist the pull of social and emotional influences and remain focused on long-term goals"). "Describing no one child in particular, these observations restate what 'any parent knows'—indeed, what any person knows—about children generally." *J.D.B.*, 131 S. Ct. at 2403 (quoting *Roper v. Simmons*, 543 U.S. 551, 569 (2005)).

While, of course, some children are more capable than others, the Supreme Court has recognized that, *as a class*, children must receive different legal treatment given their unique characteristics.

> Like this Court's own generalizations, the legal disqualifications placed on children as a class—*e.g.*, limitations on their ability to alienate property, enter a binding contract enforceable against them, and marry without parental consent—exhibit the settled understanding that the *differentiating characteristics of youth are universal*.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

*Id.* at 2403-04 (emphasis added). Thus, children—whatever their precise ages and other circumstances—are unified by the disadvantages they encounter when they confront the legal system, which include a comparative lack of ability to engage in the very activities that are necessary to ensure a full and fair hearing of their claims in immigration proceedings. *See In re Gault*, 387 U.S. at 36 ("The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child requires the guiding hand of counsel at every step in the proceedings against him.") (internal quotation marks and citations omitted); *cf. Graham*, 560 U.S. at 78 ("[F]eatures that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings. Juveniles mistrust adults and have limited understandings of the criminal justice system and the roles of the institutional actors within it.").

In keeping with this widespread legal, social, and scientific consensus, this country's legal systems frequently use the age of 18 to mark the boundary between childhood and adulthood. *See Roper*, 543 U.S. at 569 (stating that "almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent"); *id.* at 581-86 (appendices to Court's opinion cataloguing various state laws on age of voting, jury service, and marriage). Indeed, the categorical separation between individuals younger than 18 and those 18 and older has enjoyed enduring societal support:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood.

*Id.* at 574.

Notably, the immigration statutes and regulations also acknowledge that children under the age of 18 are, as a class, unified by their diminished ability to assert their rights and defend their interests. For example, 8 C.F.R. § 1240.10(c) prohibits "an unrepresented respondent who is . . . under the age of 18" from conceding removability, unless the child is accompanied by a legal representative, near relative, guardian, or friend.

The significance of 18 as a dividing line between youth and adulthood recurs in other parts of the statutory and regulatory scheme. An "unaccompanied alien child" is defined as, *inter alia*, a child under the age of 18. *See* 6 U.S.C. § 279(g)(2). In light of the shared vulnerabilities of this class of individuals, the statute compels the Government to afford them certain protections. *See*, *e.g.*, 8 U.S.C. § 1232(a)(5)(D) (requiring that unaccompanied immigrant children from noncontiguous countries be placed into removal proceedings under § 1229a); 8 U.S.C. § 1232(d)(8) (commanding Government to promulgate regulations regarding asylum applications by unaccompanied children); *see also* David L. Neal, Chief Immigration Judge, *Operating Policies and Procedures Memorandum 07-01: Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children* at 3 (May 22, 2007), *available at* http://www.justice.gov/eoir/efoia/ocij/oppm07/07-01.pdf (instructing Immigration Judges to employ "child sensitive procedures" for unaccompanied children under 18 in immigration proceedings). The immigration regulations also include special provisions governing the apprehension (including specialized notice of rights), detention, and release from custody of "juveniles," who are defined as "under the age of 18 years." 8 C.F.R. § 1236.3(a); *see also* 8 U.S.C. § 1182(a)(9)(B)(iii)(I) (stating that "[n]o period of time in which an alien is under 18 years of age

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

shall be taken into account" when determining whether an immigrant is inadmissible to the United States for having been unlawfully present in this country for certain time periods).[8]

This well-settled legal and societal consensus underscores why variations within the Plaintiff Class do not defeat commonality. "Where the circumstances of each particular class member vary, but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) ("It is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue."); *Walters*, 145 F.3d at 1046 (noting that "it would be 'a twisted result' to permit an administrative agency to avoid nationwide litigation" by pointing to minor variations in procedure).

Given the overwhelming authority establishing that children under the age of 18 share certain critical psychological and developmental characteristics, the question whether federal statutory or constitutional law requires legal representation for children in immigration proceedings is plainly "capable of classwide resolution," as its "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551; *see also Perez-Funez*, 611 F. Supp. at 994-95 (finding that class of "[a]ll persons who claim to be under eighteen years of age" in INS custody satisfied commonality requirement).[9]

---

[8] To be sure, the immigration statutes and regulations sometimes draw other age lines. At times it reaches as high as 21. *See, e.g.*, 8 U.S.C. § 1101(b)(1) (defining "child" as "unmarried person under twenty-one years of age" for purposes of family-based immigration provisions); 8 C.F.R. § 204.11(c)(1) (establishing that noncitizen must be under 21 years of age in order to be eligible for special immigrant status). At others it dips as low as 14. *See, e.g.*, 8 C.F.R. § 103.8(c)(2)(ii) (requiring DHS to serve charging documents upon a minor under 14 years of age by service upon the person with whom minor resides, and "whenever possible," the minor's "near relative, guardian, committee, or friend"). This in no way undermines the viability of the class definition in this case. As discussed above, "a line must be drawn," *Roper*, 543 U.S. at 574, and the Plaintiff Class in this case adopts the most commonly accepted line of demarcation between youth and adulthood.

[9] Questions of law are thus particularly well-suited to resolution on a class-wide basis because "the court must decide only once whether the application" of Defendants' policies and practices "does or does not violate the"

MOT. CLASS CERTIFICATION (No. _) - 17 of 25

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

For all these reasons, the Plaintiff Class in this case satisfies Rule 23(a)(2).

### 3. The Claims of the Named Plaintiffs Are Typical of the Claims of the Members of the Proposed Class.

Rule 23(a)(3) specifies that the claims of the representatives must be "typical of the claims . . . of the class." To establish typicality, "a class representative must be part of the class and 'possess the same interest and suffer the same injury" as the class members." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (citation omitted). As with commonality, factual differences among class members do not defeat typicality provided there are legal questions common to all class members. *La Duke*, 762 F.2d at 1332 ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not render their claims atypical of those of the class."); *Smith v. Univ. of Wash. Law Sch.,* 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented , the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims.") (citation omitted).

The claims of the named Plaintiffs are typical of the claims of the proposed class. Each Plaintiff, just like each proposed class member, is an unrepresented child whom the Government has placed into immigration proceedings, subject to its policy and practice of forcing children to face immigration proceedings without legal representation. Moreover, Plaintiffs share a common injury with the class they seek to represent. As a result of the Government's failure to provide legal representation, they are all deprived of full and fair immigration proceedings to determine whether

---

law. *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 654 (W.D. Wash. 2011); *see also La Duke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) (holding that the constitutionality of an INS procedure "[p]lainly" created common questions of law and fact). As such, resolution on a class-wide basis also serves an important purpose behind the commonality doctrine: practical and efficient case management. *See Rodriguez*, 591 F.3d at 1122.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

they may remain in the United States.

Because the named Plaintiffs and the proposed class raise common legal claims and are united in their interest and injury, the element of typicality is met.

### 4. The Named Plaintiffs Will Adequately Protect the Interests of the Proposed Class, and Counsel Are Qualified to Litigate this Action.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Walters*, 145 F.3d at 1046 (citations omitted).

### a. *Named Plaintiffs*

The named Plaintiffs will fairly and adequately protect the interests of the proposed class because they seek relief on behalf of the class as a whole and have no interest antagonistic to other members of the class. Their mutual goal is to declare Defendants' challenged policies and practices unlawful and to obtain injunctive relief requiring legal representation for those putative class members who otherwise lack it. Thus, the interests of the class representatives are not opposed to those of the proposed class members; to the contrary, they coincide.

Moreover, in an action where minor plaintiffs are represented by next friends pursuant to Federal Rule of Civil Procedure 17, the next friends must be dedicated to the named plaintiffs' best interests, be familiar with the litigation, understand why the named plaintiffs seek relief, and be willing and able to pursue the case on behalf of the named plaintiffs. *Sam M. ex rel. Elliot v. Carcieri*, 608 F.3d 77, 92 (1st Cir. 2010). The next friends for named Plaintiffs J.E.F.M., J.F.M., D.G.F.M., F.L.B., G.D.S., M.A.M., S.R.I.C., and G.M.G.C., who sue on their behalf, have manifested their understanding that this case is a class action. Each of them is dedicated to the best

MOT. CLASS CERTIFICATION (No. _) - 19 of 25

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

interests not only of these named Plaintiffs, but also to the putative class to whom they would owe a fiduciary duty. Each of the next friends is also familiar with this litigation, understands the need for the relief sought, and is willing and able to pursue this case on behalf of these named Plaintiffs and the class they seek to represent. *See* Compl. Section IV.D.

### b. *Counsel*

The adequacy of Plaintiffs' counsel is also satisfied here. Counsel are deemed qualified when they can establish their experience in previous class actions and cases involving the same area of law. *See Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *amended on rehearing*, 763 F.2d 1098 (9th Cir. 1985); *Marcus v. Heckler*, 620 F. Supp. 1218, 1223-24 (N.D. Ill. 1985); *Adams v. Califano*, 474 F. Supp. 974, 979 (D. Md. 1979), *aff'd*, 609 F.2d 505 (4th Cir. 1979).

Plaintiffs are represented by the Northwest Immigrant Rights Project, ACLU Immigrants' Rights Project, the ACLU of Southern California, the ACLU of Washington, the American Immigration Council, Public Counsel, and the law firm K&L Gates. Counsel are able and experienced in protecting the interests of noncitizens and, among them, have considerable experience in handling complex and class action litigation, including litigation on behalf of immigrants with unique vulnerabilities. *See* Exs. N, Adams Decl.; O, Arulanantham Decl.; P, Werlin Decl.; Q, Jackson Decl. These attorneys are counsel of record in numerous cases focusing on immigration law that successfully obtained class certification and class relief, including the only prior case ever finding that a class of immigrants was entitled to legal representation. In sum, Plaintiffs' counsel will vigorously represent both the named and absent class members.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

**B.  This Action Satisfies The Requirements of Rule 23(b)(2) of The Federal Rules of Civil Procedure.**

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs also must meet one of the requirements of Rule 23(b) for a class action to be certified. Class certification under Rule 23(b)(2) "requires 'that the primary relief sought is declaratory or injunctive.'" *Rodriguez,* 591 F.3d at 1125 (citation omitted). "The rule does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Id.* This action meets the requirements of Rule 23(b)(2), namely "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Plaintiffs challenge—and seek declaratory and injunctive relief from—a systemic policy and practice that forces them to appear in immigration court and face complex adversarial proceedings without legal representation. *Id.* at 1126 (finding that class of non-citizens detained during immigration proceedings met Rule 23(b)(2) criteria because "all class members' [sic] seek the exact same relief as a matter of statutory or, in the alternative, constitutional right"); *see also Parsons v. Ryan*, _ F.3d _, 2014 WL 2523682, *21 (9th Cir. 2014) (Rule 23(b)(2) "requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole"); *Marisol A. ex.rel. Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (certifying under Rule 23(b)(2) class of children seeking declaratory and injunctive relief from systematic failures in child welfare system). Defendants' actions in forcing proposed class members to represent themselves result in a denial of due process to all proposed class members and clearly demonstrate that Defendants have acted "on grounds generally applicable to the class,

MOT. CLASS CERTIFICATION (No. _) - 21 of 25

thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Hence, the requirements of Rule 23(b)(2) are met.

## IV.     CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and enter the attached order certifying this challenge to Defendants' policy as a class action and defining the class as set forth in Section I, *supra*.

Dated this 9th day of July, 2014.

Respectfully submitted,


s/ Matt Adams
Matt Adams, WSBA No. 28287
Glenda M. Aldana Madrid, WSBA 46987
NORTHWEST IMMIGRANT
  RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)

Ahilan Arulanantham, Cal. State Bar. No. 237841 (*pro hac vice* motion pending)
ACLU IMMIGRANTS' RIGHTS PROJECT
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)

Cecillia Wang, Cal. State Bar. No. 187782 (*pro hac vice* motion pending)
Stephen Kang, Cal. State Bar No. 292280 (*pro hac vice* motion pending)
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
(415) 343-0950 (fax)

MOT. CLASS CERTIFICATION (No. _) - 22 of 25

Carmen Iguina, Cal. State Bar No. 277369 (*pro hac vice* motion pending)
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)

Kristen Jackson, Cal. State Bar. No. 226255 (*pro hac vice* motion pending)
Talia Inlender, Cal. State Bar No. 253796 (*pro hac vice* motion pending)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
(213) 385-9089 (fax)

Beth Werlin, D.C. Bar No. 1006954 (*pro hac vice* motion pending)
Melissa Crow, D.C. Bar No. 453487 (*pro hac vice* motion pending)
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
202-507-7500
202-742-5619 (fax)

Theodore Angelis, WSBA No. 30300
Todd Nunn, WSBA No. 23267
K&L GATES
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
(206) 623-7580
(206) 623-7022 (fax)

Sarah Dunne, WSBA No. 34869
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184

*Counsel for Plaintiffs-Petitioners*

MOT. CLASS CERTIFICATION (No. _) - 23 of 25

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| J.E.F.M., a minor, by and through his Next Friend, Bob Ekblad, et al., | Case No. _____ |
| Plaintiffs-Petitioners, | |
| v. | EXHIBITS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| Eric H. HOLDER, Attorney General, United States, et al., | |
| Defendants-Respondents. | |

| Exhibit | Exhibit Name | Page Number |
|---------|--------------|-------------|
| A | Notice to Appear for J.E.F.M. | 26 |
| B | Notice to Appear for J.F.M. | 29 |
| C | Notice to Appear for D.G.F.M. | 33 |
| D | Notice to Appear for F.L.B. | 37 |
| E | Detainer for G.D.S. | 40 |
| F | Notice to Appear for M.A.M. | 42 |
| G | Notice to Appear for S.R.I.C. | 45 |
| H | Notice to Appear for G.M.G.C. | 48 |

MOT. CLASS CERTIFICATION (No. _) - 24 of 25

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

I        Declaration of Kristin Macleod-Ball        51

J        Declaration of Eve Stotland        64

K        Declaration of Ana Herrera        70

L        Declaration of Daniel J. Sharp        75

M        Declaration of Mirta Laura Contreras        81

N        Declaration of Matt Adams        86

O        Declaration of Ahilan Arulanantham        90

P        Declaration of Beth Werlin        100

Q        Declaration of Kristen Jackson        104

MOT. CLASS CERTIFICATION (No. _) - 25 of 25