1   United States District Judge Thomas S. Zilly

2

3

4

5

6

7   UNITED STATES DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
8   AT SEATTLE

9

10  J.E.F.M. a minor, et al.,

11              Plaintiffs,                    No. 2:14-cv-01026

12          v.                                DEFENDANTS' MOTION TO DISMISS
                                              THE AMENDED COMPLAINT
13  ERIC HOLDER, United States Attorney
    General, et al.,                          HON. Thomas S. Zilly
14
                Defendants.                   Motion to Dismiss Noted on Motion
15                                            Calendar: October 17, 2014
16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion to Dismiss Amended Complaint                 U.S. Department of Justice, Civil Division
No. 2:14-cv-01026                                               Office of Immigration Litigation
                                                               P.O. Box 868, Ben Franklin Station, Wash., DC 20044

# INTRODUCTION

Plaintiffs seek a Court Order enjoining the removal of all noncitizen minors unless they are provided with taxpayer-funded counsel during their administrative removal proceedings.[1] Plaintiffs have styled their complaint as a class action, and have filed a motion for class certification. ECF No. 2. This Court lacks subject-matter jurisdiction to declare a Constitutional right to counsel at taxpayer expense for all noncitizen minors in administrative removal proceedings. Simply put: none of Plaintiffs' cases is ripe for adjudication; Congress clearly stated its intent to foreclose preemptive District Court adjudication of Constitutional claims arising from removal proceedings; and Defendants have not waived their sovereign immunity. But even if the Court were inclined to adjudicate this case on the merits, there is simply no statutory or Constitutional right for non-citizen minors to receive taxpayer-funded lawyers for administrative removal proceedings.

First, Plaintiffs' claims are not ripe. In every case that has ever declared or even contemplated a right to counsel in any context, the courts have only ever examined whether such a right exists *after* the conclusion of the merits proceedings of the litigants involved. Here – for the very first time in American history – Plaintiffs ask the Court to declare a Constitutional right to taxpayer-funded counsel for all non-citizen minors in administrative removal proceedings *before* these proceedings have even occurred, let alone been completed, *before* Plaintiffs have actually failed to obtain counsel, and *before* anyone knows whether any of the Plaintiffs have been adversely affected by not having counsel. Because Plaintiffs' claims are non-justiciable, they must be dismissed.

---

[1] In their complaint, Plaintiffs seek to represent a class of individuals who do not have "legal representation," citing 8 C.F.R. § 1291.1(a) for the definition of the individuals permitted to represent aliens in removal proceedings. Compl. at 23, n. 21, ECF No. 1. For simplicity in this brief, Defendants' reference to "counsel" includes all categories of individuals within Plaintiffs' definition of "legal representation."

Defendants' Motion to Dismiss Amended Complaint                    U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 1                                          Office of Immigration Litigation
                                                                  P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

Second, Plaintiffs' claims are barred in District Court by the jurisdiction channeling provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g). Plaintiffs have a perfectly adequate forum in which to raise their claims, the Ninth Circuit Court of Appeals, but the INA precludes this Court from hearing them in the first instance. If the Court were to permit Plaintiffs to circumvent these clear statutory jurisdictional mandates, there would be no limiting principle that would prevent non-citizens from filing district court challenges across the country seeking injunctive relief against any and all other perceived threats to alleged due process rights before their removal proceedings have even begun.

Third, Plaintiffs' claims are barred by the doctrine of sovereign immunity. The Administrative Procedure Act ("APA"), upon which Plaintiffs rely for their sovereign immunity waiver, does not permit a waiver of sovereign immunity in cases where a plaintiff has an alternative forum for their claims, which, in this case, is the Court of Appeals for the Ninth Circuit--if and when any of these Plaintiffs is ever ordered removed.

Finally, even if the Court is inclined to adjudicate this case on the merits, there is simply no statutory or Constitutional right for non-citizen minors to receive taxpayer-funded lawyers for administrative removal proceedings. The INA unambiguously states twice that non-citizens are not entitled to taxpayer-funded counsel. Plaintiffs' constitutional claim also fails because: these are administrative removal proceedings, Plaintiffs' physical liberty is not at issue, there are sufficient statutory procedural safeguards in place for non-citizen minors in removal proceedings, and the government has an exceptional interest in being able to adjudicate removal proceedings and remove unlawfully present non-citizen minors.

## BACKGROUND

On July 9, 2014, Plaintiffs filed a Complaint alleging that non-citizen minors placed in

Defendants' Motion to Dismiss Amended Complaint        U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 2                                Office of Immigration Litigation
                                                        P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

immigration removal proceedings are not provided with an attorney at taxpayer expense. Compl. at ¶ 1, ECF No. 1. On September 3, 2014, Plaintiffs filed an Amended Complaint, containing the same substantive allegations, but including allegations concerning sovereign immunity. Am. Compl, ECF. No. 73. Plaintiffs style their Complaint as a class action, *id*. ¶¶89-96, and allege violations of the Fifth Amendment and the INA. *Id*. ¶¶ 97-102. They seek injunctive relief, but have not sought compensatory damages. *Id*. at p. 27: "Prayer for Relief." Concurrently with the initial complaint, Plaintiffs filed a motion for class certification. ECF No. 2.

On July 31, 2014, Plaintiffs filed a motion for a preliminary injunction, requesting the Court to enjoin their immigration proceedings to "permit them as much time as needed to find legal representation," or until Defendants provide them with counsel at taxpayer expense. Pls.' Mot. Prelim. Inj. at 2, ECF No. 24. On September 3, 2014, the Court heard oral argument on the motions for class certification and for a preliminary injunction. Minute Entry, ECF No. 76. The Court has taken these motions under advisement.

## LEGAL STANDARDS

Plaintiffs bear the burden of proving the existence of the court's subject matter jurisdiction, and the Court must dismiss the case absent such a showing. *See Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir. 1996). A court may also dismiss a complaint that fails to allege a cognizable legal theory or fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

## ARGUMENT

I.     **This Court should dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs' claims are not ripe, because the INA requires Plaintiffs to raise these claims in the Court of Appeals, and because sovereign immunity bars Plaintiffs from raising these claims in District Court.**

Defendants' Motion to Dismiss Amended Complaint          U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 3                                                  Office of Immigration Litigation
                                                                            P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

**A.  This Court lacks jurisdiction to grant the relief requested in the Amended Complaint because Plaintiffs' claims are not ripe for review.**

This Court should dismiss the Amended Complaint because Plaintiffs' feared harms – i.e., that they will be unrepresented in their removal proceedings and, as a result, their removal proceedings will violate the Due Process Clause of the Fifth Amendment; and, that because they lack counsel, they will be erroneously ordered removed – *have not actually been realized* and may never occur. Accordingly, Plaintiffs' claims are not ripe for judicial review.

It is well-settled that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998). Thus, courts should not preemptively review possible administrative determinations "unless the effects of the administrative action challenged have been felt in a concrete way by the challenging parties." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993). In *Reno,* the Supreme Court held that plaintiffs' challenge to the former Immigration and Nationality Service's ("INS") practice of issuing preliminary denials of legalization applications (or "front-desking") – and thereby denying them a judicial forum to challenge the regulations administering the legalization program – was not ripe for judicial review because there was insufficient evidence that any class member's application had *actually been* "front-desked." *Id.* at 66. Consequently, the Court found the issue was non-justiciable and remanded the case for a determination of whether any class members had been impacted by the challenged practices, thereby having ripe claims. *Id.*; *see also City of Rialto v. West Coast Loading Corp.,* 581 F.3d 865, 878 (9th Cir. 2009) (holding that certain aspects of the plaintiffs' CERCLA case were "not ripe for adjudication because the feared harm has not yet been realized."); *Zabadi v. Holder*, 407 Fed. Appx. 219, 221 (9th Cir. Jan. 4, 2011) (dismissing challenge to deportation to "destination outside Kuwait" as unripe because alien presented no evidence deportation was likely or imminent and therefore "nothing demonstrate[ed] that the harm [he] seeks to avoid will ever happen, much less that it is likely to occur"); *Barapind v. Reno*, 225 F.3d 1100, 1114-15 (9th Cir. 2000) (dismissing claim that asylum applicant had right to have asylum application adjudicated before his potential extradition to a country in which his

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 4

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

life may be threatened, because his extraditability had not yet been adjudicated, rending his claims "not ripe for review").

Likewise here, Plaintiffs fear that if they do not obtain counsel, they will be denied Due Process, and they will ultimately be ordered erroneously removed. Am. Compl. ¶¶ 1-5. Yet none of the three feared harms have been realized and, in fact, they may never occur. Accordingly, Plaintiffs' claims are not ripe for adjudication. *See City of Rialto,* 581 F.3d at 878. First, Plaintiffs have not failed to get counsel yet. The three representative plaintiffs with Master Calendar hearings on September 4, 2014, for example, had their hearings continued until May 2015.[2] Unless Plaintiffs are affirmatively prevented from obtaining counsel, eight months should provide more than adequate time for one of Plaintiffs' 14 counsels of record to assist them to fill out an asylum application. ECF No. 76. And there is no allegation in the Amended Complaint that the remaining representative plaintiffs have been denied a reasonable continuance of their removal proceeding to find counsel. Second, Plaintiffs do not allege that they have yet had a hearing that has violated their due process rights. And third, Plaintiffs do not allege that they failed to obtain relief from removal during their removal proceedings. Because these feared harms have yet to be realized, they are not ripe for adjudication, and this Court should dismiss the Amended Complaint. *Reno,* 509 U.S. at 66; *City of Rialto,* 581 F.3d at 878.

Ripeness is especially important to Plaintiffs' claims, because in every case that has declared or contemplated a right to counsel in any context, the courts have only examined whether such a right exists *after* the conclusion of the merits proceedings of the litigants involved. *See Turner v. Rogers*, 131 S. Ct. 2507, 2514 (2011) (petitioner incarcerated for civil contempt *after* family court proceedings was denied due process of law in those proceedings where he was not provided with either counsel or alternative procedural safeguards during those proceedings); *accord In re Gault,* 387 U.S. 1, 4 (1967) (committed juvenile delinquent was deemed, *after his delinquency proceeding*, to be entitled to government-appointed counsel if his family could not afford counsel because his physical liberty was at risk); *Lassiter v. Dep't of Soc.*

---

[2] Named Plaintiff FLB appeared for a hearing on September 17, 2014 without counsel. At FLB's request, the IJ continued the hearing until May 20, 2015 so that he could find an attorney. The IJ provided FLP with a copy of the Free Legal Service Provider's List and all suggested FLB look for other attorneys beyond those on the list.

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 5

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

*Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 20-24 (1981) (indigent mother granted certiorari on claim that Due Process clause required that she receive counsel during her custody hearing *after* her parental rights had been terminated); *Escobar Ruiz v. I.N.S.*, 838 F.2d 1020, 1022 (9th Cir. 1988) (indigent alien filed petition for review of removal proceedings on claim he was entitled to costs of representation in immigration court and before the Board of Immigration Appeals ("BIA") *after the merits proceedings concluded*) (*abrogated by Ardestani v. I.N.S.*, 502 U.S. 129, 131 (1991) (same)); *Aguilera-Enriquez v. Immigration & Naturalization Serv.*, 516 F.2d 565, 569 (6th Cir. 1975) (alien ordered removed filed petition for review *after his merits hearing* alleging that he was denied due process because he was not provided government-appointed counsel).

In contrast to the long line of cases cited where claims were ripe for review because they were brought *after* suffering alleged constitutional injuries, Plaintiffs ask the Court to declare a constitutional right to taxpayer-funded counsel for all juvenile non-citizens in administrative removal proceedings *before* they have actually failed to obtain counsel, *before* these proceedings have even occurred, let alone been completed, and *before* anyone knows whether any Plaintiff is adversely affected. This Court should not disregard this long-settled precedent, and should instead dismiss the Amended Complaint for lack of justiciability. *See Reno,* 509 U.S. at 66; *see also City of Rialto,* 581 F.3d at 878.

### B. The Court lacks jurisdiction because 8 U.S.C. 1252(b)(9) and (g) place exclusive jurisdiction over these claims in the Court of Appeals.

#### 1. The Court of Appeals has exclusive jurisdiction to consider Plaintiffs' claim that they are entitled to taxpayer-funded counsel.

Pursuant to the REAL ID Act, "[j]udicial review of *all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought* to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order," which may occur

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 6

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

exclusively in the courts of appeals. 8 U.S.C. §§ 1252(a)(5), (b)(9) (emphasis added). 8 U.S.C. 1252(b)(9) expressly precludes district court review "by habeas corpus . . . or by any other provision of law (statutory or nonstatutory)" of an order of removal *or* "questions of law or fact" arising from any action taken or proceeding brought to remove an alien from the United States.

The Supreme Court has made clear that section 1252(b)(9) is "the unmistakable 'zipper' clause," channeling "judicial review of all" "decisions and *actions leading up to or consequent upon final orders of deportation*," including "*non-final order[s]*," into one proceeding before a court of appeals. *Reno v. Am.-Arab Anti-Discrimination Com.*, 525 U.S. 471, 483, 485 (1999) (emphasis added); *Aguilar v. U.S. ICE*, 510 F.3d 1, 9, 11 (1st Cir. 2007) ("section 1252(b)(9) is not limited to singular orders of removal," but "consolidate[s] 'all questions of law and fact' that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal of an alien," and "channels federal court jurisdiction over 'such questions[]' to the courts of appeals" following "exhaustion of administrative procedures and the consolidation of claims for judicial review."). Through the REAL ID Act, Congress amended section 1252(b)(9) to eliminate "claim-splitting -- pursuing selected arguments in the district court and leaving others for adjudication in the immigration court," which in Congress's view "heralds an obvious loss of efficiency and bifurcation of review mechanisms." *Aguilar*, 510 F.3d at 14 (claim-splitting and inefficiency "among the principal evils that Congress sought to avoid through . . . section 1252(b)(9)") (citing H.R. Rep. No. 109-72, at 174, reprinted in 2005 U.S.C.C.A.N. at 299)).

Although Plaintiffs suggest that 1252(b)(9) only applies if a final order of removal exists, that claim is belied by their reliance in their preliminary injunction papers on *Aguilar v. U.S. ICE*, 510 F.3d 1 (1st Cir. 2007), *see* ECF 66 at 6 n.7, which addressed precisely the claim at issue here, and did not find the fact that no final removal order existed determinative of section

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 7

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

1252(b)(9)'s application. 510 F.3d at 3-6, 13-14. Relying on *Aguilar*, Plaintiffs argue that "claims that cannot effectively be handled through the available administrative process are excluded from §1252(b)(9)'s purview." ECF 66 at 6 n. 7. Plaintiffs fail to point out that, in fact, *Aguilar* found the precise claims at issue here – the right to counsel in immigration proceedings – to be foreclosed, at least in district court, by 1252(b)(9). *Aguilar,* 510 F.3d at 13-14.

There, a class of plaintiffs alleged that a series of actions taken by the government before "formal removal proceedings" began were not covered by section 1252(b)(9). 510 F.3d at 10. Among other things, plaintiffs alleged that the Government's decision to detain and then transfer certain aliens to other locations, prior to the initiation of removal proceedings, "infringed their rights to counsel by barring their access to lawyers [and] interfering with preexisting attorney-client relationships." *Id*. at 13-14. As *Aguilar* held,

> "[t]he frequency with which right-to-counsel claims arise in removal proceedings refutes any notion that such claims are sufficiently separate from removal proceedings to be considered either 'independent' or 'collateral.' Challenges to removal orders premised on the government's putative violation of an alien's right to counsel are commonplace, and such claims are often featured in petitions for judicial review of removal orders. Ultimately, allowing aliens to ignore the channeling provisions of section 1252(b)(9) and bring right-to-counsel claims directly in the district court would result in precisely the type of fragmented litigation that Congress sought to forbid."[3]

*Id*. at 13-14.

---

[3] Plaintiffs suggest also that 1252(b)(9) need not be followed because their claims ought to be exempt from any exhaustion requirement. ECF 66 at 6, n.7. This claim is premised on Plaintiffs' belief that their claims cannot be effectively handled in immigration court and before the Ninth Circuit. *Id*. As noted, *Aguilar* rejects this proposition. 510 F.3d at 13-14. But more importantly, *Aguilar* also rejects Plaintiffs' exhaustion argument:

> In this instance, requiring the administrative exhaustion of such claims does not, in the Supreme Court's phrase, "foreclose all meaningful judicial review" of the claims. The petitioners unquestionably have the right, under the INA, to raise these claims before the immigration judge, before the Board of Immigration Appeals (BIA), and ultimately before the court of appeals. Thus, the petitioners . . . can receive effective relief for their alleged violations of the right to counsel simply by navigating the channels deliberately dredged by Congress.

*Id*. at 14. Plaintiffs therefore must pursue and exhaust their administrative remedies.

Defendants' Motion to Dismiss Amended Complaint                    U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 8                                                             Office of Immigration Litigation
                                                                                          P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

Critically, "section 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Id.* at 18. The INA makes quite clear that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate *court of appeals* in accordance with this section." 8 U.S.C. § 1252(a)(2)(D) (emphasis added).[4] Thus, any suggestion that Plaintiffs' claims cannot effectively be handled through the required administrative process is meritless. Plaintiffs may raise their claims before an immigration judge ("IJ"), and again to the BIA, and ultimately. If they ever actually suffer cognizable harm because of a lack or representation or ineffective assistance of counsel, they may seek review of all constitutional and statutory claims – the very basis of their Complaint – in the Ninth Circuit. Accordingly, section 1252(b)(9) forecloses district court jurisdiction over these claims.[5]

> **2. This Court lacks subject matter jurisdiction to enter an injunction which would prevent the government from adjudicating removal proceedings involving minors who do not have counsel.**

This action seeks to enjoin the government from adjudicating the removal cases of unrepresented non-citizen juveniles. *See, e.g.,* Am. Compl. ¶ 1. Although the INA bars this Court from hearing claims arising from "decision or action by the Attorney General to commence

---

[4] If this Court were to permit Plaintiffs to circumvent these clear statutory mandates, there would be no limiting principle that would prevent non-citizens from filing district court challenges across the country seeking injunctive relief against any and all other perceived threats to alleged due process rights *before* their removal proceedings have even begun. Congress designed the INA judicial review provisions to prevent the fragmentation of removal proceedings that would result from such challenges in District Court, but ultimately allows plaintiffs to raise such challenges in the Court of Appeals on a petition for review.

[5] To the extent Plaintiffs suggest that *Singh v. Gonazales*, 499 F.3d 969 (9th Cir. 2007) requires the existence of a final order of removal before section 1252(b)(9) is applicable, that suggestion is incorrect, and misunderstands the thrust of *Singh*'s holding. *Singh* is inapposite for several reasons, most importantly that – unlike Plaintiffs here – *Singh*'s ineffective assistance of counsel claim could not be raised on a petition for review because his lawyer was late in filing the petition itself. 499 F.3d at 979.

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 9

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

proceedings, adjudicate cases, or execute removal orders against *any* alien," 8 U.S.C. § 1252(g) (emphasis added), Plaintiffs would have the Court do just that.

Plaintiffs ask for a declaration that the government's decision to commence removal proceedings and to adjudicate the removal cases of unrepresented minors "violates constitutional and statutory law." Am. Compl. at 27. Plaintiffs also request an injunction that would "ensure that Plaintiffs and other members of the Plaintiff Class receive legal representation in their immigration proceedings." *Id.* Taken at face value, Plaintiffs are essentially asking this Court to enjoin the removal proceedings of Plaintiffs and all noncitizen minors in the United States. Section 1252(g) precludes this Court from doing so[6]. *See Reno,* 525 U.S. at 472-76, 487 (holding that Section 1252(g) acts as a jurisdictional bar to a suit seeking to enjoin removal proceedings because of selective prosecution); *see also Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (holding that § 1252(g) applied to a claim that DHS had improperly exercised its discretion in bringing removal proceedings against various aliens); *Tobar-Barrera v. Napolitano*, Civil Nos. RDB 09-3064, RDB 10-0176, 2010 WL 972557 *2 (D. Md. March 12, 2010) (holding that under § 1252(g) the court lacks subject matter jurisdiction to enjoin removal proceedings); *Moore v. Mukasey*, No. H-08-1923, 2008 WL 4560619 *2 (S.D. Tex. October 9, 2008) (holding that under § 1252(g) the court lacks subject matter jurisdiction to enjoin removal proceedings because of selective prosecution). Because Plaintiffs seek the exact relief § 1252(g) explicitly prohibits this Court from granting, the Court should dismiss this action for lack of subject matter jurisdiction.

This case is distinguishable from Ninth Circuit cases limiting § 1252(g)'s reach because, in this case, Plaintiffs' claims are not actually barred by § 1252(g), but are simply channeled to

---

[6] The administration has asked for additional funding for counsel for minors and, so far, Congress has not provided this funding. *See, e.g.,* Caitlin Dickson, *The Border Kid Crisis Hits the Courts*, U.S. NEWS, *available at* http://www.thedailybeast.com/articles/2014/09/19/the-border-kid-crisis-hits-the-courts.html   If Congress were to continue to oppose additional funding, and Plaintiffs' requested relief is granted, this relief could have the effect of substantially limiting the federal government's ability to conduct removal proceedings involving noncitizen minors.

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 10

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

the Court of Appeals by operation of § 1252(b)(9). For example, in *Barahona-Gomez v. Reno.* 236 F.3d 1115 (9th Cir. 2001), plaintiffs challenged directives from the Chairman of the BIA and the Chief IJ to prevent the granting of suspension of deportation to individuals in removal proceedings. Plaintiffs sought to enjoin the BIA and immigration courts from following these directives, and at least one plaintiff was able to show that he would have been granted suspension of deportation at his removal proceedings but-for the directives. Because there was no final agency action to challenge on a petition for review, the district court was the only venue for in which the challenge could be made. Likewise, in *Walters v. Reno,* 145 F.3d 1032 (9th Cir. 1998), plaintiffs alleged that certain INS notices were constitutionally deficient because they did not adequately advise them of their rights. 145 F.3d at 1036. If the recipients of these notices did not adequately respond within 60 days, they were subjected to unappealable final orders, and permanently excludable from the United States. *Id.* Thus, if plaintiffs had been unable to raise their claims in district court, they would be precluded from raising them anywhere, because the final orders were not appealable. In contrast, and as discussed above, Plaintiffs in this case can raise their statutory and due process challenges in a petition for review. Accordingly, the concerns raised in *Barahona-Gomez* and *Walters* are absent here.

Similarly, *Franco-Gonzales v. Holder,* 767 F. Supp. 2d 1034 (C.D. Cal 2010), which Plaintiffs cited in support their motion for a preliminary injunction, is distinguishable from this case on several grounds. First, unlike the Plaintiffs here, plaintiffs in *Franco* asserted prolonged detention claims that required more immediate relief from the court and were less amenable to waiting for a petition for a review. Second, in *Franco,* the Court noted that "Plaintiffs merely seek to continue their cases for a matter of several weeks until such time as they have secured qualified representation." *Id.* at 1049. However, as noted, should Congress continue to decline

Executive requests for more funding for the immigration courts, the relief that Plaintiffs request here could permanently enjoin Defendants from removing minors from the United States. Thus, this cases is unlike *Franco* where the injunction purportedly would only continue plaintiffs' cases for a matter of weeks.[7] Finally, the plaintiff class in *Franco*, which is limited to mentally incompetent aliens, is miniscule in relation to the putative class in this case, which if certified would include, "[a]ll individuals under the age of eighteen (18) who are or will be in immigration proceedings on or after July 9, 2014, without legal representation in their immigration proceedings."[8] Am. Compl. ¶ 90. Thus, were the Court to grant relief to the Plaintiffs who filed this motion, and later extend it to a class, it would prevent Defendants from "commencing actions" and "adjudicating cases" against most – if not all – of the putative class. It is this type of interference with the adjudication of removal proceedings that § 1252(g) bars.

### 3. This Court lacks subject matter jurisdiction to grant the relief requested in the Amended Complaint because the doctrine of sovereign immunity prevents Plaintiffs from bringing this action in District Court.

As sovereign, the United States is immune from suit, unless it waives this immunity and consents to suit. *United States v. Dalm*, 494 U.S. 596, 608 (1990); *see Butz v. Economou*, 438 U.S. 478, 504 (1978) ("barrier of sovereign immunity is frequently impenetrable"). The Supreme Court has consistently stated that "a waiver of sovereign immunity must be 'unequivocally expressed' in a statutory text." *Fed. Aviation Admin. v. Cooper*, 132 S.Ct. 1441, 1448 (2012)

---

[7] Moreover, the *Franco* class's size pales in comparison to the putative class at issue here, such that EOIR did not need funding from Congress to comply with the court's directive under the Rehabilitation Act—not the INA or the constitution--concerning continuances. Here, by contrast, the potential funding needed would be far greater.

[8] To the extent that the government opts to adjudicate the removal cases of minors without counsel – which could include, *inter alia*, minors in proceedings with their parents, wealthy minors (or minors with wealthy parents), 17-year-old foreign exchange students convicted of drug offenses, minors whose parents are foreign diplomats, and minors who have made no effort to obtain pro bono counsel – Plaintiffs' claim in this action arises directly from the government's decision.

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 12

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

(citations omitted). In the absence of an applicable waiver, courts lack jurisdiction to entertain claims against the United States. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Plaintiffs, relying on *Larson v. Domestic & Foreign Commerce Cop.*, 337 U.S. 682 (1949), broadly contend sovereign immunity does not prevent this Court from exercising jurisdiction over their claims because they seek to prevent future constitutional violations and not monetary relief. Am. Compl. ¶ 10. In *Larson,* the Supreme Court held that sovereign immunity does not bar suit for specific relief against a government official's *ultra vires* or unconstitutional acts where the "statute or order conferring power upon the officer to take action . . . is claimed to be unconstitutional." 337 U.S. at 689-90. Because courts have consistently held that the Due Process clause does not require taxpayer-funded counsel in immigration proceedings, *see, e.g., Martin-Mendoza v. INS*, 499 F.2d 918, 922 (9th Cir. 1974), Plaintiffs cannot plausibly allege that Defendants' actions, or the INA provisions at issue here, are unconstitutional.

Plaintiffs also assert the United States has broadly "waived all immunity from suit in any action requesting non-monetary relief" under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. Am. Compl. ¶ 11. The APA does not apply, however, where "statues preclude judicial review." 5 U.S.C. § 701(a)(1). As discussed in Sections I.B. and I.C. above, the INA specifically precludes judicial review of Plaintiffs' claims in the District Court. Accordingly, the APA does not waive sovereign immunity for Plaintiffs' claims.

In *Veterans for Common Sense v. Shinseki*, the Ninth Circuit considered a similar statutory jurisdictional bar concerning veterans' claims. 678 F.3d 1013 (9th Cir. 2012). Citing *Beamon v. Brown*, 125 F.3d 965 (6th Cir. 1997), the Ninth Circuit articulated that where, as here, plaintiffs challenge the "legality and constitutionality of procedures" of an administrative body, a determination of "the proper procedures for claim adjudication is a necessary precursor to

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 13

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

deciding [individual] claims" and therefore jurisdiction was precluded by statute. *Id.* at 1025-26, 1029, n.20 (quoting *Beamon,* 125 F.3d at 970). Likewise here, pursuant to the judicial review channeling provisions at 8 U.S.C. § 1252, the district court may not consider Plaintiffs' legal or constitutional claims because a determination of the proper procedures for minor aliens in removal proceedings is a necessary precursor to adjudication of their individual claims. *Id.* Accordingly, because Congress explicitly channeled claims arising from removal proceedings out of the District Courts and into the Courts of Appeals, the APA – and its corresponding waiver of sovereign immunity – does not apply to Plaintiffs' claims. *See* 5 U.S.C. § 701(a)(1).[9]

## II.   This Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a cognizable claim for relief under either the INA or the Constitution.

### A.   The INA does not require that counsel be provided for aliens in administrative immigration proceedings at taxpayer expense.

Since 1952, the INA, through 8 U.S.C. § 1362, has guaranteed aliens in immigration proceedings the "privilege" of representation by counsel. However, by including the language "at no expense to the Government," Congress was clear that the statute does not require provision of counsel at taxpayer expense. *See also* 8 U.S.C. § 1229a(b)(4)(A). Although Congress amended the INA to address removal proceedings, as opposed to deportation and exclusion proceedings, it retained the express limitation "at no expense to the Government," indicating once again that the INA does not require provision of counsel at taxpayer expense. *See* 8 U.S.C. § 1362. This limitation reflects the fact that removal proceedings are relatively informal, streamlined administrative proceedings, where the Federal Rules of Evidence do not apply. *Chung Lim You v. Mukasey*, No. 06-74741, 2007 U.S. App. LEXIS 29127, *5 (9th Cir. Dec. 13, 2007).

Instead of creating a right to appointed counsel, the INA expressly provides a limited "privilege of being represented, at no expense to the Government, by counsel of the alien's

---

[9] Further, Plaintiffs' assertion of jurisdiction under the general federal question statute and All Writs Act do not assist them in avoiding sovereign immunity, because neither statute operates as a waiver of sovereign immunity. *See Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) (general federal question statute does not waive sovereign immunity); *Stimac v. Haag*, C10-02216, 2010 WL 3835719 (N.D. Cal. Sept. 29, 2010) (same as to All Writs Act).

Defendants' Motion to Dismiss Amended Complaint          U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 14                                      Office of Immigration Litigation
                                                    P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

choosing." 8 U.S.C. § 1362; *see* 8 U.S.C. § 1229a(b)(4)(A). Plaintiffs' claim that the INA requires appointed counsel is belied by Congress' expressed intent that the government is not required to pay for counsel in removal proceedings. *See, e.g., El Rescate Legal Services, Inc. v. EOIR,* 959 F.2d 742, 750 (9th Cir. 1992) (discussing congressional intent that the government not be required to pay for appointed counsel in immigration court proceedings); *Escobar Ruiz v. INS*, 838 F.2d 1020, 1028 (9th Cir. 1988) (stating that 8 U.S.C. § 1362 "expresses Congress' intent to grant aliens the right to be represented by counsel in such proceedings, but not to grant indigent aliens the right to have counsel appointed at government expense").

"[U]nder accepted canons of statutory interpretation, statutes are to be interpreted as a whole," meaning that "[o]ne provision of a statute should not be interpreted in a manner that renders other sections of the same statute inconsistent, meaningless or superfluous." *United States v. Fiorillo,* 186 F.3d 1136, 1153 (9th Cir. 1999). If this Court were to read a right to appointed counsel for juvenile aliens into 8 U.S.C. § 1229a(b)(4)(B) and other parts of the INA that safeguard aliens' procedural rights, it would render meaningless the express language of 8 U.S.C. § 1229a(b)(4)(A) and 8 U.S.C. § 1362, which make clear that the government is not required to pay for counsel in removal proceedings. Thus, this Court cannot read into the statute a requirement for the Government to provide appointed counsel without frustrating Congress' clear intent. Accordingly, this Court should dismiss Plaintiffs' First Claim for Relief, because Plaintiffs have failed a state a cognizable legal claim.

**B.   The Constitution does not require Defendants to provide minors with taxpayer funded counsel in administrative immigration proceedings.**

**1.   Assuming Plaintiffs' claims are ripe for review, the Court should construe the Complaint as alleging a facial constitutional challenge, such that Plaintiffs must demonstrate that the failure to provide juvenile aliens representation violates the Constitution as to all possible juvenile aliens.**

Assuming, *arguendo*, that this Court has subject matter jurisdiction, and notwithstanding the non-justiciability of Plaintiffs' claims, Plaintiffs fail to plead a plausible claim for relief under the Fifth Amendment. Plaintiffs allege that the Due Process Clause requires that *all*

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 15

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

noncitizen minors appearing in immigration proceedings, regardless of their age or individual

circumstances, "must be provided legal representation," and seek a declaration and injunctive

relief to that effect.[10] Complaint, ¶ 97; Prayer for Relief, b.  If Plaintiffs are truly seeking a Court

order declaring it unconstitutional to remove a noncitizen minor without providing the minor

with taxpayer-funded counsel, they are asserting a facial challenge to the law. *See, e.g.*, *El

Rescate*, 959 F.2d at 751. Such a challenge to law cannot stand when the current law "can be

construed in such a manner that [it] can be applied to a set of individuals without infringing upon

constitutionally protected rights." *Id*. (quoting *Rust v. Sullivan*, 500 U.S. 173, 183 (1991)).

Plaintiffs "face a heavy burden in seeking to have the [representation policy] invalidated as

facially unconstitutional since the challenger must establish that no set of circumstances exists

under which the [policy] would be valid." *Id*.; *accord United States v. Salerno*, 481 U.S. 739,

745 (1987) (describing Plaintiffs' burden in a facial challenge).

Indeed, the Ninth Circuit has applied this doctrine in a similar case. In *El Rescate*, a class

of aliens alleged that EOIR's practice at the time of not translating all immigration proceedings

in full violated the Fifth Amendment. 959 F.2d at 745. The Ninth Circuit rejected this claim,

concluding the practice was facially constitutional. In particular, the Court noted that it was

appropriate for EOIR to rely on an IJ's discretion to determine whether all of the proceedings, or

only those portions required by statute, had to be translated. *Id.* at 752. This followed from the

more general fact that where an alien was unrepresented, the regulations required IJs to "afford

aliens a reasonable opportunity to show why they should not be deported"[11] and "[t]he mere fact

---

[10] Plaintiffs allege a right to counsel under the Fifth Amendment and not the Sixth Amendment. Am. Compl. ¶¶ 100-102.

[11] The Court noted several such opportunities, including: (1) "making [the alien] aware of the facts the Government will seek to prove and the significance of those facts if proved"; (2) "afford[ing] the alien a reasonable opportunity to examine the evidence against him" and "to put on his own evidence"; and (3) "cross-examine witnesses," even if it is without "appointed counsel." *Rescate*, 959 F.3d at 752.

Defendants' Motion to Dismiss Amended Complaint            U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 16                                                Office of Immigration Litigation
                                                                         P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

that part of the [] regulatory scheme for protecting aliens' constitutional interests relies on IJs to properly exercise their discretion does not render the scheme unconstitutional." *Id.* at 751. Accordingly, the Court reasoned that "[i]f the IJ properly exercises his discretion to afford the alien his reasonable opportunities, the alien receives a full and fair hearing, and all the process he is due." *Id.* at 752. Because relying on IJs to exercise such discretion when an alien lacked counsel was constitutionally permissible, the Court concluded that Plaintiffs could not "show 'that no set of circumstances exists under which the Act would be valid. The fact that the regulations might operate unconstitutionally under some conceivable set of circumstances is insufficient to render them wholly invalid.'" *Id.* (citing *Rust*, 111 S. Ct. at 1767).[12]

This case is no different. As the Ninth Circuit has noted if an alien is unrepresented, "the IJ has an affirmative duty to ensure that the record is fully developed for the benefit of the applicant," *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013), and "[e]xplaining the factual allegations and the charges" against the alien "in nontechnical language, constitutes a reasonable approach to affording the alien his reasonable opportunities" to meaningfully participate in his proceedings should he lack an attorney. *El Rescate*, 959 F.2d at 749. And as discussed below, minors, particularly unaccompanied minors, receive special protections and procedures throughout the immigration process designed to ensure a full and fair opportunity to exercise their rights. Thus, Plaintiffs cannot "establish that no set of circumstances exists under which"

---

[12] Indeed, Plaintiffs' own complaint cites a study which purportedly finds that 13 percent of unrepresented, non-detained noncitizens receive favorable outcomes in their immigration proceedings.  Although Defendants do not concede the accuracy or accept Plaintiffs' interpretation of these reports, the Court must accept them as true for the purposes of this motion to dismiss -- and accepting them as such  fatally nullifies their facial challenge in this case. Am. Compl. at 13, n.14.

Defendants' Motion to Dismiss Amended Complaint                    U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 17                                                    Office of Immigration Litigation
                                                              P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

the statutes and regulations governing the provision of counsel to aliens in proceedings "would be valid," *El Rescate*, 959 F.2d at 751, and their Complaint must be dismissed.[13]

### 2. Plaintiffs do not have a right to taxpayer funded counsel in their administrative immigration proceedings under the Fifth Amendment.

Plaintiffs assert that their Fifth Amendment due process right to a full and fair removal hearing encompasses a right to taxpayer-funded counsel. Am. Compl. ¶¶ 100-102. Although an alien in removal proceedings is entitled to due process in the form of a "full and fair" hearing, *see, e.g.*, *Burgos-Abril v. INS*, 58 F.3d 475, 476 (9th Cir. 1995), the guarantee does not mandate the appointment of taxpayer funded counsel for noncitizen minors.[14] Nothing in the Constitution requires the taxpayers to provide counsel to minors in immigration court. In fact, the Eastern District of Washington has already rejected this claim. *See Gonzalez-Machado v. Ashcroft*, No. 02-0066 (E.D. Wash.), Order Granting Defendants' Motion to Dismiss (June 18, 2002). Plaintiff in that case made the exact same argument that Plaintiffs assert here. *See Gonzalez-Machado*, ECF No. 69 at 18-22; ECF No. 73. The court readily disposed of the contention. The court emphasized that both the Supreme Court and the Ninth Circuit rely on the civil/criminal distinction in the immigration context to limit the process due in removal proceedings. *See* ECF 51-1 at 19, 21. Further, Ninth Circuit precedent rejecting a due process right to appointed counsel in removal proceedings is not based on the concept that adult aliens can effectively participate in removal proceedings without the assistance of counsel, but on the civil nature of the removal proceedings themselves. *Id*. at 19. The court therefore found that the question was not whether the needs of juvenile aliens were different than those of adults, but whether the interests of

---

[13] The foregoing also demonstrates further why this action is inappropriate for class certification. Because Plaintiffs cannot allege a facial challenge, they must allege an as applied challenge as to each of the putative class members. But each of these individuals will present vastly different facts and circumstances, such that Plaintiffs will not be able to demonstrate commonality, among other things. This, combined with the difficulties in alleging injury based on contingent, future events, demonstrates why it is more appropriate for each juvenile alien in this case to raise their claims, should they ripen, through the administrative and judicial process provided by 8 U.S.C. §§ 1252(a), (b), and (d), where they may raise their individual claims -- including any constitutional claim – before an IJ, the BIA, and the Ninth Circuit. *See infra*.

[14] In order to show that his right to a full and fair hearing was violated, "the alien must demonstrate that the challenged proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). Should he make this showing, he also must establish prejudice, i.e., "that the outcome of the proceeding may have been affected by the alleged violation." *Id*.

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 18

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

juvenile aliens in removal proceedings were different from those of adults. *Id*. at 20. The court concluded that because the interests of juveniles generally could not be distinguished from those of adults, plaintiff had "not demonstrated that the fundamental civil/criminal dichotomy that forms the basis for Ninth Circuit case law on this issue is no longer a valid analytical model or that the interests of juvenile aliens undermines the reasoning of those prior opinions when applied to children." *Id*. at 21-22. Accordingly, the court dismissed the complaint. *Id.* at 22.

Plaintiffs rely on the Supreme Court's right-to-counsel jurisprudence in civil cases to assert a taxpayer funded right to counsel for foreign juveniles in administrative removal proceedings. *See* Pls.' Mot. Prelim. Inj., ECF No. 51, at 8-9. This line of cases recognizes only that procedural due process may require the appointment of counsel for some indigent individuals where actual imprisonment may result. Additionally, this line of case recognizes, based on the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), that specific safeguards may be needed to render a civil proceeding fundamentally fair. 424 U.S. at 335. The *Mathews* factors that courts must consider in making this determination are: "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirement[s]." *Turner v. Rodgers*, 131 S. Ct. 2507, 2510 (2011) (citing *Mathews*, 424 U.S. at 335); *see also Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981). None of these cases permits the conclusion that there is a constitutional right to taxpayer funded counsel for non-citizens in administrative removal proceedings.

To begin with, *Lassiter v. Dept. of Soc. Services* establishes, that in civil cases there is a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured." 452 U.S. at 26-27. In *Lassiter*, a mother sought the appointment of an attorney to represent her in her parental termination hearings on the basis that she was indigent and unable to afford counsel specifically for this purpose. Lassiter rooted her claim to appointed counsel in the Due Process Clause of the Fourteenth Amendment. In

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 19

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

examining the issue, the Court found that "[t]he pre-eminent generalization that emerges from [the] Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." *Id*. at 24. The *Lassiter* Court based this holding on *Argersinger v. Hamlin*, 407 U.S. 25 (1972), in which it had recognized that "counsel must be provided before any indigent may be sentenced to prison, even where the crime is petty and the prison term brief." *Lassiter*, 452 U.S. at 25. *Argersinger* arose from the criminal context, where the Sixth Amendment and *Gideon v. Wainwright*, 372 U.S. 335 (1963), make clear that appointed counsel is necessary for indigent defendants. The Court also relied on *In re Gault*, 387 U.S. 1 (1967), a civil case in which the Court held that the Due Process Clause requires appointed counsel if the civil proceedings result in an involuntary commitment to an institution in which a juvenile's physical liberty would be curtailed. *Lassiter*, 452 U.S. at 25. Additionally, the *Lassiter* Court found support in *Vitek v. Jones*, 445 U.S. 480 (1980), a case in which four of the five justices who formed the opinion of the Court required appointment of counsel for an indigent prisoner who faced possible transfer to a state mental institution. Thus, the Court recognized the possibility that, under the Due Process Clause, civil cases involving the deprivation of physical liberty may require appointing counsel for indigent individuals. However, the Court also pointed out that "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." 452 U.S. at 26. In cases not involving an outcome of incarceration, the Court explained, a *per se* rule requiring appointment of counsel was not appropriate. Rather, trial courts should weigh the *Mathews* factors on a case-by-basis against the presumption that appointed counsel is only necessary "when, if [the plaintiff] loses, he may be deprived of his physical liberty." *Id*. at 27. In *Lassiter*, the Court conducted such a weighing using the particular facts of Lassiter's case – importantly, *after his merits proceedings had concluded*--and concluded that the petitioner was not entitled to counsel to represent her in her parental termination proceedings. *Id*. at 32-33. Here too, the *Mathews* balancing test does not overcome the presumption against the right to appointed counsel.

First, although Plaintiffs may allege that potential removal amounts to a drastic loss of

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 20

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

liberty, this argument overlooks two critical facts. As an initial matter, deportation is not punishment, it is an administrative act that does not threaten a non-citizen's physical liberty. Secondly, Plaintiffs erroneously allege that the liberty interest at stake is the same for all Plaintiffs. However, some Plaintiffs may have asylum claims, and some may have ties to the United States, while others have neither. In fact, not all of the Plaintiffs have asylum claims and it appears few of them have even been here long enough to have the requisite ties to qualify for relief under the administration's deferred action for childhood arrivals guidance. Thus, unlike incarceration, or the termination of parental rights, the interests at stake here are not the same for all Plaintiffs and the putative class. Nonetheless, Plaintiffs seek a rigid rule requiring appointed counsel for all children in removal proceedings. However, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001); *see Mathews*, 424 U.S. at 334 ("due process is flexible and calls for such procedural protections as the particular situation demands").

Second, the risk of erroneous deprivation of due process is the same for a juvenile alien as for an adult alien, and courts have held that indigent adult aliens in removal proceedings lack any constitutional right to appointed counsel. *See, e.g., Mohammed v. Gonzales*, 400 F.3d 785, 794 (9th Cir. 2005); *United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir. 1975); *Murgia-Melendrez v. INS*, 407 F.2d 207 (9th Cir. 1969). In any event, due process is satisfied by the procedural safeguards already in place to ensure fundamental fairness for juvenile aliens whether they appear with or without counsel.

For example, unaccompanied alien children are provided special protections in the way they are screened at ports of entry into the United States, in applying for asylum, and in their care and custody with the Office of Refugee Resettlement ("ORR"), a component of the Department of Health and Human Services. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), § 235, Pub. L. 110-457, 122 Stat. 5044 (2008); 6 U.S.C. § 279; 8 U.S.C. § 1232(b)(1). Unaccompanied alien children also receive enhanced procedural protections and modifications in immigration court, including a prohibition against

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 21

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

accepting admissions of removability from an unrepresented respondent who is under eighteen and not accompanied by "an attorney or legal representative, a near relative, legal guardian, or friend." 8 C.F.R. § 1240.10(c); *see also* 8 C.F.R. § 1240.48(b) (prohibiting an IJ from "accept[ing] an admission of deportability from an unrepresented respondent who is . . . under the age of 16 and is not accompanied by a guardian, relative, or friend"). And as a general matter, "where an applicant is not represented, the IJ has an affirmative duty to ensure that the record is fully developed for the benefit of the applicant." *Oshodi*, 729 F.3d at 889.

Moreover, Immigration Courts utilize juvenile dockets or separate scheduling of cases involving unaccompanied alien children, where the IJs employ child-sensitive modifications to assist the children in appearing before the court. Specifically, the Office of the Chief IJ for EOIR, a component of the Department of Justice, has issued (OPPM) 07-01, Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children, which mandates use of child-sensitive procedures and modifications in immigration court, tailored to the age and maturity of the juvenile respondent, and encourages establishment of separate juvenile dockets. *See* Operating Policy and Procedure Memorandum (OPPM) 07-01, Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children, *Executive Office for Immigration Review* ("EOIR"), available at http://www.justice.gov/eoir/efoia/ocij/oppm07/07-01.pdf. It allows other modifications from the standards found in other cases, such as allowing IJs to accept unopposed motions for changes of venue without the inclusion of applications for relief or pleadings to the charges of removability, as is required of most adult respondents, and exempts juvenile cases from administrative case completion goals and aged case completion deadlines, allowing judges to grant continuances without undue concern for administrative deadlines.

Further, care and custody of unaccompanied alien children is given to ORR. 6 U.S.C. § 279; 8 U.S.C. § 1232(b)(1). ORR is authorized by the TVPRA to appoint child advocates for children who are victims of trafficking and other vulnerable, unaccompanied alien children, and to ensure access to counsel for unaccompanied alien children to the greatest extent practicable, consistent with the provision that such counsel be at no expense to the Government. 8 U.S.C. § 1232(b)(5)-(6). Unaccompanied alien children also receive additional protections in the asylum

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 22

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

context. The TVPRA gives initial jurisdiction over asylum applications to the United States

Citizenship and Immigration Service ("USCIS"), a component of the Department of Homeland

Security, for all unaccompanied alien children. 8 U.S.C. § 1158(b)(3)(C). This enables

unaccompanied alien children to have their asylum applications adjudicated in the first instance

by an asylum officer, rather than an IJ, in a non-adversarial environment. If the unaccompanied

alien child is unsuccessful before USCIS, he may generally renew that claim a second time

before an IJ. The TVPRA also excludes unaccompanied alien children from the deadline to file

for asylum within one year of their arrival in the United States absent extraordinary

circumstances. 8 U.S.C. § 1158(a)(2)(E)). Similarly, unaccompanied alien children are exempt

from the safe third country provisions. *Id.* (stating alien is ineligible for asylum if he "may be

removed . . . to a country . . . in which the alien's life or freedom would not be threatened . . . .").

In addition to these special procedures, Plaintiffs may appeal, as of right, the IJ's denial

of any right or relief to the BIA, and from there, to the Court of Appeals. *See* 8 U.S.C. § 1252.

Thus, Congress, by enacting 8 U.S.C. § 1252, ensured judicial review of all constitutional

violations these Plaintiffs may allege, including right to counsel. *See Comm. of Cent. Am.*

*Refugees v. I.N.S.*, 682 F. Supp. 1055, 1063 (N.D. Cal. 1988) (holding that if the alien's asylum

application is denied, "he may challenge the validity of his deportation order to the BIA and the

Ninth Circuit [] on the basis of an alleged denial of the right to counsel"). The Courts of Appeals

are more than equipped to protect the interest of all persons, including minors, who claim to have

been denied a right during removal proceedings. *See, e.g.*, *Biwot v. Gonzales*, 403 F.3d 1094,

1097-1100 (9th Cir. 2005), (petitioner alleged that he was denied the right to counsel when the IJ

had only given him five days to get representation, but ultimately prevailed on his claim in the

Court of Appeals after obtaining counsel for his petition for review). Because of these additional

procedural safeguards for minors, Plaintiffs cannot demonstrate that their removal proceedings

are fundamentally unfair without taxpayer funded counsel.

Third, the government's interests in enforcing its immigration laws and avoiding the

unnecessary expenditure of scarce administrative resources are significant. *See Matthews,* 424

U.S. at 347-48 (holding that "the Government's interest . . . in conserving scarce fiscal and

Defendants' Motion to Dismiss Amended Complaint
No. 2:14-cv-01026, Page 23

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

administrative resources is a factor that must be weighed" in "striking the appropriate due process balance"). Given the potentially enormous taxpayer expense that would be required to provide counsel to every minor in removal proceedings – and the fact that Congress has recently indicated that it will not appropriate funds to provide counsel – the net effect of requiring government-appointed counsel could preclude the government from adjudicating any cases involving unrepresented minors. Moreover, if a minor is not placed into removal proceedings because there is no money to provide the minor with counsel, that minor might not learn from the IJ—who has a duty to develop the record in a *pro se* case—that the minor has claims for relief that must be adjudicated quickly in order for the minor to remain in the country. Such a minor might age out of special immigrant juvenile status or find that their asylum case has become stale because the conditions in their country have improved.

Finally, in addition to halting the proceedings of tens of thousands of individuals already in the United States unlawfully, such delay, coupled with the possibility that Congress will continue to decline Executive requests for more funding, may encourage more minors to make the dangerous and unlawful journey to the United States.

Because courts have generally not extended the right to government-appointed counsel to civil cases where the defendant does not potentially face physical detention, and because the *Mathews* factors nevertheless weigh against a finding that a fair hearing requires the government to appoint counsel to minors in removal proceedings, Plaintiffs do not state a cognizable legal claim, and their Amended Complaint must be dismissed.

## CONCLUSION

This Court lacks subject matter jurisdiction to consider the merits of Plaintiffs' Amended Complaint. Additionally, Plaintiffs failed to state a cognizable claim for relief because neither the United States Constitution nor the INA requires the federal government to provide counsel at taxpayer expense to noncitizen minors in immigration proceedings. Accordingly, this Court should grant the Defendants' motion and dismiss the Amended Complaint.

Defendants' Motion to Dismiss Amended Complaint                    U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 24                                                              Office of Immigration Litigation
                                                                                                    P.O. Box 868. Ben Franklin Station. Wash.. DC 20044

DATED: September 19, 2014                    Respectfully Submitted,

                                             JOYCE R. BRANDA
                                             Acting Assistant Attorney General

                                             LEON FRESCO
                                             Deputy Assistant Attorney General

                                             WILLIAM C. PEACHEY
                                             Director
                                             Office of Immigration Litigation
                                             District Court Section

                                             COLIN A. KISOR
                                             Deputy Director

                                             WILLIAM C. SILVIS
                                             Assistant Director

                                             ELIANIS PEREZ
                                             Senior Litigation Counsel

                                             MARGARET KUEHNE TAYLOR
                                             Senior Litigation Counsel

                                             YAMILETH G. DAVILA
                                             Senior Litigation Counsel

                                             SARAH MALONEY
                                             Trial Attorney

                                              s/ Erez Reuveni
                                             EREZ REUVENI
                                             Trial Attorney
                                             Office of Immigration Litigation
                                             District Court Section
                                             Civil Division, U.S. Department of Justice
                                             P.O. Box 878, Ben Franklin Station
                                             Washington, D.C. 20044
                                             Tel.: (202) 307-4293
                                             Fax: (202) 305-7000
                                             E-mail: erez.r.reuveni@usdoj.gov

Defendants' Motion to Dismiss Amended Complaint                    U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 25                                              Office of Immigration Litigation
                                                        P.O. Box 868, Ben Franklin Station, Wash., DC 20044

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this September 19, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

s/ Erez Reuveni
EREZ REUVENI
Trial Attorney

Defendants' Motion to Dismiss Amended Complaint                U.S. Department of Justice, Civil Division
No. 2:14-cv-01026, Page 26                                           Office of Immigration Litigation
                                                       P.O. Box 868, Ben Franklin Station, Wash., DC 20044