1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6    J.E.F.M., et al.,

7                    Plaintiffs,

8          v.                                    C14-1026 TSZ

9    ERIC H. HOLDER, et al. ,                    ORDER

10                   Defendants.

11        This case poses an important constitutional question of whether juveniles subject

12   to exclusion or deportation are entitled to have attorneys appointed to represent them at

13   government expense in connection with their removal proceedings.  Plaintiffs

14   acknowledge that the Sixth Amendment of the Constitution does not guarantee a right to

15   appointed counsel in removal proceedings.  *United States v. Gasca-Kraft*, 522 F.2d 149,

16   152 (9th Cir. 1975); *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042, 1045 (9th Cir.

17   2000); *Michelson v. INS*, 897 F.2d 465, 467 (10th Cir. 1990); *United States v. Saucedo-*

18   *Velasquez*, 843 F.2d 832, 834 n.2 (5th Cir. 1988).  Instead, plaintiffs contend that such

19   right may be inferred from the Due Process Clause of the Fifth Amendment.  In their

20   pending motion for a preliminary injunction, however, plaintiffs do not ask the Court to

21   compel defendants to provide them attorneys at government expense, but rather seek only

22   an order enjoining defendants from "denying continuances" of the removal proceedings

23

ORDER - 1

instituted against six of the eight named plaintiffs, none of whom had previously requested such relief from an immigration judge.  For the reasons explained in this order, the Court concludes that plaintiffs' motion is not ripe for adjudication and that the Court currently lacks jurisdiction to grant the specific relief sought by plaintiffs.  The core issue of whether plaintiffs are entitled, under the Fifth Amendment, to counsel at government expense[1] is not now before the Court and must await another day.

**<u>Discussion</u>**

In response to plaintiffs' motion for a preliminary injunction,[2] defendants have raised three objections to the Court's jurisdiction.  Two of their arguments are based on provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), as amended by the REAL ID Act of 2005, and the third involves sovereign immunity.  The first contention lacks merit, but the other two raise serious doubts about the Court's jurisdiction.

---

[1] Plaintiffs' statutory "privilege" to be represented in removal proceedings by counsel at their own expense is not at issue in this case.  <u>See</u> 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."); <u>see also</u> 8 U.S.C. § 1229a(b)(4)(A).

[2] Contrary to plaintiffs' counsel's suggestion at oral argument, <u>Rodriguez v. Hayes</u>, 591 F.3d 1105 (9th Cir. 2009), makes clear that the Court lacks jurisdiction to grant classwide injunctive relief.  <u>Id.</u> at 1119.  In <u>Rodriguez</u>, the Ninth Circuit interpreted 8 U.S.C. 1252(f)(1), which deprives the Court of jurisdiction to "enjoin" or "restrain" the operation of 8 U.S.C. §§ 1221-1232.  As used in § 1252(f)(1), "enjoin" refers to permanent injunctions, while "restrain" connotes temporary or preliminary injunctive relief.  591 F.3d at 1119 (citing <u>Arevalo v. Ashcroft</u>, 344 F.3d 1, 7 (1st Cir. 2003)).  Unlike 28 U.S.C. §§ 1341 & 1342, however, § 1252(f)(1) does not also include the word "suspend," which has been interpreted to cover declaratory relief.  591 F.3d at 1119.  Thus, although § 1252(f)(1) precludes the Court from granting classwide preliminary and permanent injunctive relief, it does not bar the Court from entering a declaratory judgment in favor of a class.  <u>Id.</u> (citing <u>Cal. v. Grace Brethren Church</u>, 457 U.S. 393, 408 (1982)); <u>see also</u> <u>Alli v. Decker</u>, 650 F.3d 1007, 1014-15 (3d Cir. 2011).  Plaintiffs' pending motion does not ask for declaratory relief.

ORDER - 2

1

**A.**     <u>Section 1252(g)</u>

2

       Defendants' first assertion is based on 8 U.S.C. § 1252(g). Defendants' reliance is

3

misplaced. Section 1252(g) is narrow and "applies only to three discrete actions" that the

4

Attorney General might take, namely to "commence proceedings, adjudicate cases, or

5

execute removal orders." <u>Reno v. Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471,

6

482 (1999). Section 1252(g) is aimed merely at "preserving prosecutorial discretion."

7

<u>Barahona-Gomez v. Reno</u>, 236 F.3d 1115, 1119 (9th Cir. 1999). After a removal

8

proceeding has been initiated, however, discretion no longer plays a role; immigration

9

courts may not decline to hear cases. <u>Id.</u> at 1120. Thus, consistent with the limited

10

purpose of § 1252(g) and with Ninth Circuit jurisprudence, the Court concludes that the

11

provision does not deprive the Court of jurisdiction to hear constitutional challenges to

12

the manner in which removal proceedings are conducted. <u>Id.</u> at 1119-21; <u>Walters v.</u>

13

<u>Reno</u>, 145 F.3d 1032, 1052 (9th Cir. 1998); <u>see also</u> <u>Franco-Gonzales v. Holder</u>, 767 F.

14

Supp. 2d 1034, 1049 (C.D. Cal. 2010).

15

**B.**     <u>Section 1252(b)(9)</u>

16

       Defendants' second challenge to the Court's jurisdiction is premised on 8 U.S.C.

17

§ 1252(b)(9), which reads:

18

> Judicial review of all questions of law and fact, including interpretation and

19

> application of constitutional and statutory provisions, arising from any
> action taken or proceeding brought to remove an alien from the United
> States under this subchapter shall be available only in judicial review of a

20

> final order under this section. Except as otherwise provided in this section,
> no court shall have jurisdiction, by habeas corpus under section 2241 of

21

> Title 28 or any other habeas corpus provision, by section 1361 or 1651 of

22

23

such title, or by any other provision of law (statutory or nonstatutory), to
review such an order of such questions of law or fact.

8 U.S.C. § 1252(b)(9).  The expanse of § 1252(b)(9) has been described as breathtaking.

*Aguilar v. U.S. Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec.*,
510 F.3d 1, 9 (1st Cir. 2007).  Section 1252(b)(9) was "designed to consolidate and
channel review of *all* legal and factual questions that arise from the removal of an alien
into the administrative process, with judicial review of those decisions vested exclusively
in the courts of appeal."  *Id.* (emphasis in original); *see also* 8 U.S.C. § 1252(b)(2).  The
purpose was to "put an end to the scattershot and piecemeal nature of the review process
that previously had held sway in regard to removal proceedings."  *Aguilar*, 510 F.3d at 9
(citing H.R. Rep. No. 109-72, at 174 (2005), *reprinted in* 2005 U.S.C.C.A.N. 240, 299).

In *Aguilar*, a group of undocumented aliens, who were detained following a raid
of a government contractor's factory, alleged that the government infringed their rights to
counsel by "barring their access to lawyers, interfering with preexisting attorney-client
relationships, and making it difficult to secure counsel of their choosing."  *Id.* at 13.  The
First Circuit concluded that such claims arise[3] from the removal proceeding and must
therefore be exhausted through the administrative process and raised, if administratively
unaddressed, on review before the appropriate court of appeals.  *Id.* at 13-14.  The

---

[3] The *Aguilar* Court observed that the phrase "arising from," which appears in § 1252(b)(9), is not as
sweeping as other language that Congress might have used, for example "relating to," which signifies a
"somewhat looser nexus."  510 F.3d at 10.  Thus, § 1252(b)(9) does not "swallow all claims that might
somehow touch upon, or be traced to, the government's efforts to remove an alien," and claims that are
"independent of, or wholly collateral to, the removal process" are excluded from § 1252(b)(9)'s reach, for
example, challenges to the legality of detention in the immigration context.  *Id.* at 10-11; *see also*
*Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006).

ORDER - 4

1    _Aguilar_ Court reasoned that "[u]ndocumented aliens cannot escape the vise-like grip of

2    § 1252(b)(9) by the simple expedient of banding together claims consigned by law to

3    administrative channels, declining to raise them within the ambit of removal proceedings

4    per se, and maintaining that those unexhausted claims do not implicate a particular

5    removal determination." _Id._ at 9.  The First Circuit viewed right-to-counsel claims as

6    "commonplace," frequently featured in petitions for judicial review of removal orders,

7    and thus not "sufficiently separate from removal proceedings to be considered either

8    'independent' or 'collateral.'" _Id._ at 13.  Rather, in the First Circuit's view, aliens "can

9    receive effective relief for their alleged violations of the right to counsel simply by

10   navigating the channels deliberately dredged by Congress," as evidenced by the

11   experiences of the plaintiffs in _Aguilar_, who received continuances when requested for

12   the purpose of retaining counsel, and who generally secured changes in venue back to

13   Massachusetts, where they had been working and residing.  _Id._ at 14.

14       The Ninth Circuit has reached a similar result based on 8 U.S.C. § 1252(a)(5).

15   _Ching v. Mayorkas_, 725 F.3d 1149 (9th Cir. 2013).  In _Ching_, the plaintiffs were a U.S.

16   citizen and his wife, on whose behalf the husband sought an I-130 visa.  _Id._ at 1153.  The

17   wife had lawfully entered the United States as a nonimmigrant visitor and then dated,

18   married, and divorced another U.S. citizen.  _Id._  During an investigation, United States

19   Citizenship and Immigration Services ("USCIS") officers obtained a sworn statement

20   from the first husband indicating that the first marriage was a sham, and the second

21   husband's I-130 visa petition was denied.  _Id._  The plaintiffs sued, alleging that USCIS

22   had violated Immigration and Nationality Act ("INA") § 240(b), which governs removal

23

proceedings, as well as their due process rights, by not affording the plaintiffs an opportunity to cross-examine the first husband about his sworn statement.  *Id.* at 1154. The Ninth Circuit held that, to the extent the plaintiffs claimed USCIS had violated INA § 240(b), which requires that an alien be given a reasonable opportunity to examine the evidence, to present evidence on his or her own behalf, and to cross-examine adverse witnesses, *see* 8 U.S.C. § 1229a(b)(4)(B), the district court properly granted summary judgment because it lacked jurisdiction to consider the claim, a petition for review to the court of appeals being the "sole and exclusive means" for judicial review of an order of removal.  725 F.3d at 1154 (citing 8 U.S.C. § 1252(a)(5)).  Moreover, because the wife's removal proceedings were still pending, no final order existed for the Ninth Circuit to review.  *Id.*

### 1.    *McNary*:  Pattern and Practice Claims

Although *Aguilar* and *Ching* seem to indicate that plaintiffs are required to exhaust their right-to-counsel claims and that any judicial involvement must await a final order of removal, to be reviewed only by the Ninth Circuit, the First Circuit's decision in *Aguilar* discusses a legal doctrine that supports the opposite conclusion.  The First Circuit refers to the doctrine as one of "constitutional avoidance."  510 F.3d at 14.  The Ninth Circuit uses the description "pattern and practice claim."  *See City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 872-878 (9th Cir. 2009).  Both phrases stem from the Supreme Court's decision in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991).

In *McNary*, the plaintiffs sought relief on behalf of a class of undocumented aliens who applied for special agricultural worker ("SAW") status under amnesty programs

ORDER - 6

1    enacted in 1986. _Id._ at 482-87.  The plaintiffs in _McNary_ alleged that the Immigration

2    and Naturalization Service ("INS") had adopted unlawful practices and policies for

3    administering the SAW program, including denying applicants an opportunity to

4    challenge adverse evidence on which denials were predicated, failing to provide

5    competent interpreters, and interviewing applicants in an arbitrary fashion without

6    making a verbatim recording and thereby inhibiting meaningful administrative review.

7    _Id._ at 487-88.  A provision of the amnesty statute prohibited judicial review of a denial of

8    SAW status, except in an appeal from an order of exclusion or deportation.  _Id._ at 485-86

9    (citing 8 U.S.C. § 1160(e)).  The _McNary_ Court held that the statutory restriction on

10   jurisdiction applied only to "direct review of individual denials of SAW status," and not

11   to "collateral challenges to unconstitutional practices and policies used by the agency in

12   processing applications." _Id._ at 492.

13       The Ninth Circuit has "distilled two 'guiding principles'" from _McNary_ and its

14   progeny, including _Reno v. Catholic Soc. Servs., Inc._, 509 U.S. 43 (1993).  _City of Rialto_,

15   581 F.3d at 874.  First, the claim at issue must challenge "a 'procedure or policy that is

16   collateral to an alien's substantive eligibility,' for which 'the administrative record is

17   insufficient to provide a basis for meaningful judicial review.'" _Id._ (quoting _Proyecto_

18   _San Pablo v. INS_, 189 F.3d 1130, 1138 (9th Cir. 1999) (quoting _Ortiz v. Meissner_, 179

19   F.3d 718, 722 (9th Cir. 1999))).  Second, the plaintiffs' claim must be ripe, meaning that

20   the plaintiffs have "taken 'the affirmative steps that [they] could take before the INS

21   blocked [their] path.'" _Id._ (alterations in original).  This second requirement is derived

22   from the holding in _Catholic Soc. Servs._, which observed that injunctive and declaratory

23

judgment remedies are "discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution."  509 U.S. at 57.

In _Aguilar_, the First Circuit drew similar insights from _McNary_:

> As the Supreme Court suggested in _McNary_, requiring exhaustion of certain pattern and practice claims might result in a total denial of meaningful judicial review.  The trick is to distinguish wheat from chaff, that is, to distinguish what must be exhausted from what need not be exhausted.  In that endeavor, the most salient questions involve whether the underlying claims are cognizable within the review process established by Congress, and if so, whether enforcement of the exhaustion requirement will allow meaningful judicial review without inviting an irreparable injury.

510 F.3d at 17 (citations omitted).  The _Aguilar_ Court concluded, however, that "[w]hen, as in [the _Aguilar_] case, the answers to these queries yield no persuasive reason for bypassing the channels that Congress has created, the use of pattern and practice or class action nomenclature cannot alter the result."  _Id._  The First Circuit was satisfied that the remedies "left open by section 1252(b)(9) are neither inadequate nor ineffective," and that each plaintiff's "right to counsel can be adequately addressed and effectively vindicated before an immigration judge (who can grant a continuance, order a change of venue, or take other pragmatic steps to ensure that the right is not sullied)."  _Id._ at 18.  Because the immigration judge's orders could be "meaningfully reviewed, first by the BIA [Board of Immigration Appeals] and then by the court of appeals," the _Aguilar_ Court was persuaded that "the channeling mechanism of section 1252(b)(9)" governed the plaintiffs' right-to-counsel claims.  _Id._

## 2. __Beyond Agency Authority__

The First Circuit was, however, careful to reserve room for denial of due process claims "that are beyond the authority of the agency to adjudicate." *Id.* at 18 n.4. Indeed, as the *Aguilar* Court recognized, § 1252(b)(9) is "a judicial channeling provision, not a claim-barring one." *Id.* at 11. Thus, § 1252(b)(9) cannot be read to swallow claims as to which no meaningful relief is available at the agency level. The *Aguilar* Court, however, characterized such claims as "rare," and concluded that the claims of the plaintiffs in *Aguilar* did not fall within their ambit. *Id.* at 18 n.4.

In contrast, the right-to-counsel claim at issue in this case, raised by the individual plaintiffs,[4] might qualify for the extraordinary treatment contemplated by *McNary* and its progeny. In *Aguilar*, the plaintiffs complained of interference with the statutory right to retained counsel, *see* 8 U.S.C. § 1362; *supra* note 1, thereby raising a claim that an immigration judge could adequately address during the course of removal proceedings. In this case, however, plaintiffs assert a constitutional right to the appointment of counsel, thereby seeking relief that, at least as to five of the six plaintiffs at issue,[5] an immigration judge would apparently be unable to grant even if he or she agreed with the underlying

---

[4] Even if one or more of the individual plaintiffs would be entitled to relief, whether a classwide remedy would be available or appropriate is an entirely different matter.

[5] As an "unaccompanied" minor, F.L.B. might qualify for appointed counsel through the recently announced "justice AmeriCorps" program, which is the product of an interagency agreement between the Department of Justice and the Corporation for National and Community Service ("CNCS"), which administers AmeriCorps. *See* http://www.nationalservice.gov/newsroom/press-releases/2014/justice-department-and-cncs-announce-new-partnership-enhance. According to the CNCS press release, the "justice AmeriCorps" grant program will enroll approximately 100 lawyers and paralegals to provide services to "certain children who have crossed the U.S. Border without a parent or legal guardian." *Id.*

ORDER - 9

1   due process analysis.  <u>See</u> <u>El Rescate Legal Servs., Inc. v. Exec. Office of Immigration</u>

2   <u>Review</u>, 959 F.2d 742, 750 (9th Cir. 1991) ("Although an alien might have little

3   familiarity with our legal system, and thus be ill-equipped to exercise these opportunities

4   [to examine the evidence, object if warranted, cross-examine witnesses, and present

5   favorable testimony], Congress expressly instructed the Attorney General not to provide

6   appointed counsel.").  Thus, plaintiffs' right-to-counsel claim appears to involve a

7   "procedure or policy" (or perhaps, the absence of one) that is collateral to the substance

8   of the related removal proceedings, and absent the appointed attorney to which plaintiffs

9   allege they are entitled, the administrative record might not provide an adequate basis for

10  meaningful judicial review.

11      Nevertheless, the Court must conclude that the first <u>McNary</u> requirement has not

12  yet been satisfied.  In their pending motion for a preliminary injunction, plaintiffs do not

13  even attempt to present their right-to-counsel claim, but rather request only continuances,

14  <u>see</u> Proposed Order at 2 (docket no. 24-1) (asking the Court to enjoin defendants from

15  "denying continuances" in plaintiffs' immigration proceedings), which can be effectively

16  sought from and granted by the appropriate immigration judges.  Plaintiffs did not do so

17  before filing their motion for preliminary relief, and thus the second <u>McNary</u> criterion of

18  ripeness has also not been met.  Although exhaustion is not required "where resort to the

19  agency would be futile," <u>El Rescate</u>, 959 F.2d at 747, plaintiffs have not demonstrated

20  that the continuances they ask the Court to enjoin defendants from denying would not be

21

22

23

ORDER - 10

1   granted if sought, in the first instance, during the course of their removal proceedings.[6]

2   _Cf. Proyecto San Pablo_, 189 F.3d at 1138 (concluding that the claim at issue was "ripe

3   because [the plaintiffs] attempted to obtain their prior deportation files while their cases

4   were pending before the LAU [Legalization Appeals Unit], but were hindered by the

5   INS's policy of requiring the filing of a FOIA [Freedom of Information Act] request, and

6   by the alleged slowness of the FOIA procedure").

7          Indeed, as indicated in defendants' supplemental materials, docket no. 75, after the

8   pending motion for preliminary relief was argued on September 3, 2014, each of the three

9   named plaintiffs who are siblings requested and received an eight-month continuance

10  from the presiding immigration judge.[7]  Plaintiffs agree that continuances were granted,

11  but assert that other juveniles appearing on the same day before a different immigration

12  judge were treated less favorably.  _See_ Aldana Madrid Decl. (docket no. 78).  The Court,

13  however, cannot consider these other minors, who are not currently parties to this case, in

14  assessing whether the Court has jurisdiction to grant the requested relief.  Meanwhile, the

15  juveniles who are before the Court wish to be excused from the requirement that they

16  seek the requested relief, namely continuances, from the appropriate immigration judges,

17

18

19  [6] Under longstanding Ninth Circuit precedent, an immigration judge's refusal to grant a continuance for a
    reasonable time so that an alien in removal proceedings can retain an attorney constitutes a due process
20  violation.  _See Montes-Lopez v. Holder_, 694 F.3d 1085, 1090 (9th Cir. 2012) (the immigration judge's
    "refusal to grant Petitioner a continuance was a violation of Petitioner's right to counsel"); _Rios-Berrios v._
    _INS_, 776 F.2d 859, 862 (9th Cir. 1985) (continuances for "little more than two working days' time" was
21  an abuse of discretion).  Plaintiffs have provided no basis for believing that immigration judges are
    unaware of or will disregard such jurisprudence.

22  [7] Whether these three named plaintiffs also demanded from the immigration judge the appointment of
    counsel at government expense was not discussed in the supplemental materials presented to the Court.

23

ORDER - 11

1    but they have not made the necessary showing of futility, and the Court therefore lacks

2    jurisdiction with respect to the specific injunction plaintiffs currently urge the Court to

3    enter.

4    **C.    <u>Sovereign Immunity</u>**

5         Defendants' third ground for questioning the Court's jurisdiction involves

6    sovereign immunity.  The United States, as sovereign, is immune from suit "save as it

7    consents to be sued," and any waiver of sovereign immunity must be "unequivocally

8    expressed."  <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976).  An action seeking

9    injunctive relief against a federal officer in his or her official capacity is equivalent to an

10   action against the United States.  <u>Stimac v. Haag</u>, 2010 WL 3835719 at *2 (N.D. Cal.

11   Sep. 29, 2010) (citing <u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682

12   (1949)).  Defendants are each sued in their official capacity.  <u>See</u> Complaint at ¶¶ 19-26

13   (docket no. 1); Amended Complaint at ¶¶ 19-26 (docket no. 73).  Plaintiffs therefore bear

14   the burden of establishing the existence of an unequivocal waiver of sovereign immunity.

15   <u>See</u>, <u>e.g.</u>, <u>Baker v. United States</u>, 817 F.2d 560, 562 (9th Cir. 1987).

16        In their original complaint, plaintiffs failed to do so.  Plaintiffs were subsequently

17   granted leave to amend their complaint, and they now rely on a provision of the

18   Administrative Procedures Act ("APA"), which reads in relevant part:

19        An action in a court of the United States seeking relief other than money
         damages and stating a claim that an agency or an officer or employee
20        thereof acted or failed to act in an official capacity or under color of legal
         authority shall not be dismissed nor relief therein be denied on the ground
21        that it is against the United States or that the United States is an
         indispensable party.

22

23

5 U.S.C. § 702.  In support of their assertion that § 702 operates as a waiver of sovereign immunity, plaintiffs cite an opinion that predates IIRIRA.  *See The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989).  Whether the reasoning in this case holds true in light of IIRIRA and the Real ID Act has not been addressed by the parties.  *See* 5 U.S.C. § 701(a); *see also Ardestani v. INS*, 502 U.S. 129, 133 (1991) (the INA "expressly supersedes" the APA); *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010).  Moreover, the parties have not briefed the effect of the APA's own channeling provision, 5 U.S.C. § 704, which defendants' attorney referenced for the first time during oral argument.  In light of the Court's ruling concerning § 1252(b)(9) and the incomplete nature of the parties' respective arguments concerning sovereign immunity, the issue must be reserved for later consideration.

**Conclusion**

The Court is sympathetic to plaintiffs' plea for legal assistance with the immigration maze in which they now find themselves.  As the Ninth Circuit has observed, "[w]ith only a small degree of hyperbole, the immigration laws have been termed second only to the Internal Revenue Code in complexity.  A lawyer is often the only person who could thread the labyrinth." *Baltazar-Alcazar v. INS*, 386 F.3d 940, 948 (9th Cir. 2004); *see also Ardestani*, 502 U.S. at 138 (The "complexity of immigration procedures, and the enormity of the interests at stake, make legal representation in

ORDER - 13

1   deportation proceedings especially important.").[8]  The relief plaintiffs currently desire,

2   however, is limited to continuance requests that they did not present to the appropriate

3   immigration judge before filing the pending motion.  The Court cannot disregard

4   the various prudential principles designed to keep the judiciary from issuing advisory

5   rulings, becoming entangled in abstract disagreements, and unnecessarily deciding issues

6   of constitutional magnitude.  *See* *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*,

7   970 F.2d 501, 511 (9th Cir. 1991); *see also* *Mangual v. Rotger-Sabat*, 317 F.3d 45, 59

8   (1st Cir. 2003).  Thus, plaintiffs' motion for a preliminary injunction, docket no. 24, is

9   DENIED.  Plaintiffs' motion for class certification, docket no. 2, is DEFERRED, and will

10  be considered after the Court rules on defendants' recently filed motion to dismiss, and

11  only upon a finding that the Court has jurisdiction to consider the underlying claims.

12  _____

13  [8] The Court is keenly aware that the other two branches of government are struggling with the question of
    whether and how to appoint counsel for alien juveniles.  *See* *Senate Comm. on the Judiciary Holds a*
    *Hearing on Oversight of the Justice Dep't*, 113th Cong., 2013 WL 820332 (Mar. 6, 2013).  In response to

14  Senator Al Franken's question concerning whether the responsibility for ensuring, to the extent
    practicable, that certain unaccompanied minors have access to legal representation should be transferred
    from the Department of Health and Human Services, *see* 8 U.S.C. § 1232(c)(5), to the Department of

15  Justice, Attorney General Eric Holder indicated:  "If this is something that is better housed in the Justice
    Department, that's certainly something we're willing to consider.  But I would also say that this is going
    to be a resource issue.  We should not simply give this responsibility to the Justice Department without

16  giving us additional resources."  2013 WL 820332.  Attorney General Holder further remarked that
    making immigration decisions about young kids who are unrepresented is "simply not who we are as a

17  nation.  It's not the way in which we do things."  *Id.*  In reply, Senator Franken expressed hope that "our
    offices can work together" on the issue.  *Id.*  The Court shares this hope that the legislative and executive

18  branches can craft a solution to the problem, but in the meanwhile, the financial constraints and border-
    policing concerns raised by defendants' attorney during oral argument will play a role in any analysis

19  concerning plaintiffs' assertion of a right to appointed counsel under the Due Process Clause of the Fifth
    Amendment.  *See* *Turner v. Rogers*, 131 S. Ct. 2507, 2517-18 (2011) (for the purpose of assessing "what

20  specific safeguards the Constitution's Due Process Clause requires in order to make a civil proceeding
    fundamentally fair," the factors articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), are "relevant,"

21  namely (i) the nature of the private interest affected by the government action; (ii) the risk of "erroneous
    deprivation" of such interest through the procedures used, as well as the probable value of "additional or
    substitute procedural safeguards"; and (iii) the countervailing interest of the government, including the

22  fiscal or administrative burdens that additional or different procedural requirements would entail).

23

IT IS SO ORDERED.

Dated this 29th day of September, 2014.

THOMAS S. ZILLY
United States District Judge

ORDER - 15