1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.L.B., a minor, by and through his Next Friend, Casey Trupin; et al.,

                    Plaintiffs-Petitioners,

     v.

Loretta E. LYNCH, Attorney General, United States; et al.,

                    Defendants-Respondents.

Case No. 2:14-cv-01026-TSZ

**RENEWED MOTION FOR CLASS CERTIFICATION**

NOTE ON MOTION CALENDAR: November 13, 2015

ORAL ARGUMENT REQUESTED

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

MOT. CLASS CERTIFICATION - 0
Case No. 2:14-cv-01026-TSZ

## I.    MOTION AND PROPOSED CLASS DEFINITION

This Court has recognized that it is Defendants' policy and practice to subject children to immigration proceedings without providing them with legal representation. These proceedings "pit juveniles against the full force of the federal government"—they are adversarial hearings conducted before an Immigration Judge ("IJ") where the Government is represented by a trained attorney who argues for the child's deportation under a set of legal rules that are "'second only to the Internal Revenue Code in complexity.'" Dkt. 114 at 30 (citation omitted). The stakes in these proceedings are extremely high. IJs regularly enter orders that effectively separate children from their families, requiring them to live in countries where they have little or no family or community support. In many cases, they fled those same countries in order to escape persecution, torture, or death.

The question presented by Plaintiffs' claim—whether children are entitled to legal representation in their immigration proceedings—is paradigmatically appropriate for class treatment. Plaintiffs believe the answer is yes, but whether or not the Court ultimately agrees, the question can plainly be resolved on a classwide basis. Certification is therefore appropriate.

Plaintiffs first moved for class certification at the time they filed the original complaint, on July 9, 2014. *See* Dkts. 1, 2. This Court struck the Motion for Certification in November 2014, explaining that it would give Plaintiffs a new submission deadline after ruling on Defendants' Motion to Dismiss. *See* Dkt. 94. After the Court did so, Plaintiffs submitted their renewed motion for class certification in April 2015. *See* Dkt. 117. The Court thereafter denied the motion without prejudice to Plaintiffs refiling a new motion for class certification. *See* Dkt. 160. Plaintiffs now submit this third motion for class certification. As explained below, Plaintiffs' revised class definition addresses the concerns identified by this Court with respect to the prior proposed class definition.

Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs respectfully move this Court to certify the following class with all Named Plaintiffs being appointed class representatives:

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

All individuals under the age of eighteen (18) who are in immigration proceedings on or after July 9, 2014, without legal representation in their immigration proceedings and who are financially unable to obtain such representation.[1]

Plaintiffs seek certification of this class in order to obtain declaratory relief clarifying that Defendants must provide legal representation to Plaintiffs and all other child class members in order to comply with the requirements of due process under the Fifth Amendment as well as the immigration laws.[2]

## II.    BACKGROUND

### A. Plaintiffs' Legal Claims

Although the Court need not engage in "an in-depth examination of the underlying merits" at this stage, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011), the Court may have to analyze the merits to some extent in order to determine the propriety of class certification. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (internal citations omitted). At this stage, the Court has already analyzed Plaintiffs' claim at some length. *See* Dkt. 114 at 27-36.

Plaintiffs are all children who are without counsel in their immigration proceedings and who lack the financial ability to obtain adequate legal representation in such proceedings. They challenge the Government's failure to provide them with legal representation as required by the Fifth Amendment—an obligation that flows from two lines of doctrine.

First, the Supreme Court has held that the Due Process Clause requires appointed counsel in certain types of civil proceedings. *See Turner v. Rogers*, 131 S. Ct. 2507, 2520 (2011) (finding no

---

[1] Plaintiffs define "immigration proceedings" to include any proceeding that occurs before an Immigration Judge or the Board of Immigration Appeals. Plaintiffs define "legal representation" as "(1) an attorney, (2) a law student or law graduate directly supervised by a retained attorney, or (3) an accredited representative, all as defined in 8 C.F.R. § 1292.1." *Franco-Gonzales v. Holder*, 828 F. Supp. 2d 1133, 1147 (C.D. Cal. 2011).

[2] In its order granting in part and denying in part Defendants' motion to dismiss, this Court ruled that 8 U.S.C. § 1252(b)(9) stripped it of jurisdiction to entertain Plaintiffs' statutory claim for counsel. *See* Dkt. 114 at 22. It also ruled that 8 U.S.C. § 1252(f)(1) bars the classwide injunctive relief Plaintiffs have sought. *See id.* at 38. Plaintiffs continue to assert both claims here—for relief on a statutory basis and for classwide injunctive relief—in order to preserve them for review. *See* Dkt. 2 at 2-4 (seeking class certification for statutory claim); Dkt. 98 at 18-19 (arguing that Section 1252(f)(1) does not bar classwide injunctive relief); Dkt. 117 at 2 n.3 (preserving these arguments).

MOT. CLASS CERTIFICATION - 2
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

categorical right to appointed counsel in straightforward civil contempt proceedings where opposing party was unrepresented and use of standardized forms could permit fair adjudication in most cases); *see also* Dkt. 114 at 30 (discussing the implications of the Supreme Court's ruling in *Turner* on "[t]he right to counsel claim asserted by plaintiffs in this case").

Second, due process doctrine in the deportation context strongly suggests that all children facing immigration proceedings must be represented. The Supreme Court held over 100 years ago that deportation hearings must satisfy the Fifth Amendment's Due Process Clause, *see Yamataya v. Fisher*, 189 U.S. 86, 100-01 (1903), and it has reiterated that holding specifically in the context of children. *See Reno v. Flores*, 507 U.S. 292, 306-07 (1993). Courts have recognized that appointed counsel may be required to satisfy that constitutional requirement in at least some removal cases, including those involving children. *See, e.g.*, *Aguilera-Enriquez v. INS*, 516 F.2d 565, 568 n.3 (6th Cir. 1975) ("Where an unrepresented indigent alien would require counsel to present his position adequately to an immigration judge, he must be provided with a lawyer at the Government's expense. Otherwise 'fundamental fairness' would be violated."); *cf. Jie Lin v. Ashcroft*, 377 F.3d 1014, 1032-34 (9th Cir. 2004) (emphasizing the crucial importance of the right to effective assistance of counsel in order for a minor to have a full and fair hearing in immigration court).

Plaintiffs assert that because children "as a class" "lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them," *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011) (internal quotation marks and citation omitted), they cannot obtain a fair hearing that comports with due process without legal representation. This is particularly true given "the labyrinthine character of modern immigration law" and its "maze of hyper-technical statutes and regulations." *Drax v. Reno*, 338 F.3d 98, 99 (2d Cir. 2003); *see also* Dkt. 114 at 30.

As this Court has implicitly recognized, that immigration cases are civil rather than criminal does not obviate the need for counsel in deportation cases involving children. The Third Circuit has explained:

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

As a matter of formal constitutional doctrine, the Sixth Amendment right to (effective) counsel does not apply in a civil context such as immigration proceedings. Nevertheless, we cannot treat immigration proceedings like everyday civil proceedings, despite their formally civil character, because unlike in everyday civil proceedings, the liberty of an individual is at stake in deportation proceedings.

*Fadiga v. Att'y Gen. U.S.*, 488 F.3d 142, 157 n.23 (3d Cir. 2007) (internal quotation marks and citations omitted); *see also* Dkt. 114 at 32 (acknowledging that the "potential effect of removal" on children "might be the same or worse than incarceration").

## B. Named Plaintiffs' Factual Backgrounds

Plaintiff F.L.B. is a 16-year-old boy from Guatemala. CBP took him into custody after he entered the United States in 2013, when he was only 14 years old. He was abused as a child and left to fend for himself by his parents. He was living on his own when he decided to seek a safer life and made the difficult journey to the United States. He appeared before an IJ in Seattle, Washington, in September 2014 to answer to the charges of removability and to assert any defenses against his removal. He appeared without counsel. The IJ continued his case until May 2015, but warned him that if he did not have an attorney present at that hearing, he should be ready to represent himself or have a guardian represent him. *See* Dkt. 118 ¶2, Aldana Madrid Decl. At his May 2015 hearing, F.L.B. again appeared unrepresented. After asking him why he did not have an attorney with him, the IJ proceeded to require F.L.B. to state whether his Notice to Appear had been served on him and to respond to the allegations in that document. *See* Dkt. 157, Ex. A at 2-3. The IJ then told F.L.B. to return to his next hearing, scheduled for August 2016, with a completed asylum application. Dkt. 157 ¶¶13-14. He warned F.L.B. that if he appeared without the completed application, his application for asylum might be denied. *Id.* F.L.B. lacks the resources to retain counsel for his immigration proceedings. *See generally* Dkt. 190 ¶¶81-85; Ex. A, F.L.B. Notice to Appear.[3]

---

[3] This Court has dismissed the claims of Plaintiffs J.E.F.M., J.F.M., and D.G.F.M. as moot and held that they did not have "claims typical of the claims of the proposed class and have little incentive to fairly and adequately protect the interests of the class." Dkt. 174 at 5. This Court also held that Plaintiff J.E.V.G. could no longer serve as a class representative—despite finding that he continued to have a live claim. *Id.* at 5-6. Plaintiffs hereby preserve for review their claim that the F.M. siblings and J.E.V.G. can continue to represent the class even after their individual claims have either become moot or significantly changed, because standing to seek classwide

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Plaintiff M.A.M. is a 17-year-old boy from Honduras. There, his maternal grandmother raised him from a young age. When she grew elderly and fell ill, M.A.M. came to the United States to live with his mother. He was only eight years old at that time and has lived in the United States ever since. ICE took him into custody in September 2011, subsequently returning him to his mother's care. He was placed in removal proceedings and, in April 2015, he appeared before an IJ in Los Angeles, California, to answer to the charges of removability and to assert any defenses against his removal. His case was continued for a hearing in October 2015. A nonprofit legal services organization assisted him in filing a self-petition for Special Immigrant Juvenile visa status, which was eventually granted by USCIS. *See* Dkt. 154-1. He now is eligible to apply before the IJ for adjustment of status to lawful permanent residence in order to obtain relief from removal.

However, at his hearing yesterday (October 15), the Department of Homeland Security opposed termination of M.A.M.'s case, which would have allowed USCIS to adjudicate his adjustment application in a non-adversarial setting. Accordingly, M.A.M. must now prepare and file his application for permanent residence along with any necessary supporting documents, for

---

relief is measured as of the time the complaint is filed. *See, e.g.*, *Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014) ("We consider whether the elements of Article III standing, as articulated in *Lujan*, were satisfied at the time the complaint was filed.") (citation omitted); *accord Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) ("standing to seek injunctive relief must rise or fall on [the plaintiff's] status" on the date of the amended complaint "adding [him] to the action"). *See also* Dkt. 174 at 6 (acknowledging that where the claim is inherently transitory, under the "relation back doctrine" a named plaintiff may continue to serve as a class representative even where their individual claim has mooted out); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (explaining that "'relation back' doctrine" is appropriate where "'claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires'") (citations omitted); *Pitts v. Terrible Herbst*, 653 F.3d 1081, 1089 (9th Cir. 2011) ("[T]he termination of a class representative's claim does not moot the class claims.") (citation omitted).

Just as standing is determined by reference to the Plaintiffs' circumstances at the time the complaint was filed, the analysis as to whether the requirements for class certification have been met—including whether the claims of the Plaintiffs and the class are typical—is also determined by reference back to those circumstances. *See, e.g.*, *Riverside*, *supra*. Indeed, to hold otherwise would render meaningless the exception afforded by the "relation back doctrine," for it would lead to the odd result that a plaintiff who has been allowed to represent a class despite the fact that their individual claim has become moot, would nonetheless need to be dismissed as class representative on typicality and adequate representation grounds because their claim has become moot and their individual interest in the litigation has "expired."

Finally, Plaintiff G.J.C.P., whose claim Plaintiffs have presented in order to preserve for review, would also constitute a proper named representative were her underlying claim to be reinstated on appeal.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

adjudication in the adversarial proceedings. M.A.M.'s next hearing is set for February 2016. He continues to be unrepresented in his removal proceedings and lacks the resources to retain counsel. *See generally* Dkt. 190 ¶¶86-91; Ex. B, M.A.M. Notice to Appear.[4]

Plaintiff A.E.G.E. is a four-year-old boy from El Salvador. He was conceived as the result of a rape his mother suffered when she was only 15 years old. The rapists threatened to harm her again if she reported the crime. After A.E.G.E.'s birth, his young mother struggled to care for him and eventually fled to the United States before his first birthday. She left him in the care of an aunt, but he was not safe. A.E.G.E.'s other family members feared for his life in El Salvador. A.E.G.E. was left at the U.S. border in April 2014. He was transferred to ORR custody and eventually released to the care of his mother, who is a Lawful Permanent Resident. A.E.G.E. is scheduled for a removal hearing in April 2016 in Los Angeles, California. He has no attorney to represent him at that hearing and lacks the resources to retain counsel. *See generally* Dkt. 190 ¶¶92-95; Ex. C, A.E.G.E. Notice to Appear.

Plaintiff E.G.C. is an 11-year-old boy from Mexico. He grew up in an abusive home environment, suffering domestic violence at the hands of his parents. E.G.C., his mother, and his sisters fled to the United States in 2013, seeking refuge from the turbulence and violence in their native Michoacan. His mother and sisters returned to Mexico, however, leaving him in the care of family in Washington State. His father disappeared and is presumed dead at the hands of a criminal organization. E.G.C. is scheduled for a hearing before an IJ in Seattle, Washington, in December 2015, where he will have to answer to the charges of removability and assert any defenses against his removal. E.G.C. does not have an attorney to represent him in his immigration proceedings and

---

[4]     This Court suggested that M.A.M.'s claims might not be typical of the proposed class (and questioned the adequacy of his representation) because he was granted SIJ status and now qualifies to apply for a discretionary adjustment of status to permanent residence. *See* Dkt. 174 at 5. As DHS's recent actions make clear, however, M.A.M. remains in removal proceedings without legal representation and without the means to afford such representation. Because DHS opposed the termination of his case, M.A.M. will have to make his case for relief from removal in adversarial proceedings. He thus remains an adequate and typical representative of the class, as he was when the original complaint in this case was filed in July 2014. *See* Dkt. 1 ¶¶64-68; *supra* n.3.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

lacks the resources to retain counsel. *See generally* Dkt. 190 ¶¶108-110; Ex. D, E.G.C. Notice to Appear.

Plaintiff A.F.M.J. is an 11-year-old girl born in Mexico. Her U.S. citizen father was murdered when she was about seven years old. The police neglected to investigate the murder, despite her mother's efforts to have them do so. A.F.M.J., her mother, and her two toddler siblings came to the United States in September 2014 seeking asylum. She has had two hearings before an IJ in Seattle, Washington, to answer to the charges of removability and to assert any defenses against her removal. A.F.M.J. has been unrepresented at these hearings. At her latest hearing, the IJ waived her presence at future hearings and explained to her mother—whose removal case is consolidated with A.F.M.J.'s and her siblings'—that she would have to proceed at their next hearing regardless of whether the family obtained legal representation. A.F.M.J.'s next hearing is set for late October 2015. She does not have an attorney to represent her in her immigration proceedings and lacks the resources to retain counsel. *See generally* Dkt. 190 ¶¶111-114; Ex. E, A.F.M.J. Notice to Appear.

Plaintiff L.J.M. is a three-year-old girl who was born in Mexico and is the sister of A.F.M.J. Her U.S. citizen father was murdered when her mother was pregnant with her. She came to the United States at the same time and for the same reasons as A.F.M.J. Her next removal hearing is also set for late October 2015 in Seattle, Washington. L.J.M. does not have an attorney to represent her in her immigration proceedings and lacks the resources to retain counsel. *See generally* Dkt. 190 ¶¶115-117; Ex. F, L.J.M. Notice to Appear.

Plaintiff M.R.J. is a one-year-old boy from Mexico and the half-brother of A.F.M.J. and L.J.M. His father and mother separated while the family was still back in Mexico. He came to the United States at the same time and for the same reasons as his half-sisters A.F.M.J. and L.J.M. His next removal hearing is also set for late October 2015. M.R.J. does not have an attorney to represent him in his immigration proceedings and lacks the resources to retain counsel. *See generally* Dkt. 190 ¶¶118-119; Ex. G, M.R.J. Notice to Appear.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Plaintiff J.R.A.P. is a seven-year-old boy from Honduras. While pregnant with J.R.A.P., his mother learned that his father was in a gang, and ended their relationship. J.R.A.P.'s father was subsequently arrested and imprisoned. When J.R.A.P. was very young, his mother traveled to the United States, leaving him in the care of his paternal grandparents. J.R.A.P. visited his father a few times in prison, but his father has never played an active role in his life. When J.R.A.P.'s mother learned that his father was considering leaving the gang, she feared the gang would retaliate by harming J.R.A.P. In the fall of 2013, J.R.A.P. arrived in the United States. Immigration authorities took custody of him soon after his arrival and he was eventually released to the care of his mother. After J.R.A.P. arrived in the United States, his father called his mother and threatened to kill her and her new partner if she returned to Honduras. J.R.A.P. had his first removal hearing in October 2015 before an IJ in Miami, Florida. A friend of the court appeared with him at that initial hearing, but that person is not his lawyer. J.R.A.P.'s next removal hearing is scheduled for March 2016. He has no legal representation in his immigration proceedings and lacks the resources to retain counsel. *See generally* Dkt. 190 ¶¶120-123; Ex. H, J.R.A.P. Notice to Appear.

Plaintiff K.N.S.M. is a nine-year-old girl from Honduras. When she was five years old, K.N.S.M. was physically assaulted by her aunt while under her care, and had to be hospitalized due to her injuries. Her aunt was arrested as a result of the assault, but the police eventually let her go with only a condition that she report periodically to the authorities. After that, K.N.S.M.'s aunt threatened to retaliate against K.N.S.M. and her mother for getting her arrested, and stalked the girl at school. Because they no longer felt safe, K.N.S.M. fled Honduras with her mother. They arrived in the United States in May of 2014. Soon after crossing the border, they were picked up by immigration authorities and eventually released. K.N.S.M. was released under an Order of Release on Recognizance. K.N.S.M. lives with her mother. She has not seen or heard from her father since she left Honduras. K.N.S.M. attended her first removal hearing in September 2015 before an IJ in Los Angeles, California. Her next removal hearing is scheduled for April 2016. She did not have an

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

attorney to represent her at her previous hearing, and she lacks the resources to retain counsel. *See*

*generally* Dkt. 190 ¶¶124-127; Ex. I, K.N.S.M. Notice of Hearing.

## III.    THE COURT SHOULD CERTIFY A CLASS TO RESOLVE PLAINTIFFS' CLAIMS.

Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(2).[5] Both the Ninth

Circuit and this Court routinely order the certification of class actions based on claims challenging

the adequacy of procedural protections under the immigration laws. *See*, *e.g.*, *Rodriguez v. Hayes*,

591 F.3d 1105 (9th Cir. 2010) (reversing denial of certification for class of immigration detainees

subject to prolonged detention); *Khoury v. Asher*, 3 F. Supp. 3d 877 (W.D. Wash. 2014) (certifying

class and ordering declaratory relief for immigration detainees).[6] That courts routinely certify classes

---

[5]    Plaintiffs alternatively seek certification of a representative habeas corpus action under procedures analogous to those available under Rule 23. It is well established that, in appropriate circumstances, a habeas corpus petition may proceed on a representative or classwide basis. *See*, *e.g.*, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 393, 404 (1980) (holding that class representative could appeal denial of nationwide class certification of habeas and declaratory judgment claims); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) ("[T]he Ninth Circuit has recognized that class actions may be brought pursuant to habeas corpus.") (citations omitted). Plaintiffs are in the Government's custody by virtue of the immigration charges to which they must respond in court. *See generally Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

[6]    *See also Gete v. INS*, 121 F.3d 1285, 1300 (9th Cir. 1997) (vacating denial of class certification in challenge to inadequate notice and standards in Immigration and Naturalization Service ("INS") vehicle forfeiture procedure); *Rivera v. Holder*, No. 14-cv-1597, 2015 WL 1632739 (W.D. Wash. Apr. 13, 2015) (certifying district-wide class of persons challenging custody hearings while in removal proceedings); *A.B.T. v. U.S. Citizenship & Immigration Servs.*, No. 11-cv-2108, 2013 WL 5913323 (W.D. Wash. Nov. 4, 2013) (approving settlement and certifying nationwide class of persons in removal proceedings challenging procedures governing the ability of asylum applicants to work while their applications remained pending); *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194 (W.D. Wash. 2008) (certifying district-wide class of delayed naturalization cases); *Gonzales v. U.S. Dep't. of Homeland Sec.*, 239 F.R.D. 620, 629 (W.D. Wash. 2006) (certifying circuit-wide class challenging USCIS policy contradicting binding precedent), *preliminary injunction vacated*, 508 F.3d 1227 (9th Cir. 2007) (establishing new rule and vacating preliminary injunction but not challenging class certification); *Ali v. Ashcroft*, 213 F.R.D. 390, 409-10 (W.D. Wash. 2003), *aff'd*, 346 F.3d 873, 889 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th Cir. 2005) (certifying nationwide class of Somalis challenging legality of removal to Somalia in the absence of a functioning government); *Gorbach v. Reno*, 181 F.R.D. 642, 644 (W.D. Wash. 1998) (certifying nationwide class of persons contesting validity of administrative denaturalization proceedings), *aff'd on other grounds*, 219 F.3d 1087 (9th Cir. 2000) (en banc); *Walters v. Reno*, No. 94-cv-1204, 1996 WL 897662, at *5-8 (W.D. Wash. Mar. 13, 1996) (certifying nationwide class of individuals challenging adequacy of notice in document fraud cases), *aff'd*, 145 F.3d 1032 (9th Cir. 1998), *cert. denied*, 526 U.S. 1003 (1999). For another case involving the right to appointed legal representation in the immigration process, see *Franco-Gonzales v. Napolitano*, No. 10-cv-02211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) (certifying class of immigrants detained in Arizona, California, and Washington who face immigration proceedings without appointed counsel despite suffering from a serious mental disorder or defect). For another case involving the rights of immigrant children facing deportation, see *Perez-Funez*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

MOT. CLASS CERTIFICATION - 9
Case No. 2:14-cv-01026-TSZ

in this area under Rule 23(b)(2) is unsurprising for at least three reasons. First, the rule was intended to "facilitate the bringing of class actions in the civil-rights area," 7AA Wright, Miller & Kane, *Federal Practice & Procedure* § 1775, at 71 (3d ed. 2005), particularly those seeking declaratory or injunctive relief. Second, they often involve claims on behalf of class members who would not have the ability to present their claims absent class treatment. That rationale applies with particular force to civil rights suits like this one, where children cannot litigate the claim at issue on their own. *See* Dkt. 114 at 5-6; *accord Rodriguez*, 591 F.3d at 1123. Finally, the core issues in these cases often involve questions of law, rather than disparate questions of fact, and therefore are well suited for resolution on a classwide basis. *See, e.g.*, *Unthaksinkun v. Porter*, No. 11-cv-0588, 2011 WL 4502050, at *12 (W.D. Wash. Sept. 28, 2011) (finding that, because all class members were subject to the same process, the court's ruling as to the legal sufficiency of the process would apply to all).

Plaintiffs do not ask this Court to adjudicate their individual immigration cases. Nor do they seek money damages. Rather, Plaintiffs ask only that the Court determine whether Defendants' policy and practice of subjecting indigent children to immigration proceedings without providing them with legal representation is unlawful, and, if so, what procedures Defendants must implement to protect the constitutional rights of Plaintiffs and proposed class members.

**A. This Action Satisfies the Class Certification Requirements of Rule 23(a).**

**1. The Proposed Class Members Are So Numerous that Joinder Is Impracticable.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). No fixed number of class members is required. *Perez-Funez v. Dist. Dir., INS*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *Hum v. Dericks*, 162 F.R.D.

---

*v. Dist. Dir., INS*, 611 F. Supp. 990, 994-1001 (C.D. Cal. 1984) (certifying nationwide class of unaccompanied immigrant minors in INS custody challenging implementation of its voluntary departure procedure).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

628, 634 (D. Haw. 1995) ("There is no magic number for determining when too many parties make joinder impracticable. Courts have certified classes with as few as thirteen members, and have denied certification of classes with over three hundred members.") (citations omitted).

The Court's denial of Defendants' motion to dismiss this suit should resolve any dispute concerning numerosity. As the Court recognized, a report by the Transactional Records Access Clearinghouse ("TRAC") at Syracuse University stated that "59,394 immigration cases involving minors were filed in 2014 *alone*. Dkt. 114 at 1 n.1; *see also id.* (highlighting another report, cited by Defendants, stating that "the number of juvenile cases in immigration courts increased dramatically over the last few years, jumping from 6,425 in 2011, to 11,411 in 2012, and 21,351 in 2013"). The accompanying massive shortfall in counsel is apparent regardless of what measure one uses. For cases initiated in Fiscal Year 2014, the representation rate is 50.6% for cases involving children.[7] That rate is 52% if one looks at the data over the last ten years.[8] As was true last year when Plaintiffs filed this lawsuit, legal service providers have nowhere near the resources needed to meet the needs of unrepresented children facing deportation, thus confirming that the class is numerous. *See id.*; *see also* Dkts. 119, Stotland Decl.; 120, Herrera Decl.; 121, Sharp. Decl.; 122, Contreras Decl.

This Court can thus reasonably conclude that the class is numerous. *See Ali v. Ashcroft,* 213 F.R.D. 390, 408 (W.D. Wash. 2003) (noting that "the Court does not need to know the exact size of the putative class, 'so long as general knowledge and common sense indicate that it is large'") (quoting *Perez-Funez,* 611 F. Supp. at 995); Newberg on Class Actions § 3:13 (5th ed. 2014) (noting that "it is well settled that a plaintiff need not allege the exact number or specific identity of

---

[7]      *See* TRAC, Juveniles—Immigration Court Deportation Proceedings, *available at* http://trac.syr.edu/phptools/immigration/juvenile/ (last accessed Oct. 15, 2015) (showing legal representation in 31,689 out of 62,651 cases involving children that were commenced in Fiscal Year 2014).

[8]      *See id.* (computing rate for all cases commenced since Fiscal Year 2005).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

proposed class members"). There should be no serious dispute that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).[9]

## 2. The Class Presents Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be questions of law or fact common to the class. To satisfy the commonality requirement, "'[a]ll questions of fact and law need not be common.'" *Ellis*, 657 F.3d at 981 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Rather, one shared legal issue can be sufficient. *See, e.g.*, *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice."); *Rodriguez*, 591 F.3d at 1122 ("[T]he commonality requirement asks us to look only for some shared legal issue or a common core of facts.").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted). In determining that a common question of law exists, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted) (first ellipses in original).

The commonality standard is even more liberal in a civil rights suit such as this one, in which

---

[9]    Joinder is also inherently impractical because of the unnamed, unknown future class members who will be subjected to Defendants' unlawful policy and practice. *Ali*, 213 F.R.D. at 408-09 ("'[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met,' regardless of class size.") (citations omitted). The geographic dispersion of putative class members and their inability, by virtue of their lack of representation, to pursue their claims individually further demonstrate the impracticability of joinder in this case. *United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) ("Only a representative proceeding avoids a multiplicity of lawsuits and guarantees a hearing for individuals . . . who by reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek one on their own behalf.") (citation omitted).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

"the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). "[C]lass suits for injunctive or declaratory relief" like this case "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Wright, Miller & Kane, *Federal Practice & Procedure* § 1763, at 226 (3d ed. 2005).

Here, Plaintiffs and the proposed class members allege the same injury caused by the uniform policy and practice of Defendants: denying indigent children appointed legal representation in their immigration proceedings. Every Plaintiff and putative class member has been or will be forced to appear without legal representation in front of an IJ and face a trained Government attorney as an opponent. All Plaintiffs and putative class members make the same legal claim: that by virtue of their age and its attendant limitations it is unlawful to force them to appear in such proceedings without legal representation. Therefore, the question whether the Constitution permits the Government to force indigent children to appear in immigration proceedings without legal representation is common to all class members. Should Plaintiffs prevail, all who fall within the class will benefit; they will all be entitled to legal representation in their immigration proceedings. A common answer as to the legality of the challenged policy and practice *will* "'drive the resolution of the litigation.'" *Ellis*, 657 F.3d at 981 (quoting *Wal-Mart*, 131 S. Ct. at 2551).

The Supreme Court has recognized that a child's age "generates commonsense conclusions about behavior and perception" that "apply broadly to children *as a class*." *J.D.B.*, 131 S. Ct. at 2403 (internal quotation marks and citation omitted) (emphasis added). These conclusions "are self-evident to anyone who was a child once himself, including any police officer or judge." *Id.* As a consequence, "[t]he law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them." *Id.*; *see also Eddings v. Oklahoma*, 455 U.S. 104, 115-16 (1982) ("Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults."); Dkt. 114 at 33 n.26 (noting

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

that "[y]outh . . . generally correlates with a lack of proficiency in reading and comprehension" and children are less in control of various aspects of their lives, from their ability to receive mail to their capacity for transportation).

Children as a class also have lesser emotional and cognitive capacities, and therefore are uniquely unable to represent themselves in immigration proceedings. "Although citation to social science and cognitive science authorities is unnecessary to establish these commonsense propositions, the literature confirms what experience bears out." *J.D.B.*, 131 S. Ct. at 2403 n.5. "[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds." *Graham v. Florida*, 560 U.S. 48, 68 (2010). These differences include a reduced ability to understand consequences, make informed judgments, and resist coercion—competencies that are all crucial to the ability to represent oneself in complex legal proceedings. *See* Dustin Albert & Laurence Steinberg, *Judgment and Decision Making in Adolescence*, 21 J. Res. on Adolescence 211, 220 (2011) (noting that "[a]dults tend to make more adaptive decisions than adolescents," in part because "they have a more mature capacity to resist the pull of social and emotional influences and remain focused on long-term goals"). "Describing no one child in particular, these observations restate what 'any parent knows'—indeed, what any person knows—about children generally." *J.D.B.*, 131 S. Ct. at 2403 (quoting *Roper v. Simmons*, 543 U.S. 551, 569 (2005)).

While Plaintiffs do not dispute the general assertion that some children are more capable than others, the law recognizes in a variety of contexts that, *as a class*, children must receive different legal treatment given their unique characteristics:

> Like this Court's own generalizations, the legal disqualifications placed on children as a class—*e.g.*, limitations on their ability to alienate property, enter a binding contract enforceable against them, and marry without parental consent—exhibit the settled understanding that the *differentiating characteristics of youth are universal*.

*Id.* at 2403-04 (emphasis added). Accordingly, children—whatever their precise ages and other circumstances—are unified by the disadvantages they encounter when they confront the legal

MOT. CLASS CERTIFICATION - 14
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

system, which include a comparative lack of ability to engage in the very activities that are necessary to ensure a full and fair hearing of their claims in immigration proceedings. *See Graham*, 560 U.S. at 78 ("[F]eatures that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings. Juveniles mistrust adults and have limited understandings of the criminal justice system and the roles of the institutional actors within it."); *In re Gault*, 387 U.S. 1, 36 (1967) ("The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child requires the guiding hand of counsel at every step in the proceedings against him.") (internal quotation marks and citations omitted); Dkt. 114 at 33 n.26 (acknowledging age might increase the risk of an erroneous ruling as children are taught not to challenge adult authority and are more susceptible to leading questions and other adult influence).

In keeping with this widespread legal, social, and scientific consensus, this country's legal systems—including the federal immigration system—frequently use the age of 18 to mark the boundary between childhood and adulthood. *See Roper*, 543 U.S. at 569 (stating that "almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent"); *id.* at 581-87 (appendices to Court's opinion cataloguing various state laws on age of voting, jury service, and marriage). Indeed, the categorical separation between individuals younger than 18 and those 18 and older has enjoyed enduring societal support:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood.

*Id.* at 574.

As this Court has already recognized, the immigration statutes and regulations acknowledge that children under the age of 18 are, as a class, unified by their diminished ability to assert their rights and defend their interests in several key areas. *See* Dkt. 114 at 33 n.26 (explaining that the

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

government has instituted "juvenile dockets" in an attempt to address the special needs of children in immigration proceedings). For example, 8 C.F.R. § 1240.10(c) prohibits "an unrepresented respondent who is . . . under the age of 18" from conceding removability, unless accompanied by a legal representative, near relative, guardian, or friend. Similarly, an "unaccompanied alien child" is defined as, *inter alia*, a child under the age of 18. *See* 6 U.S.C. § 279(g)(2). In light of the shared vulnerabilities of this class of individuals, the statute compels the Government to afford them certain protections. *See, e.g.*, 8 U.S.C. § 1232(a)(5)(D) (requiring that unaccompanied immigrant children from noncontiguous countries be placed into removal proceedings under § 1229a); 8 U.S.C. § 1232(d)(8) (requiring Government to promulgate regulations regarding asylum applications by unaccompanied children). The immigration regulations also include special provisions governing the apprehension (including specialized notice of rights), detention, and release from custody of "juveniles," who are defined as "under the age of 18 years." 8 C.F.R. § 1236.3(a); *see also* 8 U.S.C. § 1182(a)(9)(B)(iii)(I) (stating that "[n]o period of time in which an alien is under 18 years of age shall be taken into account" when determining whether an immigrant is inadmissible to the United States for having been unlawfully present in this country for certain time periods).[10]

This well-settled legal and societal consensus underscores why variations within the plaintiff class do not defeat commonality. "Where the circumstances of each particular class member vary, but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (internal quotation

---

[10] The immigration statutes and regulations sometimes draw other age lines. At times these reach as high as 21. *See, e.g.*, 8 U.S.C. § 1101(b)(1) (defining "child" as "unmarried person under twenty-one years of age" for purposes of family-based immigration provisions); 8 C.F.R. § 204.11(c)(1) (establishing that noncitizen must be under 21 years of age in order to be eligible for special immigrant status). At others it dips as low as 14. *See, e.g.*, 8 C.F.R. § 103.8(c)(2)(ii) (requiring DHS to serve charging documents upon a minor under 14 years of age by service upon the person with whom minor resides, and "whenever possible," the minor's "near relative, guardian, committee, or friend"). This in no way undermines the viability of the class definition in this case. As discussed above, "a line must be drawn," *Roper*, 543 U.S. at 574, and the plaintiff class in this case adopts 18 years of age—the most commonly accepted line of demarcation between youth and adulthood, and one widely used in the immigration laws themselves.

MOT. CLASS CERTIFICATION - 16
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

marks and citation omitted); *see also Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) ("It is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue."); *Walters*, 145 F.3d at 1046 (noting that "it would be 'a twisted result' to permit an administrative agency to avoid nationwide litigation" by pointing to minor variations in procedure).

Given the overwhelming authority establishing that children under the age of 18 share certain critical psychological and developmental characteristics, the question whether constitutional law requires legal representation for children in immigration proceedings is plainly "capable of classwide resolution," as its "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551; *see also Perez-Funez*, 611 F. Supp. at 994-96 (finding that class of "[a]ll persons who claim to be under eighteen years of age" in INS custody satisfied commonality requirement). Indeed, resolving that question once will vindicate an important purpose underlying Rule 23 by allowing for practical and efficient case management across the immigration system. *See Rodriguez*, 591 F.3d at 1122.[11]

For all these reasons, the plaintiff class in this case satisfies Rule 23(a)(2).

### 3. The Claims of the Named Plaintiffs Are Typical of the Claims of the Members of the Proposed Class.

Rule 23(a)(3) specifies that the claims of the representatives must be "typical of the claims . . . of the class." To establish typicality, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (citation omitted). As with commonality, factual differences

---

[11] Defendants have previously argued that the class lacked commonality because some children had either not entered or not been admitted to the United States, and thereby were entitled to lesser due process protections. *See, e.g.*, Dkt. 54-2 at 12-13; Dkt. 135 at 15-17. However, the class is limited to those children who, in Congress's judgment, are entitled to removal hearings before an IJ. All such individuals are protected by the Due Process Clause, as this Court has already found. Dkt. 114 at 28-29; *see also United States v. Raya Vaca*, 771 F.3d 1195, 1203 (9th Cir. 2014) (applying Due Process Clause to someone arrested shortly after illegal entry because of "the Supreme Court's repeated pronouncement that the Due Process Clause applies to all who have entered the United States—legally or not"); *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015) (certifying nationwide class of all women and children detained for removal proceedings, regardless of whether they had entered the United States or instead been apprehended prior to entry, and granting classwide relief from unlawful detention practice).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

among class members do not defeat typicality provided there are legal questions common to all class members. *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not render their claims atypical of those of the class."); *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims.") (citation omitted).

The claims of the Named Plaintiffs are typical of the claims of the proposed class. Each Plaintiff, just like each proposed class member, is an unrepresented indigent child whom the Government has placed into immigration proceedings, subject to its policy and practice of forcing children to face immigration proceedings without legal representation. Moreover, Plaintiffs share a common injury with the class they seek to represent. As a result of the Government's failure to provide legal representation, they are all deprived of full and fair immigration proceedings to determine whether they may remain in the United States.

The fact that class members qualify for *different* defenses and forms of immigration relief does not undermine commonality or typicality, as they all seek relief from the same legal injury— deprivation of their right to a fair hearing where they have an opportunity to present their defenses and applications for relief. Similarly, it does not undermine commonality or typicality that some class members have stronger claims for relief than others. Indeed, without legal representation most will not even have an opportunity to identify defenses or forms of relief that may be available. What is more, while IJs often instruct children from Central America to apply for asylum, they routinely fail to even inquire about possible eligibility for other forms of relief such as, *inter alia*, Special Immigrant Juvenile visas, U visas, or T visas. Indeed, at F.L.B.'s last hearing, the IJ did not address his potential eligibility for SIJS and focused only on the potential for an asylum claim. *See* Dkt. 157 ¶¶5-13.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

The Ninth Circuit has routinely certified classes where individuals faced different degrees of injury—differences far greater than those at issue here. In *Rodriguez*, the Ninth Circuit concluded that the petitioner's claim was not rendered atypical because his individual circumstances affected the likelihood of being granted bond. 591 F.3d at 1124 ("The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question and, therefore, cannot render Petitioner's claim atypical."). The class in *Rodriguez* included people who suffered differently as a result of their detention—some had families while others did not, for example—and they sought different forms of immigration relief and were even detained under different immigration statutes. These differences did not defeat class certification where each class member was denied the relief sought and presented the same basic constitutional issue. *See id*. at 1124 ("Though Petitioner and some of the other members of the proposed class are detained under different statutes and are at different points in the removal process and hence do not raise identical claims, they all, as already discussed, raise *similar* constitutionally-based arguments and are alleged victims of the same practice of prolonged detention while in immigration proceedings.") (emphasis added).

Similarly, the Central District of California certified a class of detained persons with serious mental disorders who lack counsel in their immigration proceedings. *See Franco-Gonzales v. Napolitano*, 2011 WL 11705815 (C.D. Cal. 2011). The Court found that the common legal issues presented—*inter alia*, whether they must be provided legal representation—were not undermined by the different fact patterns presented in removal cases. *Id*. at 10-11. *See also Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (class of prisoners challenging inadequate medical, mental, and dental care met commonality requirement, even though prisoners suffered from various distinct health problems of differing severity, because "[i]t does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member"); *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164, 181-82

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

(D.D.C. 2015) (finding commonality and typicality requirements met for class of detained women and children challenging unlawful immigration detention practices despite differences in strength and types of claims for release from detention).

Because the Named Plaintiffs and the proposed class raise common legal claims and are united in their interest and injury, the element of typicality is met.

### 4. The Named Plaintiffs Will Adequately Protect the Interests of the Proposed Class, and Counsel Are Qualified to Litigate this Action.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Walters*, 145 F.3d at 1046 (citations omitted).

#### a. *Named Plaintiffs*

The Named Plaintiffs will fairly and adequately protect the interests of the proposed class because all are in removal proceedings without legal representation and are unable to afford such representation. None have any interests antagonistic to other members of the class. Their mutual goal is to obtain relief requiring legal representation for those putative class members who lack representation and are unable to afford it. Thus, the interests of the class representatives are not opposed to those of the proposed class members; to the contrary, they coincide.

Moreover, in an action where minor plaintiffs are represented by next friends pursuant to Federal Rule of Civil Procedure 17, the next friends must be dedicated to the named plaintiffs' best interests, be familiar with the litigation, understand why the named plaintiffs seek relief, and be willing and able to pursue the case on behalf of the named plaintiffs. *Sam M. ex rel. Elliot v. Carcieri*, 608 F.3d 77, 92 (1st Cir. 2010). The next friends for Named Plaintiffs F.L.B., M.A.M., A.E.G.E., E.G.C., A.F.M.J., L.J.M., M.R.J., J.R.A.P., and K.N.S.M. who sue on their behalf, have manifested their understanding that this case is a class action. Each of them is dedicated to the best

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

interests not only of these Named Plaintiffs, but also of the other children to whom they would owe a fiduciary duty. Each of the next friends is also familiar with this litigation, understands the need for the relief sought, and is willing and able to pursue this case on behalf of these Named Plaintiffs and the class they seek to represent. *See* Dkt. 190 at Section IV.D.

### b. *Counsel*

Plaintiffs' counsel are also adequate. Counsel are deemed qualified when they can establish their experience in previous class actions and cases involving the same area of law. *See Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985); *see also Marcus v. Heckler*, 620 F. Supp. 1218, 1223-24 (N.D. Ill. 1985); *Adams v. Califano*, 474 F. Supp. 974, 979 (D. Md. 1979), *aff'd sum nom. Adams v. Harris*, 643 F.2d 995 (4th Cir. 1981).

Plaintiffs are represented by the Northwest Immigrant Rights Project, ACLU Immigrants' Rights Project, the ACLU of Southern California, the ACLU of Washington, the American Immigration Council, Public Counsel, and the law firm K&L Gates LLP. Counsel are able and experienced in protecting the interests of noncitizens and, among them, have considerable experience in handling complex and class action litigation, including litigation on behalf of immigrants with unique vulnerabilities. *See* Dkts. 123, Adams Decl.; 124, Arulanantham Decl.; 125, Crow Decl.; 126, Jackson Decl. These attorneys are counsel of record in numerous cases focusing on immigration law that successfully obtained class certification and relief, including the only prior case ever finding that a class of immigrants was entitled to legal representation at Government expense. In sum, Plaintiffs' counsel will vigorously represent both the named and absent class members.

### B. This Action Satisfies the Requirements of Rule 23(b)(2).

Plaintiffs also must meet one of the requirements of Rule 23(b) for a class action to be certified. Class certification under Rule 23(b)(2) "requires 'that the primary relief sought is declaratory or injunctive.'" *Rodriguez,* 591 F.3d at 1125 (citation omitted). "The rule does not require [the court] to examine the viability or bases of class members' claims for declaratory and

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Id.* Here, Plaintiffs challenge—and seek relief from—a systemic policy and practice that forces them to appear in immigration court and face complex adversarial proceedings without legal representation. *Accord id.* at 1126 (finding that class of noncitizens detained during immigration proceedings met Rule 23(b)(2) criteria because "all class members' [sic] seek the exact same relief as a matter of statutory or, in the alternative, constitutional right"); *see also Parsons*, 754 F.3d at 688 (Rule 23(b)(2) "requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole"); *Marisol A. ex.rel. Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (certifying under Rule 23(b)(2) class of children seeking declaratory and injunctive relief from systematic failures in child welfare system). Defendants' actions in forcing proposed class members to represent themselves constitute action "on grounds generally applicable to the class, thereby making appropriate … declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Hence, the requirements of Rule 23(b)(2) are met.

## IV.     CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and enter the attached order certifying this challenge to Defendants' policy as a class action and defining the class as set forth in Section I, *supra*.

Dated this 16th day of October, 2015.

Respectfully submitted,

s/ Matt Adams
Matt Adams, WSBA No. 28287
Glenda M. Aldana Madrid, WSBA 46987
NORTHWEST IMMIGRANT
 RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

MOT. CLASS CERTIFICATION - 22
Case No. 2:14-cv-01026-TSZ

s/ Ahilan Arulanantham
Ahilan Arulanantham, Cal. State Bar. No. 237841 (*pro hac vice*)
ACLU IMMIGRANTS' RIGHTS PROJECT
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)

Cecillia Wang, Cal. State Bar. No. 187782 (*pro hac vice*)
Stephen Kang, Cal. State Bar No. 292280 (*pro hac vice*)
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
(415) 343-0950 (fax)

Carmen Iguina, Cal. State Bar No. 277369 (*pro hac vice*)
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)

Kristen Jackson, Cal. State Bar. No. 226255 (*pro hac vice*)
Talia Inlender, Cal. State Bar No. 253796 (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
(213) 385-9089 (fax)

Emily Creighton, D.C. Bar No. 1009922 (*pro hac vice*)
Kristin Macleod-Ball (*pro hac vice*)
Melissa Crow, D.C. Bar No. 453487 (*pro hac vice*)
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
202-507-7500
202-742-5619 (fax)

Theodore Angelis, WSBA No. 30300
Todd Nunn, WSBA No. 23267
Heidi Craig Garcia, WSBA No. 41399

MOT. CLASS CERTIFICATION - 23
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

K&L GATES
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
(206) 623-7580
(206) 623-7022 (fax)

Margaret Chen, WSBA No. 46156
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184

*Counsel for Plaintiffs-Petitioners*

# CERTIFICATE OF ECF FILING AND SERVICE

I hereby certify that on October 16, 2015, I arranged for electronic filing of the foregoing document, along with the supporting declarations and exhibits, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record:

s/ Matt Adams
Matt Adams, WSBA No. 28287
NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)
E-mail: matt@nwirp.org

MOT. CLASS CERTIFICATION - 25
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025