Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.L.B., a minor, by and through his Next
Friend, Casey Trupin, et al.,

                Plaintiffs-Petitioners,

     v.

Loretta Lynch, Attorney General, United
States, et al.,

           Defendants-Respondents.

No. 2:14-cv-01026

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' RENEWED MOTION
FOR CLASS CERTIFICATION

NOTING DATE: November 13, 2015

Oral Argument Requested[1]

---

[1] Defendants request the opportunity to be heard on this motion and respectfully suggest that the motion would benefit from argument in tandem with Defendants' anticipated motion to dismiss the third amended complaint.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

# INTRODUCTION

Plaintiffs again request certification of a vast and varied nationwide class of aliens that have little – save their status as minors – in common. Some will have their claims to relief from removal adjudicated through non-adversarial proceedings, while others will obtain lawful status automatically through the relief granted to their parents; some have a relationship with the United States, while others were identified before crossing the nation's border at the port of entry. These widely-varying circumstances make it such that the Government has not acted uniformly with regard to the proposed class and, as a result, their claims cannot be commonly adjudicated. The proposed class, therefore, fails to meet the requirements to proceed as a class under Federal Rule Civil Procedure 23(b)(2).

Plaintiffs' renewed motion for class certification fails to address the many deficiencies Defendants previously identified regarding the overly-expansive scope of the proposed class. Instead, Plaintiffs have only further demonstrated why class treatment is untenable by proposing a number of class representatives who have not effected an entry into the United States and, therefore, are not entitled to any additional process under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1974), the very test Plaintiffs propose as establishing a common legal question capable of class-wide resolution with a single declaration. The new proposed class representatives fail to cure the defects in Plaintiffs' proposed class and are not adequate representatives with claims typical of the class they seek to represent.

Defendants ask this court to again deny Plaintiffs' motion for class certification. As an initial matter, Defendants note that it is premature to decide the class certification motion without first adjudicating Defendants' forthcoming motion to dismiss Plaintiffs' Third Amended Complaint which Defendants intend to file shortly after the Court rules on Plaintiffs' motion to amend. Before the Court can determine whether certification is appropriate, the Court must first ascertain the parties to the litigation, the claims being asserted, and the relief being sought. Because none of these issues are settled at this time, it is appropriate to defer certification of a class. As the litigation now stands, however, the Court has determined that the only relief available would be a declaration, the enforcement of which would be on a case-by-case basis. As

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

a result, the class-action vehicle does not promote efficiency and is, in any event, ill-suited to the individualized factual determinations demanded by proper due process analysis. Therefore, individual as-applied challenges provide a better forum for ascertaining eligibility for relief and tailoring that relief to the individual. Alternatively, should the Court find a certifiable class, the class must be limited to individuals who face removal proceedings in the Western District of Washington in order to: prevent forum shopping; allow a complicated legal issue to develop in different jurisdictions that have already expressed differing views on the issues presented in this case; and permit the court to focus on assessing the processes available to juveniles in its own jurisdiction, rather than in other jurisdictions.

## PROCEDURAL BACKGROUND

On June 19, 2015, this Court denied without prejudice Plaintiffs' motion for class certification, ECF 117. *See* ECF 160. On August 27, 2015, the Court issued its written order explaining that Plaintiffs' proposed class is "far too broad." ECF 174 at 3. The Court found the Plaintiffs to be inadequate class representatives based on developments in their removal cases. *Id.* at 4. Three of the Plaintiffs (J.E.F.M., J.F.M., and D.G.F.M.) have been granted asylum and are no longer in removal proceedings. *Id.* at 5. Another Plaintiff (J.E.V.G.) retained a lawyer and will never again appear in immigration court as a juvenile. *Id.* Yet another Plaintiff (M.A.M.) received Special Immigrant Juvenile status and is now eligible to apply for Legal Permanent Residence. *Id.* Two other Plaintiffs (S.R.I.C. and G.M.G.C.) withdrew their claims after obtaining pro bono counsel for representation in their removal proceedings. ECF 117 at 7 n.4. The Court noted that "the developments in the immigration proceedings involving [the Plaintiffs] highlight 'typicality' and 'fair representative' problems" inherent in the class definition. *Id.*

Rather than address the underlying concerns that rendered the Plaintiffs ill-suited to represent the putative class, Plaintiffs have simply added more class representatives. On October 16, 2015, Plaintiffs filed their Third Amended Complaint, ECF 190, concurrently with the Renewed Motion for Class Certification, ECF 191. Plaintiffs move to certify a class of "all individuals under the age of eighteen who are in immigration proceedings on or after July 9, 2014, without legal representation in their immigration proceedings and who are financially

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

unable to obtain such representation." ECF 191 at 2.[1]

## LEGAL STANDARD FOR CLASS CERTIFICATION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23. *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011). The burden of a party seeking certification of a proposed class includes demonstration of the existence of the required elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure, including that: (1) there are questions of law or fact common to the class ("commonality"); (2) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); and (3) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation"). *See* Fed. R. Civ. P. 23(a). The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). In this case, Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(2), which permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the

---

[1] Defendants note that the Court denied Plaintiffs' original class definition in part because it ran afoul of the jurisdiction-stripping provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which prohibits challenges "arising from the decision or action by the Attorney General to commence proceedings." 8 U.S.C. § 1252(g). Although Plaintiffs attempt to remedy this fatal defect by excising the words "will be" from their class definition, the proposed class definition, if accepted, will still apply to all individuals who 'will be' placed into removal proceedings after July 9, 2014." While Defendants oppose certification of the class in its entirety, this particular defect can only be remedied by limiting the proposed class to individuals who are in removal proceedings as of the date of the third amended complaint.

3
OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

class members or as to none of them.'" *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2557. If a court is not convinced that the Plaintiff has fully satisfied all of the Rule 23 requirements, the class cannot be certified. *Gen. Tel. Co.*, 457 U.S. at 160.

## ARGUMENT

This Court has already held that it lacks jurisdiction over Plaintiffs' statutory claims. As a result, Plaintiffs' only claim for relief is brought pursuant to the Fifth Amendment's Due Process Clause, a claim the Court has held requires the application of the highly-individualized and fact-intensive analysis established by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1974). The *Mathews* test requires the consideration of three factors: (1) the significance of the private interest at issue in the underlying proceeding; (2) the risk of an erroneous deprivation of that interest under the current procedures employed and the probable benefits of any additional procedural protections; and (3) the Government's interest in avoiding the fiscal and administrative burdens that those additional protections would impose. *Id*. These factors each call for the Court to conduct a careful examination of the facts and circumstances surrounding an individual's removal case and their concomitant due process claim.

The due process claims of the putative class are not capable of uniform resolution and therefore cannot support class treatment under such an expansive class definition. Individual facts and circumstances, including the child's status as accompanied or unaccompanied, the child's ability to effectively convey information about his or her claims, and the available safeguards attendant to each different type of claim for relief from removal, which differ by jurisdiction, have a direct bearing on an individual minor's potential entitlement to relief. This point is plainly demonstrated by Plaintiffs' individual removal cases, where the existing safeguards have resolved their individual due process claims without the need for appointed counsel at the Government's expense. As a result, Plaintiffs' putative class fails based on Plaintiffs' failure to show the class faces a common legal question that is capable of being answered as to all or none of the class. The expansive scope of the class also renders Plaintiffs inadequate to represent the varied interests and claims of the putative class. Defendants urge the Court to decline to certify such a broad class in favor of allowing the Court to individually

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

evaluate the facts and circumstances of an individual Plaintiff's claim in determining whether due process was satisfied.

## I. Plaintiffs have failed to meet their burden of showing that the proposed class shares a common legal claim capable of uniform resolution.

To obtain class certification, Plaintiffs must demonstrate that the proposed class is entitled to common relief. *See* Fed. R. Civ. P. 23(a)(2), (b)(2). Regarding Rule 23(a)(2), the Supreme Court has repeatedly held that "[i]t is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc.,* 131 S. Ct. at 2551. This requirement is likewise present in Rule 23(b)(2), the Rule under which Plaintiffs seek certification.[2] For certification under Rule 23(b)(2), Plaintiffs must show that "declaratory relief is available to the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2557. Accordingly, Plaintiffs have the burden of demonstrating that the factual differences in the class are unlikely to bear on the individual's entitlement to declaratory relief. *See In re Google AdWords Litigation*, No. 5:08–CV–3369 EJD, 2012 WL 28068 *15-16 (N.D. Cal. Jan. 5, 2012) ("The question of which advertisers among the hundreds of thousands of proposed class members are even entitled to restitution would require individual inquiries."). If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification may not be appropriate. *Cf. Califano*, 442 U.S. at 701. Satisfaction of Rules 23(a)(2) and (b)(2), therefore, requires two steps: (1) the identification of a common legal problem, *see Ellis v. Costco*, 657 F.3d 970, 981 (9th Cir. 2011); and, (2) a demonstration that the common legal issue may be resolved as to all class members simply by virtue of their membership in the class. *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2551, 2557 (the common legal

---

[2] Plaintiffs suggest that, alternatively, the class may be certified as a "representative habeas corpus action." ECF No. 191 at 9 n.5. This suggestion is wrong on two counts. First, using the habeas petition as a class vehicle does not save the Plaintiffs from having to satisfy one of the Rule 23(b) grounds for class certification. *Zinser*, 253 F.3d at 1186 ("While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23."). Second, the proposed class is not in custody and, therefore, not entitled to petition the court for a writ of habeas corpus. *See, e.g., See Masoud v. Filip*, No. 08-CV-6345, 2009 WL 223006 (W.D.N.Y. January 27, 2009) (release from administrative detention terminates custodial detention under 28 U.S.C. § 2241).

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

problem "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*." (emphasis added)).

Although Plaintiffs attempt to identify a common legal question (class entitlement to Government-funded counsel), that question cannot be answered with a simple "yes" or "no" with respect to the class as a whole.[3] This is because the Government has not acted or refused to act in the same manner as to all of the individuals in the putative class. Fed. R. Civ. P. 23(b)(2). The Government interacts with members of the putative class in very different ways depending on the resources available in the location of the child's hearings, their legal status, their claims for relief, and the presence (or absence) of the child's parents. Exhibit A, Deposition of Hon. Jack Weil ("Weil Dep.") at 145:24-147:14. These are more than nominal differences; they are differences that may impact the policies and procedures applied to the individual and, in the case of unaccompanied alien children, the very statutory regime that governs their removal. Accordingly, the class is not certifiable under Rule 23(b)(2).

### A. Plaintiffs cannot demonstrate entitlement to uniform relief because there is no categorical right to counsel at taxpayer expense for all indigent minors in immigration proceedings.

This framework follows from the fact that Plaintiffs' claim is categorical in nature: they assert that *all* minors, regardless of circumstance, are entitled to an attorney at the Government's expense throughout their removal proceedings. To remedy their identified harm, they ask the Court to certify a class encompassing all unrepresented minors in immigration proceedings so that they might obtain a declaration that "Defendants must provide legal representation to Plaintiffs and all other child class members in order to comply with the requirements of due process under the Fifth Amendment." ECF 191 at 2. This framing of the legal issue renders Plaintiffs' motion for class certification fatally flawed. That is because the only way Rules 23(a)(2) and (b)(2) can be satisfied under this formulation is if the Court determines, under

---

[3] Indeed, Plaintiffs' own characterization of their requested relief recognizes the need for a more complex response: "Plaintiffs ask only that the Court determine whether Defendants' policy and practice is unlawful, and *if so, what procedures Defendants must implement to protect the constitutional rights of Plaintiffs and the proposed class members*." ECF No. 191 at 11 (emphasis added).

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

*Mathews*, that all minors, regardless of individual circumstances, are categorically entitled to an attorney at government expense.[4]

Because it is Plaintiffs' burden to satisfy Rule 23's requirements, they must demonstrate to the Court that all class members, as a matter of law, have a constitutional right to counsel at the Government's expense during their immigration proceedings. Their motion for class certification is devoid of such argument, and does not contain even a single reference to the *Mathews* test. The Court must conduct a "rigorous analysis," and, if necessary, "probe behind the pleadings" to determine whether the right Plaintiffs assert even exists such that there could even be common injuries amenable to uniform relief. *Wal-Mart Stores*, 131 S. Ct. at 2551-52 ("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.").

This is necessary here, because if there is no categorical right to counsel, it cannot be said, let alone demonstrated by "rigorous analysis," that the putative class has "suffered the same injury" and that this injury "is capable of classwide resolution" with a single declaratory order. *Id.* Because the propriety of Plaintiffs' motion and class definition turns entirely on the underlying merits question embedded within their class definition – i.e. whether all indigent immigrant minors in immigration proceedings have a categorical right to taxpayer-funded counsel – the Court must first analyze the merits of the proposition under the Rule 23 framework. *See, e.g.*, *Dozier v. Haveman*, 2014 U.S. Dist. LEXIS 153395, *40-41 (E.D. Mich. 2014) (noting overbreadth of class definition premised on whether proposed class was "provided a constitutionally adequate pre-termination notice and opportunity for a hearing" such that "Plaintiffs' proposed class requires a merits determination on a central issue."). Plaintiffs cannot satisfy their burden of demonstrating a categorical right to counsel. *See, e.g.*, *Turner v. Rogers*, 131 S. Ct. 2507, 2520 (2011) (finding no categorical right to appointed counsel in civil contempt proceedings even where the individual faces incarceration).

If, as the Court concluded, the *Mathews* test governs Plaintiffs' sole remaining claim, by

---

[4] As an example, in order for Plaintiffs' class to be certified, the Court must declare that a 17-year old with no relief claim being removed to Vancover from Seattle with his parents for overstaying a visitor's visas has the same due process right to taxpayer-funded counsel as a three-year old unaccompanied minor seeking asylum.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

definition, that claim is not susceptible to producing a single answer to the question of whether each putative class member individually is entitled to counsel because *Mathews* requires case-by-case analysis after the conclusion of removal proceedings, not a class-wide balancing before proceedings have actually occurred. Indeed, the very case on which Plaintiffs hang their categorical claim, *Turner v. Rogers*, 131 S. Ct. 2507 (2011), rejects it.[5] *Id.* at 2011. In any event, because Plaintiffs bear the burden of satisfying Rule 23, their failure to demonstrate they could win this claim on the merits is determinative of their motion. *See Wal-Mart Stores*, 131 S. Ct. at 2551.

Plaintiffs separately argue that "children 'as a class' 'lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them,'" and thus "cannot obtain a fair hearing that comports with due process without legal representation." ECF 191 at 3 (citing *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011)).[6] This claim has already been disproven by the very facts of this case, where several named Plaintiffs have already obtained relief without having been provided government appointed counsel. Additionally, this assertion doubles down on Plaintiff's categorical error, as before certifying such a class, the Court would similarly need to determine that *all minors*, regardless of individual circumstances, *categorically* "lack the capacity" to participate in their immigration proceedings. That too renders their claims dead on arrival, as no such categorical rule of law exists. Rather, the very *Mathews* case Plaintiffs repeatedly have asserted supplies this case's analytical framework, is subject to case-by-case analysis. *See, e.g. Turner*, 131 S. Ct. at 2011. Because Plaintiffs' *categorical* merits claim is embedded in and inextricably intertwined with their proposed class definition, Plaintiffs cannot rest on their pleadings. The Court must "probe behind the pleadings" and first conclude Plaintiffs' assertion of categorical rights applicable to

---

[5] Plaintiffs' citation to *Aguilera-Enriquez v. INS*, 516 F.2d 565 (6th Cir. 1975) and *Jie Lin* , 377 F.3d at 1032-34, are similarly inapt. *Aguilera* stated in passing that an "unrepresented indigent alien" could "require counsel to present his position adequately to an immigration judge," not that *all* indigent aliens, let alone minors, must receive a lawyer. 516 F.2d at 568 n.3. And *Jie Lin* undermines Plaintiffs' own argument, noting that the Ninth Circuit makes "fundamental fairness" determinations *on a case-by-case* based on record review. 377 F.3d at 1033. Such case-by-case analysis of individual-specific factors is fundamentally at odds with Plaintiffs' assertion of a categorical right.
[6] Plaintiffs fail to note that *J.D.B.* involved the relevance of a child's age to whether that child is in "custody" for purposes of *Miranda* warnings, an issue in *criminal* proceedings. 131 S. Ct. at 2405-6.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

all indigent minors is in fact the law. It is not, and therefore Plaintiffs cannot "affirmatively demonstrate [] compliance" with Rule 23. *Wal-Mart*, 131 S. Ct. at 2551; *accord Ellis*, 657 F.3d at 981 ("court must consider the merits if they overlap with the Rule 23(a) requirements.").

**B.    Plaintiffs cannot show that the class is entitled to uniform relief under the highly-flexible due process standard and an individualized application of the *Mathews* test.**

**1.    Due process requires a case-by-case analysis that is not appropriate for class treatment.**

Plaintiffs' due process claims are not capable of the type of "all or nothing" adjudication necessary for class certification under Rule 23(a)(2) and (b)(2). Although the Supreme Court has instructed courts to "probe behind the pleadings" and "rigorous[ly] analy[ze]" whether the class is entitled to common relief, *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2551, to resolve this issue, the Court need only look to the highly-individualized test Plaintiffs claim governs their sole legal claim. It is well-settled that "the requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (citing *Morrissey v. Brewer,* 408 U.S. 471, 481, (1972)). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Lujan v. G&G Fire Sprinklers, Inc*., 532 U.S. 189, 196 (2001). As a result, the Supreme Court has "declined to establish rigid rules" and instead employs the *Mathews* test to evaluate the sufficiency of particular procedures. *Id*.

The *Mathews* test considers three factors: (1) the significance of the private interest at issue in the underlying proceeding; (2) the risk of an erroneous deprivation of that interest under the current procedures employed and the probable benefits of any additional procedural protections; and (3) the government's interest in avoiding the fiscal and administrative burdens that those additional protections would impose. *Mathews*, 424 U.S. at 335. Each of these factors presents fact-intensive inquiries that are not suited to classwide resolution. *See Daskalea v. Washington Humane Soc*., 275 F.R.D. 346 (D.D.C. 2011) ("[W]hether a particular class member was denied due process will turn on the fact-intensive inquiry demanded by *Mathews* and its progeny . . . ."). This is particularly so here. The individual characteristics of the members of Plaintiffs' proposed class and the varied procedural protections available to proposed class

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

members make it impossible for the Court to uniformly apply the *Mathews* factors and order one-size-fits-all relief.[7] *See Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004) (holding that due process determinations regarding minors in removal proceedings should take into account individual circumstances).

### 2. The class is composed of individuals with different private interests at stake in their removal proceedings.

Under the first step of the *Mathews* test, the Court must identify the private interest affected by the removal proceedings and evaluate the significance of the individual interest. *Mathews*, 424 U.S. at 335. The proposed class's private interests are varied in two respects.

First, not all members of the proposed class have interests that will be decided in the removal proceeding. Under the Trafficking Victim Protection Reauthorization Act ("TVPRA"), when an unaccompanied child requests asylum, the child is first provided with the opportunity to present his or her asylum claim to an asylum officer in a non-adversarial interview outside of removal proceedings. 8 U.S.C. § 1158(b)(3)(C). Although immigration proceedings may continue in parallel to the interview process, immigration judges have the discretion to grant continuances or administrative closure to allow the non-adversarial process to be completed prior to resuming removal proceedings. As a result, these individuals may be putative class members, but their relief claims will not be adjudicated by an immigration court. The strength of these individuals' interest in being represented in the removal proceedings is, therefore, considerably weaker than that of another class member whose claims will be adjudicated in immigration court. This difference is especially noteworthy where the unaccompanied child has legal representation in his or her asylum interview process, the process through which the relief claim will be adjudicated. For such children, their lack of representation during their removal proceedings

---

[7] Plaintiffs' class cannot be saved by limiting it to minors who might be entitled to counsel under *Mathews*. "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class." *See Chiang v. Veneman*, 385 F.3d 256, 272 (3d Cir. 2004). In that scenario, the Court could only determine whether someone is a member of the class by first determining *Mathews* provided an individual Plaintiff a right to counsel in their specific circumstances, such that "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *See Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). That of course is fatal to certification. *See, e.g.*, *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999).

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

cannot be constitutionally deficient given that they are represented in the proceeding in which their entitlement to relief from removal will be decided.

Second, the strength of the private interest is dependent on the nature of the relief the proposed class member is seeking in the proceedings. The interest a class member has in obtaining a form of relief from removal that is purely discretionary is considerably different than the substantially greater interest a class member may have proving a citizenship claim. *See, e.g., Smith v. Ashcroft,* 295 F.3d 425, 430 (4th Cir. 2002) (aliens have no protected liberty or property interest in a waiver of deportation under former INA § 212(c) because such relief is discretionary); *Oguejiofor v. Attorney Gen. of the U.S.,* 277 F.3d 1305, 1309 (11th Cir. 2002) ("[A]n alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief."). That interest is likewise different if the child does not have any grounds for relief from removal. *See Enriquez v. Imm. & Nat. Serv.*, 516 F.2d 565, 567-68 n.3 (6th Cir. 1975) ("[T]he absence of counsel . . . before the Immigration Judge did not deprive his deportation proceeding of fundamental fairness" because "there was no defense for which a lawyer would have helped."). As one of many examples that Defendants could provide, it is simply illogical to claim that an indigent unaccompanied minor seeking asylum has the same private interest at stake as an exchange student here on a student-visa who is being removed for selling drugs at their school and has no claim for relief from removal. These differences, despite being potentially dispositive of the *Mathews* analysis, are not accounted for by Plaintiffs' proposed class.

        3.       **The proposed class presents an infinite number of factual permutations with the potential to impact the "risk of erroneous deprivation" analysis under the second *Mathews* factor.**

Under the second *Mathews* factor, the Court must evaluate the risk of an erroneous deprivation of the individual interest through the procedures currently in place, and the probable value, if any, of additional or substitute procedural safeguards. In this context, the question is whether the child's lack of government-funded representation is likely to result in an erroneous denial of relief. A host of interconnected factors have the potential to impact the Court's analysis of this factor. Factors such as the individual characteristics of the alien, the circumstances of

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

their entry, and the relative strength or complexity of their claims each have the ability, separately or together, to impact the risk of erroneous deprivation. To illustrate the many permutations which exist that might impact the analysis, below is a non-exhaustive list of factors with the potential to determine an individual class member's entitlement to relief under the second *Mathews* factor. Because the proposed class is not defined in a way that accounts for these legally-significant differences, it is not possible to resolve the question of entitlement to relief on the basis of class membership alone.

### i. Accompanied v. Unaccompanied Status

Whether an alien is accompanied or unaccompanied is an important factual difference among class members that prevents uniform resolution of their due process challenge. It has at least three impacts on the child's "risk of erroneous deprivation."

First, the INA provides alien children the opportunity to obtain legal immigration status by virtue of the award of such status to the child's parent. An alien child present in the United States with a parent ("accompanied child"), whose parent files an application for asylum, has, by operation of law, the capacity to be a derivative asylum applicant on the parent's application. *See* 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 1208.21. Significantly, this capacity attaches whether or not the child is eligible for asylum him or herself. 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 1208.21. Similarly, a child may be eligible for derivative status if his or her parent is granted a visa under 8 U.S.C. §§ 1101(a)(15)(T) or (U). *See, e.g.*, 8 U.S.C. § 1101(a)(15)(T)(ii)(III). These statutory provisions allow an unrepresented child to benefit from the protection of a parent without the need for the child to present any evidence in an immigration court proceeding. In these cases, there is no risk of erroneous deprivation resulting from the child being unrepresented in his or her removal proceedings, especially if the child's parent is represented by counsel. A determination regarding the child's eligibility for relief is made almost entirely within the context of the parent's removal proceedings. As a result, the child's interests may be properly safeguarded by the parent (and, where applicable, the parent's counsel). Therefore, the child's due process interest in separate counsel is considerably lower than the interest of a child who

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

does not have a parent present in the United States.[8]

Second, even where an accompanied child is not pursuing derivative relief, the parent's presence may be sufficient to safeguard the child's interest. *See e.g. Troxel v. Granville*, 530 U.S. 57, 66 (2000) (recognizing that it is parents who "make decisions concerning the care, custody, and control of their children."); *U.S. v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012) (recognizing that it is the right and duty of parents to make decisions regarding whether their children should be naturalized). Claims to relief from removal are highly factual questions. As a result, the parent's ability to relay sufficient information about their child's claim may provide the assistance necessary to help the child obtain relief. Further, there is no question that most adults have the ability to represent themselves in immigration proceedings. *See Magallanes-Damian v. INS,* 783 F.2d 931, 933 (9th Cir. 1986) (holding that "Deportation hearings are deemed to be civil, not criminal, proceedings. . . As a consequence, petitioners have no constitutional right to counsel under the sixth amendment.").

Finally, the TVPRA affords unaccompanied alien children protections designed to make the process for requesting relief from removal more accessible. Under the general regulatory provision governing such interviews, 8 C.F.R. § 208.9(b), "[t]he asylum officer shall conduct the interview in a non-adversarial manner and . . . [t]he purpose of the interview shall be to elicit all relevant and useful information bearing on the applicant's eligibility for asylum." If these children are successful in obtaining relief before the asylum officer, they may be able to have their removal proceedings before the immigration judge closed or terminated. Even if a minor is not represented in the asylum interview, the non-adversarial interview provides a setting in which a minor can comfortably answer all relevant questions about their lives in their home country and their fear of removal. Therefore, this case is readily distinguishable from the *pro se* cases this Court invoked as its basis for denying Defendants' motion to dismiss. ECF 114 at 27-36 (citing *Turner*, 131 S. Ct. at 2520). This issue is not simply theoretical, Plaintiffs J.E.F.M., J.FM., D.G.F.M., and F.L.B. have obtained relief in these non-adversarial proceedings.

---

[8] Indeed, awarding counsel to a child seeking only derivative status would effectively serve as an order requiring the Government to provide counsel to the child's parent. Such an order is beyond the scope the due process clause and is specifically foreclosed by two statutes enacted by Congress. *See* 8 U.S.C. §§ 1229a(b)(4)(A); 1362.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

### ii.    Abilities of the Child

The risk of erroneous deprivations may also vary according to the child's ability to convey the information necessary to make a claim for relief. In order for certification to be proper for a class encompassing all unrepresented minors, Plaintiffs must make an initial showing that all minors lack capacity to represent themselves in immigration court such that they have a shared due process claim capable of uniform resolution. Plaintiffs have not defended that claim – and in fact acknowledge that it is not true. ECF 191 at 15 ("Plaintiffs do not dispute the general assertion that some children are more capable than others . . . ."). Instead, Plaintiffs appear to take the position that relief is appropriate because the line must be drawn somewhere. *Id.* at 12-15. The Ninth Circuit has recognized that due process determinations regarding minors in removal proceedings "should take into account the minor's age, intelligence, education, information, and understanding and ability to comprehend." *See Jie Lin*, 377 F.3d at 1033. In the due process context, the law discourages line drawing, and promotes individualized assessments of the facts and circumstances surrounding the claim. *See Mathews*, 424 U.S. at 334 ("due process is flexible and calls for such procedural protections as the particular situation demands"). Indeed, this Court has raised concerns that some of Plaintiffs' claims "presuppose[] cognitive limitations on the part of all alien juveniles that the Court is not ready to accept." ECF 114 at 5. This common-sense recognition by the Court is precisely why class certification is inappropriate in this case.

### iii.    Available Safeguards

Despite the unavailability of funding for the appointment of paid counsel for all children in immigration proceedings, Congress, the Executive Office of Immigration Review ("EOIR"), the Department of Homeland Security ("DHS"), and the Department of Health and Human Services ("HHS") have implemented a number of safeguards and initiatives geared toward protecting the interest of children appearing in immigration court.

First, the immigration regulations require that unrepresented aliens must be advised of their right to counsel at their own expense and the availability of free legal services. 8 C.F.R. § 1240.10(a)(1), (2). Immigration judges have discretion to grant continuances for good cause

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

shown, 8 C.F.R. § 1003.29, and, therefore, have the authority to grant continuances to accommodate the search for an attorney. The factual allegations and charges in the alien's Notice to Appear must be explained to the alien in non-technical language. 8 C.F.R. § 1240.10(a)(6). By regulation, an immigration judge may not accept admissions from an unrepresented individual under the age of eighteen who "is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend . . . ." 8 C.F.R. § 1240.10(c). As a result, unaccompanied children are not asked to state whether they admit to or deny the charges or represent whether they plan to challenge their removability at their initial appearances. *See id*.

Second, during the proceedings, immigration judges are required to ask questions designed to elicit testimony on possible avenues of relief available to the aliens before them and to provide the opportunity to make an application for forms of relief for which the aliens might be eligible. *See* 8 C.F.R. § 1240.11(a)(2). A due process violation may result if an immigration judge fails to notify an alien of all possible avenues of relief for which he is eligible. *See United States v. Lopez-Velasquez*, 2010 LEXIS 24889, *6-*8 (9th Cir. Dec. 7, 2010) (citing *United States v. Copeland,* 376 F.3d 61, 70-73 (2d Cir. 2004); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004)). It has been recognized that, in the case of an unrepresented alien,

> it is the [immigration judge's] duty to "fully develop the record." *Jacinto v. INS,* 208 F.3d 725, 733-34 (9th Cir. 2000). Because aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the [immigration judge] "*scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Id.* at 733 (*quoting Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)).

*Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (emphasis added).

Third, all immigration judges receive training on providing fair hearings for unrepresented children. Executive Office for Immigration Review, Operating Policies and Procedures Memorandum 07-01: *Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children* (2007) ("OPPM 07-01"), *available at* http://www.justice.gov/sites/default/files/eoir/legacy/2007/05/22/07-01.pdf. Immigration judges are provided with guidance and suggestions for adopting procedures to ensure that the child

"understands the nature of the proceedings, effectively presents evidence about the case, and has appropriate assistance." OPPM 07-01 at 2. These procedures include making the courtroom more accessible, providing additional explanation of the process, employing child-sensitive questioning techniques. *Id*. at 4-8. Immigration judges are encouraged to adjudicate motions in a manner that best ensures that the child is able to obtain appropriate assistance. *Id*. at 8. Specifically, immigration judges are encouraged to grant continuances to allow appropriate time for the child to secure representation or to allow the child to obtain relief through other channels. *Id*. Indeed, the Office of the Chief Immigration Judge has made clear that "nothing in the priority scheduling of cases involving unaccompanied children for a first master calendar should in anyway inhibit an Immigration Judge's authority to grant continuances." Office of the Chief Immigration Judge, Docketing Practices Relating to Unaccompanied Children's Cases in Light of New Priorities (Mar. 24, 2015), available at http://www.justice.gov/sites/default/files/eoir/legacy/2014/09/30/Docketing-Practices-Related-to-UACs-Sept2014.pdf. Immigration judges are also encouraged to explore whether a child would benefit from a change of venue and grant such relief without requiring a formal motion. OPPM 07-01 at 8. EOIR has also issued *amicus curiae* guidance, which outlines the ways in which an immigration court may employ friends of the court to help immigration judges manage juvenile hearings and enhance the child's understanding of the immigration court process. *See* Office of the Chief Immigration Judge, The Friend of the Court Model for Unaccompanied Minors in Immigration Proceedings, Sept. 10, 2014, *available at* http://www.americanbar.org/content/dam/aba/administrative/immigration/UACFriendCtOct2014.authcheckdam.pdf.

Fourth, EOIR offers legal orientation presentations to the adult custodians of unaccompanied alien children (and often to the children themselves) in EOIR removal proceedings through its Legal Orientation Program for Custodians of Unaccompanied Children ("LOPC"). *See* EOIR's Office of Legal Access Programs, Oct. 22 2014, *available at* http://www.justice.gov/eoir/pr/eoir-expands-legal-orientation-programs. The LOPC providers offer general group orientations, individual orientations, self-help workshops, and assistance with pro bono referrals that are designed to help increase pro bono representation rates of

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

unaccompanied alien children in immigration proceedings. *Id.* To date, EOIR has contracted with non-profit partners to carry out the LOPC at 14 sites nationwide. *Id.* The LOPC also operates a national call center to assist custodians. *Id.* Available telephonic assistance includes legal orientations on the immigration court process, as well as guidance in filing change of address forms and motions to change venue. *Id.*

Finally, the Government is promoting pro bono representation of children on a number of fronts. In June 2014, EOIR announced a partnership with AmeriCorps to enroll approximately 100 lawyers and paralegals to provide legal services to unaccompanied children. Office of Public Affairs, June 6, 2014, *available at* http://www.justice.gov/opa/pr/justice-department-and-cncs-announce-new-partnership-enhance-immigration-courts-and-provide. The program is currently providing support in 24 immigration courts. *See* http://joinjusticeamericorps.org/news/. In addition to the efforts being made by EOIR, HHS awarded $9 million to two grantees to provide legal services to unaccompanied children with the goal of providing paid counsel to approximately 2,600 additional unaccompanied children through the completion of their immigration proceedings. *See* Fact Sheet: Expanding Access to Legal Representation, Oct. 22, 2014, *available at* https://www.whitehouse.gov/the-press-office/2014/09/30/fact-sheet-president-obama-and-hispanic-community. Finally, EOIR has encouraged facilitation of pro bono representation of children by, where possible, offering predictable scheduling to pro bono counsel and organizing wide-ranging training for pro bono counsel. *Id.*; *see also* OPPM 07-01.

As a result of the wide variety of safeguards and initiatives, the unique facts and circumstances of each juvenile's case will interact with the available safeguards in different ways. This is because immigration judges have broad authority to adapt courtroom procedures to promote the child's participation in removal proceedings. This may happen in a number of ways, including:

- An unaccompanied child with an asylum claim is granted successive continuances while USCIS adjudicates the results of their non-adversarial asylum interview.
- A child who is initially unrepresented is successfully matched with pro bono counsel through court programs that encourage pro bono representatives to be present for

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

hearings on the juvenile docket.

- The child is able to rely on the help and assistance of the friend of the court to answer the questions necessary for the court to adjudicate the child's application for relief from removal.

- The child's custodian, after being encouraged to take advantage of the LOPC program and its resources, is able to represent the child's interests in court.

- A seventeen-year-old minor reaches the age of eighteen during removal proceedings.

- The immigration judge identifies that the child may be eligible for relief and asks the child appropriate questions to elicit the information necessary to determine whether to grant relief.

- The child is granted a change of venue to a location where a relative resides so that the relative may assist the child with his or her removal proceedings.

These examples represent only a few ways in which the individual facts and circumstances and the available safeguards may converge to protect the rights of the proposed class. Because juveniles are not entitled to uniform relief under the *Mathews* test simply because they are under the age of 18 and unrepresented in immigration court proceedings, the class is not entitled to certification.

C. **The proposed class also lacks a common legal issue because it includes groups to whom the *Mathews* test does not apply.**

In addition to soldering together factually-distinct due process claims, Plaintiffs' proposed class includes many individuals apprehended at the border who have no relationship with the United States and whom the Supreme Court has already held do not possess due process rights not conferred by Congress through a statute. Juveniles identified at the border are not entitled to any additional process under the *Mathews* test. As discussed above, in order to satisfy Rule 23(a)'s commonality requirement, it is necessary that the class members' claims present a common question of law. Because the class's individual claims cannot be adjudicated under a common legal principle or standard, Plaintiffs fail to satisfy this requirement.

"[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United States v.*

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

*Verdugo–Urquidez*, 494 U.S. 259, 271 (1990). Because arriving aliens, or aliens who have not had any contact with the United States, are not entitled to any process other than that provided by statute, their due process claim cannot be resolved by the *Mathews* test. *United States v. Barajas-Alvarado*, 655 F.3 1077, 1088 (9th Cir. 2011) (finding "no legal basis for alien's claim that non-admitted aliens who have not entered the United States have a right to representation"); *accord Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]n alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'"); *M.S.P.C. v. U.S. Customs & Border Prot.*, 2014 U.S. Dist. LEXIS 164782, *26-49 (D.N.M.  Oct. 16, 2014) (holding constitutional status of aliens apprehended shortly after illegally entering the United States, notwithstanding the fact they are physically present in the United States, is "assimilated" to the status of an arriving alien who had never entered, such that their procedural due process rights, if any, are limited to those authorized by Congress). The proposed class, therefore, does not share a common legal issue that can be resolved through application of a consistent legal standard.

In previous briefing, Plaintiffs attempted to distinguish this due process limitation as not applying to aliens who have been placed in removal proceedings. This distinction is not relevant to the question of constitutional entitlement. As the Court's order acknowledges, the Government's decision to place an alien in removal proceedings impacts only the *statutory* protections available to that alien. It cannot, as a constitutional matter, change the alien's connection to the United States or otherwise change their constitutional status. *Cf. Verdugo–Urquidez*, 494 U.S. at 271. Arriving aliens are not transformed into aliens with ties to the United States based on the Government's decision to place them in removal proceedings. Therefore, their constitutional status remains "on different footing" than the constitutional claims raised by class members with ties to the United States. *Mezei*, 345 U.S. at 212; *accord M.S.P.C.*, 2014 U.S. Dist. LEXIS 164782 at *26-49 (constitutional status of aliens that of "arriving alien" for procedural due process purposes, even if apprehended shortly after crossing the border illegally).

**II.  The due process concerns faced by the proposed class representatives are not typical of the due process concerns faced by the putative class as a whole.**

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

The overbreadth of the proposed class is further demonstrated by Plaintiffs' inability to find an adequate representative. Rather than narrow the class definition to address the Court's representational concerns, Plaintiffs have simply repeated the same mistakes by proffering eight more inadequate class representatives. Defendants believe that this Court should defer examining the adequacy of these representatives until after it has considered Defendants' forthcoming motion to dismiss the Third Amended Complaint, in which Defendants intend to move to dismiss the new Plaintiffs from this lawsuit. Even if the Court declines to dismiss the claims of the new Plaintiffs, their unique factual backgrounds render them inadequate representatives. Fed. R. Civ. P. 23(a)(3); *Ellis*, 657 F.3d at 981.

First, the vast majority of the new Plaintiffs have never effected an entry into the United States. Plaintiffs A.E.G.E., E.G.C., A.F.M.J., L.J.M., M.R.J. were apprehended at the border and, as a result, are on different constitutional footing than members of the class who are entitled to additional due process rights. *See* 191-1 at Exs. C, D, E, F, G (noting arriving alien status). It is settled law that individuals who have never effected an entry into the United States are not entitled to the same constitutional protections as other members of the putative class who were identified after entering the United States. *Mezei*, 345 U.S. at 212. As a result, the legal question presented by their due process claim is not subject to the same legal test and cannot be answered uniformly with the other members of the putative class. There are, therefore, inadequate representatives.

Second, two of the Plaintiffs will face removal proceedings as adults. Plaintiff M.A.M. will not have a merits hearing in immigration hearing until after he turns eighteen. ECF 191 at 6 (noting next hearing in February 2016). Similarly, F.L.B. is unlikely to face any substantive action in his removal proceedings prior to turning eighteen. ECF 191 at 4 (next hearing date will occur when F.L.B. is 17-years-and-8-months-old). As a result, these Plaintiffs will not face the same injury as the one described in Plaintiffs' motion. ECF 191 at 10 (challenging practice of "subjecting indigent *children* to immigration proceedings" without representation). These Plaintiffs are, therefore, not appropriate class representatives. *See E. Tex. Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403 (1977) ("As this Court has repeatedly held, a class representative

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

must be part of the class and 'possess the same interest and *suffer the same injury*' as the class members." (emphasis added)). Finally, Plaintiffs K.N.S.M., J.R.A.P, A.F.M.J., L.J.M., and M.R.J. are present in the United States with parents. ECF 191 at 7-9. The due process claim made by these accompanied children is very distinct from the claim of an unaccompanied alien child.  As a result of having a parent present, the child's due process claim is distinct for at least two reasons: (1) the child is being spoken for by someone presumed to have the child's best interests in mind; and (2) the child has an adult present who can answer the court's questions about facts related to relief eligibility. Plaintiffs A.F.M.J., L.J.M., and M.R.J. have the additional benefit of having their relief applications examined concurrently with the applications of a parent. Where the child is facing proceedings with the parent, the child may not need to make any showing in court to obtain derivative relief through their parent. As a result the accompanied Plaintiffs are not appropriate representative. *See Ellis,* 657 F.3d at 981 ("[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class."). They do not share the same incentives as the more vunerable unaccompanied putative class members. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856-857 (1999). These differences demonstrate that the class representatives' claims and interest are not coextensive with the claims and interests of the proposed class. As a result, certification also fails under Rule 23(a)(3).

## III.    Certification would not further the purposes of Rule 23.

The issue presented by this case is best litigated in individual, as-applied challenges to a decision not to provide taxpayer-funded counsel to alien minors. This Court has already determined that 8 U.S.C. § 1252(f)(1) deprives the Court of jurisdiction to provide injunctive relief to a class. *See* ECF 114 at 37-38. The only relief available to the class, if certified and found otherwise entitled, is a classwide declaratory judgment, the enforcement of which would be on a case-by-case basis.[9] *Id*. An individualized challenge thus presents the only forum for considering the individual facts and circumstances necessary to ascertain eligibility for government-funded counsel under the *Mathews* factors. As noted, at a minimum, these include

---

[9] This also counsels extra caution in ensuring that any certified class is not overly broad and, therefore, capable of undermining the purpose of Congress's bar on classwide injunctive relief. *See* 8 U.S.C. § 1252(f).

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

the unique characteristics of the individual plaintiffs, the varying programs available to unrepresented juveniles facing proceedings in different immigration courts nationwide, and the differing methods immigration judges may employ to ensure juveniles are not prejudiced by their lack of representation.

The weight of Supreme Court authority supports an individualized approach. In areas outside the criminal context, the Supreme Court has regularly declined to recognize a categorical right to appointed counsel. Instead, it has preferred a case-by-case approach or relied on alternative procedural safeguards to ensure due process. *See, e.g., Gagnon v. Scarpelli,* 411 U.S. 778 (1973) (adopting case-by-case approach for analyzing right to appointed counsel in probation revocation hearings); *Lassiter v. Dept. of Social Services,* 452 U.S. 18 (1981) (adopting case-by-case approach for analyzing right to appointed counsel in proceedings for termination of parental rights); *Middendorf v. Henry,* 425 U.S. 25 (1976) (finding no right to appointed counsel in summary courts-martial proceedings); *Turner*, 131 S. Ct. at 2520 (finding no right to appointed counsel for indigent contemnor in civil contempt proceedings).[10]

In fact, the individual juveniles legally benefit from an individualized challenge. *Turner* suggests that the only question that may be answered by the Court in the class context is whether *any* circumstance exists such that a juvenile does not face a due process violation by having to appear for any type of removal hearings without the assistance of court-paid counsel. *Turner,* 131 S. Ct. at 2520 (finding no categorical right to counsel in civil contempt proceedings where alternative procedural safeguards if employed together could adequately protect due process rights). Therefore, the class may only prevail if the class member with the weakest case for representation is deemed entitled to representation. This, of course, will not decide the issue with regard to the most vulnerable class members, and therefore, for purposes of this proceeding, serves only to water down that plaintiff's claim. Similarly, in the class context, the Court will have to determine the Government's fiscal interest under the third *Mathews* factor in terms of the relief sought by the class as whole. Therefore, the Court will have to evaluate the substantial cost

---

[10] The one exception to this rule is juvenile delinquency proceedings, where the Court has recognized a right to appointed counsel. *In re Gault*, 387 U.S. 1 (1967). But, as the Court later explained, that was because the juvenile delinquency proceeding was "functionally akin to a criminal trial." *Gagnon*, 411 U.S. at 789 n.12.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

of paying attorneys for all juveniles,[11] the availability of attorneys to accommodate all juveniles, and the system-wide delays that might result from ordering such process. An individual challenge potentially presents the more manageable question of the cost of counsel for one particular juvenile, the availability of counsel for that individual, and whether the appointment of counsel is likely to delay those proceedings in such a way that prejudices the government.

## IV.  Any proposed class should be limited to the Western District of Washington.

To the extent the Court finds a certifiable claim, it should be limited to individuals facing removal proceedings in the Western District of Washington. *See, e.g., Shvartsman v. Apfel*, 138 F.3d 1196, 1201 (7th Cir. 1998) (declining to certify a nationwide class where varying law and circumstances impacted validity of class claims). Nationwide class actions are disfavored because they "may have a detrimental effect by foreclosing adjudication by a number of different courts and judges." *Califano*, 442 U.S. at 702; *see United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari."). "[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano*, 442 U.S. at 702. The Court should exercise its broad discretion to decline to certify a nationwide class for two reasons.

First, in this case, a national class would be an improper attempt to circumvent unfavorable law from other jurisdictions and replace it with the law of another circuit. *See, e.g., Aguilar v. U.S. ICE*, 510 F.3d 1, 9, 11 (1st Cir. 2007) (finding no jurisdiction over representation claims).[12] It is clear from the judicial disagreement on this issue that courts with different

---

[11] Granting relief to the class as defined would create the incentive for juveniles not to seek representation in advance of their initial hearing so that they could be appointed counsel at the Government's expense. It likewise disincentives juveniles from taking advantage of the various programs that facilitate children's access to pro bono counsel and disincentivizes pro bono providers to provide this service for free. Thus, it is possible that the true cost to the Government could include the cost of counsel to all juveniles in removal proceedings.

[12] Notably, the forum shopping concern is particularly acute here given that many of the same attorneys previously brought a similar suit in the Eastern District of Washington, *Gonzalez-Machado v. Ashcroft*, No. 02-0066 (E.D. Wash. 2002). After the Eastern District of Washington rejected their due process claim, they brought this litigation in a different court and seek relief that would apply in the Eastern District of Washington.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

governing precedent may reach different conclusions regarding Plaintiffs' claims. Therefore, the Court cannot be "sure that nationwide relief is indeed appropriate" given that law in at least some jurisdictions would preclude relief. *Califano*, 442 U.S. at 702. Instead, the Court should allow "several courts of appeals to explore [this] difficult question" rather than taking the issue out of their hands through entry of nationwide relief. *Mendoza*, 464 U.S. at 160.

Second, a national class would not be able to take into accout the fact that the safeguards and practices employed by immigration courts in this district may vary from those employed by immigration judges in other jurisdictions because of the availability of different programs and resources in different jurisdictions. *See, e.g.*, *Ellis*, 657 F.3d at 983-84. Plaintiffs have not shown that the set of procedures and safeguards applicable in immigration courts in this district are sufficiently identical to the procedures other district's immigration judges apply in cases involving indigent unaccompanied minors. Indeed, the programs and resources available to minors vary according to the location of the immigration court proceedings, which in turn affects how an immigration judge may handle a case involving a child. [13] Exhibit A, Weil Dep. at 145:24-147:14. Thus, the evidence at this juncture shows that Plaintiffs' claims are no different than claims routinely rejected under Rule 23 where "the proposed class's proffered common issues 'stretch[] the notions of commonality' by attempting to aggregate several amorphous claims of systemic or widespread conduct into one 'super-claim.'" *M.D. v. Perry*, 675 F.3d 832, 844 (5th Cir. 2012). A nationwide injunction addressing this "super-claim" would "merely initiate a process through which highly individualized determinations" concerning the interplay between regional programs and an individual class-members' claims "are made; this kind of relief would be class-wide in name only, and it would certainly not be final." *Jamie S. v. Milwaukee Pub. Schools,* 668 F.3d 481, 497-98 (7th Cir. 2012). Accordingly, the Court should focus its attention on the facts and circumstances surrounding the proceedings occurring in the immigration courts within this Court's jurisdiction. It should decline to scrutinize the adequacy of programs administered in other jurisdiction and deny class certification.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

# CONCLUSION

Defendants request that Plaintiffs' renewed motion for class certification be denied.

Dated: November 9, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

LEON FRESCO
Deputy Assistant Attorney General
Office of Immigration Litigation

WILLIAM C. PEACHEY
Director, District Court Section

WILLIAM C. SILVIS
Assistant Director

EREZ REUVENI
Senior Litigation Counsel

By:    */s/ Sarah Wilson*
SARAH WILON
Trial Attorney
Office of Immigration Litigation,
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4700
Sarah.S.Wilson@usdoj.gov

OPPOSTION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 9, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

/s/ Sarah Wilson
SARAH WILSON
Trial Attorney
United States Department of Justice

OPPOSTION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700