UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| F.L.B., a minor, by and through his Next Friend, Casey Trupin, et al.,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>Loretta E. LYNCH, Attorney General, United States, et al.,<br><br>Defendants-Respondents. | Case No. 2:14-cv-01026-TSZ<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>NOTE ON MOTION CALENDAR:<br>November 13, 2015<br><br>ORAL ARGUMENT REQUESTED |

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

# INTRODUCTION

Plaintiffs seek certification of a class of indigent, unrepresented children who must face immigration proceedings against a trained government prosecutor. The question whether federal law permits that brutal practice is paradigmatically appropriate for class treatment. Defendants' opposition tries every which way to overcome this common sense conclusion, but their arguments fall flat in the face of governing law.

This Court should certify Plaintiffs' proposed class. And, despite Defendants' request for delay, it should do so now. Whatever the Court ultimately thinks of Defendants' planned motion to dismiss the Third Amended Complaint, existing Plaintiff F.L.B. satisfies all the criteria for a class representative under the Court's prior orders and Defendants' various theories. This Court accepted Defendants' similar request to delay class certification pending a motion to dismiss well over a year ago, and since then they have ordered the removal of thousands of unrepresented children. The Court should not grant Defendants' request yet again.

# ARGUMENT

## I. The Court Cannot Deny Class Certification Based on Defendants' Assertion That Plaintiffs' Claim Will Fail on the Merits.

Defendants make two threshold arguments against certification: a) that Plaintiffs have not established "that all class members, as a matter of law, have a constitutional right to [appointed] counsel," Dkt. 197 at 7; and b) that due process claims "by definition" require a "case-by-case" analysis that precludes class certification. *Id.* at 7-10. Both arguments are meritless.

Defendants' first argument is obviously wrong. They allege that "the only way" to satisfy Rule 23's requirements is to establish "that all minors . . . are categorically entitled to an attorney at government expense." *Id*. at 6-7. But if Plaintiffs had *already* established that, the case would be over. To certify a class, Plaintiffs need only show that their claim is capable of "generat[ing] common answers." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (emphasis omitted). "[W]hether class members could actually prevail on the merits of their claims is not a

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 1
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

proper inquiry in determining the preliminary question whether common questions exist. . . . [A] common contention need not be one that will be answered, on the merits, in favor of the class." *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (internal quotation marks and citations omitted).

Defendants' second threshold argument—that "case-by-case" due process analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976), "by definition" precludes class certification, Dkt. 197 at 7-10—is equally implausible. First, the Ninth Circuit affirmed class certification (and ruled for plaintiffs on the merits) in *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998), which struck down defective INS notice practices under *Mathews*. Not all plaintiffs in that class were identically situated in their ability to understand the disputed notices, yet the Court found sufficient "the common allegation that the INS's procedures provide insufficient notice." *Id.* at 1046; *see also Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) (certifying class for, *inter alia*, due process challenge to immigration detention procedures).[1]

That both the Supreme Court and the Ninth Circuit have certified classes in cases applying *Mathews* reveals a second fundamental flaw in Defendants' argument: while *Mathews* may require a fact-specific analysis of how a given *type of proceeding* is conducted, it does not preclude categorical rules that apply to all cases that involve that type of proceeding. Indeed, Defendants' own cases make clear that *Mathews* establishes "a framework to evaluate the sufficiency of *particular procedures*." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (emphasis added). Here, every class member is, by definition, in an immigration proceeding before an immigration judge, where "*every* individual . . . is entitled to a full and fair hearing." *Oshodi v.*

---

[1] *See also, e.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) (affirming jurisdiction over due process claim brought by class); *Gete v. INS*, 121 F.3d 1285, 1300 (9th Cir. 1997) (vacating denial of class certification in due process claim disputing adequacy of INS forfeiture procedures in part "[b]ecause we have concluded that the plaintiffs raise a number of substantial claims that go to the INS' procedures generally, rather than to the facts of any particular plaintiff's case"); *see also Franco-Gonzales v. Napolitano*, No. 10-cv-02211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) (certifying class for, *inter alia*, due process challenge to lack of appointed counsel).

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 2
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

*Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc) (emphasis added).

Defendants note that *Turner v. Rogers*, 131 S. Ct. 2507 (2011), and *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004), involved individual litigants rather than classes. But nothing in either case suggests that class treatment of the claim here would be inappropriate. This Court has already recognized *Turner*'s importance; it suggests that appointed counsel might be required in all cases where the issues are complex and the government has an attorney. Dkt. 114 at 30. Similarly, while *Jie Lin* states that "due process determinations regarding minors" should account for individual characteristics such as age and intelligence, Dkt. 197 at 9-10, the context makes clear the court was discussing a child's capacity to *waive* the right to counsel, not *entitlement* to it. In fact, *Jie Lin* repeatedly suggested that all unrepresented children are entitled to appointed counsel. *See, e.g.*, 377 F.3d at 1033 ("[M]inors are entitled to trained legal assistance so their rights may be fully protected.") (quoting *Johns v. Cnty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997)). Thus, that Plaintiffs raise an appointed counsel claim for pro se children in no way precludes them from proceeding as a class.

Finally, because there is at least one existing plaintiff—F.L.B.—who would be an adequate representative under this Court's prior orders, the Court should reject Defendants' invitation to defer adjudication of this motion until it decides yet another motion to dismiss. *See* Dkt. 197 at 1, 20. The amended complaint would add parties to address the Court's prior orders, but these new parties do not allege new claims or request different forms of relief. Given that Plaintiffs originally sought class certification in July 2014, and Defendants continue to deport pro se children throughout the country, the Court should reject Defendants' request.

## II. No Individual Differences Amongst the Children Preclude Class Certification.

Defendants also oppose certification by pointing to various immaterial differences between the children in the putative class, but largely ignore the binding caselaw certifying classes—including nationwide class actions challenging immigration practices—with greater

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 3
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

differences than those here. *See* Dkt. 191 at 9 n.6. Rule 23 does not require that "'[a]ll questions of fact and law . . . be common to satisfy the rule.' . . . Nor does 'common' as used in Rule 23(a)(1) mean 'complete congruence.'" *Rodriguez*, 591 F.3d at 1122 (citations omitted).

**A.     "Accompanied" Status of Some Children Does Not Undermine Commonality.**

Defendants claim that "accompanied" and "unaccompanied" children are in fundamentally different positions, *see* Dkt. 197 at 12-13, but ignore Plaintiffs' evidence to the contrary. *See* Dkt. 59 ¶¶16-17 (expert's declaration that the "skills and knowledge of legal counsel" are required to present even "accompanied" children's claims). First, the *theoretical* possibility that a child may derive status through a parent does not weaken an "accompanied" child's claim for legal representation, because parents are under no obligation to seek derivative relief for their children. Plaintiff E.G.C., for instance, was initially in consolidated proceedings with his mother, but now must proceed alone since she left the country. Dkt. 190-1 ¶108. Moreover, legal ignorance or conflicts of interest may prevent parents from pursuing relief for their children. Even "the [Government has] pointed out that invisibility is a common problem for refugee children." Dkt. 59 ¶17. A parent may not wish to disclose difficult facts that form the basis for relief if they arise from domestic violence, for example.[2] And, as with Plaintiffs A.F.M.J. and L.J.M., children may also have strong but complicated claims for relief wholly independent of their parents' claims. Dkt. 190-1 ¶¶114, 116 (identifying potential citizenship claims).[3] Yet, as the Government's own 30(b)(6) witness acknowledged, these claims are unlikely to be heard if the child is not separately represented. *See* Dkt. 202, Ex. E at 42:7-20 ("Oftentimes when a child's case is consolidated with an adult … [t]he child no longer pursues their own independent claim for relief"). Put simply, the presence of a parent does not obviate an "accompanied" child's counsel claim.

---

[2] *See, e.g.*, Dkt. 59 ¶17; Dkt. 95 ¶40 (U Visa); USCIS, Asylum Division, *Asylum Officer Basic Training: Female Asylum Applicants and Gender-Related Claims*, at 20-21 (Mar. 12, 2009), *available at* http://1.usa.gov/1nvi8ec.
[3] *See also* Dkt. 95 ¶40 (discussing Special Immigrant Juvenile Status).

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 4
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

*Second*, Defendants argue that "accompanied" children stand on different constitutional footing because their parents' "presence may be sufficient to safeguard the child's interest," Dkt. 197 at 13, but this is both factually and legally wrong. Defendants offer no evidence to rebut Plaintiff's expert, who has explained that "the central importance of legal counsel is not lessened for children who are in proceedings with parents or other relatives," Dkt. 59 ¶17, as the examples above illustrate. Moreover, Ninth Circuit law bars parents from representing their children. *See Jie Lin*, 377 F.3d at 1025 (noting, in child's deportation case, that "the right of minors to competent counsel is so compelling that we have joined other circuits in holding that 'a guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a lawyer'") (quoting *Johns*, 114 F.3d at 876).[4] For that reason, among others, Defendants lost virtually the same argument in *Franco*, where the court held that parents and accompanying adults cannot "represent" their mentally ill relatives in removal proceedings. *See Franco-Gonzales v. Holder*, 828 F. Supp. 2d 1133, 1144-47, 1146 n.11 (C.D. Cal. 2011) (parent could not serve as legal representative despite "earnest desire to assist his son"); *Franco-Gonzalez v. Holder*, No. CV 10-02211 DMG DTBX, 2013 WL 3674492, at *9 (C.D. Cal. Apr. 23, 2013) (same applied to entire class). The reasons set forth in *Franco*—including the possibility of unrecognized conflicts, the inability to hold non-lawyer adults accountable for ineffective assistance, and vulnerable individuals' inability to consent to representation by a non-attorney—are equally applicable to children.

*Third*, Defendants claim that "unaccompanied" children are more likely to have their

---

[4] Defendants cite *Troxel v. Granville*, 530 U.S. 57 (2000), and *United States v. Casasola*, 670 F.3d 1023 (9th Cir. 2012), but those cases address *parental* rights and interests over their children, not the legality of forcing parents to act as lawyers. *See* Dkt. 197 at 13. *Troxel* simply reaffirmed "the fundamental right of parents to make decisions concerning the care, custody, and control of their children" in the context of a statute that encroached upon that right. 530 U.S. at 66. *Casasola* concerned a statutory scheme safeguarding parental rights of a non-U.S. citizen parent vis-à-vis a citizen parent. 670 F.3d at 1029. Of course, parents can—and often must—still act as guardians when their children are represented, but this does not permit them to perform the tasks of lawyers. *Johns, supra.*

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 5
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

cases terminated because they receive special protections *outside* of removal proceedings to make some forms of relief "more accessible." Dkt. 197 at 13. But Plaintiffs' evidence establishes that those protections are largely illusory because immigration judges can ignore them and force children to proceed in immigration court. Dkts. 99 ¶6; 100 ¶4; 102 ¶¶6-7. Even when these protections are utilized, children who lose in those non-adversarial systems may be returned to immigration court to litigate their cases. *See* Dkt. 168 at 7 n.5. Thus, unless and until removal proceedings are terminated, all children share the common need for appointed counsel.[5] Unless and until removal proceedings are terminated, all children share the common need for appointed counsel.

**B.  Differences in Children's Capacity Cannot Defeat Commonality.**

Defendants also oppose certification because some children have greater capacity than others, Dkt. 197 at 14, but they ignore the overwhelming Supreme Court authority, as well as their own policies and training materials, recognizing the categorical difference between children and adults. These differences have earned children *as a class* different constitutional treatment in a variety of contexts. *See* Dkt. 191 at 13-16 (citing, *inter alia*, *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011); *Graham v. Florida*, 560 U.S. 48, 68 (2010); *Roper v. Simmons*, 543 U.S. 551, 569-74 (2005); 8 C.F.R. 1240.10(c)). Professor Laurence Steinberg, an expert cited in several of those cases, will provide a report defending Plaintiffs' position here.

In addition, discovery has already confirmed that Defendants themselves treat children differently as a class. Their Rule 30(b)(6) witness has acknowledged that the government continues to apply various child-specific memoranda and trainings in immigration court. Earlier this year, for example, they ran a whole training session entitled "Decidedly Different:

---

[5] Defendants erroneously claim that F.L.B. obtained relief before USCIS, Dkt. 197 at 13, when in fact he has been ordered to proceed at his next hearing before the IJ. *See* Dkt. 190-1 ¶84. The F.M. siblings were successful before the agency, but they were represented by counsel there, and the IJ then terminated their immigration court proceedings after the Department of Homeland Security moved the Court to do so. *See id.* ¶¶75-79.

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 6
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Presiding Over Proceedings Involving Children." *See* Dkt. 202, Ex. F at 57:20-58:11; 60:1-4.

**C. The Speculative Availability of Other Safeguards Cannot Defeat Commonality.**

Defendants' speculation that various safeguards short of counsel will "converge" to protect children's rights, Dkt. 197 at 18, also fails. First, even if Defendants could ultimately prove that claim on the merits, for purposes of class certification it suffices that they have a uniform policy not to appoint counsel, which by definition harms all indigent, unrepresented children. Nothing more is required to certify the class here, and variations in how Defendants handle unrepresented children's cases are irrelevant for assessing commonality. *Walters*, 145 F.3d at 1046 ("it would be 'a twisted result' to permit an administrative agency to avoid nationwide litigation that challenges the constitutionality of its general practices simply by pointing to minor variations in procedure"); *cf. Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014) (certifying class of inmates exposed to inadequate healthcare because all are subject to deficient policy).

Second, Defendants' claim cannot be reconciled either with the unrefuted data establishing that represented children win at a far higher rate than unrepresented ones, or their own training materials and internal memos extolling the critical importance of counsel. *See, e.g.*, Dkts. 142 at 3-4; 114 at 33 n.26; 25, Ex. P. Recent data reveals that 82.5% of represented children whose cases were initiated and closed in the last two fiscal years were allowed to stay in the country. That figure is a mere *9.4%* for the children who were *un*represented in the same time period. *See* Dkt. 202 ¶¶2-8; *id.* Exs. A-D. Indeed, a report on the provision of legal services to unaccompanied children from August 2009 until January 2015 by the Vera Institute of Justice—which administers a legal representation program on behalf of the government—shows that 76% of unrepresented children in one of their sub-programs "ended up with legal case outcomes that required return to their home country," whereas only 8% of *represented* children in the same program did. *See id.*, Ex. G at 44-45. The report concludes that these

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 7
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

outcomes are "particularly concerning" because all these children had been screened as being eligible for relief from removal. *Id.* at 45 ("[T]he reality is that without counsel, it is extremely difficult for children to establish the proof necessary to obtain legal relief, even when they are eligible for such relief."); *see also id.* at 46-49. None of Defendants' speculation about the quality of their safeguards can refute this unambiguous data.

Third, Defendants ignore Plaintiffs' extensive evidence showing that the procedural niceties on which Defendants rely fail to protect children's rights even when correctly applied. *See, e.g.*, Dkts. 57; 59; 61; 101 (declarations of experienced children's immigration attorneys discussing various problems with existing safeguards). For example, Defendants point to various procedures designed to give children a better chance to find attorneys, but these do nothing for the thousands of children who cannot procure counsel despite those protections. Defendants point to regulations that require IJs to use "non-technical language" when reading charges against the immigrant, and to elicit testimony on possible avenues for relief. Dkt. 197 at 15 (citing 8 C.F.R. §§ 1240.10(a)(6), 1240.11(a)(2)). But these requirements apply to all immigrants, and this Court has already explained that if they were sufficient there would be no need even for the existing child-specific protections. *See* Dkt. 114 at 33 n.26; *see also* Dkts. 33 ¶10-11; 34 ¶6; 59 ¶15 (legal services providers and experts discussing children's inability to articulate claims for relief to IJs). Defendants assert that IJs can fully develop the record for pro se children, Dkt. 197 at 15, but the outcome data cited above shows that to be false, as do the government's own materials describing the importance of counsel. Defendants also state that IJs receive training for conducting proceedings with pro se children, but cite no evidence that these trainings produce better outcomes. Perhaps more troubling is that the Assistant Chief IJ ultimately responsible for that training repeatedly claimed during his deposition that children as young as 3 or 4 can be taught immigration law. *See* Dkt. 202, Ex. F at 69:23-70:10; 78:24-79:3; 161:4-162:19.

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 8
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Defendants also point to "Friend of the Court" programs and legal orientation presentations, Dkt. 197 at 16-17, but the guidance Defendants cite warns that "the Friend of the Court is not a substitute for a legal representative," and the "Friend of the Court is without authority to accept or concede service, admit factual allegations, enter pleadings, request a removal order, seek relief (including voluntary departure), or exercise or waive rights on behalf of the respondent."[6] If they cannot undertake such tasks, they cannot substitute for counsel.

**D. Variations in Immigration Status and Relief Do Not Defeat Commonality.**

Defendants also assert that children vary by virtue of differences in their immigration cases, both because the *Mathews* test allegedly does not apply to children who were arrested prior to entry, Dkt. 197 at 18-19, and because not all children are entitled to the same forms of relief. *Id.* at 11. But the proposed class includes only children who must represent themselves in a hearing before an Immigration Judge, and governing law establishes that the Due Process Clause protects all such children. Binding authority requires nothing more, for four reasons.

First, Defendants cannot explain why courts have routinely certified classes of immigrants raising due process claims that encompass the same differences they point to here, including individuals stopped at the border and with varying forms of relief. *See* Dkt. 191 n.11. For example, *Rodriguez* required certification of a class of noncitizens with various different immigration status who were subject to radically different government procedures. Although the government treated the *Rodriguez* plaintiffs differently from each other in many respects, they all had a common claim arising from the government's failure to provide them with certain constitutionally required procedural protections. 591 F.3d at 1122-24. Nor can Defendants explain why the Supreme Court has repeatedly stated that deportation is "the equivalent of banishment or exile" as a general matter, irrespective of the particular interests at

---

[6] *See* The Friend of the Court Model for Unaccompanied Minors in Immigration Proceedings, Sept. 10, 2014, *available at* http://goo.gl/Js1MGv; *see also* Dkt. 202, Ex. E at 77:8-18 (children misadvised by Friends of Court have no remedy for ineffective assistance).

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 9
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

stake in any given case. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010).

Second, while courts have recognized differences in the constitutional status of noncitizens in some contexts, in the only context that matters here—the right to a fair removal hearing—the en banc Ninth Circuit has categorically held that "the Fifth Amendment guarantees non-citizens due process in removal proceedings." *Oshodi*, 729 F.3d at 889. This protection extends to "*every individual* in removal proceedings." *Id.* (emphasis added). *Oshodi* applied the *Mathews* test when addressing the rights available to "every individual." *Id*. at 894-97. Moreover, *Jie Lin* applied that rule to a child *who had not entered* the United States, but instead was stopped at the port of entry. 377 F.3d at 1019-20 (child found in airport restroom shortly after flight arrived); *see also* Dkt. 24 at 19-20. Defendants claim that such children have no due process rights, but *Jie Lin* applied the Due Process Clause—including law concerning a child's right to litigate in federal court—and found that his counsel's ineffective assistance "violated [the child's] Fifth Amendment right to due process." 377 F.3d at 1034.

Defendants claim that Congress's decision to put children into proceedings before a judge cannot affect their constitutional status, but this ignores both *Oshodi* and *Jie Lin*. It is also contrary to basic procedural due process doctrine, which recognizes that statutory procedures can give rise to additional liberty interests. Cases from other circuits have applied that principle to adult asylum seekers, and the same logic applies to children here. *See, e.g.*, *Abdulai v. Ashcroft*, 239 F.3d 542, 545, 549 (3d Cir. 2001) (citing *Mathews* to find due process protections for asylum seeker who had not entered).[7]

---

[7] Defendants ignore this governing law, and instead cite various inapposite cases for their flawed constitutional arguments. Dkt. 197 at 18-19. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011), establishes only that Congress was not required to provide a removal hearing for all persons apprehended prior to entry; the proposed class here includes only children who have been placed into such proceedings. *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), concerned the availability of the exclusionary rule to remedy Fourth Amendment violations that occurred *in Mexico*, and expressly clarified that the Fourth Amendment "operates in a different manner than the Fifth." *Id.* at 262-66. Defendants also cite *M.S.P.C. v. C.B.P.*, 60 F. Supp. 3d 1156 (D.N.M. 2014), but it is now vacated, and also directly conflicts with *U.S. v. Raya-Vaca*, 771 F.3d 1195, 1202-03 (9th Cir. 2014), as to the scope of the Due Process Clause. Finally, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), was decided long before *Oshodi* and *Jie Lin*, and involved very different issues: a challenge to

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 10
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

Defendants' argument that the class lacks commonality due to differences in the types of relief from removal for which children may be eligible fares no better. *See* Dkt. 197 at 11. Again, the Ninth Circuit and courts within it regularly certify classes in which individuals face the same or comparable differences. *See* Dkt. 191 at 18-19. Nor do Defendants explain how a child would know whether they were eligible for relief unless they had a lawyer. Defendants also claim that children seeking discretionary relief have no due process rights, but they fail to cite the contrary controlling Ninth Circuit caselaw. *See*, *e.g.*, *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1044 n.2, 1050 (9th Cir. 2003) (IJ's failure to inform individual of apparent eligibility for discretionary relief violated due process); *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (same as to voluntary departure).

If the Court were nonetheless inclined to conclude that the Plaintiffs who have not "entered" the United States are entitled to lesser constitutional protections, the proper remedy would be to create a subclass and evaluate at summary judgment whether their due process claims lead to different results. *See, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 379 (2d Cir. 1997) (ordering subclassing to account for differences in certified class of children). Plaintiffs do not believe that subclassing is necessary, but the Court could appoint A.E.G.E., E.G.C., A.F.M.J., L.J.M., M.R.J., and the F.M. siblings as representatives of the subclass who have not "entered," while F.L.B., M.A.M., J.R.A.P., K.N.S.M., and J.E.V.G. could represent those who have.

**III.     The Named Plaintiffs Satisfy the Adequacy and Typicality Requirements**.

Defendants recycle many of their flawed commonality arguments to argue that the Named Plaintiffs are insufficiently typical of the proposed class, Dkt. 197 at 20-21, but these claims fail for the same reasons they fail as to commonality. The same general rule that

---

indefinite detention based on secret evidence implicating national security. *Id.* at 208-09. Subsequent cases have questioned its validity even in the adult detention context. *See, e.g.*, *Rosales-Garcia v. Holland*, 322 F. 3d 386, 413-15 (6th Cir. 2003) (en banc).

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 11
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

insignificant differences cannot defeat commonality applies to typicality as well. *See La Duke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) (finding that "minor differences . . . do[] not render their claims atypical"); *see also Gete*, 121 F.3d at 1300.

Defendants advance a distinct argument that some of the Plaintiffs cannot be representatives because they will soon turn 18, *see* Dkt. 197 at 20, but that argument is meritless. First, F.L.B. will still be 17 at his next hearing, and will face "the same injury" as all proposed class members: being subjected to immigration proceedings without representation. *Id*. In fact, he faces a serious risk of being ordered removed if he does not present a completed asylum application, as the IJ instructed him to do at his last hearing. *See* Dkt. 190-1 ¶84. In any event, both he and M.A.M. had the same claim as the other proposed class members at the time they filed the complaint and sought certification, which is the only relevant point in time for certification purposes. *See* Dkt. 191 at 4 n.3; *see also Wilbur v. City of Mt. Vernon*, 298 F.R.D. 665, 668 (W.D. Wash. 2012) (in case involving challenge to system for providing counsel, rejecting defendants' arguments that because the Named Plaintiffs' claims had become moot they were no longer adequate or typical class representatives, because "'the constant existence of a class of persons suffering the deprivation is certain'") (citation omitted). [8]

## IV. Nationwide Certification, Even if Only for Declaratory Relief, Is Appropriate in Light of Defendants' Unlawful Nationwide Conduct and the Absence of Pending Litigation in Other Jurisdictions.

Defendants also argue against a nationwide class, Dkt. 197 at 23-24, but they ignore numerous orders certifying nationwide class actions (including some from this district) that challenged nationwide immigration enforcement practices. *See* Dkt. 191 at 9 n.6. Defendants

---

[8] Defendants' suggestion that the class can only include children who were in removal proceedings as of the date the third amended complaint was filed, *see* Dkt. 197 at 3 n.1, borders on frivolous. Controlling law establishes that courts routinely certify classes to include future members. *Rodriguez* did precisely that in the immigration context, well after the enactment of 8 U.S.C. § 1252(g). *Cf.* 591 F.3d at 1112, 1118 ("The inclusion of future class members in a class is not itself unusual or objectionable."). Nor have Defendants explained how certification of a class including future members would restrict their discretion in a manner inconsistent with Section 1252(g).

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 12
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

cite two Supreme Court cases to support their claim, but the first case actually *upheld* nationwide certification because, *inter alia*, "[n]othing in Rule 23 . . . limits the geographical scope of a class action" and "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702-03 (1979). The other, *United States v. Mendoza*, 464 U.S. 154, 160 (1984), addressed a collateral estoppel issue, not Rule 23.

Defendants also do not address the general guidelines governing nationwide certification. Courts find it proper where (1) no other similar cases are currently pending in other jurisdictions and (2) the plaintiffs are challenging a nationwide policy or practice. *See* Dkt. 191 at 9 n.6 (collecting cases granting nationwide certification); *see also Arnott v. U.S.C.I.S.*, 290 F.R.D. 579, 589 (C.D. Cal. 2012) (certifying nationwide class over defendants' objection that "its geographic scope is too broad" and that nationwide certification may interfere with litigation in other circuits). Both criteria are plainly met here. Defendants urge the Court to "allow" other courts to explore the questions presented by this lawsuit, *see* Dkt. 197 at 24, but no such lawsuit has been brought in the 16 months since this case was filed. Indeed, Defendants cite only one case—from Illinois—where a court rejected nationwide certification, and that case involved material differences across different geographic regions. *See Shvartsman v. Apfel*, 138 F.3d 1196, 1201 (7th Cir. 1998) (affirming certification limitation because of geographic differences and plaintiffs' primary reliance on Seventh Circuit law).

Defendants also accuse Plaintiffs of forum shopping for favorable law, but the question presented here is one of first impression save for *Gonzalez-Machado v. Ashcroft*, No. 02-0066 (E.D. Wash. 2002), and as this Court already explained, the court in that case "did not have the benefit of the Supreme Court's guidance in *Turner*." Dkt. 114 at 17 n.11. Defendants also assert that *Aguilar v. U.S. ICE*, 510 F.3d 1, 9, 11 (1st Cir. 2007) constitutes adverse authority from another circuit, but this Court has already rejected Defendants' reliance on it. Dkt. 114 at 13.

Defendants next assert that inconsistencies in their own procedures counsel against a

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 13
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

nationwide class. Dkt. 197 at 24. But Defendants cannot deny their uniform nationwide practice of forcing unrepresented children to defend themselves in immigration proceedings. Minor regional variations in procedure cannot defeat nationwide certification, particularly where Defendants uniformly fail to provide the protection sought here: court-appointed counsel to all indigent unrepresented children. *See Walters*, 145 F.3d at 1046.[9]

Finally, Defendants ask the Court not to certify because it will only result in declaratory relief that must still be individually enforced. Dkt. 197 at 20. Even assuming this were true, and assuming further that Defendants would refuse to abide by the Court's declaration absent enforcement actions, such actions would still be far preferable to Defendants' approach, which would require every unrepresented child to actually litigate from scratch the complex claim at issue here. In practice, it should be obvious that nationwide certification is the *only* way to ensure that thousands of pro se children around the country can actually present the serious constitutional question raised here. *Cf. Rodriguez*, 591 F.3d at 1123 (certifying class in part due to "severe practical concerns that would likely attend [plaintiffs] were they forced to proceed alone").

**CONCLUSION**

The Court should thus certify the proposed class, including subclasses if necessary.

DATED this 13th day of November, 2015.

Respectfully submitted,

---

[9] The cases cited by Defendants are inapposite. In *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497-98 (7th Cir. 2012), the Seventh Circuit found that the relief sought did not satisfy Rule 23 requirements because it required individualized determinations as to harm and appropriate remedies. The relief sought here, in contrast, is uniform: appointment of counsel for indigent children in their immigration proceedings. And in *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012), the Fifth Circuit actually disagreed with the argument Defendants advance here—that minor differences in the application of policies to the class members counsels against nationwide certification. *Id.* at 847-48 (also clarifying that "the class claims could conceivably be based on an allegation that the State engages in a pattern or practice of agency action or inaction—including a failure to correct a structural deficiency within the agency…—with respect to the class, so long as declaratory or injunctive relief settling the legality of the State's behavior with respect to the class as a whole is appropriate").

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 14
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

By  s/ Matt Adams
    Matt Adams, WSBA No. 28287
Glenda M. Aldana Madrid, WSBA No. 46987
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)
Email: matt@nwirp.org
       glenda@nwirp.org


By  s/ Ahilan Arulanantham
    Ahilan Arulanantham (*pro hac vice*)
ACLU IMMIGRANTS' RIGHTS PROJECT
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
Email: aarulanantham@aclusocal.org


Theodore J. Angelis, WSBA No. 30300
Todd Nunn, WSBA No. 23267
Heidi Craig Garcia, WSBA No. 41399
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
(206) 623-7022 (fax)
Email: theo.angelis@klgates.com
       todd.nunn@klgates.com
       heidi.garcia@klgates.com


Cecillia Wang (*pro hac vice*)
Stephen Kang (*pro hac vice*)
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
(415) 343-0950 (fax)
Email: cwang@aclu.org
      skang@aclu.org

Carmen Iguina (*pro hac vice*)
ACLU OF SOUTHERN CALIFORNIA

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 15
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
Email: ciguina@aclusocal.org

Kristen Jackson (*pro hac vice*)
Talia Inlender (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
(213) 385-9089 (fax)
Email: kjackson@publiccounsel.org
tinlender@publiccounsel.org

Emily Creighton (*pro hac vice*)
Kristin Macleod-Ball (*pro hac vice*)
Melissa Crow (*pro hac vice*)
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7500
(202) 742-5619 (fax)
Email: ecreighton@immcouncil.org
kmacleod-ball@immcouncil.org
mcrow@immcouncil.org

Margaret Chen, WSBA No. 46156
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184
Email: mchen@aclu-wa.org


Attorneys for Plaintiffs-Petitioners

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 16
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025

## CERTIFICATE OF ECF FILING AND SERVICE

I hereby certify that on November 13, 2015, I arranged for electronic filing of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record:

    s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8646
(206) 587-4025 (fax)
Email: glenda@nwirp.org

REPLY IN SUPPORT OF MOT.
FOR CLASS CERTIFICATION - 17
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611
Fax (206) 587-4025