1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

F.L.B., a minor, by and through his Next Friend, Casey Trupin, et al.,

10

                Plaintiffs-Petitioners,

11

    v.

12

Loretta E. LYNCH, Attorney General, United States, et al.,

13

                Defendants-Respondents.

14

15

16

17

18

19

20

21

22

23

24

25

26

Case No.   2:14-cv-01026-TSZ

PLAINTIFFS' FOURTH MOTION
FOR CLASS CERTIFICATION

NOTE ON MOTION CALENDAR:
February 26, 2016

ORAL ARGUMENT SCHEDULED
March 24, 2016

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

# INTRODUCTION

Plaintiffs submit this renewed motion for class certification in light of the Court's recent order denying certification without prejudice to re-filing. While Plaintiffs maintain that this Court should certify a class of all unrepresented children in immigration proceedings, and that all children in this class are entitled to appointed counsel, Plaintiffs now also propose four Subclasses in recognition of the Court's concerns that the children of the Main Class are insufficiently common. Under governing law, each Subclass is essentially its own class for all purposes (including commonality). In other words, so long as the Court finds that each Subclass is composed of individuals whose claims are sufficiently common to allow them to proceed as a class, commonality should present no bar to certification.

Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs respectfully move this Court to certify the following Class and Subclasses. Plaintiffs renew their request for certification of the class for which they previously sought certification, with all Named Plaintiffs in the Third Amended Complaint as class representatives:

> All individuals under the age of eighteen (18) who are in immigration proceedings on or after July 9, 2014, without legal representation in those proceedings, and who are financially unable to obtain such representation.[1]

For the reasons stated in their prior class certification requests, Plaintiffs contend that this Main Class satisfies Rule 23(b)(2)'s certification requirements. *See infra* Section I. But in light of this Court's recent order, Plaintiffs alternatively propose four Subclasses as follows: one for children who have already "entered" the United States; a second – the mirror image of the first – for those who have not yet "entered" and therefore are "arriving;" a third for children who are alone in their immigration proceedings; and a fourth – a mirror image of the third – for

---

[1] Plaintiffs define "immigration proceedings" to include any proceeding that occurs before an Immigration Judge or the Board of Immigration Appeals. *See* Dkt. 207, ¶7 n.6. Plaintiffs define "legal representation" as "(1) an attorney, (2) a law student or law graduate directly supervised by a retained attorney, or (3) an accredited representative, all as defined in 8 C.F.R. § 1292.1." *See* Dkt. 207, ¶134 & n.26.

children who are in immigration proceedings with a parent. Plaintiffs propose those Subclasses because Defendants have pointed to these groups as having significant differences among them that undermine commonality and typicality. Plaintiffs disagree, but nonetheless have proposed the Subclasses in light of the Court's order requiring that potential differences among class members be addressed.

The four Subclasses that Plaintiffs propose would be defined as:

The "Entered" Subclass: all children who fall within the Main Class definition and who entered the United States before apprehension. Plaintiffs F.L.B., J.R.A.P., and K.N.S.M. are appropriate representatives. *See* Dkt. 191-1 at 27, 53, 56.

The "Arriving" Subclass: all children who fall within the Main Class definition and who were apprehended at a port of entry prior to their entry into the United States, and are therefore "arriving aliens." Plaintiffs A.E.G.E., A.F.M.J., L.J.M., M.R.J., and E.G.C. are all appropriate representatives of this Subclass. *See* Dkt. 191-1 at 33, 37, 41, 45, 49.

The "Unaccompanied" Subclass: all children who fall within the Main Class definition and whose removal proceedings are not consolidated with those of a parent. Plaintiffs F.L.B., A.E.G.E., E.G.C., J.R.A.P., and K.N.S.M. are all appropriate representatives of this Subclass. *See* Dkt. 207 ¶¶ 83-84, 93-94, 108-09, 121-22, 125-26.

The "Accompanied" Subclass: all children who fall within the Main Class definition and whose removal proceedings are consolidated with those of a parent. Plaintiffs A.F.M.J., L.J.M., and M.R.J. are all appropriate representatives of this Subclass. *See* Dkt. 207 ¶¶ 112-13, 116-17, 118-19.

Plaintiffs alternatively request that the Court certify these four Subclasses. *See infra* Section II.A-B.

Plaintiffs recognize that the Court has also focused on two other potential differences amongst class members that may undermine commonality: the child's capacity to represent

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

herself and the degree of harm a child would face if deported. However, the substantial legal authority and evidence (including unrebutted expert testimony) that Plaintiffs have presented to the Court provides no basis on which to exclude any groups of unrepresented children in immigration proceedings based on these distinctions. Rather, the authority and evidence support the claim that *all* class member children lack the capacity to represent themselves simply by virtue of their age and face legally cognizable harm as a matter of law. In contrast, Defendants have presented no *evidence* of actual putative class member children who, in their view, either have the capacity to represent themselves or would not face harm, such that a workable subclass could be drawn to separate out those children.

Nonetheless, if the Court concludes that the Subclasses Plaintiffs now propose still lack sufficient commonality, it retains authority to define further subclasses as it deems appropriate at any time. In addition, if the Court concludes that no workable class or subclasses can be drawn to identify those children who are entitled to appointed counsel, the appropriate remedy would be to certify the Main Class and Subclasses in order to provide each child with a determination as to whether they are entitled to legal representation. Under that approach, although only those children found eligible for counsel would be entitled to it, the Court would still certify the classes as Plaintiffs have proposed them. As Defendants have already acknowledged, they currently recognize *no* child's right to appointed counsel, have *no* system in place to determine whether appointed counsel is required in any individual case, and *never* appoint counsel for children. Therefore, even if the Court were to disagree with Plaintiffs' view as to the significance of these differences amongst class members, certification would still be appropriate. *See infra* Section II.C.

Finally, Plaintiffs acknowledge the Court's concern that certification of a class in this case, particularly nationwide, could increase the complexity of this litigation. Plaintiffs cannot dispute that certification will give rise to some amount of increased complexity. However,

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

Defendants' own submissions demonstrate why certifying a class in this case is both urgent and necessary. Defendants acknowledge that between July 18, 2014, and August 25, 2015, they had already ordered the deportation of hundreds of pro se children who had appeared for their immigration court hearings, as well as thousands more who failed to appear. Dkt. 210 at 6 & n.3. But none of those children received any kind of determination as to whether they could represent themselves, much less the appointment of attorneys if they were unable to do so. None of these children, nor thousands of others like them whose cases remain pending, will ever have the opportunity to present this important constitutional claim unless the Court certifies the Class or Subclasses here. *See infra* Sections III-IV.

For all of these reasons, Plaintiffs respectfully request that the Court grant this Motion.

## ARGUMENT

**I.  The Court Should Certify a Class of All Indigent, Pro Se Children, Because They All Share the Common Claim That They Are Entitled to Appointed Legal Representation in Their Immigration Proceedings.**

In keeping with the Court's statements at the most recent status conference, Plaintiffs will not repeat at length their previously-stated position that certification of the Main Class is appropriate to allow all unrepresented indigent children to present the claim that they are entitled to appointed counsel in immigration proceedings. Instead, Plaintiffs merely summarize their position to preserve it. Dkt. 201.

Rule 23(b)(2) "does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). As the Ninth Circuit has held, maintaining a "dogged focus on the factual differences among the class members [would] demonstrate a fundamental misunderstanding of [Rule 23(b)(2)]," as "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

F.3d 1032, 1047 (9th Cir. 1998). "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014). Given the Supreme Court's repeated statements that children "as a class" "lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them," *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011), and multiple courts' recognition of how difficult immigration proceedings are to navigate, *see, e.g.*, Dkt. 114 at 30, Plaintiffs respectfully submit that the Main Class satisfies the commonality requirement.[2] Plaintiffs' recently-submitted expert reports, discussed in Section II.C, *infra*, further support this conclusion.

Nonetheless, Plaintiffs acknowledge that this Court has already found that the question of whether all children in immigration proceedings are entitled to appointed counsel "cannot be answered on a class-wide basis," and that Plaintiffs' previous Main Class claim for appointed counsel, *see* Dkt. 191, is "overly broad." Dkt. 225 at 5-6. As explained further below, it is for this reason that Plaintiffs have now proposed the four Subclasses.

Plaintiffs also reiterate that the proposed Main Class meets the remaining Rule 23 requirements, and explain those requirements in somewhat greater detail because they bear on the certifiability of the Subclasses as well. *See* Dkt. 191 at 10-12, 17-21.

Numerosity. In the three prior rounds of class certification briefing, Defendants have never contested that Plaintiffs' proposed Main Class satisfies numerosity. Tens of thousands of indigent children are currently facing the threat of deportation, including almost 60,000 immigration cases involving children filed in 2014 alone. *See* Dkt. 114 at 1 n.1; *see also* Dkt. 191 at 11-12 (explaining that for cases initiated in Fiscal Year 2014, over 50% of children in

---

[2] Plaintiffs respectfully maintain that the putative class satisfies all of Rule 23's requirements for the reasons stated in the prior motions for class certification, which Plaintiffs expressly incorporate herein. *See* Dkts. 2, 65, 117, 152, 191, 201. *See also* Dkt. 227 at 15:6-20 (indicating that it was unnecessary to reallege previously dismissed Plaintiffs and claims in order to preserve arguments for review).

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

proceedings remain unrepresented). Because the Main Class encompasses all indigent pro se children in immigration proceedings, it is sufficiently numerous.

Typicality. The named Plaintiffs are also typical of the class they seek to represent for much the same reasons that they share a common claim. *See Parsons*, 754 F.3d at 685 (noting that where plaintiffs challenge a "policy or practice . . . the underlying issue presented with respect to typicality is similar to that presented with respect to commonality"). While this Court has stated that it "cannot deem F.L.B.'s and M.A.M.'s claims to be typical" of the other class members with respect to issues highlighted by the Court, Dkt. 225 at 6,[3] Plaintiffs' Third Amended Complaint adds six new children (in addition to A.E.G.E., whose claims have now ripened), all of whom currently face deportation in proceedings where they lack legal representation. *See* Dkt. 207, ¶¶92-95, ¶¶108-27. And to the extent that this Court's typicality findings as to F.L.B. and M.A.M. were based on their age, Dkt. 225 at 6, the operative complaint includes newly-added children who, as of today, range in age from two to twelve. *See* Dkt. 207, ¶118, ¶108.

Defendants will no doubt point to a range of factual distinctions in order to challenge the typicality of each Plaintiff child's claims. *See, e.g.*, Dkt. 197 at 20-21. But Rule 23(a)(3) demands only that "[Plaintiffs'] claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Parsons*, 754 F.3d at 686; *Rodriguez*, 591 F.3d at 1124 (characterizing typicality requirement as "permissive"). Here, every child shares the common claim that they are entitled to legal representation in their immigration

---

[3] Notwithstanding this Court's prior rulings, Plaintiffs respectfully maintain that F.L.B. is an adequate and typical Main Class representative as well as Subclass representative for the "Entered" and "Unaccompanied" Subclasses. *See* Dkt. 191 at 4, 17-20; *see also* Sections II.A.i. and II.B.i *infra.*. Plaintiffs also reassert that J.E.F.M., J.F.M., D.G.F.M., J.E.V.G., M.A.M. and G.J.C.P., whom this Court either has previously dismissed with prejudice or found their claims to be atypical of the class, retain the ability to serve as Main and Subclass representatives because their claims were live as of the time the complaint was filed. *See* Dkt. 95 ¶¶ 69, 71, 73, 85, 107, 110; Dkt. 191 at 4 n.3 (explaining why mootness of named Plaintiffs' claims do not defeat typicality). Plaintiffs hereby preserve these issues for appellate review.

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

proceedings. Because the claims of the named Plaintiffs are "reasonably co-extensive with the claims of the class" and they raise "similar constitutionally-based arguments and are alleged victims of the same practice," *Rodriguez*, 591 F.3d at 1124, the typicality requirement is amply satisfied here. *See* Dkt. 191 at 17-19; Dkt. 191 at 12. This is especially true because the existence of a class is certain, even if individual children will come in and out of the class. *See Wilbur v. City of Mt. Vernon*, 298 F.R.D. 665, 668 (W.D. Wash. 2012) (finding that mootness of named plaintiffs' claims did not render them atypical, in part because "the constant existence of a class of persons suffering the deprivation is certain").

Adequacy. For similar reasons, the named Plaintiffs would be adequate representatives of the class. As explained in prior briefing, none of the Plaintiff children have interests that are opposed to those of other members of the class, and their interests coincide in that they all wish to obtain relief in the form of legal representation, or at a minimum, the establishment of a procedure that would determine their entitlement to such relief. *See* Dkt. 191 at 20-21.[4]

## II. To the Extent That the Court Concludes That Other Differences Amongst the Main Class Undermine Commonality, It Should Address Those Concerns by Certifying Subclasses.

While the Court has already held that differences amongst the children of the proposed Main Class preclude a finding of commonality, it can address those differences through the adoption of Subclasses. Once it has done so, it need not find that the Main Class satisfies the commonality requirement. Instead, only each Subclass must satisfy commonality. *See* Fed R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into Subclasses that are each treated as a class under this rule."); *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (noting that Subclass "must independently meet all of rule 23's

---

[4] Defendants have never challenged the adequacy of Plaintiffs' counsel to represent the interests of the putative class, which is entirely sensible in light of their collective decades of experience litigating complex class action and civil rights litigation, much of it in the immigration context. *See* Dkt. 191 at 21; *see also* Dkts. 123-26 (counsel declarations).

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

requirements for maintenance of a class action"). In keeping with the Court's conclusions that the Main Class does not satisfy Rule 23(b)(2)'s commonality requirement, Plaintiffs now propose four Subclasses, each of which independently warrants certification.

**A. If the Court Concludes That Children "Arriving" at a Port of Entry Lack Commonality With Those Who Have Entered, It Should Certify a Subclass of Children Who Have Entered the United States and Another Subclass of Children Who Are "Arriving."**

Should the Court conclude that children who have already entered the United States stand on a fundamentally different footing, for purposes of their counsel claim, from children stopped at a port of entry, it should certify a Subclass of children who have entered the United States, as well as a Subclass of children who were apprehended prior to entry.

**1. The "Entered" Subclass**

The "Entered Subclass" would be defined as: all children who fall within the Main Class definition and who entered the United States before apprehension. Plaintiffs F.L.B., J.R.A.P., and K.N.S.M. are appropriate representatives. *See* Dkt. 191-1 at 27, 53, 56.

This proposed Subclass meets the Rule 23(a) criteria. First, the Subclass is numerous. While numerical data that captures which children have entered the United States is not easily available for all hearing locations, a review of locations where data is available makes clear that there are thousands of such children. For instance, Defendants collect data regarding the numbers of individuals who are charged with being "present in the United States" without being admitted or paroled (also known as having "entered without inspection"), and being a noncitizen who has "been admitted to the United States, but [is] removable."[5] While these charges do not always accurately reflect whether a given immigrant has entered the United States, this charging data supplies strong evidence that the Entered Subclass is numerous. For example, of the 255 immigration cases filed in two children's dockets in California

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

immigration courts in Fiscal Year 2015, the respondents were charged as entering without inspection in 96 of them. In Texas, the figures are even more telling. Of the 826 immigration cases filed in five children's dockets in Texas immigration courts, 732 of them contained a charge of entering without inspection. *See* Declaration of Glenda Aldana Madrid ¶¶4-7. This data is corroborated by evidence from legal service providers showing that the number of children fitting this category is large. *See* Declaration of David Thronson, ¶4; Declaration of Rebekah Fletcher, ¶13; Declaration of Daniel J. Sharp ¶13; Declaration of Dalia Castillo-Granados ¶7. The former director for Kids In Need of Defense in Seattle, for instance, has submitted a declaration clarifying that in Seattle, the large majority of children she saw were charged as having entered without inspection. *See* Declaration of Rebekah Fletcher, ¶13.

The members of this Subclass share a common claim for appointed counsel. Most importantly, all members of this Subclass are indisputably entitled to the full protections of the Due Process Clause. *See, e.g.*, *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014) ("The Supreme Court has categorically declared that once an individual has entered the United States, he is entitled to the protection of the Due Process Clause.") (referencing, *inter alia*, *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001)). Thus, all members of this Subclass stand on the same constitutional footing.[6]

Plaintiffs F.L.B., J.R.A.P., and K.N.S.M. could serve as adequate Subclass representatives, with claims typical of its members. All of these children were apprehended once they had already entered the United States. They all face the prospect of continued

---

[6] The category of children present in the country without being admitted or paroled includes children who were apprehended shortly after having effected an unauthorized entry into the United States. Defendants have previously argued that such class members do not enjoy the same due process rights as individuals who have been present in the United States for a longer period of time. *See, e.g.*, Dkt. 197 at 18-19. The Ninth Circuit has explicitly rejected this argument, making clear that the "long line of precedent [on this topic] admits of no exception: an alien who has entered the United States is guaranteed due process protections," whether "their presence here is lawful, unlawful, temporary, or permanent." *Raya-Vaca*, 771 F.3d at 1202-03; *id.* at 1203 ("Even an alien who has run some fifty yards into the United States has entered the country.") (citations omitted). As such, all of the children in this Subclass are entitled to due process in their immigration proceedings.

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

immigration proceedings without legal counsel and lack the capacity to represent themselves in those proceedings, in violation of their rights to due process. They thus share a common injury, both among themselves and with the Subclass they seek to represent, and seek a common resolution of their claims to counsel. Their interests are aligned with those of the other, unnamed members of the Subclass. Furthermore, that individuals within this Subclass may qualify for different forms of relief or that their claims may vary in strength do not defeat commonality. *See, e.g.* Dkt. 65 at 2-3 (discussing, *inter alia*, diverse class certified in *Rodriguez*, 591 F.3d 1105); Dkt. 191 at 18-20 (discussing similar diversity in classes certified in, *inter alia*, *Franco-Gonzales v. Napolitano*, No. CV 10-02211 DMG (DTBx), 2011 WL 11705815 (C.D. Cal. Nov. 11, 2011)).

Because the "Entered Subclass" satisfies all of Rule 23(a)'s requirements, it should be certified.

### 2. The "Arriving" Subclass

If the Court certifies a Subclass of children who have entered, it should also certify the mirror-image Subclass of children who are "arriving" (i.e., those who have not entered). This Subclass would consist of all children who fall within the Main Class definition and who have presented themselves at ports of entry and are therefore "arriving aliens." Plaintiffs A.E.G.E., A.F.M.J., L.J.M., M.R.J., and E.G.C. are all appropriate representatives. *See* Dkt. 191-1 at 33, 37, 41, 45, 49.

This Subclass also satisfies the requirements set by Rule 23(a). There is no dispute that it satisfies numerosity, given the dramatic increase in recent years of children presenting themselves at the border requesting asylum. Declarations of legal service providers corroborate that the number of children in this Subclass is significant. *See* Thronson Decl., ¶4; Fletcher Decl. ¶13; Sharp Decl. ¶13.[7] The Subclass also shares a common legal claim for appointed

---

[7] *See also Ali v. Ashcroft,* 213 F.R.D. 390, 408 (W.D. Wash. 2003), *aff'd,* 346 F.3d 873, 889 (9th Cir.

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

counsel, as they all assert the same injuries and ask for the same remedies. In addition, the Subclass members present typical claims, as they all stand in the same constitutional position under Defendants' view of the Due Process Clause.

Plaintiffs offer this Subclass in response to Defendants' assertion that its members have lesser due process rights than those of other children. Defendants have previously alleged that because these children have not entered the United States at the time they are apprehended by the immigration authorities, they are "not entitled to any process other than that provided by statute," thus distinguishing these children from those who have entered. Dkt. 197 at 19.

As Plaintiffs have argued previously, Defendants' argument overlooks that the process afforded by the statute *is* the full protection of the Due Process Clause. *See* Dkt. 65 at 10-11 (citing *Oshodi*, 729 F.3d at 889 ("*[E]very* individual *in removal proceedings* is entitled to a full and fair hearing.") (citations omitted) (emphasis added)); *see also Jie Lin v. Ashcroft*, 377 F.3d 1014, 1019-20, 1034 (9th Cir. 2004) (finding violation of "Fifth Amendment right to due process" of child in deportation proceedings, where child had not entered the United States at the time he was apprehended because he had been found in an airport restroom shortly after his flight arrived). Nonetheless, because Defendants have argued that such children have lesser rights, and because this Court has expressed concerns about commonality amongst members of the Main Class, the certification of a separate Subclass of children who have not entered the United States should satisfy those concerns.

Plaintiffs A.E.G.E., A.F.M.J., L.J.M., M.R.J., and E.G.C. are adequate representatives of this Subclass. Their interest in securing counsel is shared by all members of their Subclass. Moreover, as explained *supra*, the differences in their individual circumstances do not create

2003), *vacated on other grounds,* 421 F.3d 795 (9th Cir. 2005) (clarifying that "the exact size of the putative class is not required for certification, "'so long as general knowledge and common sense indicate that it is large'") (citing *Perez–Funez v. INS,* 611 F. Supp. 990, 995 (C.D. Cal. 1984)).

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

tensions or conflicts within the Subclass, for the basis of their counsel claims and the remedies they seek are the same. The "Arriving Subclass" thus satisfies the requirements of Rule 23(a).

**B. If the Court Concludes That Children Who Are Unaccompanied by Parents in Their Removal Proceedings Lack Commonality With Those Who Are in Proceedings With a Parent, the Court Should Certify a Subclass of Children Who Are Unaccompanied by Parents in Their Removal Proceedings and Another Subclass of Children Who Are in Proceedings With a Parent.**

If the Court believes that children accompanied by parents may stand on a different footing than children who are alone in their immigration proceedings, *see* Dkt. 225 at 5, it should certify Subclasses to address that commonality concern as well.

**1. The "Unaccompanied" Subclass**

Plaintiffs propose that the Court certify a third Subclass of children who are unaccompanied by parents in their removal proceedings. This "Unaccompanied Subclass" is defined as: all children who fall within the Main Class definition and whose immigration proceedings are not consolidated with those of a parent.[8] Plaintiffs F.L.B., A.E.G.E., E.G.C., J.R.A.P., and K.N.S.M. are all appropriate representatives. *See* Dkt. 207 ¶¶83-84, 93-94, 108-09, 121-22, 125-26.

This proposed Subclass meets the Rule 23(a) criteria. It is unquestionably numerous, as it is largely composed of those children whom DHS designated as "unaccompanied" upon apprehension—that is, children who have "no lawful immigration status in the United States," "not attained 18 years of age," and "no parent or legal guardian in the United States" or "no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. 279(g)(2). DHS apprehended several thousand children fitting into Section 279(g)(2)'s definition in the final three months of 2015 alone, according to official DHS

---

[8] "Consolidation of cases is the administrative joining of separate cases into a single adjudication for all of the parties involved. Consolidation is generally limited to cases involving immediate family members." *See* Immigration Court Practice Manual, § 4.21(a).

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

reports. *See* Southwest Border Unaccompanied Alien Child Statistics FY 2016, available at http://tinyurl.com/pl6vbah (last visited Jan. 27, 2016) (reflecting that CBP apprehended 9,090 unaccompanied children from October 1, 2015 through December 31, 2015 along the Southwest border). Moreover, these statistics do not include children such as E.G.C. and K.N.S.M., who fall into the Subclass even though DHS did not formally designate them as unaccompanied upon their apprehension under 6 U.S.C. 279(g)(2).[9]

The members of this Subclass share a common claim for appointed counsel, and their shared status of being without a parent in consolidated removal proceedings creates common facts. Defendants themselves have argued that the Court should recognize the distinction between children who are not in removal proceedings with their parents and those who are. *See* Dkt. 197 at 12 (claiming "accompanied" children's "eligibility for relief is made almost entirely within the context of the parent's removal proceedings), 21 (pointing out "additional benefit of having their relief applications examined concurrently with the applications of a parent").[10]

Plaintiffs F.L.B., A.E.G.E., E.G.C., J.R.A.P., and K.N.S.M. are adequate Subclass representatives, with claims typical of its members. All of them face the prospect of continued immigration proceedings without legal counsel and without a parent or parents in consolidated removal proceedings with them, and they lack the capacity to represent themselves in those

---

[9] DHS did not designate E.G.C. or K.N.S.M. under 6 U.S.C. 279(g)(2) upon their apprehension at the United States/Mexico border because they were with their mothers. *See* Dkt. 207 ¶¶ 108, 125. Nonetheless, they now face proceedings in which their parents are not parties.

[10] Defendants may argue that even children who are not in proceedings with their parents should be treated as "accompanied", so long as they live with their parents. Such a construction of the term would be contrary not only to their own arguments, as cited above, but also to Defendants' own practice. DHS affixes a "UAC status determination" to a child who meets the statutory definition *upon apprehension*, and it can be removed only by an official, subsequent action to strip that status. *See* Aldana Madrid Decl., Ex. E at 1-2; *see also* 8 U.S.C. 1232(b) (requiring DHS to turn over unaccompanied children to HHS within 72 hours). As a result, Defendants treat children in this Subclass as "unaccompanied" regardless of whether they are later reunited with a parent or legal guardian. For example, a child's ability to access USCIS's allegedly child-friendly affirmative asylum process is tied to their being unaccompanied when they file the asylum application *or* when DHS apprehended them, irrespective of whether they are subsequently placed with family. *See* Ex. 15 at 2 (adopting DHS's UAC status determination, absent an affirmative act to reverse the finding, for purposes of asylum office jurisdiction under 8 U.S.C. § 1158(b)(3)(C)).

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

proceedings, in violation of their rights to due process. *See* Section I, *supra*. As a result they share a common injury, both among themselves and with the Subclass they seek to represent, and they seek a common resolution. Their interests are aligned with those of the other, unnamed members of the Subclass. That they may qualify for different forms of relief or that their claims may vary in strength do not defeat commonality. *See, e.g.* Dkt. 65, at 2-3. The "Unaccompanied Subclass" satisfies all 23(a) requirements and should be certified.

### 2. The "Accompanied" Subclass

If the Court certifies the Subclass of children unaccompanied by parents in their removal proceedings, then it should also certify the mirror-image Subclass of children who are accompanied by parents in their removal proceedings. This "Accompanied Subclass" is defined as: all children who fall within the Main Class definition and whose removal proceedings are consolidated with those of a parent. Plaintiffs A.F.M.J., L.J.M., and M.R.J. are all appropriate representatives of this Subclass. *See* Dkt. 207 ¶¶ 112-13, 116-17, 118-19.

The Subclass satisfies the requirements set by Rule 23(a). It is clearly numerous. DHS apprehended over 21,000 individuals who were part of "family units" in the final three months of 2015 alone, according to official DHS reports.[11] *See Southwest Border Unaccompanied Alien Child Statistics FY 2016*, available at http://tinyurl.com/pl6vbah (last visited Feb. 1, 2016) (reflecting that CBP apprehended 38,639 individuals in family units from October 1, 2015 through December 31, 2015 along the Southwest border). Even if only a fraction of those were children placed into consolidated removal proceedings with a parent or parents, the Subclass they comprise would nonetheless be numerous.

The Subclass also shares a common legal claim for appointed counsel in their removal proceedings—a claim that asserts the same injury and asks for the same remedy. Their shared

---

[11] "Family Unit represents the number of individuals (either a child under 18 years old, parent or legal guardian) apprehended with a family member by the U.S. Border Patrol." *See Southwest Border Unaccompanied Alien Child Statistics FY 2016, supra.*

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

status as being in consolidated removal proceedings with a parent or parents creates a common set of facts, which Defendants have already acknowledged. *See* Part III.B.1, *supra*. And Plaintiffs A.F.M.J., L.J.M., and M.R.J. are adequate representatives with claims typical of the Subclass. All three children face the prospect of continued consolidated removal proceedings with a parent, lack the capacity to represent themselves, and lack legal counsel to assess any conflicts of interest and to identify and fully pursue both distinct and overlapping forms of protection from removal, all in violation of their rights to due process. Their interest in securing counsel is shared by all members of their Subclass. The differences in their individual circumstances do not create tensions or conflicts within the Subclass, since the basis of their counsel claim and the remedy they seek are the same.

The "Accompanied Subclass" therefore satisfies the requirements of Rule 23(a).

### C. This Court Should Not Deny Certification Because Individual Children May Suffer Different Levels of Harm Upon Deportation or Have Differing Capacities to Represent Themselves.

Plaintiffs recognize that the Court has pointed to other differences amongst putative class member children that may preclude certification, including whether all children have the psychological and developmental capacity to represent themselves and whether all children would share a cognizable level of harm in the event that they were deported. However, Plaintiffs respectfully suggest that the record evidence at this stage does not support either the denial of Main Class or Subclass certification based on these differences.

While it is true that class certification may require some inquiry into the merits on these questions – i.e., whether the members of the proposed classes lack the capacity to represent themselves and would suffer harm sufficient to give rise to a due process claim – both the Supreme Court and Ninth Circuit have cautioned that "th[e] likelihood of overlap with the merits is 'no license to engage in free-ranging merits inquiries at the certification stage.'" *Stockwell v. City and Cnty. Of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (quoting

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013)); *cf. Amgen*, 133 S. Ct. at 1196 (explaining as to Rule 23(b)(3)'s predominance requirement that plaintiffs "need not . . . prove that the predominating question will be answered in their favor").

Under *Stockwell*, *Amgen*, and similar cases, Defendants have not presented sufficient legal or evidentiary support for this Court to deny certification on the ground that some class member children have the capacity to represent themselves. Defendants' claim that some children under 18 may be capable of litigating their claims pro se goes to the very heart of Plaintiffs' merits claim, which is that *all* children are incapable of representing themselves. Plaintiffs have already presented testimony from one of the foremost child psychology experts in the nation (whose work has been cited by the Supreme Court), explaining that all children categorically lack the competency necessary to represent themselves in their immigration proceedings. Dkt. 212, Ex. 1 (Report of Dr. Laurence Steinberg), ¶45 (opining that "it is impossible to imagine that *any* child under the age of 18, much less an immigrant child who is more likely to be unfamiliar with American legal arguments and defenses" can represent herself). In addition, a leading children's immigration expert has provided numerous reasons for why immigration proceedings are too complex for children to navigate alone. *Id.*, Ex. 2 (Report of David Thronson), ¶45 ("Children require legal representation not only to pursue immigration relief for which they are eligible but also to provide legally sound counsel about the differential costs and benefits of various choices they will make about possible forms of relief."). Plaintiffs have also brought forward statistical evidence showing that legal representation is critical, if not dispositive, of children's success or failure in immigration court. *See* Dkt. 212, Ex. 3 (Report of Dr. Susan Long); *see also* Dkt. 114 at 33 n.26 (Court's opinion recognizing that statistical evidence supported Plaintiffs' claim for legal representation).

When combined with the Supreme Court's repeated admonitions that children "as a class" "lack the capacity to exercise mature judgment and possess only an incomplete ability to

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

understand the world around them," *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011), and multiple courts' recognition of how difficult immigration proceedings are to navigate, *see, e.g.*, Dkt. 114 at 30-31 (citing *Baltazar-Alcazar v. INS*, 386 F.3d 940, 948 (9th Cir. 2004)), the record evidence in this case is more than sufficient *for purposes of class certification* to show that children cannot have fair hearings without legal counsel. While Defendants may ultimately contest that evidence, and while the Court may ultimately decline to credit it, governing precedent in cases such as *Stockwell* and *Amgen* establishes that such merits-based evaluation should not be a basis to deny certification at this stage.

Similarly, Defendants have provided no reason to doubt that the children in the putative class can show grave harm upon deportation, as both decades of case law and all of the record evidence confirm. *See, e.g.*, Dkt. 85 at 21 (citing *Bridges v. Wixon*, 326 U.S. 135, 164 (1945) ("The impact of deportation upon the life of an alien is often as great if not greater than the imposition of a criminal sentence. . . . Return to his native land may result in poverty, persecution, even death."), and *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947) ("[d]eportation can be the equivalent of banishment or exile")). Indeed, the Ninth Circuit has repeatedly required the certification of classes challenging due process deficiencies in the immigration context without regard to whether individual class members faced more or less harm from deportation. *See Rodriguez*, 591 F.3d at 1125; *Walters,* 145 F.3d at 1047.

While Defendants have hypothesized the existence of children from Australia, Canada, or Denmark who face no harm if deported, *see, e.g.*, Dkt. 197 at 7 n.4; Dkt. 135 at 5 n.4, they have provided no evidence that such children are ever placed in removal proceedings. Indeed, data drawn from the TRAC website indicates that of the nearly 80,000 children who have been unrepresented in their immigration proceedings in the last ten years, there have been 44 Canadian children, four Australian children, and zero Danish children, comprising a total of

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

0.06% of all pro se children. Aldana Madrid Decl., ¶2.[12] And of course, even this handful of children can face harm in a variety of ways, including family separation. Defendants have provided no *evidence* of any child who would not face legally cognizable harm if deported. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (rejecting defendants' speculative efforts to defeat commonality and noting that "[t]here is nothing in the record" suggesting that individual questions abounded).

In contrast, Plaintiffs have presented ample evidence of classwide harm. In addition to decades of case law holding that deportation can result in a myriad of serious and irreparable injuries, *see, e.g.*, Dkt. 85 at 21, *supra*, and that children are uniquely and particularly vulnerable to those harms, *see, e.g.*, Dkt. 24 at 10 at n.5 (citing *Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042, 1045-46 (9th Cir. 2007)), the facts of the named Plaintiffs' cases illustrate all of these harms. Some plaintiffs, like A.E.G.E., J.R.A.P., K.N.S.M., A.F.M.J., L.J.M., and M.R.J face grave persecution in their home countries, including the risk of death. Dkt. 207 ¶¶92, 111-27. Others, like E.G.C. and F.L.B., have effectively been abandoned by their family members and will no doubt face serious privation if deported to such unstable home environments. *Id.* ¶82, 108. Still more children, like M.A.M., face the prospect of lengthy or permanent separation from their family members and longstanding community ties in the United States. *Id.* ¶¶86-88.

Plaintiffs' expert and other experienced legal services providers confirm that the vast majority, if not all, of the putative class will suffer one or more of these harms upon deportation. *See* Thronson Decl., ¶7; Sharp Decl., ¶¶10-12; Castillo-Granados Decl., ¶ 8. For example, a United Nations report that surveyed several hundred children found that no less than 58% of children in immigration proceedings may be eligible for asylum in the United States

---

[12] Those figures drop even more precipitously – to five Canadian children and one Australian child – when the data is limited to cases initiated in FY 2014 or after. *See* Aldana Madrid Decl., ¶3.

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

and are escaping persecution in their home countries. Dkt. 207, ¶36 n.10; *see also* Thronson Decl., ¶8. A similarly large number of putative class members may be eligible for Special Immigrant Juvenile Status, meaning that they have suffered abandonment, abuse, or neglect, such that it is not in their best interests to be returned to their countries of origin. *See* Thronson Decl., ¶9; Castillo-Granados Decl., ¶8; Sharp Decl., ¶11. Numerous other children are at risk of separation from their families and communities. *See* Thronson Decl., ¶7.

In response, Defendants have never offered evidence showing that any of the Named Plaintiffs would not face harm if deported, that any significant number (or indeed, even an insignificant number) of class members would not face harm, or that the Named Plaintiffs are not representative of the harms facing the class. The only evidence this Court has on the issue establishes that all children in immigration proceedings would face grave harm if removed, and that the Named Plaintiffs are entirely typical in this regard.

Consequently, rejecting Plaintiffs' class certification motion based on these differences before the parties have had the opportunity to present the full range of evidence on such critical questions would be error. *See Stockwell*, 749 F.3d at 1113 (finding that district court erred by "evaluating merits questions, rather than focusing on whether the questions presented . . . were common to members of the putative class").

Even were Defendants to present sufficient evidence to establish that a materially significant number of children do have the capacity to represent themselves or do not face sufficient harm to give rise to a due process claim, such that these differences would undermine commonality with respect to Plaintiffs' claim for appointed counsel, the appropriate remedy would be for the Court to either define Subclasses at that time, or modify the relief to be awarded based on the contours suggested by the record evidence. Under the rules of class action procedure, this Court will retain authority to modify the class and subclass definitions or create new ones as appropriate even after it rules on this motion. Fed R. Civ. P. 23(c)(1)(C)

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

("An order that grants or denies class certification may be altered or amended before final judgment."); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 202 (3d Cir. 2005) ("A district court hearing a class action has the discretion to divide the class into subclasses and certify each subclass separately."); *Marisol A. v. Giuliani*, 126 F.3d 372, 379 (2d Cir. 1997) ("Rule 23 gives the district court flexibility to certify subclasses as the case progresses and as the nature of the proof to be developed at trial becomes clear."). Thus, the Court can define subclasses based on capacity, harm, or any other differences for which the record establishes support.

Alternatively, and as Plaintiffs have argued previously, Dkt. 85 at 16-17, if the Court concludes that only some pro se indigent children are entitled to appointed counsel, it still should certify a class to permit children to challenge Defendants' present system because the immigration courts currently have *no* system in place for appointing counsel for children, regardless of the child's particular circumstances. *See* Aldana Madrid Decl., Ex. C (RFA Nos. 2-3); *id.*, Ex. D at 4. Thus, all class member children would still state a due process claim because Defendants never even *consider* whether to appoint them counsel. Under those circumstances, the Court would still be obligated to grant relief on a classwide basis by requiring Defendants to adopt a system for identifying children who are entitled to counsel and providing counsel to those who qualify. *See Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985) ("[c]ourts are traditionally encouraged to adjudicate the basic legal claim, even where the plaintiff has failed to seek the precisely correct relief but has instead relied on a general request for 'other appropriate relief.'"); *accord United States v. Howell*, 318 F.2d 162, 166 (9th Cir. 1963) (explaining that complaint need not be dismissed if court disagrees with plaintiff's original legal theory, and that it "is sufficient if . . . the plaintiff is entitled to any relief which the court can grant").

### III. Certification of the Class and/or Subclasses Would Satisfy Rule 23(b)(2)'s Purposes.

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

This Court has also raised a separate concern regarding certification, questioning whether "[t]he complexity and expense associated with certifying a class might far outweigh any efficiency gained in managing this litigation," and cited "the Court's inability to grant class-wide injunctive relief" as undermining the "utility" of class certification. Dkt. 225 at 6. However, those considerations do not justify denying certification, for four reasons.

*First*, even assuming that this Court should consider utility as a factor, class certification clearly would serve Rule 23(b)(2)'s purposes. One of the Rule's central objectives is to facilitate the adjudication of common claims in one fell swoop, rather than force individual plaintiffs to litigate the exact same claim in a host of different cases. Here, this Court is more than capable of resolving a critical question in one stroke: Are children, as a class, entitled to appointed legal representation in their immigration proceedings, or at a minimum, a procedure to ascertain whether they must be appointed counsel? Answering these questions in the aggregate would save both the putative class and Defendants the expense and burden associated with litigating this claim in a host of individual cases. *See Walters*, 145 F.3d at 1047 (noting that "[a]bsent a class action decision, individual aliens across the country could file complaints against the INS in federal court, each of them raising precisely the same legal challenge").

*Second*, class certification would serve another important purpose here, which is to permit adjudication of the putative class members' common claim for relief, notwithstanding that the named Plaintiffs' claims may become moot as they fall in and out of the class at different points in time. *See, e.g.*, *Rodriguez*, 591 F.3d at 1123 (observing that without class certification, claims of class members were likely to become moot, and that "class treatment in this case is likely necessary to provide the remedy sought" for many class members).

*Third*, this Court's ruling as to the availability of classwide injunctive relief poses no bar to certification. The text of Rule 23(b)(2) expressly provides that a class may be certified if "final injunctive relief *or corresponding declaratory relief* is appropriate respecting the class as

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). Defendants have never disputed this Court's authority to grant declaratory relief, and there is no reason to believe that Defendants would or could simply ignore this Court's declaration. *See Comm. on the Judiciary of the United States House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) ("[W]e have long presumed that officials of the Executive Branch will adhere to the law as declared by the court."); *Khoury v. Asher*, 3 F. Supp. 3d 877, 892 (W.D. Wash. 2014) (issuing classwide declaratory relief and noting that "[t]he court has no reason to expect that the government will not take appropriate action to end its violation of the law."). To be sure, a declaratory judgment would be "milder in remedy" and would not "impose affirmative obligations that are backed by a contempt sanction." *Rodriguez*, 591 F.3d at 1120. But even if Defendants disregarded this Court's ruling and required Plaintiffs' counsel to file separate enforcement actions throughout the country, a declaratory judgment from this Court would vastly simplify those cases by obviating the need to re-litigate the various arguments in this case on an individual basis.[13]

*Fourth*, Rule 23(b)(2) contains no "utility" requirement. The rule's text enumerates the prerequisites for certification: a plaintiff must satisfy the requirements of Rule 23(a) and demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). "Utility" or "efficiency" are not listed. Indeed, "unlike actions brought under one of the other 23(b) prongs, 'questions of manageability and judicial economy are . . . irrelevant to 23(b)(2) class actions.'" *Rodriguez*, 591 F.3d at 1125 (quoting *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1105 (5th Cir. 1993)).

## IV.    This Court Should Certify a Nationwide Class and/or Subclasses.

---

[13] Plaintiffs also note that if this Court finds that the Due Process Clause requires appointed legal representation for children in immigration proceedings, this Court could order the appointment of counsel under the Criminal Justice Act. *See* Dkt. 98 at 12-16 (explaining how CJA provides mechanism for appointing counsel for class members, if Plaintiffs prevail). 8 U.S.C. 1252(f)(1) would be inapplicable to such an order, since it would not in any way act to "enjoin or restrain" the relevant provisions of the Immigration and Nationality Act. This Court has never addressed that issue. *See* Dkt. 114 at 22 n.14 (noting that it remains open).

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

Finally, this Court has questioned whether the named Plaintiffs can satisfy typicality because their claims may differ from those of children "in other states or regions of the country." Dkt. 225 at 6. However, there is no basis to deny certification based on the alleged different practices in different parts of the country. Contrary to Defendants' position, every child in the putative class is in the same type of immigration proceeding (i.e., removal proceedings occurring before an immigration judge), which are governed by a uniform federal statutory and regulatory scheme. *See generally* 8 U.S.C. 1229a. Even Defendants have previously acknowledged that they apply or make available the same procedural safeguards for all children, regardless of their location. *See* Dkt. 80 at 21-23; Dkt. 135 at 11-15.

More fundamentally, to deny class certification on that basis would constitute error under governing Ninth Circuit law. The Ninth Circuit has expressly held that Defendants cannot escape nationwide certification by implementing minor variations in policy and procedure among its local offices, and then claiming that those geographic differences defeat commonality. *See Walters*, 145 F.3d at 1045-46. As *Walters* explained, "it would be 'a twisted result' to permit an administrative agency to avoid nationwide litigation that challenges the constitutionality of its general practices simply by pointing to minor variations in procedure" among its local offices. 145 F.3d at 1046. By the same token, this Court should not permit Defendants to defeat nationwide certification by showing that certain offices have undertaken efforts to try to ameliorate the widespread due process violations that children are suffering, where there is no question that children throughout the country continue to suffer harm resulting from their lack of legal representation.

Indeed, Defendants' only cited evidence of geographic variation is the testimony of one witness, who said only that he "can't tell you every single tool that's in every toolbox [of an immigration judge] in every particular region" – hardly conclusive evidence of material geographic differences among the putative class members. Dkt. 197, Ex. A at 147:9-14. As

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

courts have repeatedly explained, "[c]lass certification does not require uniformity. If that were the case, no class would ever be certified because, as defendants succinctly state, 'people are diverse.'" *Wilbur,* 298 F.R.D. at 666-67.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court certify the Main Class and/or the proposed Subclasses as set forth above.

DATED this 4th day of February, 2016.

ACLU IMMIGRANTS' RIGHTS PROJECT
ACLU OF SOUTHERN CALIFORNIA

By  s/ Ahilan Arulanantham
　　Ahilan Arulanantham (*pro hac vice*)
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
aarulanantham@aclusocal.org

NORTHWEST IMMIGRANT RIGHTS
PROJECT

By   s/ Matt Adams
　　Matt Adams, WSBA No. 28287
　　Glenda M. Aldana Madrid, WSBA No. 46987
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)
matt@nwirp.org
glenda@nwirp.org

Theodore J. Angelis, WSBA No. 30300
Todd Nunn, WSBA No. 23267
Heidi Craig Garcia, WSBA No. 41399
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
(206) 623-7580
(206) 623-7022 (fax)
theo.angelis@klgates.com
todd.nunn@klgates.com

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

heidi.garcia@klgates.com

Cecillia Wang (*pro hac vice*)
Stephen Kang (*pro hac vice*)
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
(415) 343-0950 (fax)
cwang@aclu.org
skang@aclu.org

Carmen Iguina (*pro hac vice*)
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
ciguina@aclusocal.org

Kristen Jackson (*pro hac vice*)
Talia Inlender (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
(213) 385-9089 (fax)
kjackson@publiccounsel.org
tinlender@publiccounsel.org

Margaret Chen, WSBA No. 46156
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184
mchen@aclu-wa.org


Kristin Macleod-Ball (*pro hac vice*)
Melissa Crow (*pro hac vice*)
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7500
(202) 742-5619 (fax)
kmacleod-ball@immcouncil.org
mcrow@immcouncil.org


Attorneys for Plaintiffs-Petitioners

PLTFS.' FOURTH CLASS CERT. MOT. - 25
Case No. 2:14-cv-01026-TSZ

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297

## CERTIFICATE OF ECF FILING AND SERVICE

I certify that on February 4, 2016, I arranged for electronic filing of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record:

  s/ Ahilan Arulanantham
Ahilan Arulanantham (*pro hac vice*)
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
aarulanantham@aclusocal.org

PLTFS.' FOURTH CLASS CERT. MOT. - 26
Case No. 2:14-cv-01026-TSZ

ACLU OF SOUTHERN CALIFORNIA
1313 WEST 8TH STREET
LOS ANGELES, CA 90017
TELEPHONE: (213) 977-5211
FACSIMILE: (213) 977-5297