Honorable Thomas S. Zilly

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.L.B., a minor, by and through his Next
Friend, Casey Trupin, et al.,

9

               Plaintiffs-Petitioners,

10

    v.

11

Loretta Lynch, Attorney General, United
States, et al.,

12

13

           Defendants-Respondents.

14

No. 2:14-cv-01026

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' FOURTH MOTION
FOR CLASS CERTIFICATION

NOTING DATE: February 26, 2016

ORAL ARGUMENT SCHEDULED:
March 24, 2016

15

16

17

18

19

20

21

22

23

24

25

26

## INTRODUCTION

For a fourth time, Plaintiffs request certification of the very same vast and varied nationwide class of juvenile aliens that have little—save their minor status—in common.  In the eighteen months that have elapsed between Plaintiffs' first and fourth class certification motions, Plaintiffs have refused to amend their proposed class definition despite repeated admonitions that their proposed class is overbroad and must be narrowed to ensure that every class member's claim is capable of adjudication under the same due process analysis. Although the government believes this failure has occurred because no such narrowly-tailored class can be crafted, Plaintiffs' disregard of the Court's previous instructions alone provides an ample basis for the Court to deny this fourth motion for class certification.

Plaintiffs' motion fails to address the many critical deficiencies this Court previously identified regarding the overly-expansive scope of the proposed class. Instead, Plaintiffs propose a perplexing set of mirror-image subclasses, each of which simply removes one element from the main class while maintaining the remainder of the overbroad characteristics previously rejected by the Court. These pairs of subclasses fail to account for many important characteristics that are likely to be dispositive of an individual minor's entitlement to relief under the highly-individualized due process analysis required by *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court should reject Plaintiffs' attempt to reargue issues the Court has already decided.

Plaintiffs have also failed to demonstrate that the marginal benefit of a class-wide declaratory order (over a published decision on the merits of an individual Plaintiff's legal claim) outweighs the delay and costs necessary to litigate the availability of relief to the proposed subclasses. Alternatively, should the Court find a certifiable class, the class must be limited to individuals who face removal proceedings within the Court's jurisdiction to: (1) prevent forum shopping; (2) allow this complex legal issue to develop in different jurisdictions; and (3) permit the Court to focus on assessing the specific resources available  to minors in its own jurisdiction.

## PROCEDURAL BACKGROUND

Plaintiffs, fourteen minors in removal proceedings, have on three prior occasions tried and failed to propose a class eligible for certification under Federal Rule of Civil Procedure 23(b)(2) to address their sole claim for relief—a claim brought under the Fifth Amendment's

1

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

Due Process Clause asserting entitlement to court-appointed, taxpayer-funded counsel in immigration court proceedings. Most recently, on January 21, 2016, the Court rejected Plaintiffs' third attempt to certify a class comprised of "all individuals under the age of eighteen who are in immigration proceedings on or after July 9, 2014, without legal representation in their immigration proceedings and who are financially unable to obtain such representation." ECF 225. The Court identified three categories of deficiencies in Plaintiffs' third proposed class— commonality, typicality, and judicial efficiency—and expressed concern that "[t]he due process analysis might well require the type of individualized inquiry that would render this matter unsuitable for class treatment." *Id*. at 6. Despite this concern, the Court gave Plaintiffs a final opportunity to appropriately narrow their class definition. *Id*. at 7. Rather than taking the opportunity to demonstrate that "these deficiencies can be addressed by appropriately narrowing the class," as the Court instructed, Plaintiffs again moved to certify the *very same* main class and four subclasses that overlap such that *every* child falls within two of the four subclasses. ECF 230 at 2-3. These subclasses are: (1) a subclass of minors apprehended at a port of entry ("arriving subclass"); (2) a subclass of minors apprehended after "entering" the United States ("entered subclass"); (3) a subclass of minors whose removal proceedings are consolidated with that of a parent ("accompanied subclass"); and (4) a subclass of minors whose removal proceedings are not consolidated with that of a parent ("unaccompanied subclass"). *Id*. at 3.

## LEGAL STANDARD FOR CLASS CERTIFICATION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23. *Wal– Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011). The burden of a party seeking certification of a proposed class includes demonstration of the existence of the required elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure, including that: (1) there are questions of law or fact common to the class ("commonality"); (2) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); and (3) the named

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation"). *See* Fed. R. Civ. P. 23(a). The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). In this case, Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(2), which permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2557. If a court is not convinced that the plaintiff has fully satisfied all of the Rule 23 requirements, the class cannot be certified. *Gen. Tel. Co.*, 457 U.S. at 160.

Thus, in order to obtain class certification, Plaintiffs must demonstrate that the proposed class is entitled to common relief. *See* Fed. R. Civ. P. 23(a)(2), (b)(2). The Supreme Court has repeatedly held that "[i]t is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc.,* 131 S. Ct. at 2551. This requirement is likewise present in Rule 23(b)(2), the Rule under which Plaintiffs seek certification. For certification under Rule 23(b)(2), Plaintiffs must show that "declaratory relief is available to the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2557. Accordingly, Plaintiffs have the burden of demonstrating that the factual differences in the class are unlikely to bear on the individual's entitlement to declaratory relief. *See In re Google AdWords Litig.*, No. 5:08–CV–3369 EJD, 2012 WL 28068 *15-16 (N.D. Cal. Jan. 5, 2012) ("The question of which advertisers among the hundreds of thousands of proposed class

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

members are even entitled to restitution would require individual inquiries."). If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification may not be appropriate. *Cf. Califano*, 442 U.S. at 701. Satisfaction of Rules 23(a)(2) and (b)(2), therefore, requires two steps: (1) the identification of a common legal problem, *see Ellis v. Costco*, 657 F.3d 970, 981 (9th Cir. 2011); and (2) a demonstration that the common legal issue may be resolved as to all class members simply by virtue of their membership in the class. *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2551, 2557 (The common legal problem "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*." (emphasis added)).

## ARGUMENT

**I.     Plaintiffs' proposed main class and subclasses lack commonality because their motion is, yet again, based on the rejected premise that there is a categorical right to counsel at taxpayer expense for all indigent minors in immigration proceedings.**

Although Plaintiffs attempt to identify a common legal question (class entitlement to government-funded counsel), that question "cannot be answered on a class-wide basis for the class Plaintiffs have proposed." ECF 225 at 5. The Court need only look to the highly-individualized test Plaintiffs assert governs their sole legal claim to see that Plaintiffs' claim is not capable of uniform disposition. It is well-settled that "the requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, (1972)). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001). As a result, the Supreme Court has "declined to establish rigid rules" and instead employs the *Mathews* test to evaluate the constitutional sufficiency of particular procedures. *Id*.

The due process analysis required to decide this case renders this matter unsuitable for class treatment. The *Mathews* test considers: (1) the significance of the private interest at issue in the underlying proceeding; (2) the risk of an erroneous deprivation of that interest under the current procedures employed and the probable benefits of any additional procedural protections;

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

and (3) the government's interest in avoiding the fiscal and administrative burdens that those additional protections would impose. *Mathews*, 424 U.S. at 335. Each factor presents fact-intensive inquiries that are ill-suited to classwide resolution. *See Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346 (D.D.C. 2011) ("[W]hether a particular class member was denied due process will turn on the fact-intensive inquiry demanded by *Mathews* and its progeny . . . ."). This is particularly true here. The individual characteristics of the members of Plaintiffs' proposed subclasses and the varied procedural protections available to proposed class members make it impossible for the Court to uniformly apply the *Mathews* factors and order one-size-fits-all relief. *See Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004) (holding that due process determinations regarding minors in removal proceedings should take into account individual circumstances).

In its January 21, 2016 Order, the Court identified at least three distinct commonality issues precluding class certification. ECF 225 at 5-6. First, the Court determined that minors who "face no potential harm if removed to their country of origin" "cannot make the requisite showing of a protected interest for purposes of the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976), due process] analysis." *Id.* at 5. Second, the Court held that the proposed class lacked commonality because it "includes minors who, because of age, education, intelligence, language skill, and/or experience, might be fully capable of navigating through immigration proceedings without an attorney and, thus cannot show, under the *Mathews* balancing test, that their interests outweigh those of the government." *Id.* Third, the Court found that the class lacks commonality because it fails to "distinguish between unaccompanied minors and minors who arrived and/or reside with one or both parents . . . ." *Id.* Plaintiffs' proposed subclasses fail to remedy these issues; therefore, the motion should be denied under the law of the case, as well as under Rule 23(a)(2) and (b)(2)'s commonality requirements.

## A. Plaintiffs' proposed subclasses include individuals who lack a protected interest.

Under the first step of the *Mathews* test, the Court must identify the private interest affected by the removal proceedings and evaluate the significance of the individual interest. *Mathews*, 424 U.S. at 335. The strength of the private interest depends on the nature of the relief

the proposed class member is seeking in the proceedings. The interest a class member has in obtaining a purely discretionary form of relief from removal is considerably different than the substantially greater interest a class member may have proving a citizenship claim. *See, e.g., Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("[s]ince discretionary relief is a privilege created by Congress, denial of such relief cannot violate a substantive interest protected by the Due Process Clause"); *see also Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167 (9th Cir. 2004); *cf. Fernandez v. Gonzales*, 439 F.3d 592, 602 n.8 (9th Cir. 2006) (noting that general right to full and fair hearing does not depend on nature of relief sought). That interest is likewise different if the child does not have any grounds for relief (or protection) from removal. *See Enriquez v. Imm. & Nat. Serv.*, 516 F.2d 565, 567-68 n.3 (6th Cir. 1975) ("[T]he absence of counsel . . . before the Immigration Judge did not deprive his deportation proceeding of fundamental fairness" because "there was no defense for which a lawyer would have helped.").

Plaintiffs have not alleged any basis to support the claim that a minor seeking asylum has the same private interest at stake as a minor who either has no claim for relief or who simply seeks to avoid returning home because they prefer living in the United States. Despite this critical omission, Plaintiffs continue to refuse to account for this legal distinction in their proposed subclasses. As a result, all of Plaintiffs' proposed subclasses include both minors who have no viable relief or protection claim (or fear of removal) and those with cognizable claims regarding a fear of persecution or torture upon removal. The *Mathews* framework simply does not support a uniform legal analysis of those very different due process claims.

Plaintiffs' only allegation of classwide harm amounts to this: "deportation *can* result in a myriad of serious and irreparable injuries." ECF 230 at 19 (emphasis added). This allegation is not sufficient to establish commonality. Notably, the "evidence" for Plaintiffs' claim is a citation to Plaintiffs' own motion to dismiss briefing in which they baldly assert, "the Court must assume that Plaintiffs face severe consequences if deported." ECF 85 at 21. Of course, that is not a presumption applicable to class certification. *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2551-52 (Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23). Additionally, the types of "separation" injuries Plaintiffs allege do not create cognizable interests either in due

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

process or through our immigration laws. If anything, Plaintiffs' argument demonstrates that there is a wide range of interests at stake, ranging from the simple desire not to return from Seattle to Vancouver to a legitimate fear of torture. Although Plaintiffs are undoubtedly right that "some plaintiffs" may "face grave persecution in their home countries," ECF 230 at 19, Plaintiffs' proposed subclasses fail to incorporate any limiting language designed to capture a common legal interest. The subclasses fail on this basis.[1]

### B. Plaintiffs' proposed subclasses fail to account for variations in age, education, intelligence, language skill, or experience.

Under the second *Mathews* factor, the Court must evaluate the risk of an erroneous deprivation of the individual interest through the procedures currently in place, and the probable value, if any, of additional or substitute procedural safeguards. The risk of erroneous deprivations may vary according to the child's ability to convey the information necessary to make a claim for relief. For certification to be proper for a subclass encompassing all unrepresented minors of all ages, Plaintiffs must make an initial showing that all minors— regardless of age, education, intelligence, language skill, or experience—lack the ability to represent themselves in immigration court such that they have a shared due process claim capable of uniform resolution.

The Court has already rejected Plaintiffs' claim that all minors lack the ability to participate in removal proceeding. ECF 225 at 5 ("The proposed class includes juveniles who, because of age, education, intelligence, language skills, and/or experience, might be fully capable of navigating through immigration proceedings."). Indeed, Plaintiffs' claim has been repeatedly disproven by the facts of this case, where several named Plaintiffs have obtained relief without the assistance of government-appointed counsel. The very fact that these minors were able to navigate the immigration system using child-friendly procedures and obtain relief

---

[1] "It is important to emphasize that this case begins with the premise that the 'pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation.'" *See Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011). And, even then, "the Due Process Clause does not always require the provision of counsel in civil proceedings where incarceration is threatened." *Id.* at 2518. It is therefore unreasonable for Plaintiffs to propose classes that will provide *every* indigent minor a right to taxpayer funded counsel given that many of the minors in their proposed class will not suffer any harm upon return to their country of citizenship.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

shows that some minors are able to interact with the system in a meaningful way without government-funded counsel.

Plaintiffs' asserted categorical right to counsel is also inconsistent with the very legal framework Plaintiffs claim governs this case. Due process jurisprudence discourages line drawing and requires individualized assessments of the facts and circumstances surrounding the claim. *See Mathews*, 424 U.S. at 334 ("due process is flexible and calls for such procedural protections as the particular situation demands"). Plaintiffs have not suggested any coherent means of correctly applying the individualized *Mathews* test in a manner that supports the assertion of a categorical right or that ignores the minor's capacity. The Ninth Circuit itself has recognized that due process determinations regarding minors in removal proceedings "should take into account the minor's age, intelligence, education, information, and understanding and ability to comprehend." *See Jie Lin*, 377 F.3d at 1033.

Finally, Defendants have submitted the rebuttal expert report of Dr. Avram H. Mack, ECF 237-1, which supports the Ninth Circuit's analysis and demonstrates that minors as a category do not lack capacity. Dr. Mack notes that Plaintiffs' expert improperly relied on research and case law dealing with mental functions related to forming culpability, rather than on the skills needs to participate in a civil immigration proceeding. *Id.* at 5-6. Dr. Mack concludes that "there is a range of competency of individuals under the age of 18" and that some persons under the age of 18 are capable of self-representation. *Id*. at 6. Dr. Mack specifically cites examples of existing laws recognizing that juveniles have the capacity to make a number of important decisions. *Id*. at 12 (discussing "mature minor" laws, which allow minors to make medical decisions, and emancipation laws). Plaintiffs' subclasses fail to account for differences in minors' capacities which materially change the analysis of whether additional process may be due in a given case.

**C.**     **Plaintiffs' proposed subclasses do not account for the presence of family members in the United States.**

1.     Plaintiffs frame the "accompanied" and "unaccompanied" subclasses in terms of whether a minor's case is consolidated with a parent's case and, therefore, fail to address the Court's core concern in this regard, *i.e.*, whether the minor has a parent or other

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

relative available to assist the minor during removal proceedings. Specifically, the proposed accompanied subclass includes only minors whose cases are actually *consolidated* with a parent's case. All other minors fall within the unaccompanied subclass. As a result, the unaccompanied subclass includes minors with no family members present in the United States as well as minors like A.E.G.E., who is present in the United States with his Lawful Permanent Resident mother and his grandmother. The unaccompanied subclass, therefore, fails to account for the significant ways, as recognized by the Court, that a family member in the United States may be able to provide assistance in the minor's proceeding—even where the parent is not also in removal proceedings with the minor.

First, even where an accompanied child is not pursuing derivative relief in a consolidated removal proceeding, the parent's presence may be sufficient to safeguard the child's interest. *See e.g. Troxel v. Granville*, 530 U.S. 57, 66 (2000) (recognizing that it is parents who "make decisions concerning the care, custody, and control of their children."); *United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012) (recognizing that it is the right and duty of parents to make decisions regarding whether their children should be naturalized). Claims to relief from removal are highly factual questions. As a result, the parent's ability to relay sufficient information about their child's claim may provide the assistance necessary to help the child obtain relief.

Second, as a result of Plaintiffs' definition of "unaccompanied," the unaccompanied subclass incongruously includes children who are entitled to protection under the Trafficking Victim Protection Reauthorization Act ("TVPRA") as well as children who are not (for example, E.G.C.).[2] The TVPRA affords unaccompanied alien children protections designed to make the

---

[2]     Under the TVPRA, (2) the term "unaccompanied alien child" means a child who--

(A) has no lawful immigration status in the United States;

(B) has not attained 18 years of age; and

(C) with respect to whom--

      (i) there is no parent or legal guardian in the United States; or

      (ii) no parent or legal guardian in the United States is available to provide care and

---

9

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

process for requesting relief from removal more accessible. Under the TVPRA, when an unaccompanied child requests asylum, the child is first provided with the opportunity to present his or her asylum claim to an asylum officer in a non-adversarial interview outside of removal proceedings. 8 U.S.C. § 1158(b)(3)(C). The general regulatory provision governing such interviews, 8 C.F.R. § 208.9(b), directs the asylum officer to "conduct the interview in a non-adversarial manner" and for the purpose of "eliciting all relevant and useful information bearing on the applicant's eligibility for asylum." Children who are successful in obtaining relief before the asylum officer, may be able to have their removal proceedings before the immigration judge terminated. Even if a minor is not represented in the asylum interview, the non-adversarial interview provides a setting in which a minor can comfortably answer all relevant questions about their lives in their home country and their fear of removal. The value of this safeguard is not merely theoretical: Plaintiffs J.E.F.M., J.FM., and D.G.F.M. have obtained relief in these non-adversarial proceedings. Accordingly, the unaccompanied subclass contains individuals with very different statutory and regulatory entitlements and, therefore, lacks commonality.

2.    The arriving and entered subclasses are also deficient in this respect. By proposing the "accompanied" and "unaccompanied" subclasses, Plaintiffs themselves acknowledge the important legal distinctions between accompanied and unaccompanied children. Despite this acknowledgment, Plaintiffs' proposed "arriving" and "entered" subclasses omit any reference to this important distinction. Plaintiffs' omission renders those subclasses uncertifiable for lack of commonality.

**D.    Plaintiffs' proposed subclasses fail to account for available safeguards.**

Congress, the Executive Office of Immigration Review ("EOIR"), the Department of Homeland Security ("DHS"), and the Department of Health and Human Services ("HHS") have implemented several safeguards and initiatives geared toward protecting the interest of minors appearing in immigration court. These initiatives minimize the risk of an erroneous deprivation

---

physical custody.

6 U.S.C. § 279(g)(2); *see* 8 U.S.C. § 1232(g) (providing that for purposes of the TVPRA, the term "unaccompanied alien child" has the meaning given in 6 U.S.C. § 279(g)(2)).

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

and therefore materially impact the legal analysis for subclass members' individual claims.

First, the immigration regulations require that unrepresented aliens be advised of their right to counsel at their own expense and the availability of free legal services. 8 C.F.R. § 1240.10(a)(1), (2). Immigration judges have discretion to grant continuances for good cause shown, 8 C.F.R. § 1003.29, and, therefore, have the authority to grant continuances to accommodate the search for an attorney. The factual allegations and charges in the alien's Notice to Appear must be explained to the alien in non-technical language. 8 C.F.R. § 1240.10(a)(6). By regulation, an immigration judge may not accept admissions from an unrepresented individual under the age of eighteen who "is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend . . . ." 8 C.F.R. § 1240.10(c). As a result, unaccompanied children are not asked to state whether they admit to or deny the charges or represent whether they plan to challenge their removability at their initial appearances. *See id*.

Second, during the proceedings, immigration judges are required to ask questions designed to elicit testimony on possible avenues of relief available to the aliens before them and to provide the opportunity to make an application for forms of relief for which the aliens might be eligible. *See* 8 C.F.R. § 1240.11(a)(2). Reversible error may result if an immigration judge fails to notify an alien of all possible avenues of relief for which he is eligible. *See United States v. Lopez-Velasquez*, 629 F.3d 894, 897 & n.2 (9th Cir. 2010) (citing *United States v. Copeland*, 376 F.3d 61, 70-73 (2d Cir. 2004); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004)). It has been recognized that, in the case of an unrepresented alien,

> it is the [immigration judge's] duty to "fully develop the record." *Jacinto v. INS*, 208 F.3d 725, 733-34 (9th Cir. 2000). Because aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the [immigration judge] "*scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.*" *Id.* at 733 (*quoting Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)).

*Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (emphasis added).

Third, all immigration judges receive training on providing fair hearings for unrepresented children. Exhibit A, Executive Office for Immigration Review, Operating Policies

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

and Procedures Memorandum 07-01: *Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children* (2007) ("OPPM 07-01"). Immigration judges are provided with guidance and suggestions for adopting procedures to ensure that the child "understands the nature of the proceedings, effectively presents evidence about the case, and has appropriate assistance." *Id*. at 2. These procedures include making the courtroom more accessible, providing additional explanation of the process, and employing child-sensitive questioning techniques. *Id*. at 4-8. Immigration judges are encouraged to adjudicate motions in a manner that best ensures that the child is able to obtain appropriate assistance. *Id*. at 8. Specifically, immigration judges are encouraged to grant continuances to allow appropriate time for the child to secure representation or to allow the child to obtain relief through other channels. *Id*. Indeed, the Office of the Chief Immigration Judge has made clear that "nothing in the priority scheduling of cases involving [unaccompanied children] . . . for a first master calendar should inhibit a judge's discretion to reset the case to obtain representation." Exhibit B, Office of the Chief Immigration Judge, Docketing Practices Relating to Unaccompanied Children Cases and Adults with Children Released on Alternatives to Detention Cases in Light of the New Priorities (Mar. 24, 2015). Immigration judges are also encouraged to explore whether a child would benefit from a change of venue and grant such relief without requiring a formal motion. Exhibit A, OPPM 07-01, at 8. EOIR has also issued *amicus curiae* guidance, which outlines the ways in which an immigration court may employ friends of the court to help immigration judges manage minor hearings and enhance the child's understanding of the immigration court process. *See* Exhibit C, Office of the Chief Immigration Judge, The Friend of the Court Model for Unaccompanied Minors in Immigration Proceedings (Sept. 10, 2014).

Fourth, EOIR offers legal orientation presentations to the adult custodians of unaccompanied alien children (and often to the children themselves) in EOIR removal proceedings through its Legal Orientation Program for Custodians of Unaccompanied Children ("LOPC"). Exhibit D, EOIR's Office of Legal Access Programs (Oct. 22 2014). The LOPC providers offer general group orientations, individual orientations, self-help workshops, and assistance with pro bono referrals that are designed to help increase pro bono representation rates

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

of unaccompanied alien children in immigration proceedings. *Id.* To date, EOIR has contracted with non-profit partners to carry out the LOPC at 14 sites nationwide. *Id.* The LOPC also operates a national call center to assist custodians. *Id.* Available telephonic assistance includes legal orientations on the immigration court process, as well as guidance in filing change of address forms and motions to change venue. *Id.*

Finally, the government is promoting pro bono representation of children on a number of fronts. In June 2014, EOIR announced a partnership with AmeriCorps to enroll approximately 100 lawyers and paralegals to provide legal services to unaccompanied children. Office of Public Affairs, June 6, 2014, *available at* http://www.justice.gov/opa/pr/justice-department-and-cncs-announce-new-partnership-enhance-immigration-courts-and-provide. The program is currently providing support in 24 immigration courts. *See* http://joinjusticeamericorps.org/news/. In addition EOIR's efforts, HHS awarded $9 million to two grantees to provide legal services to unaccompanied children with the goal of providing paid counsel to approximately 2,600 additional unaccompanied children through the completion of their immigration proceedings. *See* Fact Sheet: Expanding Access to Legal Representation, Oct. 22, 2014, *available at* https://www.whitehouse.gov/the-press-office/2014/09/30/fact-sheet-president-obama-and-hispanic-community. Finally, EOIR has encouraged facilitation of pro bono representation of children by, where possible, offering predictable scheduling to pro bono counsel and organizing wide-ranging training for pro bono counsel. *Id.*; *see also* Exhibit A, OPPM 07-01.

As a result of the wide variety of safeguards and initiatives, the unique facts and circumstances of each minor's case will interact with the available safeguards in different ways. This is because immigration judges have broad authority to adapt courtroom procedures to promote the child's participation in removal proceedings. Different locations and courts have varying resources available to train next friends or to recruit pro bono counsel. Plaintiffs' subclasses fail to account for these variations and instead include individuals for whom the system will work if given the opportunity. As a result, the risk of deprivation widely varies among individuals in all of the subclasses. The subclasses, therefore, lack commonality.

**E.      Plaintiffs' fail-safe proposal cannot cure the definitional deficiencies.**

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

In a last effort to save their class proposal, Plaintiffs suggest that if "no workable class or subclasses can be drawn to identify those children who are entitled to appointed counsel, the appropriate remedy would be to certify the Main Class and Subclasses in order to provide each child with a determination as to whether they are entitled to legal representation." ECF 230 at 3; *see id.* at 19-20. Under this approach, "although only those children found eligible for counsel would be entitled to it, the Court would still certify the classes as Plaintiffs have proposed them." *Id.* This proposal fails for several reasons.

First, Plaintiffs' proposal is inconsistent with the Court's obligation to "probe behind the pleadings" *prior to certification* to determine whether there is a common legal question capable of a uniform resolution. *Behrend*, 133 S. Ct. at 1432.

Second, Plaintiffs' proposal is an impermissible fail-safe class definition. "[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Plaintiffs' proposal requires the court to first certify a class or classes on Plaintiffs' terms, and then conduct an individualized case-by-case analysis as to whether each minor in their proposed class(es) is capable of representing herself, such that whether a minor is in fact a class-member can only be determined following an individualized merits analysis after the conclusion of litigation. Under those circumstances any class-wide relief is illusory.[3] *See Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) ("Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."). Such a class by definition is not certifiable. *See Chiang v. Veneman*, 385 F.3d 256, 272 (3d Cir. 2004) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class."); *accord* 5-23 Moore's Federal Practice - Civil § 23.21[3][c] (2015) ("[T]he class should

---

[3] The Ninth Circuit has addressed this issue in an unpublished decision. *See Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established. When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class. That is palpably unfair to the defendant, and is also unmanageable . . . ").

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

not be defined in terms of whether its members were treated 'properly,' 'adequately,' 'reasonably,' or 'constitutionally,' because then class membership depends on a determination of the merits as to each potential class member").

Finally, Plaintiffs' fail-safe class does not present an administratively feasible resolution because it requires impermissible merits inquiries. In order to determine whether any indigent minor in removal proceedings should be considered part of the class or any subclasses for remedial purposes, the Court must conduct a *Mathews* analysis as to that individual. That is fatal to their alternative class definitions. *See, e.g.*, *Davoll v. Webb*, 194 F.3d 1116, 1134-35 (10th Cir. 1999) (feasibility lacking where class definition required legal determinations of whether each class member was "disabled" under the Americans with Disabilities Act); *Catanzano v. Dowling*, 847 F. Supp. 1070, 1079 (W.D.N.Y. 1994) (feasibility lacking in a class definition that contains claimants who did not have a hearing "within a reasonable time," a definition requiring individual determinations of constitutional violations); *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) ("[b]ecause the standard of 'within a reasonable time' makes class members impossible to identify prior to individualized fact-finding and litigation, the class fails to satisfy one of the basic requirements for a class action under Rule 23"). Accordingly, Plaintiffs' alternative proposal fails.

## II. The due process concerns faced by the proposed representatives are not typical of the due process concerns faced by the putative subclasses as a whole.

Rule 23(a)(3) requires that for a class action to be maintained, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class . . . ." FED. R. CIV. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative[s] align[] with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal citation and quotation marks omitted). While "[d]iffering factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality," *Ellis*, 657 F.3d at 985 n.9, if these differing factual scenarios do change the analysis of a representative's claims

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

or defenses relative to the claims and defenses of the class members, the typicality requirement is not met. *See id.* at 984.

First, as a general matter, Plaintiffs' proposed subclasses still fail to overcome the fundamental legal principle that due process is "not a technical conception with a fixed content unrelated to time, place and circumstances"; on the contrary, it is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. The Supreme Court has consistently disfavored "sweeping and categorical" approaches to due process inquiry. *Gilbert v. Homar*, 520 U.S. 924, 931 (1997). To the extent the proposed subclass representatives share the "entered," "arriving," "accompanied," and "unaccompanied" features identified in Plaintiffs' proposed subclass definitions, such similarity is still insufficient to satisfy Rule 23's typicality requirements, due to the multiplicity of other factors that may materially affect the analysis of whether a given minor is entitled to have an attorney to represent them in immigration proceedings at taxpayer expense that Plaintiffs fail to account for in their proposed subclasses. *See, e.g.*, *Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346, 358-363 (D.D.C. 2011) (finding that the plaintiffs had failed to satisfy Rule 23's typicality requirement because the Due Process analysis under *Mathews* was fact-specific and the material facts at issue varied widely among the putative class members, including the proposed class representatives); *cf. Jones v. Takaki*, 38 F.3d 321, 323 (7th Cir. 1994) *abrogated on other grounds by Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008) (finding the same under the similarly fact-intensive Due Process analysis set forth in *Barker v. Wingo*, 407 U.S. 514 (1972)). Therefore, all of the proposed subclasses lack a typical representative and the Court should deny class certification on this basis. *See* ECF 225 at 5-6 (noting capacity, geographic, and status differences render class representatives claims atypical of the subclass).

Second, this Court has already found that F.L.B.'s due process claim is not typical of any class or subclass that includes much younger children. ECF 225 at 6 ("[F.L.B. is] nearing the age of 18, [and therefore is] not representative of a large percentage of class members, some of whom might be too young to have 'capacity.'") (citing RCW 9A.04.050 (defining the ages at which children are *per se* or presumed unable to form the *mens rea* to commit a crime: under 8

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

and between 8 and 12, respectively)); *see also* ECF 237-1, Report Prepared by Dr. Avram H. Mack, M.D., at 12-14. Young children comprise a substantially greater percentage of the subclasses than seventeen year-olds and have a stronger due process argument. As a result, their interests are not well represented by F.L.B. and the resolution of F.L.B.'s claims is not likely to resolve the claims of much younger subclass members.

Third, K.N.S.M.'s claims are not typical of the entered subclass because she was apprehended after wading across a river forming the international border approximately 0.55 miles from a port of entry. K.N.S.M.'s apprehension so close to the border materially distinguishes her from aliens in the entered subclass who have been in this country for a meaningful period of time before being apprehended. Unlike aliens in the entered subclass, K.N.S.M.'s status is much more akin to that of an arriving alien and prevents any procedural due process protections beyond those authorized by Congress from attaching to her status. *See* 8 U.S.C. § 1252(a)(1); *Kaoru Yamataya v. Fisher*, 189 U.S. 86, 100-101 (1903); *see also* ECF 229, Defs.' Partial Mot. to Dismiss Third Am. Compl., at 9 n.5. Even if the Court finds that the Due Process Clause's protection attaches to K.N.S.M., such a finding simply means that she (unlike the arriving subclass) is entitled to have her interest weighed under *Mathews*. Her .55 mile "entry" does not alter the fact that her interest in being granted admission is minimal compared to the interest possessed by those minors who had entered the country for a meaningful period of time prior to being apprehended. *See Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (describing sliding scale and distinguishing between types of unlawful presence); *see also Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("This Court has held that the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance.") (internal citations omitted). Thus, in a merits determination, K.N.S.M.'s minimal liberty interest would be differently balanced against the government's weighty interests. *See Mathews*, 424 U.S. 319. Her claim is therefore not typical of the claims of the entered subclass.[4]

---

[4] K.N.S.M.'s situation highlights yet another problem with the adequacy of the representatives of the entered subclass. Plaintiffs have so broadly defined the entered class that it includes *both* minors like K.N.S.M. who illegally crossed half of a mile into the United States *as well as* minors who were lawfully admitted to the United States (visa

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

Finally, even under Plaintiffs' exceedingly lenient typicality standard, the unaccompanied subclass altogether lacks a typical representative. The proposed subclass definition fails to account for the many ways the presence of family in the United States may impact the fairness of a minor's proceeding—even where the parent is not also in removal proceedings—and therefore is so heterogeneous as to lack a typical representative. Thus, Plaintiffs fail to satisfy the typicality requirement under Rule 23(a) and this subclass should not be certified. *See, e.g.*, *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 178 (C.D. Cal. 2007) ("Even as between the seven named Plaintiffs there is sufficient heterogeneity to indicate that proof that one Plaintiff was [injured] is not probative of whether other class members were [injured]."); *see also, e.g.*, *Daskalea*, 275 F.R.D. at 358-363; *cf. Jones*, 38 F.3d at 323.

For example, A.E.G.E.'s claim materially differs from the typical unaccompanied subclass member because he is not—in any true sense of the word—unaccompanied. A.E.G.E. arrived in this country in the care of his grandmother, who communicated on his behalf upon apprehension. Exhibit E (redacted Form I-213, Record of Deportable/Inadmissible Alien A.E.G.E.). A.E.G.E. was then reunited with his mother, who is a lawful permanent resident, and currently resides with her in Los Angeles.

Additionally, K.N.S.M., E.G.C., and J.R.A.P. are also present in the United States with family. K.N.S.M. was apprehended with her mother and continues to reside with her mother in the United States. ECF 207-1(redacted Form I-213, Record of Deportable/Inadmissible Alien K.N.S.M.). E.G.C. is arriving alien (who Defendants argue lacks any due process rights) and was apprehended with his mother, who communicated to the government on his behalf upon being apprehended. Exhibit F (redacted Form I-213, Record of Deportable/Inadmissible Alien E.G.C.). Although his mother has since departed to Mexico, E.G.C. remains in the care of his grandmother. J.R.A.P. also arrived in this country as an unaccompanied minor, was processed as an unaccompanied minor and provided the attendant protections under the TVPRA. He was then released from ORR custody and reunited with his mother, who lives in in Miami, Florida.

---

overstays, for example). As a result, the entered subclass lacks an adequate representative for those minors who were admitted to the United States and therefore stand on different legal footing than aliens who have not been admitted. *Cf. Zadvydas*, 533 U.S. at 693-94.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

Exhibit G (redacted Form I-213, Record of Deportable/Inadmissible Alien J.R.A.P.). The proposed representatives, due to the presence of family in the United States (as well as differences in their arriving and entered statuses), do not share a claim common with the class. *See Troxel v. Granville,* 530 U.S. 57, 66 (2000) (recognizing that it is parents who "make decisions concerning the care, custody, and control of their children"); *U.S. v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012); *Magallanes Damien v. INS*, 783 F.2d 931, 933 (9th Cir. 1986) ("Deportation hearings are deemed to be civil, not criminal, proceedings . . . . As a consequence, petitioners have no constitutional right to counsel under the sixth amendment."). The unaccompanied subclass, therefore, lacks a typical representative and cannot be certified.

## III. Plaintiffs' proposed subclasses exacerbate the Court's concerns regarding judicial efficiency and Rule 23.

As the Court correctly noted in its January Order, Plaintiffs have failed to demonstrate that the marginal benefit of a class-wide declaratory order (over a published decision on the merits of the individual Plaintiffs' legal claims) outweighs the delay and costs necessary to litigate the availability of relief to the proposed subclasses. Plaintiffs compounded the problem by expanding—rather than narrowing—the legal issues in this case. Now, in addition to requesting certification of the very same overly-broad main class, Plaintiffs have added four overlapping subclasses that, apparently by design, require *every* class member to fall within *two* subclasses. Indeed, by proposing two sets of so-called "mirror-image" subclasses, ECF 230 at 2, Plaintiffs have taken what was a large and complicated nationwide class action and turned it into several large and complicated nationwide class actions. Plaintiffs' proposal further adds legal complexity by assigning class representatives double-duty, with every representative standing in for two subclasses. As a result, there is no meaningful way to determine, for example, whether an assessment of A.E.G.E.'s individual claim is determinative of the relief available to the "arriving" subclass or to the "unaccompanied" subclass. This complicated question becomes unmanageable should the Court find relief is *not* available to the arriving subclass, but *is* available to the unaccompanied subclass. The Court would, in that situation, be called upon to make individualized determinations to assess the intersection of those claims for every affected class member. *Cf. Blough v. Shea Homes, Inc.*, No. 2:12-CV-01493 RSM, 2014 WL 3694231, at

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

*12 (W.D. Wash. July 23, 2014) (declining to certify a Rule 23(b)(3) class action in which Plaintiffs asserted a single claim for violation of Washington's Consumer Protection Act and proposed nine overlapping subclasses because individualized inquiry was necessary to determine the validity of Plaintiffs' theories of liability as well as their injuries). This affords no judicial savings and adds unnecessary delay and expense to the litigation.[5]

The additional cost and complexity yield very little benefit. This Court has already determined that 8 U.S.C. § 1252(f)(1) deprives the Court of jurisdiction to provide injunctive relief to a class. *See* ECF 114 at 37-38. The only relief available to the class, if certified and found otherwise entitled, is a classwide declaratory judgment. *Id*. Alternatively, the rule announced by the Court (or potentially by the Ninth Circuit on appeal) will have a persuasive (or perhaps precedential) effect for all alien minors requesting government-funded counsel. On balance, a precedential decision may prove more valuable than a declaratory order setting a standard that requires case-by-case enforcement.

Cost aside, the issue presented by this case is most appropriately litigated as an individual, as-applied challenge to a decision not to provide taxpayer-funded counsel to a particular alien minor. An individualized challenge presents the only forum for meaningfully considering all of the individual facts and circumstances necessary to ascertain eligibility for government-funded counsel under the *Mathews* factors. The weight of Supreme Court authority supports an individualized approach. In areas outside the criminal context, the Supreme Court has regularly declined to recognize a categorical right to appointed counsel. Instead, it has preferred a case-by-case approach or relied on alternative procedural safeguards to ensure due process. *See, e.g., Gagnon v. Scarpelli,* 411 U.S. 778 (1973) (adopting case-by-case approach for analyzing right to appointed counsel in probation revocation hearings); *Lassiter v. Dept. of*

---

[5] As a result of the complicated legal (as well as practical) issues Plaintiffs proposed subclasses creates, if a class is certified, the case will likely require the expenditure of significantly more resources and will almost certainly prevent the parties from being trial-ready by the end of the year. To date, and over Defendants' objections, Plaintiffs have declined to meet and confer on any affirmative discovery request involving class representatives other than F.L.B. *See* Exhibit H, Emails Between Counsel. If the Court certifies a class, Defendants will require time to conduct discovery, which could include competency examinations and depositions of all of the named representatives. Because the nationwide relief sought by Plaintiffs is likely to cost the government millions in taxpayer dollars, Defendants will not be in a position to agree to deadlines that undermine the government's ability to defend the reasonableness of its policies in every immigration court.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

*Social Servs.*, 452 U.S. 18 (1981) (adopting case-by-case approach for analyzing right to appointed counsel in proceedings for termination of parental rights); *Middendorf v. Henry*, 425 U.S. 25 (1976) (finding no right to appointed counsel in summary courts-martial proceedings); *Turner*, 131 S. Ct. at 2520 (finding no right to appointed counsel in civil contempt proceedings).[6]

## IV. Any proposed class should be limited to the Western District of Washington, or, alternatively, to the Ninth Circuit.

To the extent the Court finds a certifiable class, the Court should decline to certify a nationwide class. *See, e.g., Shvartsman v. Apfel*, 138 F.3d 1196, 1201 (7th Cir. 1998) (declining to certify a nationwide class where varying law and circumstances impacted validity of class claims). Nationwide class actions are certified with caution because they "may have a detrimental effect by foreclosing adjudication by a number of different courts and judges." *Califano*, 442 U.S. at 702; *see United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari."). "[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano*, 442 U.S. at 702. The Court should exercise its broad discretion to decline to certify a nationwide class for multiple reasons.

First, a nationwide class would violate the principles of intercircuit comity and, in this case, constitute an improper attempt to circumvent unfavorable law from other jurisdictions and replace it with the law of another circuit. *See, e.g., Aguilar v. U.S. ICE*, 510 F.3d 1, 9, 11 (1st Cir. 2007) (finding no jurisdiction over representation claims). Judicial disagreement on this issue demonstrates that courts with different governing precedent may reach different conclusions regarding Plaintiffs' claims. Therefore, the Court cannot be "sure that nationwide relief is indeed appropriate" given that the law in at least some jurisdictions would preclude

---

[6] The one exception to this rule is minor delinquency proceedings, where the Court has recognized a right to appointed counsel. *In re Gault*, 387 U.S. 1 (1967). But, as the Court later explained, that was because the minor delinquency proceeding was "functionally akin to a criminal trial." *Gagnon*, 411 U.S. at 789 n.12.

21

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

relief. *Califano*, 442 U.S. at 702. Instead, the Court should allow "several courts of appeals to explore [this] difficult question" rather than taking the issue out of their hands through entry of nationwide relief. *Mendoza*, 464 U.S. at 160; *see also Geraghty v. U.S. Parole Comm'n*, 719 F.2d 1199, 1205 (3d Cir. 1983) (affirming the district court's decision to limit a class of federal prisoners to the Middle District of Pennsylvania because "it is within the district court's discretion to conclude that classwide consideration of the legality of the parole guidelines and the constitutionality of the [statute at issue] might interfere with the litigation of similar issues in other judicial districts"); *Hootkins v. Chertoff*, No. CV 07-5696, 2009 WL 57031, at *4 (C.D. Cal. Jan. 6, 2009) (limiting a class of individuals challenging the interpretation of an INA provision to the Ninth Circuit because "the Court is mindful of the importance of allowing the government to litigate legal issues before different courts throughout the country").

Second, a national class fails to account for different safeguards and practices employed by immigration courts based on the availability of different programs and resources in different jurisdictions. *See, e.g.*, *Ellis*, 657 F.3d at 983-84. Plaintiffs have not shown that the set of procedures and safeguards applicable in immigration courts in this district are sufficiently identical to the procedures other districts' immigration judges apply in cases involving indigent unaccompanied minors. Indeed, the programs and resources available to minors vary according to the location of the immigration court proceedings, which in turn affects how an immigration judge may handle a case involving a child.[7] Exhibit I, Weil Dep. at 145:24-147:14; *see also* Exhibit J, Lang Dep. at 15:25-16:21; 24:3-25:3; 26:15-27:11; 27:14-28:2 (describing the Baltimore Representation Initiative for Unaccompanied Children pilot program and the Remote Access Initiative, a program targeted to the southeast U.S., among other EOIR programs designed to increase representation of unaccompanied minors in immigration proceedings).

Thus, the evidence at this juncture shows that Plaintiffs' claims are no different than claims routinely rejected under Rule 23 where "the proposed class's proffered common issues 'stretch[] the notions of commonality' by attempting to aggregate several amorphous claims of systemic or widespread conduct into one 'super-claim.'" *M.D. v. Perry*, 675 F.3d 832, 844 (5th

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

Cir. 2012). A nationwide injunction addressing this "super-claim" would "merely initiate a process through which highly individualized determinations" concerning the interplay between regional programs and an individual class-members' claims "are made; this kind of relief would be class-wide in name only, and it would certainly not be final." *Jamie S. v. Milwaukee Pub. Schools,* 668 F.3d 481, 497-98 (7th Cir. 2012).

Analyzed under Rule 23's typicality requirements, Plaintiffs have also failed to prove that their claims, either at the class or subclass level, are typical of those of indigent, unrepresented minors in immigration proceedings all across the country. Plaintiffs' main class representatives have or will have immigration proceedings only in Seattle, Los Angeles, Houston, and Miami, and their subclass representatives are even more geographically limited: the "entered" subclass representatives consist of Plaintiffs residing in Seattle, Miami, and Ontario, California; the arriving subclass representatives consist of Plaintiffs residing in Royal City and Snohomish, Washington; the unaccompanied subclass representatives consist of Plaintiffs residing in Seattle, Miami, Snohomish, Washington, and Ontario, California; and the accompanied subclass representatives solely consist of Plaintiffs residing in Royal City, Washington. These Plaintiffs are inadequate to represent any potential harms being suffered by minors in immigration proceedings in other immigration courts, where resource allocations and alien minor populations may meaningfully vary. *See, e.g. Davis v. Astrue*, 250 F.R.D. 476, 490 (N.D. Cal. 2008) (finding that the plaintiffs had failed to meet the typicality requirements to certify nationwide class in an action against the Social Security Administration ("SSA") where Plaintiffs had not brought forth representatives or sufficient evidence that the policies applied by the SSA office in San Francisco were applied by SSA offices around the country); *cf.* ECF 225 at 6 ("[N]o showing has been made that F.L.B. and M.A.M., who reside in Washington and California, respectively, have claim that are typical of those of minors in immigration proceedings in other states or regions of the country.").[8] Accordingly, the Court should focus its attention on the facts and circumstances

---

[8] Although Plaintiffs have placed a number of non-party declarations into the record from (1) pro bono attorneys servicing minors in immigration proceedings and (2) advocates who claim to have observed immigration proceedings on certain days in certain immigration courts around the country, Plaintiffs have not attached to their class certification motion any declarations regarding conditions in immigration court jurisdictions outside of where Plaintiffs are undergoing proceedings. More importantly, Defendants have not yet had the opportunity to depose all

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

surrounding the proceedings occurring in the immigration courts within this Court's jurisdiction. It should decline to scrutinize the adequacy of programs administered in other jurisdiction and deny class certification.

of the declarants to cross examine their statements. Defendants had scheduled depositions of several of these declarants to take place throughout February; however, Plaintiffs requested to postpone these depositions until mid-March. *See* Ex. H, Emails Between Counsel. Defendants ask the Court to accord minimal weight to these declarations because their statements have not yet been cross-examined.

On January 14, 2016, Defendants were able to depose William Holston, Esq., who submitted a declaration dated August 25, 2014, describing his experiences as a pro bono attorney representing minors in immigration proceedings in Dallas, Texas. ECF 57, Holston Decl. In his deposition, however, Holston described material changes in the way immigration proceedings are conducted in Dallas since the date of his declaration. *See* Ex. K, Holston Dep. 35:8-37:5. Holston was further unable to identify an example where his organization was representing a parent and a child who are simultaneously undergoing immigration proceedings. He was therefore unable to provide any concrete information about any conflicts or prejudices related to a parent representing the interests of his or her child during immigration proceedings. *Id.* at 19:18-20.

OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

# CONCLUSION

Defendants request that Plaintiffs' Fourth Motion for Class Certification be denied.

Dated: February 22, 2016           Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

LEON FRESCO
Deputy Assistant Attorney General
Office of Immigration Litigation

WILLIAM C. PEACHEY
Director, District Court Section

WILLIAM C. SILVIS
Assistant Director

EREZ REUVENI
Senior Litigation Counsel

VINITA ANDRAPALLIYAL
Trial Attorney

By:     */s/ Sarah Wilson*
SARAH WILSON
Trial Attorney
Office of Immigration Litigation,
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4700
Sarah.S.Wilson@usdoj.gov

OPPOSTION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 22, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

/s/ Sarah Wilson
SARAH WILSON
Trial Attorney
United States Department of Justice

-2-
OPPOSITION TO MOTION TO CERTIFY CLASS
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700