Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.L.B., a minor, by and through his Next Friend, Casey Trupin, et al.,

          Plaintiffs-Petitioners,

    v.

Loretta E. LYNCH, Attorney General, United States, et al.,

          Defendants-Respondents.

Case No.   2:14-cv-01026-TSZ

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

NOTE ON MOTION CALENDAR: February 26, 2016

ORAL ARGUMENT SCHEDULED: March 24, 2016

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

## INTRODUCTION

At the last status conference, the Court stated that "the point I'm making today, loud and clear, I hope, is that if we ruled on issues, it's the law of the case." Dkt. 227 at 46:20-47:3. Unfortunately, Defendants failed to hear the Court's message. Virtually every argument in Defendants' new motion to dismiss was either already resolved against them or should have been raised well over a year ago, and therefore is waived. This Court *already* rejected Defendants' argument that child Plaintiffs who are inadmissible, including several apprehended prior to entry, have no claim as a matter of law. It also rejected Defendants' assertion that children who have turned 18 could no longer be Plaintiffs. And Defendants long ago waived any venue objection—their answer to the complaint affirmatively stated that venue was proper as to child Plaintiffs not resident in Washington. The most obvious evidence that Defendants are recycling arguments they lost before comes from the identities of the Plaintiffs who this Court declined to dismiss previously: children living in other parts of the country (including M.A.M. and J.E.V.G.), children living with their parents (M.A.M.), and children apprehended prior to their entry (the F.M. siblings, whom this Court did not dismiss until after they were granted asylum with the aid of a pro bono attorney). The Court should summarily reject Defendants' attempt to revisit those assertions.

The only arguably-new claim Defendants raise concerns the treatment of A.F.M.J., L.J.M., and M.R.J., whose mother is in proceedings with them. However, they fail even to acknowledge the plausible allegations and evidence establishing that these children have an independent need for representation.

As this Court is well aware, Defendants continue each day to order the removal of unrepresented children. This Court should swiftly reject Defendants' motion to dismiss and allow all Plaintiffs' claims to go forward.

## ARGUMENT

**I.      As this Court Has Already Found, the Due Process Clause Protects All of the Plaintiff Children in This Case.**

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

## A. This Court Should Once Again Reject Defendants' Contention that Arriving Children Lack Due Process Rights.

Defendants assert that because A.E.G.E., E.G.C., A.F.M.J., L.J.M., M.R.J., and K.N.S.M. were "apprehended at the border," "they have no due process rights with respect to their admission and their procedural protections are limited to those provided by . . . statute." Dkt. 229 at 7. But as Defendants concede, this Court has previously rejected this argument. Denying Defendants' prior motion to dismiss on this exact issue, it held "Defendants have cited no authority to support the proposition that such distinction [between deportable and inadmissible noncitizens] can now be drawn, in the context of analyzing what process is due to such individuals, in light of IIRIRA's merger of matters involving inadmissible and deportable aliens into one proceeding known as 'removal.'" Dkt. 114 at 28-29. Defendants have not offered any reason for the Court to make an exception to the law of the case doctrine here.

Defendants seek to evade this Court's prior ruling by asserting that it has now "become evident" that many of the Plaintiffs are deemed "arriving," but this is nothing new. The F.M. siblings also arrived at the port of entry seeking protection, *see* Dkt. 117, Exs. A-C, and S.R.I.C. was apprehended in the desert region shortly after entry. *See* Dkt. 54-2 at 7 n.5 (which would place him outside the Due Process Clause under the theory that Defendants now advance against K.N.S.M.). For that reason, Defendants argued at great length that several child Plaintiffs had no due process rights because "the named Plaintiffs and putative class members who are non-permanent resident arriving aliens cannot invoke the Due Process Clause as a basis for claiming a right to appointed counsel." *Id.* at 12; *see also* Dkt. 114 at 28 ("At oral argument, counsel for defendants seemed to suggest that *Mathews* would apply with respect to 'deportable' aliens, but not as to 'inadmissible' aliens."). This Court then rejected that argument. *Id.*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

Should the Court decide to consider the issue again on the merits, Defendants' recycled arguments fare no better now than they did before. *First*, the en banc Ninth Circuit has categorically stated that the Fifth Amendment's protection extends to "*every individual* in removal proceedings." *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc) (emphasis added) (applying *Mathews* to determine what process was due). As the Court already explained, after IIRIRA all children like those at issue here—i.e., those who cannot be summarily removed without a hearing under, for example, 8 U.S.C. 1232(a)(2) —are entitled to the due process protections available in removal proceedings. Because each child Plaintiff (as well as all putative class members) is in removal proceedings, under *Oshodi* the Fifth Amendment's guarantee of due process by definition extends to all of them. Dkt. 114 at 31-32; *see also, e.g.*, *Abdulai v. Ashcroft*, 239 F.3d 542, 545, 549 (3d Cir. 2001) (in case of noncitizen who arrived at airport, citing *Mathews* to hold that "[d]espite the fact that there is no constitutional right to asylum, aliens facing removal are entitled to due process"). The doctrine that Congress's decision to provide certain individuals, such as the Plaintiff children, with removal hearings itself gives rise to cognizable due process rights is further bolstered by the presumption that "[w]hen Congress directs an agency to establish a procedure, . . . it can be assumed that Congress intends that procedure to be a fair one." *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996) (citing, inter alia, *Wolff v. McDonnell*, 418 U.S. 539, 577-78 (1974)).

Further support for the application of that rule to children comes from *Jie Lin*, where the Ninth Circuit found that a 14-year-old boy was provided ineffective assistance of counsel during his immigration proceedings, which "violated [the child's] Fifth Amendment right to due process." 377 F.3d 1034, 1034 (9th Cir. 2004). Importantly, *Jie Lin* involved a child who was stopped at the port of entry. *Id.* at 1019-20 (child found in airport restroom shortly after flight arrived); *see also* Dkt. 24 at 19-20. The Ninth Circuit nonetheless applied the Due Process Clause to Lin's case. 377 F.3d at 1034-35. Under these cases, it is clear that the

PLS.' OPP. TO MOT. TO DISMISS - 3
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

Constitution guarantees the rights of children like A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J. to fair procedures in their immigration hearings.

Defendants' cited authorities do not contradict this rule. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), and *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950), were decided long before *Oshodi* and *Jie Lin*, and involved radically different issues. *Mezei* concerned a challenge to indefinite detention on the basis of secret evidence raising national security concerns, 345 U.S. at 208-09, while *Knauff* addressed the lawfulness of regulations allowing the exclusion of noncitizens during times of war or national emergency. 338 U.S. at 544-45. Subsequent cases have questioned their validity even as to the specific fact scenarios they addressed, *see, e.g.*, *Rosales-Garcia v. Holland*, 322 F. 3d 386, 413-15 (6th Cir. 2003) (en banc) (holding that *Mezei*'s rule, if broader than its facts, has been "fatally undermined" by subsequent due process cases), and declined to extend their reasoning to other contexts. *See, e.g.*, *Khouzam v. Att'y Gen.*, 549 F.3d 235, 256 (3d Cir. 2004) (rejecting Defendants' reliance on *Mezei* and *Knauff* because of prior cases holding that "aliens detained immediately upon arrival without proper documentation are entitled to due process of law during deportation proceedings implicating statutory relief from removal"). Defendants also cite *Landon v. Plascencia*, 459 U.S. 21 (1982), but there the Supreme Court *expanded* constitutional protections for certain noncitizens arriving at the border, rather than retracting them, as Defendants advocate here. *Id.* at 33-34 (recognizing that returning lawful permanent resident stopped at border still enjoys procedural due process rights).

Defendants also cite *Angov v. Lynch*, 788 F.3d 893 (9th Cir. 2015), but that case addressed the propriety of using certain evidence against an adult asylum petitioner. It said nothing about children, and even as to adults explicitly declined to decide whether certain "'minimum due process' rights" remain available to asylum-seekers stopped at the border. *Id.* at 898 n.3 (noting that rule in other circuits and stating that "whether asylum applicants are

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

owed such 'minimum due process' is an open question in our circuit"). Reading *Angov* more broadly would render it irreconcilable with *Oshodi* and *Jie Lin*, both of which require that the child Plaintiffs here receive the protections of the Due Process Clause. And even if there were conflict between these decisions, this Court would have to defer to the earlier cases, particularly given that one of them was an en banc decision. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("[T]he first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals."). Defendants also cite *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011), but it addressed the rights of individuals in expedited removal proceedings, which do not take place in front of Immigration Judges ("IJs"). Plaintiffs specifically excluded any children in such summary proceedings from this case for precisely this reason. No Plaintiffs at issue here are in expedited removal; rather, Congress has determined that all of them are entitled to full removal hearings.[1]

Second, multiple circuits have recognized that regardless of whether they were apprehended at a port of entry, asylum seekers enjoy procedural due process protections that arise from their statutory right to apply for relief from persecution. This is because Congress, in enacting forms of relief such as asylum and withholding of removal, has created a "substantive entitlement to relief from deportation" to a country where a noncitizen would face persecution or death. *Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984); *see also Marincas*, 92 F.3d at 203 ("Congress instructed the Attorney General to establish an asylum procedure, and United States' treaty obligations and fairness mandate that the asylum procedure promulgated by the Attorney General provide the most basic of due process."); *Haitian Refugee Center v. Smith*,

---

[1] Defendants' remaining authorities offer no support for their position. *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094 (9th Cir. 2004), and *Sevilla v. Ashcroft*, 33 Fed. Appx. 284 (9th Cir. 2002), addressed the far-afield question of whether the rule requiring arriving noncitizens to submit applications for relief to INS district directors, rather than IJs, violated equal protection. The passage Defendants cite in *Argueta-Pena v. Lynch*, 804 F.3d 1258 (9th Cir. 2015)—a case concerning judicial review over expedited removal orders—says nothing about the constitutional due process question at issue here. And *Phan v. Reno*, 56 F. Supp. 2d 1149 (W.D. Wash 1999), in fact rejected the Government's attempt to apply the entry fiction to a set of immigrants, and in any event was decided before *Oshodi* and *Jie Lin*.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

676 F.2d 1023 (5th Cir. 1982 Unit B) ("Congress and the executive have created, at a minimum, a constitutionally protected right to petition our government for political asylum."), *abrogated in part by Jean v. Nelson*, 727 F.2d 957 (11th Cir. 1984) (en banc); *cf. Angov*. 788 F.3d at 898 n.3 (leaving open this question). The same reasoning plainly applies to the other forms of relief for which the child Plaintiffs are eligible. *Cf. United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049-50 (9th Cir. 2004) (finding that IJ's failure to advise noncitizen of right to apply for discretionary 212(c) relief was denial of due process). Importantly, this result obtains even if the noncitizen would have no protected interest absent Congress's action.[2]

*Third*, Defendants err in claiming that recognition of due process protection for the child Plaintiffs here would encourage immigrants to evade checkpoints and make unlawful border crossings. *See* Dkt. 229 at 8 n.5. Defendants cite *Kwai Fun Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004), but there the Ninth Circuit rightly perceived that the best way to "vitiate[ those] perverse incentives" would be to *extend* the Fifth Amendment's safeguards to noncitizens apprehended at a port of entry, rather than deny them constitutional protection. *See id.* at 974. Indeed, it is Defendants' position—not Plaintiffs'—that would produce aberrant results. Defendants advance a rule whereby a child who presents herself at a port of entry would receive lesser constitutional protection than a child who crosses the border by wandering through the desert. It is Defendants' rule that would force vulnerable children to risk a desperate journey across the desert in hopes of securing greater constitutional protection.

This, surely, was not the intended result of the Supreme Court's opinions in *Mezei* and *Knauff*, nor what Congress could have anticipated when it ensured that *all* children in

---

[2] This proposition follows from the established principle that, "[i]n the absence of protected interests which originate in the Constitution itself, constitutionally protected liberty or property interests may have their source in positive rules of law creating a substantive entitlement to a particular government benefit." *Augustin*, 735 F.2d at 37. When the government creates a protectable interest via statute or regulation, the procedure for depriving an individual of such an interest must satisfy constitutional due process. *See, e.g.*, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 431-33 (1982); *Goss v. Lopez*, 419 U.S. 565, 573 (1975); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Perry v. Sindermann*, 408 U.S. 593, 599 (1972).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

immigration proceedings—regardless of whether they were arrested at a port of entry—receive a full and fair hearing of their claims. *See Augustin*, 735 F.2d at 36 n.10 ("The ironic result of this 'entry doctrine' fiction is that illegal entrants are accorded many more procedural and substantive rights than aliens who properly petition for entry."); Henry M. Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv. L. Rev. 1362, 1387-1396 (1953) (footnote omitted) (criticizing *Mezei* and stating that "I cannot believe that judges taking responsibility for an affirmative declaration that due process has been accorded would permit themselves to arrive at such brutal conclusions").

### B. K.N.S.M. Entered the United States and Is Therefore Unquestionably Protected by the Due Process Clause.

Defendants acknowledge that K.N.S.M. was apprehended after crossing the U.S. border, but make a distinct argument that her entry into this country "does not functionally separate her from the Plaintiffs" who presented themselves at a port of entry. Dkt. 229 at 8. Again, however, they fail to acknowledge that they made the identical argument earlier in this litigation. *See* Dkt. 54-2 at 12 (arguing that "the named Plaintiffs and putative class members who were apprehended shortly after crossing the border and who have no previous substantial ties with the United States cannot invoke the Due Process Clause"). The Court should reject it for that reason alone.

If the Court is inclined to consider this claim anew, it should reject it again. K.N.S.M. is protected by the Due Process Clause for the same reasons as the other children in this case, *see* Part I.A, *supra*, but even if this Court reverses course and now finds a relevant constitutional distinction between "arriving" children and those who have "entered," and even if this Court accepts Defendants' improper reliance on facts outside the complaint, K.N.S.M. undoubtedly falls in the latter category.[3]

---

[3] Defendants assert that K.N.S.M. was apprehended "shortly after wading across the Rio Grande river, approximately 0.55 miles southeast" of a port of entry, Dkt. 229 at 5, relying on an I-213 form prepared by a CBP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

There can be no dispute that the Due Process Clause covers children who made an entry onto U.S. soil, regardless of the lawfulness or recency of the entry. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("Once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (emphasis added) (internal citations omitted); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.") (internal citations omitted).[4]

The Ninth Circuit recently reaffirmed this longstanding rule in *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014), which held that "[e]ven an alien who has run some fifty yards into the United States has entered the country" and "is guaranteed due process protections." *Id.* at 1203 (citing *United States v. Martin-Plascencia*, 532 F.2d 1316, 1317-18 (9th Cir. 1976)); *see also id.* (explaining that "the Supreme Court's repeated pronouncement that the Due Process Clause applies to all who have entered the United States—legally or not" entitles noncitizen to constitutional due process).

Defendants attempt to limit *Raya-Vaca* to the criminal context, Dkt. 229 at 8 n.5, despite their own repeated reliance on criminal cases to support various propositions of immigration law. *See, e.g.*, Dkt. 135 at 8 (citing *United States v. Lopez-Velasquez*, 2010 LEXIS

---

officer, *id.*, Ex. A. Defendants claim that the complaint "necessarily relies" on the I-213 form, rendering it cognizable on a motion to dismiss, *id.*, but they are twice wrong. The operative complaint nowhere *mentions* K.N.S.M.'s I-213 form, much less depends on it. And even were the Court able to consider the form here, it can be relied on only for its existence and contents, not for the truth of the statements contained therein. *See United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003) (rejecting Government's reliance on documents external to complaint that were "obviously not mentioned" in pleading or were not "reference[d] extensively").

[4] *See also Wong Wing v. United States*, 163 U.S. 228, 235, 238 (1896) (stating, in case involving legislation concerning those "not lawfully entitled to be or remain in the United States," that "all persons within the territory of the United States are entitled to the protection guarantied" by the Fifth and Sixth Amendments); *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164, 188 (D.D.C. 2015) (recognizing that because "Plaintiffs in this case were apprehended in the territory of the United States," that "[i]t is clear . . . that they are entitled to the protection of the Due Process Clause").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

24889, *6-*8 (9th Cir. Dec. 7, 2010)). Indeed, the Ninth Circuit regularly draws on its criminal unlawful reentry cases in order to resolve due process questions in the civil removal context, because the lawfulness of the civil removal order is often a central question in such cases. *See, e.g.*, *Camacho Garcia v. Lynch*, 786 F.3d 789, 792 (9th Cir. 2015). More fundamentally, nothing in *Raya-Vaca* suggests that its constitutional rule was restricted to criminal cases—in fact, its analysis relied on *Zadvydas*, 533 U.S. 678, a civil case involving noncitizen detainees subject to immigration detention, as well as *Diaz*, 426 U.S. 67, which involved a noncitizen's "eligibility for federal medical insurance." 771 F.3d at 1202-03.[5]

### C. A.F.M.J. and L.J.M. Are Unquestionably Entitled to Procedural Due Process in the Adjudication of Their Citizenship Claims.

Finally, Defendants' attack on Plaintiffs' due process claims completely ignores A.F.M.J. and L.J.M.'s bona fide claims to U.S. citizenship. Dkt. 207 ¶¶114, 116. However this Court resolves Defendants' arguments concerning the scope of the Due Process Clause as to noncitizens, there can be no question that unfairly depriving a potential *citizen* of the opportunity for a fair hearing would violate the Due Process Clause. *See Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922) ("To deport one who so claims to be a citizen obviously deprives him of liberty . . . . It may result also in loss of both property and life, or of all that makes life worth living."); *accord Schneiderman v. United States*, 320 U.S. 118, 123 (1943) (explaining that denaturalization case "[i]n its consequences [] is more serious than a taking of one's property, or the imposition of a fine or other penalty. For it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country."); *Brown v. Holder*, 763 F.3d 1141, 1147-48 (9th Cir. 2014) (recognizing constitutionally "protected interest in being able to apply for citizenship"). Indeed, the Ninth Circuit has

---

[5] Defendants also rely on *M.S.P.C. v. C.B.P.*, 60 F. Supp. 3d 1156 (D.N.M. 2014), but not only does that out-of-circuit decision conflict with *Raya-Vaca*, it also was later vacated as moot after Defendants voluntarily gave the petitioner all the relief she requested—accordingly the case does not even bind its own parties. *See M.S.P.C. v. U.S. Customs & Border Protection*, CIV 14–769 JCH/CG, 2015 WL 7454248 (D.N.M. Sept. 23, 2015).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

acknowledged that the question of a respondent's citizenship goes to the very jurisdiction of the immigration courts, because they have no authority to deport a citizen. *See Rivera v. Ashcroft*, 394 F.3d 1129, 1138 (9th Cir. 2004), *superseded by statute as recognized in Iasu v. Smith*, 511 F.3d 881 (9th Cir. 2007); *see also Frank v. Rogers,* 253 F.2d 889, 890 (D.C. Cir. 1958) ("Until the claim of citizenship is resolved, the propriety of the entire proceeding is in doubt."). It is thus beyond dispute that the Due Process Clause protects the rights of A.F.M.J. and L.J.M. to a fair hearing, and for that additional reason this Court should not dismiss their claims.

## II.     That A.F.M.J., L.J.M., and M.R.J. Are in Consolidated Proceedings with Their Mother Does Not Defeat Their Claim to Appointed Counsel.

Defendants make a distinct argument that the Court should dismiss 12-year-old A.F.M.J., three-year-old L.J.M., and two-year-old M.R.J. from this case because they are in consolidated removal proceedings with their mother. Dkt. 229 at 19-21. They argue these children have no greater claim to appointed counsel than their mother, and that indeed "[e]ach of them is effectively in the same position as an adult in immigration proceedings," *id.* at 21, because their mother can act as their lawyer. Defendants' argument is meritless.

*First*, like nearly everything else in their motion, this assertion recycles an argument Defendants made at length in an earlier stage of this litigation. *See* Dkt. 54-2 at 10-11. But this Court previously refused to dismiss the constitutional claims of children merely because their parents could be present in immigration court, such as M.A.M., who "came to the United States to be reunited with his mother." Dkt. 114 at 32 n.23.

That A.F.M.J., L.J.M., and M.R.J. are in consolidated proceedings with their mother should not change the analysis. As a threshold matter, "defendants do not, and cannot on a Rule 12(b)(6) motion, contest the allegations of the [Third] Amended Complaint," Dkt. 114 at 32 n.23, which undermine the factual premise of their argument. Plaintiffs have alleged that A.F.M.J., L.J.M., and M.R.J. came to the United States fleeing danger posed by, inter alia, the

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

man who murdered the two eldest siblings' U.S. citizen father. Dkt. 207 ¶¶111-12, 115, 118. Although the agency has consolidated their removal proceedings with those of their mother, *id.* ¶¶113, 117, 119, all three children also have their *own* distinct claims to asylum that have been unaddressed in immigration court (i.e., by the IJ, the ICE prosecutor, or their mother). *Id.* ¶¶114, 116, 119. Most striking of all, as noted above, the two eldest siblings have claims to U.S. citizenship that have gone entirely unaddressed. *Id.* ¶¶114, 116. These claims will continue to be ignored because all three children lack the resources to hire private counsel, and none of them qualify for the existing Government-funded counsel programs in Seattle. *Id.* ¶¶114, 117, 119.[6]

Their claim also relies on well-pleaded allegations applicable to *all* children. The Court must take as true that because of their age, children are completely unable to perform the tasks needed to represent themselves. *See id.* ¶¶45-52. It must also accept that the existing statutory protections do not provide meaningful safeguards for children (whether they are unaccompanied or not), *id.* ¶¶128-132, that children have extremely compelling interests at stake in their immigration cases, *id.* ¶¶36-37, 47-48, and that representation makes a dramatic difference in ensuring that defenses are adequately presented. *Id.* ¶¶39-46, 49-50. In addition, the Court can look to extensive record evidence Plaintiffs have submitted to establish the plausibility of these claims, including a report from one of the nation's foremost experts establishing that children lack the capacity to represent themselves, *see* Dkt. 212, Ex. 1, and a report and further declarations from experienced legal service providers establishing that parents cannot undertake the steps needed to represent their children. *See, e.g.*, Dkt. 212, Ex. 2.

---

[6] A.F.M.J. and L.J.M.'s circumstance is but one example of a situation in which a child and her parent may not have a shared defense to removal from this country. Other examples include claims by children based on their sexual orientation or identity—which may not be shared (or known) by the parent—as well as claims based on domestic violence—which may not be shared by the parent or may be perpetrated by the parent herself. These examples further underscore why a child in consolidated proceedings with a parent is not in the same position as an adult, for the parent may be unaware, ashamed, or afraid of articulating the child's particular claim, or may have other conflicts of interest that prevent the child's claims from being presented.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

In light of these allegations and supporting evidence, the Court cannot give weight to Defendants' contrary picture of the facts—as to these siblings or children in general. Defendants assert that with respect to L.J.M. and M.R.J. "only their mother or another adult *could* communicate the information necessary for a court to assess the minor's entitlement to relief from removal." Dkt. 229 at 21. But they cite no evidence or authority for this claim, and while Plaintiffs agree that these young children need "another adult" to communicate with the court, their well-pled allegations and governing law require that at least one of these adults be an attorney.

Defendants' proposal that L.J.M. and M.R.J.'s mother serve as their attorney would also violate the rule against such representation established in *Johns v. Cnty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997). The Ninth Circuit (and others) have rejected the notion that the parent's presence can "cure" a child's incapacity. *See Jie Lin*, 377 F.3d at 1025 (noting, in child's deportation case, that "the right of minors to competent counsel is so compelling that we have joined other circuits in holding that 'a guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a lawyer'") (quoting *Johns*, 114 F.3d at 876). Notably, in *Johns*, the parent and the child filed in federal court *together* as plaintiffs. *See* 114 F.3d at 876. Though the parent could have elected to represent *himself* in the proceedings, the Ninth Circuit refused to treat the child as a mere appendage to his parent—or, in Defendants' words, as "effectively in the same position as an adult in [] proceedings," Dkt. 229 at 21— simply because his father was present and acting as his guardian ad litem. The Court was guided by its earlier ruling that "a non-lawyer 'has no authority to appear as an attorney for others than himself,'" 114 F.3d at 876 (*quoting C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)), and it did not rely upon any allegations or evidence of conflict of interest to reach its result. Thus, though parents certainly have rights and interests vis-à-vis

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

their children, and in most cases can and should act as guardians ad litem as appropriate, they are precluded from acting as their children's lawyers.[7]

That Ms. Jimenez is in removal proceedings with her minor children places her in the same posture as the father in *Johns. See* Dkt. 207 ¶¶113, 117, 119; *Johns,* 114 F.3d at 876. Her children, like the son in *Johns,* are involved as individuals, not legal bystanders. Ms. Jimenez has elected to proceed pro se in her own removal case, just as the father in *Johns* could have done had he been acting on his own behalf. *See* Dkt. 207 ¶113. But that Ms. Jimenez makes this choice for herself does not allow her to make that choice for her children—whether or not a conflict of interest exists—and to represent them as a non-attorney. *Johns* bars this result on the facts as pled. *See* 114 F.3d at 876-77.[8]

Defendants also claim that Plaintiffs have not alleged a conflict of interest between the children and their mother. *See* Dkt. 229 at 21. But the complaint alleges that their mother— presumably out of ignorance of the law—is not pursuing her children's independent asylum claims and claims to United States citizenship. Thus, she is not representing their interests in their removal proceedings. *Cf. Gonzalez v. Reno,* 212 F.3d 1338, 1352 n.21 (11th Cir. 2000) ("If the child would have an exceedingly strong case for asylum, the parent's unwillingness to seek asylum on that child's behalf may indicate, under INS policy, that the parent is not representing adequately the child's interests.").

---

[7] Notably, an adult is not legally entitled to act as his child's guardian ad litem simply by virtue of being her parent. *See Gonzalez v. Reno,* 212 F.3d 1338, 1352 n.20 (11th Cir. 2000) ("[A]lthough the common practice … seems to be that a parent will be appointed as next friend for a child, a parent is not usually entitled to be the next friend of his child as a matter of absolute right.") (citing *Fong Sik Leung v. Dulles,* 226 F.2d 74, 82 (9th Cir. 1955)).

[8] For that reason, among others, Defendants lost virtually the same argument in *Franco,* where the court held that parents and accompanying adults cannot "represent" their mentally ill relatives in removal proceedings. *See Franco-Gonzales v. Holder,* 828 F. Supp. 2d 1133, 1144-47, 1146 n.11 (C.D. Cal. 2011) (parent could not serve as legal representative despite "earnest desire to assist his son"); *Franco-Gonzales v. Holder,* No. CV 10-02211 DMG DTBX, 2013 WL 3674492, at *9 (C.D. Cal. Apr. 23, 2013) (same applied to entire class). The reasons set forth in *Franco*—including the possibility of unrecognized conflicts, the inability to hold non-lawyer adults accountable for ineffective assistance, and vulnerable individuals' inability to consent to representation by a non-attorney—are equally applicable to children.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

Finally, twisting Plaintiffs' allegations, Defendants argue that the difficulties children face in removal proceedings are no different than those facing adults. *See* Dkt. 229 at 20 n.14. But Plaintiffs have consistently pled that immigration proceedings are difficult for children in ways *specific to them as children*. *See* Dkt. 207 ¶¶38, 45-46, 51. And overwhelming record evidence confirms that these allegations are more than plausible. *See* Dkt. 212, Ex. 1 ¶43; *id.*, Ex. 2 ¶¶51-53 (Plaintiffs' expert's declaration that "[t]he central importance of legal representation is not lessened for children who are in removal proceedings with parents or other relatives"). While Defendants can, through discovery, attempt to refute the solid evidence that children need the assistance of counsel even when their parents face removal proceedings alongside them, *but see, e.g.*, *id.* (Plaintiffs' expert's declaration); *see also* Dkt. 202, Ex. E at 42:7-20 (Defendant's 30(b)(6) witness admitted that "[o]ftentimes when a child's case is consolidated with an adult . . . [t]he child no longer pursues their own independent claim for relief"), they cannot obtain dismissal now on that basis.

Defendants nonetheless ask the Court to find *as a matter of law* that a parent's being in consolidated proceedings with her children transforms the children into miniature adults with no claim to counsel, citing cases for the proposition that "a parent or legal guardian necessarily speaks for a child too young to articulate his or her own claim" to asylum. Dkt. 229 at 19-20. But those (out-of-circuit) cases establish at most that some children need *both* parents and lawyers, not that they can proceed with only the former. And Ninth Circuit law regarding children, ignored by Defendants, underscores that A.F.M.J., L.J.M., and M.R.J. cannot be represented by their mother.

Three of the cases Defendants highlight to show that a parent necessarily speaks for a young child are inapposite, as they involve children who were *never in removal* proceedings and made no claims regarding legal representation. The six- and four-year-old children in *Oforji v. Ashcroft*, 354 F.3d 609, 612, 619 (7th Cir. 2003), were not in removal proceedings

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

with their mother, and as Judge Posner pointed out, no one could have filed asylum applications for these children because they were born in the United States. *See id*. at 619.

Moreover, the passage Defendants cite references an INS memorandum that undermines their position. *See id.* In the course of describing the respective roles of adults and children in non-adversarial asylum interviews, the memorandum states

> The function of the support person is not to interfere with the interview process or coach the child during the interview, but to serve as a familiar and trusted source of comfort. The Asylum Officer may allow the adult to help the child explain his or her claim, but the Asylum Officer should at the same time ensure that the child is able to speak for him\herself and is given an opportunity to present the claim in his or her own words. The INS is not suggesting that the trusted adult necessarily serve as a substitute for an attorney or representative at the asylum interview, and the child may be accompanied to the interview by a support person in addition to an attorney or representative.

*Guidelines For Children's Asylum Claims*, Memorandum from Jack Weiss, Acting Director, Office of International Affairs (Dec. 10, 1998), 1998 WL 34032561, at *4. If adults are a "source of comfort" rather than a substitute for attorneys even in such interviews, they certainly can do no more in adversarial removal hearings.

Defendants also cite *Polovchak v. Meese*, 774 F.2d 731 (7th Cir. 1985), but there a Russian child filed affirmatively for asylum when he was 12, *against his parents' wishes*, and the then-INS granted him asylum without commencing removal proceedings against him. *Id*. at 732-33. While Defendants pluck a single out-of-context quotation from that case, Dkt. 229 at 20, they fail to acknowledge that the Seventh Circuit in fact decided that the parents were *not* entitled to have the child's asylum grant vacated. *Id*. at 736-37. Indeed, that case provides a striking example of why children need their own representation, without which potential conflicts may never surface.

Defendants also cite the case of famed six-year-old Elian Gonzalez, but that too did not involve a child in removal proceedings. *See Gonzalez*, 212 F.3d at 1344. There, the Eleventh

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

Circuit upheld the then-INS's determination that Elian's father could override Elian's affirmative asylum claim and secure his return to Cuba, *see id.* at 1351-52, 1354-55, but had no occasion to comment on whether Elian would have been entitled to counsel were he in removal proceedings with his father. Indeed, the court underscored concern for the "completely independent and separate interest that a child may have, apart from his parents, in applying for asylum." *Id.* at 1352. Most important, the child Elian himself was represented by counsel, both in the district court and on appeal. *See id; see also Gonzalez ex rel. Gonzalez v. Reno,* 86 F.Supp.2d 1167 (S.D. Fla. 2000) (listing counsel). To be clear, Plaintiffs do not dispute that Ms. Jimenez would have the right to take her children back with her if she wishes. But that is an entirely separate question from whether the children are entitled to their own legal representation, and nothing in the record discloses what she would wish to do if they were to retain the right to stay here while she was ordered removed.

Finally, Defendants cite *Johns v. Department of Justice*, 624 F.2d 522, 524 (5th Cir. 1980), for the assertion that "[i]n most cases, parents or foster parents may properly appear for minors," Dkt. 229 at 20, but again this statement says nothing about whether the child must have legal representation when the parents "appear for" them. In addition, *Johns'* holding supports A.F.M.J., L.J.M., and M.R.J.'s claims, because it highlights the dangers created by conflicts. *Johns* held that, on the facts presented, "it is a denial of due process to hold proceedings to deport an unrepresented infant incapable of representing herself." 624 F.2d at 524. It further found that although the child's biological mother did not appear at her deportation hearing, "[e]ven if she had done so, it is not patent that her interests were the same as [her child's]," *id.*, and it *rejected* a blanket rule that parents can simply step into immigration court to "cure" the incapacity of their children—the precise rule Defendants argue for here. Instead, the Fifth Circuit ordered the appointment of a guardian ad litem to speak for the child in further proceedings. And while it did not direct that the guardian must obtain an attorney,

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

that would have been the required course of action under the law of every circuit to consider the question. *See Johns*, 114 F.3d at 876 (collecting cases).[9]

For all these reasons, the Court should reject Defendants' plea to dismiss A.F.M.J., L.J.M., and M.R.J.

### III. J.E.V.G. and M.A.M.'s Age Does Not Require Their Dismissal.

Defendants argue that the Court should dismiss Plaintiffs J.E.V.G. and M.A.M. because they have turned 18, but this Court already rejected their argument that J.E.V.G. should be dismissed because he turned 18 (well after he joined this litigation). Dkt. 174 at 6. M.A.M., who has not received a final decision in his ongoing removal proceedings, is now in an identical posture. Dkt. 207 ¶ 90. Again, Defendants have ignored this Court's admonition that previously-addressed issues are law of the case.[10]

Having failed to convince the Court that Plaintiffs' claims are moot, Defendants re-package their argument, claiming that J.E.V.G. and M.A.M. failed to allege prejudice arising from the period that they were unrepresented in removal proceedings prior to turning 18. Dkt. 229 at 13-15. But this Court has already rejected Defendants' plea to graft a prejudice requirement, above and beyond the three-part inquiry set forth in *Mathews*, onto Plaintiffs' counsel claims. Dkt. 114 at 28. That argument is foreclosed both by the authority this Court previously cited (*see id.*, citing *Walters v. Reno*, 145 F.3d 1032, 1043-44 (9th Cir. 1998) and

---

[9] In a footnote, Defendants assert that the "potential assistance" of a presumably competent adult—any adult—in a child's life somehow "ameliorates" the harm arising from a child's being forced to represent herself in court. Dkt. 229 at 22-23 n.15. Unsurprisingly, that extreme claim cannot be reconciled with the evidence or case law, *see supra*, and Defendants cite nothing to support it. Indeed, Defendants do not move to dismiss any of the other Plaintiffs—several of whom have adults in their lives—on this baseless ground.

[10] Plaintiffs recognize that the Court has held that J.E.V.G. can no longer serve as a class representative, despite finding that he continued to have a live claim. Dkt. 174 at 5-6. For the reasons set forth in prior briefing, Plaintiffs again preserve their claim that J.E.V.G., as well as other plaintiffs whose individuals claims have either become moot or significantly changed, can continue to represent the class. Standing to seek classwide relief is measured as of the time the complaint is filed. *See, e.g.*, *Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014) ("We consider whether the elements of Article III standing, as articulated in *Lujan*, were satisfied at the time the complaint was filed.") (citation omitted); *see also* Dkt. 139 at 1 (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991) and *Pitts v. Terrible Herbst, Inc.* 653 F.3d 1081, 1090-92 (9th Cir. 2011)); Dkt. 168 at 7-11 (same).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

*Ching v. Mayorkas*, 725 F.3d 1149, 1157-59 (9th Cir. 2013)), and by *Montes-Lopez v. Holder*, where the Ninth Circuit held that an immigrant unlawfully denied his right to counsel need not demonstrate prejudice in order to obtain relief. 694 F.3d 1085, 1086, 1090 (9th Cir. 2012). There, the court found "no prejudice inquiry is appropriate for 'some rights, like the assistance of counsel, [that] are so basic to a fair trial that their infraction can never be treated as harmless error.'" *Id.* at 1092 (quoting *Cheung v. INS*, 418 F.2d 460, 464 (D.C. Cir. 1969)). Under *Montes-Lopez*, J.E.V.G. and M.A.M.'s allegations that they were wrongfully denied counsel as minors sufficiently establishes injury. *Id.* at 1086; *see also* Dkt. 207 ¶¶ 90, 105.[11]

## IV.     This Court Is a Proper Venue for All Plaintiffs' Claims.

Defendants also spend significant time raising an entirely new venue argument. Dkt. 229 at 14-19. Unlike their previous arguments, the Court had no prior opportunity to rule on these claims, but only because Defendants plainly waived them. From the outset Plaintiffs have litigated this case on behalf of Named Plaintiffs who reside both in and outside of this district, and for well over a year they have included Plaintiffs who were not in this circuit. Even though the venue objection in Defendants' most recent motion to dismiss was available when prior responsive pleadings were filed, *see* Dkt. 74-1 ¶¶18-20, 68-83 (describing plaintiffs who do not live in, and whose immigration proceedings are taking place outside of, the Western District of

---

[11] Defendants try in vain to distinguish *Montes-Lopez*, arguing that it involved a direct rather than collateral challenge, and that it addressed a statutory and not constitutional counsel claim. Dkt. 229 at 14 n.9. Their arguments fall flat. Plaintiffs are not criminal defendants attempting to "collaterally attack the result of a prior proceeding." *Montes-Lopez*, 694 F.3d at 1093 (distinguishing *United States v. Reyes-Bonilla*, 671 F.3d 1036 (9th Cir. 2012), which held a criminal defendant in illegal reentry proceedings must show denial of counsel caused prejudice). This Court has already recognized that the prejudice analysis applicable in those cases is not the appropriate test here. Dkt. 114 at 28. And the constitutional nature of Plaintiffs' claims only adds force to their arguments. *Montes-Lopez*, 694 F.3d at 1089 (recognizing that "denial of counsel . . . in an immigration proceeding may violate the Fifth Amendment"). Indeed, it was the very fact that the denial of counsel "'implicate[s] fundamental statutory *or constitutional* rights'" that persuaded the *Montes-Lopez* court to depart from the general rule requiring a showing of prejudice. *Id.* at 1091 (emphasis added) (quoting *Leslie v. Attorney Gen.*, 611 F.3d 171, 180 (3d Cir. 2010)); *see also id.* at 1093 (distinguishing cases that require prejudice showing for "violation of a relatively minor procedural rule"). *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc), is similarly inapplicable; it involved a collateral challenge to the regulation governing reinstated removal orders.

---

PLS.' OPP. TO MOT. TO DISMISS - 18
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

Washington), Defendants never raised the defense. *See* Dkt. 80 (failing to assert improper venue). Most important, on May 22, 2015, Defendants affirmatively *admitted* in their Answer that venue is proper pursuant to 28 U.S.C. 1391(e)(1). Dkt. 151 at 2 ("12. Defendants admit the allegations in the first sentence of this paragraph.") (referring to Dkt. 95 at 6 ("12. Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to this action occurred in this district.")). Because the venue defense was "available to [them] but omitted from [their] earlier [Rule 12] motion," Defendants have waived any objection as to improper venue, and the Court need not address it further. Fed. R. Civ. 12(g)(2), (h)(1)(A); *see, e.g.*, *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000) ("A fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived.").

Defendants may claim they have not waived their venue arguments because Plaintiffs filed an amended complaint. But nothing in Rule 12's text provides an exception to its waiver rule following the filing of an amended complaint, as courts have repeatedly found. *See* Fed. R. Civ. P. 12(g)(2); *see also Church of Scientology v. Linberg*, 529 F. Supp. 945, 967 (C.D. Cal 1981) ("Rule 12(g) specifically rejects [the] possibility [that filing a different amended complaint revives the right to raise Rule 12(b) waivable defenses] where . . . the grounds for the objections were 'available' at the time the previous motion was filed."); *Pratt v. Rowland*, 769 F. Supp. 1128, 1132 (N.D. Cal. 1991) (same); Wright & Miller, 5C Federal Practice & Procedure § 1388 (2015). Defendants did not challenge venue for California-based M.A.M., who was a subject of Defendants' initial motion to dismiss, nor did they do so for Texas-based J.E.V.G. or other similarly-situated Plaintiffs later amended into the complaint. *See*, *e.g.*, *Johnson v. Bryson*, 851 F. Supp. 2d 688, 704-06 (S.D. N.Y. 2012) (failure to raise venue in original motion to dismiss waived the defense, including as to new but "similarly-situated"

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

plaintiffs); *Lanehart v. Devine*, 102 F.R.D. 592, 593-95 (D. Md. 1984) (same).

Although the Court need not address venue further in light of Defendants' waiver of it, their argument is meritless because venue is proper under 28 U.S.C. 1391(e)(1)(C). That provision states that "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity. . . , or an agency of the United States, or the United States . . . [may] be brought in any judicial district in which . . . the plaintiff resides if no real property is involved in the action." Defendants do not dispute that several Plaintiffs reside in this district, *see* Dkt. 229 at 14, and Section 1391(e)(1)(C)'s requirement is met so long as *one* plaintiff resides here. *See, e.g.*, *Sidney Coal Co. v. SSA*, 427 F.3d 336, 344-46 (6th Cir. 2005) (finding that "the case law and legislative history compel this Court to hold that the residency requirement . . . is satisfied if at least one plaintiff resides in the district in which the action has been brought" and citing cases). Although Defendants imply that this issue is open in the Ninth Circuit, that court has endorsed the general rule in a similar context, stating that "in order to avoid a multiplicity of similar suits in different courts, venue need be proper for only one plaintiff under 28 U.S.C. § 1391(e)(4)." *Railway Labor Executives' Assn. v. Interstate Commerce Commn.*, 958 F.2d 252, 256 (9th Cir. 1992) (deeming it unnecessary to assess whether venue was proper as to one plaintiff in a case under Section 1391(e), because venue was proper as to another plaintiff) (internal quotation omitted).

Defendants resist this weight of authority, claiming that the term "the plaintiff" in Section 1391(e)(1)(C) refers to *all* plaintiffs. But the cases they cite for that claim address a different venue provision applicable to suits against private parties, rather than the venue provision applicable to the federal government.[12] Contrary to Defendants' assertions,

---

[12] Neither of the cases cited by Defendants address venue under 28 U.S.C. 1391(e). *See Allstar Marketing Grp. v. Your Store Online*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009); *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001). Instead, they address venue in civil cases without federal government defendants; the relevant venue provision does not provide for bringing suits based upon a plaintiff's residence. *Compare* 28 U.S.C. 1391(b) *and* 1391(e).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

"interpreting the phrase 'the plaintiff' to mean 'all plaintiffs' or 'each plaintiff' would substantially limit [Section 1391(e)(1)(C)'s] breadth and undermine congressional intent," because the statute was intended to make bringing suit against *federal defendants* more convenient and less expensive for plaintiffs. *Sidney Coal Co.*, 427 F.3d at 345. Because Plaintiffs F.L.B. and E.G.C. reside in the Western District of Washington, and Plaintiffs A.F.M.J., L.J.M., and M.R.J. are in removal proceedings here, this court provides an appropriate venue for this case, given that all the Plaintiffs have chosen to litigate it here.

Because venue is proper under Section 1391(e)(1)(C), the Court need not consider whether "a defendant in the action resides" in the Western District of Washington. 28 U.S.C. 1391(e)(1)(A). However, if the Court does address where Defendants "reside," it should construe the term broadly. Congress intended Section 1391(e) "to broaden the venues available to plaintiffs for suits against the federal government." *Sidley Coal Co.*, 427 F.3d at 344 n.11. Any interpretation that, for example, fully "limit[s] the residence of agencies under § 1391(e) to their national headquarters," Dkt. 229 at 16, would be contrary to the purpose of the statute.[13]

Defendants make a related argument that the Court sever the claims of any Named Plaintiff not in this district because they are improperly joined under Fed. R. Civ. P. 20. They do not explain why they failed to raise this argument before as to the out-of-district and out-of-circuit Plaintiffs, nor how to reconcile it with this Court's ruling that Plaintiffs "present a 'pattern and practice' claim." Dkt. 114 at 9. But even if not waived, this argument is meritless. The Court must construe the joinder requirements "liberally," in keeping with the rule's "primary purpose . . . to promote trial convenience and to prevent multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *see*

---

[13] Because "a substantial portion of the events or omissions giving rise to the claim occurred in this district," including the immigration proceedings of five Named Plaintiffs in which Defendants failed to provide them with appointed counsel, venue also is appropriate under 8 U.S.C. 1391(e)(1)(B). *See* Dkt. 151 at 2 (affirming allegation in the Second Amended Complaint that venue is proper on this basis).

PLS.' OPP. TO MOT. TO DISMISS - 21
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

*also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *Allen v. Similasan Corp.*, No. 12cv0376-BTM-WMC, 2013 U.S. Dist. LEXIS 69369, *5-*6 (S.D. Cal. May 14, 2013) (noting that "a broad reading of the language" of the rule is "mandated by the case law"). In keeping with these requirements, Plaintiffs need only show that they assert their "right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1).

Plaintiffs seek relief based on Defendants' "pattern or policy," namely the uniform nationwide practice of forcing unrepresented children to defend themselves in immigration proceedings. Defendants have conceded the existence of this uniform policy, as they admit that they *never* appoint counsel for children. Dkt. 97 at 7. Thus, "[t]heir claims arise out of [this] systematic pattern of events and, therefore, arise from the same transaction or occurrence," as required by Rule 20. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *see also Waterfall Homeowners Ass'n v. Viega, Inc.*, 279 F.R.D. 586, 589 (D. Nev. 2012) (claims that are "logically related" arise out of the same transaction or occurrence).

Plaintiffs also have established that a question of law, common to each of them, will arise: whether the Due Process Clause requires Defendants to provide them with legal representation in their immigration proceedings due to their age.[14] Given the Supreme Court's statements that children "as a class" "lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them," *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011), and multiple courts' recognition of how complex immigration

---

[14] As another district court has recognized, joinder is appropriate even if the Court declines to certify Plaintiffs' motion to proceed as a class. *See Hill v. R+L Carriers, Inc.*, No. C 09-1907 CW, 2011 U.S. Dist. LEXIS 54873, *6 (N.D. Cal. May 23, 2011) (finding that denial of class certification does not prevent joinder, because "Rule 20(a) does not mandate the predominance of common questions of fact or law over individual inquiries").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

proceedings are, *see*, *e.g.*, Dkt. 114 at 30, Plaintiffs present a question sufficiently common so as to allow them to litigate it together. *See also Dobrowski v. Sacramento County Sheriff's Dep't*, No. 2:11-CV-01390-TLN, 2013 U.S. Dist. LEXIS 116563, *5 (E.D. Cal. Aug. 6, 2013) (finding common question of law where plaintiffs "all alleged that their constitutional rights were violated and that those violations were the result of a police department policy"); *Doe v. BSA*, No. 1:13-cv-00275-BLW, 2014 U.S. Dist. LEXIS 12578, *14 ("[T]here is no requirement that all questions of law and fact be identical for there to be permissive joinder under Rule 20(a). Rather, the rule provides for joinder as long as there is *any* question of law or fact.").

Notably, the rules do not favor multiple lawsuits in different circuits for issues that arise nationwide. Thus, while Defendants seek to characterize Plaintiffs' choice as forum-shopping, that allegation would be equally applicable to any case where Plaintiffs from different circuits litigate in one forum—something the rules clearly encourage.

Indeed, joinder would further Rule 20's goals. *League to Save Lake Tahoe*, 558 F.2d at 917. Plaintiffs, including those outside of the Western District of Washington, have pursued their claims before this Court for nearly two years. *See* Dkt. 1 (filed July 9, 2014). Defendants have never previously requested that the Court sever the claims of Plaintiffs residing outside of this district. In the interim, this Court has addressed a variety of issues that apply to each Plaintiff regardless of their residence, including complex jurisdictional and discovery matters. Allowing all Plaintiffs to continue to present their claims to the Court in this case would best preserve judicial resources, prevent multiple lawsuits, and avoid unnecessary delay.

## V. Defendant Leon Rodriguez Is a Proper Party to This Action, But Plaintiffs Would Not Oppose His Dismissal as Long as The Court Clarifies that USCIS Is Subject to Discovery in This Case.

Defendants' last contention is that Leon Rodriguez, Director of U.S. Citizenship and Immigration Services ("USCIS"), must be dismissed from this case because "Plaintiffs nowhere claim that USCIS is responsible for causing the alleged constitutional violation

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

underlying this action." Dkt. 229 at 22. Defendants fail to acknowledge that they have repeatedly relied on USCIS's allegedly child-friendly procedures to defend their position in this case, *see, e.g.*, Dkt. 190 at 6-7, and also decline to mention that Plaintiffs added USCIS because Defendants refused to provide discovery from that agency, even though USCIS is part of U.S. Department of Homeland Security ("DHS").

USCIS is part of the entity subject to the direction of DHS Defendant Johnson, who is indisputably a proper defendant in this action. Any injunction that would run against Defendant Johnson would therefore bind all of his "officers, agents, servants, employees, and attorneys," Fed. R. Civ. P. 65(d)(2)(B), among which Mr. Rodriguez is unquestionably included.

In any event, Defendants cannot seriously contend that USCIS bears no responsibility for the harms alleged in this case. USCIS adjudicates asylum applications from many unaccompanied children in removal proceedings and refers them back to court with findings, thus playing a fundamental role in the removal proceedings. Defendants have repeatedly pointed to USCIS's "non-adversarial" process as a reason why children do not require counsel in the immigration courts. *See, e.g.*, Dkt. 135 at 14-15.

That being said, Plaintiffs' primary interest in adding USCIS is to make clear that the agency is subject to discovery. Because USCIS was added as a party via the Third Amended Complaint, this Court has not yet ruled on whether information within USCIS's control is subject to discovery. So long as this Court now makes clear that the answer to that question is "yes," Plaintiffs would not oppose dismissing Mr. Rodriguez from this case.[15]

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss must be denied in its entirety.

---

[15] DHS undoubtedly has and exerts "control" over USCIS, given that it is a component entity *within* DHS, and therefore must obtain documents from USCIS if they are otherwise subject to discovery. *See* Dkt. 193 at 9-11 (citing, inter alia, *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (DHS retains the "the legal right to obtain documents upon demand")). Nonetheless, Plaintiffs amended Mr. Rodriguez into the case to erase any doubt as to USCIS's discovery obligations.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

DATED this 22nd day of February, 2016.

ACLU IMMIGRANTS' RIGHTS PROJECT
ACLU OF SOUTHERN CALIFORNIA

By  s/ Ahilan Arulanantham
        Ahilan Arulanantham (*pro hac vice*)
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
aarulanantham@aclusocal.org

NORTHWEST IMMIGRANT RIGHTS
PROJECT

By   s/ Matt Adams
        Matt Adams, WSBA No. 28287
Glenda M. Aldana Madrid, WSBA No. 46987
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
(206) 587-4025 (fax)
matt@nwirp.org
glenda@nwirp.org

Theodore J. Angelis, WSBA No. 30300
Todd Nunn, WSBA No. 23267
Heidi Craig Garcia, WSBA No. 41399
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
(206) 623-7022 (fax)
theo.angelis@klgates.com
todd.nunn@klgates.com
heidi.garcia@klgates.com

Cecillia Wang (*pro hac vice*)
Stephen Kang (*pro hac vice*)
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
(415) 343-0950 (fax)
cwang@aclu.org
skang@aclu.org

Carmen Iguina (*pro hac vice*)
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
ciguina@aclusocal.org


Kristen Jackson (*pro hac vice*)
Talia Inlender (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
(213) 385-9089 (fax)
kjackson@publiccounsel.org
tinlender@publiccounsel.org


Margaret Chen, WSBA No. 46156
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184
mchen@aclu-wa.org


Kristin Macleod-Ball (*pro hac vice*)
Melissa Crow (*pro hac vice*)
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7500
(202) 742-5619 (fax)
kmacleod-ball@immcouncil.org
mcrow@immcouncil.org

Attorneys for Plaintiffs-Petitioners

PLS.' OPP. TO MOT. TO DISMISS - 26
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025

1    CERTIFICATE OF ECF FILING AND SERVICE

2

3    I certify that on February 22, 2016, I arranged for electronic filing of the foregoing document
     with the Clerk of the Court using the CM/ECF system, which will send notification of such
     filing to all parties of record:

4

5

6                                          s/ Glenda M. Aldana Madrid
                                          Glenda M. Aldana Madrid, WSBA No. 46987
7                                         615 2nd Avenue, Suite 400
                                          Seattle, WA 98104
8                                         (206) 957-8646
                                          (206) 587-4025 (fax)
9                                         Email: glenda@nwirp.org

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. 206-957-8611
Fax. 206-587-4025