UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.L.B., et al.,

        Plaintiffs,

v.

LORETTA E. LYNCH, et al.,

        Defendants.

C14-1026 TSZ

ORDER

THIS MATTER comes before the Court on a partial motion to dismiss, docket no. 229, pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), brought by defendants Loretta E. Lynch, Attorney General of the United States; Juan P. Osuna, Director of the Executive Office for Immigration Review; Jeh C. Johnson, Secretary of Homeland Security; Sarah R. Saldaña, Director of U.S. Immigration and Customs Enforcement ("ICE"); León Rodríguez, Director of U.S. Citizenship and Immigration Services ("USCIS"); Lisa McDaniel, Field Office Director for ICE's Office of Enforcement and Removal Operations ("ERO") in Seattle; Bryan Wilcox, Assistant Field Office Director for ICE's ERO in Seattle; Sylvia M. Burwell, Secretary of Health and Human Services; and Robert Carey, Director of the Office of Refugee Resettlement. Having reviewed all papers filed in support of, and in opposition to the motion, including the supplemental briefs filed at the Court's request, *see* Minute Order (docket no. 256),

ORDER - 1

1  and having considered the oral arguments of counsel, the Court enters the following
2  order.

3  **Background**

4  This action, seeking classwide declaratory and individual injunctive relief on the
5  ground that juveniles in removal proceedings have a constitutional right to counsel at
6  government expense, began with eight (8) named plaintiffs.  <u>See</u> Compl. (docket no. 1);
7  Am. Compl. (docket no. 73).  Three (3) plaintiffs were added when the Second Amended
8  Complaint, docket no. 95, was filed.  In responding to these pleadings, the then-named
9  defendants did not challenge venue.  <u>See</u> Defs.' Mot. (docket no. 80); Defs.' Supp. Brief
10 (docket no. 97); Defs.' Supp. Reply (docket no. 104).  Of the eleven (11) plaintiffs
11 identified in the Second Amended Complaint, two (2) were voluntarily dismissed, <u>see</u>
12 Notice (docket no. 107), and the claims of another three (3) were dismissed without
13 prejudice on defendants' motion, <u>see</u> Order at 7-8, 11 & 38 (docket no. 114).  The claims
14 of three (3) other plaintiffs, who had been granted asylum status, were later dismissed as
15 moot.  <u>See</u> Order at 7-8 (docket no. 174).

16 To the three (3) remaining plaintiffs, the Third Amended Complaint, docket
17 no. 207, joined seven (7) more, one of whom (A.E.G.E.) had previously been dismissed
18 without prejudice.  <u>See also</u> Minute Order (docket no. 224) (dismissing certain claims
19 that were improperly re-alleged in the Third Amended Complaint).  The Third Amended
20 Complaint also joined a new defendant -- León Rodríguez, the Director of USCIS -- who
21 seeks to be dismissed because plaintiffs do not allege any actionable misconduct by
22 USCIS.  As to nine (9) of the ten (10) plaintiffs left in the action (<i>i.e.</i>, everyone other than
23

ORDER - 2

F.L.B.), defendants collectively assert various grounds for dismissal, including mootness, improper venue, and lack of a cognizable claim to procedural due process and/or counsel at government expense. The Court agrees that Director Rodríguez is not an appropriate defendant, that the right-to-counsel claim of one plaintiff (J.E.V.G.) is moot, and that the right-to-counsel claim of another plaintiff (M.A.M.) might soon be moot. Defendants' motion is therefore GRANTED in part, with regard to Director Rodríguez and J.E.V.G., and DEFERRED in part as to M.A.M., but it is DENIED in all other respects for the reasons stated in this order.

**Discussion**

**A.     Claims Against León Rodríguez**

Plaintiffs essentially concede that they have no cognizable claim against USCIS Director León Rodríguez. Plaintiffs indicate that their "primary interest in adding USCIS" was to obtain discovery from the agency. See Resp. at 24 (docket no. 239). They state that, if the Court makes clear USCIS must respond to discovery in this case, they "would not oppose" dismissing their claims against Director Rodríguez. Id. Joining a party to a lawsuit for the sole purpose of conducting discovery is improper. To the extent the other parties to this litigation have refused to produce materials from USCIS files, plaintiffs have remedies other than joining the USCIS Director as a defendant, for example, serving a subpoena under Rule 45, filing a motion to compel under Rule 37, or requesting documents under the Freedom of Information Act. Plaintiffs have made no allegations that USCIS plays a role in removal proceedings or has taken any action adverse to a named plaintiff. To the contrary, USCIS granted asylum status to former

ORDER - 3

plaintiffs J.E.F.M., J.F.M., and D.G.F.M., <u>see</u> 3d Am. Compl. at ¶¶ 75, 77, & 79 (docket no. 207), and granted special immigrant juvenile status to plaintiff M.A.M., <u>see id.</u> at ¶ 90. Plaintiffs' claims against Director Rodríguez are DISMISSED.

**B.     Mootness**

Defendants contend that J.E.V.G.'s and M.A.M.'s right-to-counsel claims are now moot and should be dismissed.[1] Both J.E.V.G. and M.A.M. have turned 18, and are no longer within the class of aliens plaintiffs seek to represent. J.E.V.G. has retained an attorney, and his attorney has successfully moved for the dismissal of his removal proceedings so that he may seek special immigrant juvenile ("SIJ") status from USCIS. <u>See</u> Ex. B to Mot. (docket no. 229-2).[2] Because no removal proceedings are now pending against J.E.V.G., forming yet another basis for his exclusion from the class proposed by plaintiffs, and because J.E.V.G. cannot be said to have been prejudiced, while still a juvenile, by the lack of counsel at government expense, his right-to-counsel claim is DISMISSED as moot.

M.A.M. has already received SIJ status. According to defendants' counsel, M.A.M.'s removal proceedings have been continued to April 28, 2016, and he is awaiting

---

[1] Plaintiffs accuse defendants of repeating an argument the Court previously rejected. The Court, however, denied defendants' previous motion without prejudice, <u>see</u> Order at 6 (docket no. 174), thereby acknowledging that circumstances might change during the course of this litigation, in which event, defendants could again move for dismissal on the basis of mootness.

[2] With regard to J.E.V.G., because the Court has considered matters outside the pleadings, defendants' Rule 12(b)(6) motion must be treated as one for summary judgment. <u>See</u> Fed. R. Civ. P. 12(d). The Court concludes that no genuine dispute of material fact exists as to the status of J.E.V.G.'s removal proceedings and that defendants are entitled to judgment as a matter of law concerning the mootness of J.E.V.G.'s right-to-counsel claim. <u>See</u> Fed. R. Civ. P. 56(a).

ORDER - 4

approval of his adjustment to permanent resident status. <u>See</u> Tr. (Mar. 24, 2016) at 9:2, 14-18 (docket no. 261). Because M.A.M.'s removal proceedings remain pending, but are likely to be dismissed in the near future, defendants' motion to dismiss M.A.M.'s right-to-counsel claim is DEFERRED, and the parties are DIRECTED to file a Joint Status Report by May 6, 2016, concerning the status of M.A.M.'s removal proceedings.

**C.     Venue**

If an officer or employee of the United States is a defendant in a civil case, venue is proper "in any judicial district in which . . . <u>*the plaintiff*</u> resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C) (emphasis added). In the context of actions involving multiple plaintiffs, the Third and Sixth Circuits have defined the phrase "the plaintiff" to mean "any plaintiff" rather than "all plaintiffs," and thus, venue lies in a judicial district in which at least one plaintiff resides. <u>Exxon Corp. v. Fed. Trade Comm'n</u>, 588 F.2d 895 (3d Cir. 1978), <u>*implicitly overruled on other grounds by*</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995); <u>see</u> <u>Sidney Coal Co. v. Soc. Sec. Admin.</u>, 427 F.3d 336 (6th Cir. 2005).[3]

The Ninth Circuit has not fully analyzed this issue, but it has cited <u>Exxon</u> with approval, summarizing <u>Exxon</u> as holding that, "in order to avoid a multiplicity of similar suits in different courts, venue need be proper for only one plaintiff under 28 U.S.C.

---

[3] Defendants incorrectly suggest that the Seventh Circuit has held to the contrary. <u>See</u> Reply at 11 (docket no. 240) (citing <u>Reuben H. Donnelley Corp. ("Donnelley") v. Fed. Trade Comm'n</u>, 580 F.2d 264 (7th Cir. 1978)). In <u>Donnelley</u>, the Seventh Circuit addressed only how residency is determined for federal agencies and corporate entities and where the cause of action at issue arose; the Seventh Circuit was not faced with litigation involving more than one plaintiff. <u>See</u> 580 F.2d at 266-70.

ORDER - 5

§ 1391(e)." <u>Ry. Labor Execs.' Ass'n v. Interstate Commerce Comm'n</u>, 958 F.2d 252, 256 (9th Cir. 1991); <u>see also</u> <u>Matsuo v. United States</u>, 416 F. Supp. 2d 982, 997 (D. Haw. 2006). Under the Third and Sixth Circuits' interpretation of § 1391(e)(1)(C), with which the Ninth Circuit does not appear to disagree, when plaintiffs initiated this action against then Attorney General Eric H. Holder, Secretaries Johnson and Burwell, Director Osuna, and the predecessors of Directors Saldaña, Carey, McDaniel, and Wilcox, all of whom were, at the time, officers or employees of the United States, the Western District of Washington was an appropriate venue because at least one of the original plaintiffs resided in the district.

Defendants' suggestion that the Court should depart from the Third and Sixth Circuits' guidance is unsupported by any authority. Moreover, defendants' current venue challenge is barred because it was waived when it was not raised in their previous motion to dismiss. <u>See</u> Fed. R. Civ. P. 12(g)(2) & 12(h)(1).[4] The Second Amended Complaint, which was the operative pleading at the time defendants' earlier motion to dismiss was

---

[4] Defendants argue that plaintiffs' filing of the Third Amended Complaint provides them a "do over." <u>See</u> Defs.' Mot. at 6-7 (docket no. 229) (citing <u>Harris v. Sec'y, U.S. Dep't of Veterans Affairs</u>, 126 F.3d 339 (D.C. Cir. 1997), and <u>In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.</u>, 903 F. Supp. 2d 880 (C.D. Cal. 2012)). Neither of the cases cited by defendants stands for such proposition. <u>Harris</u> merely described the distinction between "forfeiture" and "waiver" of a defense, and indicated that forfeiture by failing to plead may be cured via amendment pursuant to Rule 15, whereas relief is not available under Rule 15 for the type of intentional relinquishment that constitutes waiver. 126 F.3d at 343 n.2. <u>In re WellPoint</u> simply concluded, in response to the plaintiffs' argument that the points made in the defendants' Rule 12(b)(6) motions were or could have been raised in earlier motions to dismiss, that the defendants would not be held to the high standards applicable to motions for reconsideration. 903 F. Supp. 2d at 893-94. Moreover, <u>In re WellPoint</u> is not relevant to the question before the Court because Rule 12(b)(6) motions are not subject to the waiver provisions of Rules 12(g)(2) and 12(h)(1). <u>See</u> Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by motion under Rule 12(c); or (C) at trial.").

considered by the Court, identified plaintiffs who reside in California and Texas, as well as plaintiffs who live in Washington. The Third Amended Complaint's joinder[5] of other plaintiffs who reside outside Washington does not, in any significant way, alter the scope of the case, and it does not resurrect defendants' ability to contest venue. *See Johnson v. Bryson*, 851 F. Supp. 2d 688, 704-05 (S.D.N.Y. 2012) (ruling that "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading" and rejecting the defendant's improper venue defense because *inter alia* "all three of the New Plaintiffs reside in close geographic proximity to one or more of the Original Plaintiffs"); *Lanehart v. Devine*, 102 F.R.D. 592, 595 (D. Md. 1984) (holding that the defense of improper venue was waived by the failure to include it in the answer, even as to plaintiffs who were later joined); *cf. DBSI Signature Place, LLC v. BL Greensboro, L.P.*, 2006 WL 1275394 at *5 (D. Idaho May 9, 2006) (observing that, when an amended

---

[5] Defendants argue in their motion (and in a supplemental brief filed at the Court's request) that J.R.A.P., who was added as a plaintiff when the Third Amended Complaint was filed, and who is the only plaintiff residing in Florida, could not be joined pursuant to Rule 20, and that the Court therefore lacks venue as to J.R.A.P.'s right-to-counsel claim, citing the last sentence of § 1391(e)(1), which provides: "Additional persons may be joined as parties . . . in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers . . . were not a party." 28 U.S.C. § 1391(e)(1). The Court disagrees. Rule 20 permits the joinder in one action of plaintiffs who "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same . . . series of transactions or occurrences" if "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). All plaintiffs in this litigation seek identical relief with respect to their removal proceedings, which constitute the requisite "series of transactions or occurrences," and their assertion that they are constitutionally entitled to counsel at government expense in such proceedings will involve one or more common questions of law or fact. Defendants' argument that resources and methods for conducting removal proceedings vary among immigration courts and from state to state does not itself defeat joinder, but rather raises issues the Court may address in crafting any relief, in certifying any class, and/or by severing matters for trial. *See* Fed. R. Civ. P. 20(a)(3), 20(b), 21, & 23.

ORDER - 7

complaint "*changes the theory or scope of the case*, the defendant is allowed to plead anew as though it were the original complaint" (emphasis added) (quoting <u>Brown v. E.F. Hutton & Co.</u>, 610 F. Supp. 76, 78 (S.D. Fla. 1985))). The Court is satisfied that venue is proper because at least one plaintiff resides in Washington, that the joinder of additional plaintiffs who live outside Washington does not fundamentally change the nature of this litigation, and that, by not earlier challenging venue, defendants waived any argument to the contrary. Defendants' Rule 12(b)(3) motion is DENIED.

**D.      Failure to State a Claim**

     **1.      Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. <u>Id.</u> In ruling on a motion to dismiss, the Court must assume the truth of a plaintiff's factual allegations and draw all reasonable inferences in the plaintiff's favor. <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the operative pleading sufficiently state a "plausible" ground for relief. <u>Twombly</u>, 550 U.S. at 570.

     **2.      Rights of "Non-Admitted" Aliens**

Defendants contend that, as "arriving" or "non-admitted" aliens, A.E.G.E., E.G.C., A.F.M.J., L.J.M., M.R.J., and K.N.S.M. have no procedural due process rights under the

ORDER - 8

Fifth Amendment. Defendants' argument is not supported by the authorities they cite.[6]
Under the Immigration and Nationality Act ("INA"), as amended by the Illegal
Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), an alien is
"removable" if (i) he or she was not admitted to the United States and is "inadmissible"
under 8 U.S.C. § 1182, or (ii) he or she was admitted to the United States and is
"deportable" under 8 U.S.C. § 1227. See 8 U.S.C. § 1229a(e)(2). Before the enactment
of IIRIRA, a distinction had been drawn between "exclusion" and "deportation" of
individuals. See Dormescar v. U.S. Att'y Gen., 690 F.3d 1258, 1260 (11th Cir. 2012);
see also United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950).
"Excludable" aliens, meaning those who sought but had not yet achieved admission, were
treated as though they were detained at the border, even if they were physically present
within the United States, Dormescar, 690 F.3d at 1260, and "excludable" aliens were
entitled to fewer procedural protections than "deportable" aliens, Mariscal-Sandoval v.
Ashcroft, 370 F.3d 851, 854 (9th Cir. 2004). When IIRIRA became effective on

---

[6] Defendants' reliance on both *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094 (9th Cir. 2004), and *Wong v. United States*, 373 F.3d 952 (9th Cir. 2004), is misplaced. *Alvarez-Garcia* does not support defendants' assertion that excludable aliens have no procedural due process rights, but rather stands for the proposition that Congress may treat excludable and deportable aliens differently without running afoul of the equal protection prong of the substantive due process doctrines developed under the Fifth Amendment. 378 F.3d at 1097-99; see also *Mathews v. Diaz*, 426 U.S. 67 (1976) (indicating that Congress may distinguish between classes of aliens, *i.e.*, those who are permanent residents and continuously present in the United States for five years versus those who are not, in determining who is eligible for Medicare benefits). In *Wong*, the Ninth Circuit concluded that the plaintiff, as a "non-admitted" alien, had substantive due process rights under the Fifth Amendment, but held that the individual officers involved in the "purely invidious discrimination" at issue were entitled to qualified immunity because the law was not clearly established at the time they engaged in the constitutional violations. 373 F.3d at 970-77. The case, however, remained pending against the United States, and the parties are now engaged in settlement discussions. *Wong* does not involve procedural due process rights or even removal proceedings, and it offers no guidance concerning the issues now before the Court.

ORDER - 9

April 1, 1997, see Pub. L. No. 104-208, Div. C, § 309(a), 110 Stat. 3009 (1996), exclusion and deportation proceedings were merged into the broader category of "removal" proceedings.[7] *Mariscal-Sandoval*, 370 F.3d at 854 n.6.

In support of their position, defendants rely on both pre-IIRIRA[8] and post-IIRIRA cases. None of these decisions, however, stand for the proposition that aliens who have not been "admitted" into the United States are not entitled to any of the protections afforded by the Due Process Clause of the Fifth Amendment. Indeed, most of the cases cited by defendants say quite the opposite. For example, in the oldest case cited by defendants, the Supreme Court interjected certain due process rights into an act of Congress that concerned excludable aliens. *See Yamataya v. Fisher*, 189 U.S. 86 (1903). In *Yamataya*, approximately four days after arriving in the United States, the appellant was deemed a pauper and a person likely to become a public charge, and a warrant was issued directing that she be taken into custody and returned to Japan. *Id.* at 87. The warrant was issued pursuant to a statute authorizing the Secretary of the Treasury to

---

[7] Removal proceedings are conducted before an immigration judge, and such proceedings are "the sole and exclusive" means for determining whether an alien may be admitted to or removed from the United States. 8 U.S.C. §§ 1229a(a)(1) & (3). Pursuant to INA § 240(b), an alien in a removal proceeding may offer evidence on his or her own behalf and may review the evidence and cross-examine the witnesses presented by the Government, subject to certain national security limitations. 8 U.S.C. § 1229a(b)(4)(B). An alien also has the statutory "privilege of being represented, at no expense to the Government, by counsel of the alien's choosing" in both "removal proceedings before an immigration judge" and "appeal proceedings before the Attorney General." 8 U.S.C. §§ 1229a(b)(4)(A) & 1362.

[8] Two of the pre-IIRIRA cases cited by defendants are so far afield from the issue before the Court that they do not bear any further discussion. *See United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) (holding that the warrant requirements of the Fourth Amendment did not apply to a search by American authorities of the Mexican residence of a Mexican citizen who was apprehended in Mexico); *Johnson v. Eisentrager*, 339 U.S. 763 (1950) (holding that an enemy alien who was captured, tried, convicted of war crimes, and imprisoned outside the United States was not entitled to apply for a writ of habeas corpus).

ORDER - 10

apprehend any alien of such excluded class, within one year after he or she entered the United States, and return him or her to the country of origin. _Id._ at 99. The Supreme Court rejected the argument that the statute permitted the Secretary of the Treasury or any executive officer to take such actions without providing notice and "all opportunity to be heard upon the questions involving [the alien's] right to be and remain in the United States." _Id._ at 99-101; _id._ at 101 ("No such arbitrary power can exist where the principles involved in due process of law are recognized."). The Supreme Court observed that the "reasonable construction" it had given to the act of Congress at issue brought the statute "into harmony with the Constitution," but the appellant was denied habeas corpus relief because she had, in fact, received the requisite notice and opportunity to be heard. _Id._ at 101-02.

The Supreme Court reiterated the rule of _Yamataya_ in deciding _Shaughnessy v. United States ex rel. Mezei_, 345 U.S. 206 (1953), a case on which defendants heavily rely. In _Mezei_, the Supreme Court summarized _Yamataya_ as teaching that "aliens who have once passed through our gates, _even illegally_, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." _Id._ at 212 (emphasis added). In _Mezei_, however, unlike in _Yamataya_, the habeas corpus petitioner never gained entry into the United States; he was stranded on Ellis Island after being excluded upon arrival in New York on national security grounds and after being refused entry by all other countries to which he had applied. _Id._ at 208-09. With respect to the habeas corpus petitioner in _Mezei_, the Supreme Court observed that "an alien on the threshold of initial entry stands on a different footing: 'Whatever the

ORDER - 11

procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" _Id._ at 212.

Defendants point to this last passage in _Mezei_ as support for the contention that aliens who have not been "admitted" into, but are physically present in, the United States are not entitled to the procedural due process guaranteed by the Fifth Amendment. Their argument, however, ignores _Mezei_'s and _Yamataya_'s clear statement to the contrary, and blurs the distinction between entry and admission.[9] Entry, meaning physically crossing the border in the United States, can occur both legally and illegally. Admission, within the meaning of the INA as amended by IIRIRA, however, requires the sovereign to grant permission to enter. _Mezei_ and _Yamataya_ teach that an alien who has entered the United States, by being admitted or without having obtained such permission, has at least the procedural due process rights to notice and an opportunity to be heard, which are the constitutional minimum. _See_ _United States v. Raya-Vaca_, 771 F.3d 1195, 1204 (9th Cir. 2014) ("Due process always requires, at a minimum, notice and an opportunity to

---

[9] A post-IIRIRA case cited by defendants further confuses matters. _See Angov v. Lynch_, 788 F.3d 893 (9th Cir. 2013) (amended June 8, 2015). In _Angov_, the question presented was summarized as follows: "Does an immigration judge err by relying on a State Department investigation of an asylum petitioner's claim?" _Id._ at 896. The petitioner argued that the immigration judge's reliance on a letter summarizing the results of an investigation conducted by the United States consulate in Sofia, Bulgaria (the "Bunton letter") violated his procedural due process rights. _Id._ at 896-98. The majority declared that the petitioner "has no such right," but then cited _Mezei_ for the proposition that "[a]liens 'who have once passed through our gates, even illegally,' are afforded the full panoply of procedural due process protections." _Id._ at 898 (quoting _Mezei_, 345 U.S. at 212). The dissent in _Angov_ observed that five other circuits have held that "the government may not deny asylum solely on the basis of conclusory letters prepared for litigation in reliance on multiple layers of unauthenticated hearsay, without affording the petitioner some right of confronting the charges." _Id._ at 911 (Thomas, C.J., dissenting). Given the dissent's observation that the majority's holding in _Angov_ is at odds with the decisions of five other circuits, and the fact that _Angov_ concerns asylum rather than removal proceedings, the Court declines defendants' invitation to rely on _Angov_ for the proposition that a "non-admitted" alien in removal proceedings has no procedural due process rights.

ORDER - 12

respond." (citing <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985))); <u>see also</u> <u>Abdulai v. Ashcroft</u>, 239 F.3d 542, 549 (3d Cir. 2001) ("[D]ue process requires three things," namely (i) "factfinding based on a record produced before the decisionmaker and disclosed to" the alien, (ii) an opportunity for the alien "to make arguments on his or her own behalf," and (iii) "an individualized determination" of the alien's interests); <u>Marincas v. Lewis</u>, 92 F.3d 195, 203 (3d Cir. 1996) (defining as "two of the most basic of due process protections" the right to "a neutral judge and a complete record of the proceeding"). No named plaintiff in this action is in a situation analogous to that of the habeas corpus petitioner in <u>Mezei</u>, and <u>Mezei</u> provides no basis for dismissing plaintiffs' right-to-counsel claim for lack of cognizability.[10]

The distinction that defendants draw between "non-admitted" and "deportable" aliens might, however, still play a role in this litigation. The question the Court faces in this case is not whether plaintiffs have procedural due process rights. Clearly they do.

---

[10] Defendants cite several cases involving "expedited removal" proceedings. <u>See</u> <u>Pena v. Lynch</u>, 815 F.3d 452 (9th Cir. 2015) (amended Feb. 18, 2016) (superseding 804 F.3d 1258 (9th Cir. 2015)); <u>United States v. Barajas-Alvarado</u>, 655 F.3d 1077 (9th Cir. 2011); <u>Garcia de Rincon v. Dep't of Homeland Sec.</u>, 539 F.3d 1133 (9th Cir. 2008); <u>M.S.P.C. v. U.S. Customs & Border Prot.</u>, 60 F. Supp. 3d 1156 (D.N.M. 2014), <u>vacated as moot</u>, 2015 WL 7454248 (D.N.M. Sep. 23, 2015). Except for <u>M.S.P.C.</u>, which has been vacated and is of no precedential value, these authorities delineate the limits of a court's jurisdiction to review "expedited removal" proceedings. <u>See generally</u> <u>Raya-Vaca</u>, 771 F.3d at 1199 (explaining that two classes of aliens are subject to "expedited removal" proceedings: (i) aliens "arriving" in the United States; and (ii) aliens who have entered the United States, are physically present without having been admitted or paroled, are discovered within 100 "air miles" of the border, and cannot establish that they have been physically present in the United States for at least 14 days (citing <u>Designating Aliens for Expedited Removal</u>, 69 Fed. Reg. 48877-01, 48880 (Aug. 11, 2004))). In this action, plaintiffs are not pursuing a right-to-counsel claim on behalf of juvenile aliens in "expedited removal" proceedings, and thus, the cases recognizing legislative restrictions on judicial involvement regarding such proceedings are not relevant. Moreover, defendants' contention that aliens in "expedited removal" proceedings are afforded no procedural rights other than what Congress has provided runs contrary to the Ninth Circuit's holding in <u>Raya-Vaca</u> that such proceedings must conform "to the dictates of due process." <u>Id.</u> at 1203.

The question is what procedural rights are due to plaintiffs. The answer to this question might be different for "non-admitted" aliens than it is for "deportable" aliens. *See* <u>Zadvydas v. Davis</u>, 533 U.S. 678, 682 (2001) (observing that "[w]e deal here with aliens who were admitted to the United States [and] subsequently ordered removed," whereas "[a]liens who have not yet gained initial admission to this country would present a very different question").

In <u>Landon v. Plasencia</u>, 459 U.S. 21 (1982), the Supreme Court recognized this dichotomy. In <u>Plasencia</u>, a pre-IIRIRA case, Maria Antoineta Plasencia, a permanent resident of the United States, was denied admission when she attempted to return to the country after a brief visit to Mexico; at the time, she and her husband were accompanied by six aliens trying to illegally cross the border. <u>Id.</u> at 22-23. The issue in <u>Plasencia</u> was whether the Immigration and Nationalization Service ("INS") was required to proceed against Plasencia in exclusion proceedings or in deportation proceedings; Plasencia asserted that she was entitled to a deportation hearing at which she would receive more procedural and substantive protections than in an exclusion proceeding. <u>Id.</u> at 22, 27. The Supreme Court concluded that Plasencia was not entitled to a deportation proceeding because the applicable statute indicated that admissibility of an alien was to be determined solely in an exclusion hearing. <u>Id.</u> at 27-32.

With respect to any such exclusion proceeding, the United States conceded that Plasencia was entitled to due process. <u>Id.</u> at 34. This concession (which is contrary to defendants' position in this case) did not, however, resolve the matter. As the Supreme Court observed in <u>Plasencia</u>, the "constitutional sufficiency of procedures provided in

any situation, of course, varies with the circumstances." *Id.* The existing safeguards and any additional proposed procedures must be evaluated using the three-part balancing test first articulated in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).[11] *See* 459 U.S. at 34. In *Plasencia*, the Supreme Court declined to perform the <u>Mathews</u> analysis because the parties had "devoted their attention to the entitlement to a deportation hearing rather than to the sufficiency of the procedures in the exclusion hearing." *Id.* at 36-37. The question of whether Plasencia had been "accorded due process under all of the circumstances" was remanded to the Ninth Circuit, *id.* at 37, which remanded to the district court, <u>Plasencia v. Dist. Dir., Immigration & Naturalization Serv.</u>, 719 F.2d 1425 (9th Cir. 1983).

In the end, defendants' argument about the difference between "non-admitted" and "deportable" aliens merely highlights for the Court that the <u>Mathews</u> factors might lead to a variety of results depending on each plaintiff's circumstances, but such possibility does not establish that plaintiffs have failed to state a plausible claim for relief within the meaning of Rule 12(b)(6) and <u>Twombly</u>. If, as defendants seem to suggest, the potential for losing on the merits was the measure of whether a claim was adequately pleaded, then

---

[11] Under <u>Mathews</u>, in evaluating whether due process has been satisfied, the following factors must be weighed: (i) the nature of the private interest affected by the government action; (ii) the risk of erroneous deprivation of such interest through the procedures used, as well as the probable value of additional or substitute safeguards; and (iii) the interest of the government, including the fiscal or administrative burdens that additional or different procedural requirements would entail. 424 U.S. at 335. In <u>Turner v. Rogers</u>, 564 U.S. 431 (2011), the Supreme Court indicated that the <u>Mathews</u> factors are "useful" in determining whether due process requires the appointment of counsel in a civil proceeding. *Id.* at ---, 131 S. Ct. at 2517; *see also* <u>Oshodi v. Holder</u>, 729 F.3d 883 (9th Cir. 2013) (applying the <u>Mathews</u> standard in concluding that an asylum petitioner who entered the United States without inspection was denied due process in his removal proceedings when the immigration judge directed him to limit his testimony to events that were not discussed in his asylum application).

no claim would ever survive a Rule 12(b)(6) motion. To the extent defendants' Rule 12(b)(6) motion is premised on the theory that "non-admitted" aliens have no due process rights beyond what Congress has provided, their motion is without merit. Whether the scope of such aliens' procedural rights under the Fifth Amendment includes the right to counsel at government expense is a question more appropriately reserved for dispositive motion practice or trial.

### 3. Consolidated Removal Proceedings

Defendants assert that A.F.M.J., L.J.M., and M.R.J. have not pleaded a claim for relief because they cannot seek counsel at government expense when their mother is also in removal proceedings and presumably represents their interests. Although the result of the mother's removal proceedings will affect her children, presumably because she and her two daughters and son will not wish to be separated, defendants' contention that the mother is a proper "representative" for her children in their removal proceedings is not supported by the cases they cite. None of the four cases upon which defendants rely stand for the proposition that a parent may or must represent his or her child in removal proceedings. In two of the cases, the minor aliens filed asylum applications that ran contrary to their parents' wishes. *Polovchak v. Meese*, 774 F.2d 731 (7th Cir. 1985);[12]

---

[12] In *Polovchak*, citizens of the former Union of Soviet Socialist Republics ("U.S.S.R."), who had settled in Chicago, decided to return to their native country. 774 F.2d at 732. Their two eldest children, Nataly and Walter, ages 17 and 12, wanted to remain in the United States, and Walter eventually filed an application for asylum, which was granted without notice to his parents. *Id.* at 732-33. The Seventh Circuit held that, although the parents were not parties to the asylum proceedings, they were entitled to notice and an opportunity to be heard before asylum was granted to their son. *Id.* at 735-36. The Seventh Circuit reasoned that the parents' interest was "one of the strongest our society knows" and the proposed pre-deprivation procedures "would burden the government only slightly." *Id.*

ORDER - 16

*see* <u>Gonzalez v. Reno</u>, 212 F.3d 1338 (11th Cir. 2000).[13] Although the Seventh and Eleventh Circuits held in those cases that the parents' views should ordinarily trump those of young children, both matters involved asylum applications, not removal proceedings, and in neither situation was a parent serving or seeking to serve as a "representative" for a child in removal proceedings.

The third case cited by defendants, involving an adult alien asserting a derivative asylum claim, is even less favorable to their position. *See* <u>Oforji v. Ashcroft</u>, 354 F.3d 609 (7th Cir. 2003). In <u>Oforji</u>, the asylum petitioner, who was a Nigerian citizen, claimed that removal would potentially cause her two daughters, who were United States citizens but who would presumably return with her to Nigeria if she was removed, to be subjected to female genital mutilation. *Id.* at 612. The derivative asylum claim was rejected because the daughters were United States citizens and had a legal right to remain in the country, which could be accommodated through placement with their father, if he could be found, or an appointed guardian. *Id.* at 616. The Seventh Circuit saw this result as a disincentive to excludable or deportable aliens to bear children whose rights, as American

---

[13] In <u>Gonzalez</u>, the plaintiff, Elian Gonzalez, arrived in the United States at the age of six, having endured a boat ride from Cuba during which his mother died. 212 F.3d at 1344. He was paroled into the United States and released to the custody of his great-uncle, who filed an application for asylum on his behalf. *Id.* Elian subsequently filed his own asylum application. *Id.* His father, who remained in Cuba, indicated a desire for Elian's return. *Id.* at 1345. The INS concluded that Elian's asylum applications were legally void. *Id.* at 1345-46. The INS reasoned that a six-year-old child lacks the capacity to sign an application for asylum, but must instead be represented by an adult in immigration matters, and absent "special circumstances," the only proper adult to represent a child is a parent, even when the parent is not within the United States. *Id.* at 1349-50. The INS further found that a parent's residence in a communist, totalitarian state like Cuba did not constitute "special circumstances." *Id.* The Eleventh Circuit held that the INS's policy was facially reasonable and had not been applied arbitrarily, capriciously, or in a manner constituting an abuse of discretion. *Id.* at 1350-56.

ORDER - 17

citizens, to stay in the United States are separate from the parents' obligations to depart. *Id.* at 618.

In *Oforji*, the asylum petitioner was not "representing" her daughters in removal proceedings, but rather using their interests in not returning to Nigeria as a basis for her to remain in the United States. Thus, *Oforji* does not support defendants' contention that "a parent or other guardian necessarily speaks for a child too young to articulate his or her own claim." Mot. at 19-20 (docket no. 229) (citing the concurrence in *Oforji*, as opposed to the majority opinion). Rather, *Oforji* illustrates the type of problem faced by plaintiffs A.F.M.J. and L.J.M., whose biological father was a United States citizen; their rights to remain in the United States are different from their mother's, but she might be unwilling to assert their rights for fear of being separated from them if she cannot also stay in the United States.

The fourth case on which defendants rely, *Johns v. Dep't of Justice*, 624 F.2d 522 (5th Cir. 1980), actually runs contrary to their position. In *Johns*, a husband and wife brought an infant girl from Mexico into the United States without a visa or other proper documentation. *Id.* at 523. Approximately five years later, the girl's biological mother sought her return to Mexico, claiming that the child had been kidnapped. *Id.* The couple contended that the biological mother had willingly given up the child and that they had taken the girl with the biological mother's consent. *Id.* The Fifth Circuit concluded that, in connection with deportation proceedings, neither the spouses nor the biological mother could represent the young girl's interests, and it remanded with instructions to appoint a guardian ad litem for the child and to direct the INS to conduct all further proceedings

ORDER - 18

with the guardian ad litem serving as the child's representative. *Id.* at 523-24. The holding of *Johns* does not support defendants' argument that A.F.M.J., L.J.M., and M.R.J. have failed to state a claim for counsel at government expense because their mother is in removal proceedings with them. To the extent their mother's interests are not aligned with their interests, which is conceivable given that two of them might have a claim to United States citizenship, *Johns* indicates that someone other than the mother should be appointed to represent the children. Defendants' assertion that, simply because A.F.M.J., L.J.M., and M.R.J. are in removal proceedings with their mother, their right-to-counsel claims are not cognizable lacks merit.

**Conclusion**

For the foregoing reasons, defendants' partial motion to dismiss, docket no. 229, is GRANTED in part, DEFERRED in part, and DENIED in part. Plaintiffs' claims against USCIS Director León Rodríguez are DISMISSED. Plaintiff J.E.V.G.'s right-to-counsel claim is DISMISSED as moot. Defendants' motion is DEFERRED with respect to plaintiff M.A.M.'s right-to-counsel claim, and the parties are DIRECTED to file, by May 6, 2016, a Joint Status Report concerning the status of M.A.M.'s removal proceedings. Defendants' partial motion to dismiss is otherwise DENIED. Defendants shall file their answer to the Third Amended Complaint by May 16, 2016. *See* Fed. R. Civ. P. 12(a)(4) (upon the denial of a Rule 12 motion, the Court may set a time for a responsive pleading to be filed).

IT IS SO ORDERED.

Dated this 15th day of April, 2016.

_Thomas S. Zilly_
Thomas S. Zilly
United States District Judge

ORDER - 20