Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| F.L.B., a minor, by and through his Next Friend, Casey Trupin, et al.,<br><br>                    Plaintiffs,<br><br>     v.<br><br>LORETTA E. LYNCH, Attorney General, United States, et al.,<br><br>                    Defendants. | No. 2:14-cv-01026<br><br>**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER OF APRIL 15, 2016**<br><br>NOTE ON MOTION CALENDAR:<br>April 29, 2016 |

DEFENDANTS' MOTION FOR RECONSIDERATION
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

Defendants respectfully request that the Court reconsider one limited but significant error in its April 15, 2016 Order, ECF No. 264, under Local Rule 7(h).[1] Specifically, the Court erred in stating that the Government's motion to dismiss Plaintiffs A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J. "blur[red] the distinction between entry and admission." ECF No. 264 at 12. Simply put, there is no dispute in this case that the above-named Plaintiffs have never "entered" the United States for constitutional due process purposes. *See, e.g.,* ECF No. 230 at 12. They were stopped at the border, but rather than being detained there, were paroled into the United States to undergo proceedings in a non-detained setting. In spite of this parole, they are still treated for constitutional purposes as if they were at the border requesting entry. For that reason, their legal rights are limited to the procedures authorized by Congress. Accordingly, they cannot state claims under *Mathews v. Eldridge* that they are entitled to additional procedural due process rights not conferred to them by Congress, and should be dismissed from this case.

**I.     Legal Framework**

The Supreme Court has long recognized that the political branches' broad power over immigration is "at its zenith at the international border" and that it includes "the entry of unwanted persons and effects." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), federal authorities could remove aliens through two types of proceedings: deportation or exclusion. *Vartelas v. Holder*, 132 S. Ct. 1479, 1484 (2012). Exclusion hearings were for "aliens seeking entry to the United States," while deportation hearings were for "aliens who had already entered this country." *Id.* The Immigration and Nationality Act ("INA") defined "entry" as "'any coming of an alien into the United States, from a foreign port or place." *Id.* (quoting 8 U.S.C. § 1101(a)(13) (1988 ed.)). "Deportable" aliens, who had effected an entry into the country, had greater statutory process rights in contesting expulsion than those subject to exclusion. *Landon v. Plasencia*, 459 U.S. 21, 25-26 (1982). With IIRIRA, Congress eliminated separate "exclusion" and "deportation" proceedings and created instead a uniform "removal" procedure. *Vartelas*, 132 S. Ct. at 1484. Congress also provided that an alien's "admission" to the United States, rather

---

[1] The Court may grant reconsideration upon "a showing of manifest error." LCR 7(h)(1).

DEFENDANTS' MOTION FOR
RECONSIDERATION - 1
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

than his or her physical "entry" into the country free of official restraint, would be the factor triggering different grounds of removability and different statutory rights in removal proceedings. *See generally* 8 U.S.C. §§ 1182(a), 1227(a)(1), 1229a(c)(2)-(3); *see also* 8 U.S.C. § 1101(a)(13)(A) (defining "admission" as the lawful entry of the alien into the United States after inspection and authorization by an immigration officer"); H.R. Rep. 104-469(1) at 225.[2]

However, "entry" remains dispositive in determining what, if any, procedural *due process* rights an alien may be entitled to regarding her admission. While the Due Process Clause may apply "to all 'persons' within the United States," unadmitted aliens who are stopped at the border—including paroled aliens deemed to remain as such—and never permitted to "enter" do not gain procedural protections under the Due Process Clause. *See Zadvydas v. Davis*, 533 U.S. 678, 682, 693-94 (2001) (citing *United States v. Verdugo–Urquidez*, 494 U.S. 259, 269 (1990), for proposition that "Fifth Amendment's protections do not extend to aliens outside the territorial boundaries"). This "basic territorial distinction," *Xi v. U.S. INS*, 298 F.3d 832, 837 (9th Cir. 2002), "between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," *Zadvydas*, 533 U.S. at 669. Unlike aliens who have never entered, aliens who have may have formed significant voluntary connections with the United States necessitating greater process to prevent wrongful deprivation. *See, e.g.*, *Verdugo–Urquidez*, 494 U.S. at 271; *Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950). However, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application."[3] *Plasencia*, 459 U.S. at 32.

Given these categorical differences between aliens encountered inside and outside the United States, precedent clearly establishes that aliens seeking entry at the border of the United States "stand[] on a different footing," and have no constitutional due process rights to greater procedural safeguards respecting their admission or removal than those granted by Congress.

---

[2] Transitioning from entry to admission did not increase statutory rights for aliens who had not entered but, conversely, sought to end the "anomaly" whereby aliens benefitted from greater procedure by entering illegally. *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010).

[3] This distinction also flows from the different, heightened interests, such as national security, of the political branches in monitoring the border and preventing unwanted persons from entering. *See Flores-Montano*, 541 U.S. at 152–53; *Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950).

DEFENDANTS' MOTION FOR
RECONSIDERATION - 2
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see Plasencia*, 459 U.S. at 32; *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015). Further, as the Supreme Court has long recognized under the so-called "entry fiction," an alien's presence within the United States under parole during his immigration proceedings does not alter his legal status as an alien stopped outside the border who has never "entered." *See, e.g.*, *Zadvydas*, 533 U.S. at 693; *Leng May Ma v. Barber*, 357 U.S. 185, 188–190 (1958) (alien had not "entered" United States during period of parole pending admissibility). Although physically present, the paroled alien has not effected "entry" for constitutional purposes—the alien is treated as at the border awaiting permission to come into the United States. *Arango Marquez v. I.N.S.*, 346 F.3d 892, 895 (9th Cir. 2003).

This entry fiction is critical to the procedures Congress created for handling aliens arriving at the border. For those aliens, Congress provided for either full removal proceedings under section 1229a or more streamlined "expedited removal" proceedings. An alien "seeking admission" who fails to "clearly and beyond a doubt" demonstrate an entitlement "to be admitted" is generally detained for full removal proceedings under 8 U.S.C. § 1229a. *Id.* §§ 1225(b)(2), 1229a(a)(3). However, "aliens arriving in the United States and certain other aliens who have not been admitted or paroled"—i.e., previously "excludable" aliens—who lack valid travel or entry documents or seek to procure entry by willful misrepresentation may be placed in so-called "expedited removal" proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)(i); *Sevilla v. INS*, 33 F. App'x 284, 286 (9th Cir. 2002). Prior to and after IIRIRA, parole—i.e., the discretionary release of an applicant for admission in the United States pending her immigration proceedings, 8 U.S.C. § 1182(d)(5)(A); *Barber*, 357 U.S. at 191—does not constitute an admission or alter an alien's procedural due process rights in immigration proceedings. *See* 8 U.S.C. § 1182(d)(5)(A) ("parole . . . shall not be regarded as an admission of the alien"); *id.* § 1101(a)(13)(B); *Alvarez–Mendez v. Stock*, 941 F.2d 956, 961 n.4 (9th Cir. 1991).

## II.    Arriving-Alien Plaintiffs Have Not "Entered" the United States and Thus Lack Any Procedural Due Process Right to More Procedure Than Congress Provided.

Plaintiffs acknowledge that A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J. were inspected and placed in removal proceedings at the border and then paroled into the United

DEFENDANTS' MOTION FOR
RECONSIDERATION - 3
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

States during the pendency of those proceedings. ECF No. 207 at ¶¶ 93, 108, 112. For constitutional purposes, they are thus still considered to be at the ports of entry where they sought admission. *See, e.g.*, *Zadvydas*, 533 U.S. at 693; *Barber*, 357 U.S. at 188–190. Under well-established law that is critical to protecting our borders, they have not "entered" the United States. *See, e.g.*, *Zadvydas*, 533 U.S. at 693; *Arango Marquez*, 346 F.3d at 895. Rather, they are aliens "standing on the threshold of initial entry" whose constitutional procedural rights in seeking admission are limited to "[w]hatever the procedure authorized by Congress is." *Mezei*, 345 U.S. at 212; *see Plasencia*, 459 U.S. at 32; *Angov*, 788 F.3d at 898. Because Congress declined to provide aliens seeking admission (including minors) with Government-funded counsel, *see* 8 U.S.C. §§ 1229a(b)(4)(A), 1232(c)(5), 1362, A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J.—as aliens who have not "entered"—are entitled to only the process provided by Congress, and cannot seek additional procedural protections under the Constitution. *See Zadvydas*, 533 U.S. at 693; *Mezei*, 345 U.S. at 212.[4]

    *United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014), is consistent with this reasoning. In *Raya-Vaca*, the Ninth Circuit applied the Due Process Clause to an alien collaterally attacking his order of expedited removal in criminal illegal re-entry proceedings under 8 U.S.C. § 1326. In that case, the "entry fiction" did not apply because Raya-Vaca, unlike the above-named Plaintiffs, had already entered the country when apprehended by immigration authorities. *Id.* at 1203. That Raya-Vaca involved criminal proceedings also distinguishes it from this case, as the question there was the process due in the criminal prosecution. *See id.* at 1201. These considerations have no bearing here, where Plaintiffs are not defending criminal charges and did not enter the United States before inspection. Further, contrary to this Court's reasoning, *Angov* is exactly on point with respect to the due process rights of aliens stopped at the border and placed into section 1229a proceedings. *See* 788 F.3d 893. This Court's ruling cannot stand consistent with that binding precedent. Because Angov, like A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J., arrived at a port of entry without valid travel documents, he "never

---

[4] To the extent that other Plaintiffs could be assimilated to the constitutional status shared by A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J., Defendants reserve the right to develop this issue on summary judgment.

DEFENDANTS' MOTION FOR
RECONSIDERATION - 4
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

1  'technically' entered the United States" and thus "[f]or Angov, procedural due process is simply
2  '[w]hatever the procedure authorized by Congress' happens to be." *Id.* at 898 (quoting *Mezei*,
3  345 U.S. at 212). Angov's claims to the contrary, like Plaintiffs' here, "can't be squared with"
4  Supreme Court precedent "nor with our circuit's settled precedent." *Id.*[5]

Moreover, the placement of A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J. in section 1229a proceedings does not give them a constitutional entitlement to a wholly new procedural safeguard that Congress expressly statutorily denied. *See* 8 U.S.C. § 1229a(b)(4)(A). Instead, the rights provided are defined by Congress and fall into two categories.  First are those section 1229a procedures specifically provided by the INA. *See id.* § 1229a(b)(4)(A)-(B). They include rights to be "represented, at no expense to the Government, by counsel of the alien's choosing," to a "reasonable opportunity to examine the evidence against" her, "to present evidence on [her] own behalf," and "to cross-examine witnesses presented by the Government." *Id.* Plaintiffs undeniably have such rights, but they are no longer at issue here following the Court's dismissal of Plaintiffs' statutory claims for lack of jurisdiction. ECF No. 114 at 19–22. Second, an alien has a right to a "full and fair hearing" in her removal proceedings, which "derives from the Due Process Clause" and is embodied by the Congressional grant at section 1229a(b)(4) of rights to examine adverse evidence, present supportive evidence, and cross-examine witnesses. *See Cinapian v. Holder*, 567 F.3d 1067, 1074 (9th Cir. 2009). In essence, this right ensures that the procedures provided by Congress—which already embody the due process guarantee of "a full and fair hearing"—are not applied in a fashion "so fundamentally unfair that the alien was prevented from reasonably presenting his case." *See id*. These statute-based process rights are also part of the statutory inquiry and no longer before this Court.

---

[5] This Court sought to distinguish *Angov* on two grounds, neither of which are relevant.  First, Angov's claim for asylum in his removal proceedings does not alter the applicable procedural protections—both he and Plaintiffs are in section 1229a proceedings after being stopped at the border, placing them on identical footing.  Second, Angov also asserted statutory claims in his challenge to the admission against him of certain State Department letters. *Angov*, 788 F.3d at 899-900. The dissent disagreed with the majority's decision on "purely on statutory grounds," *id.* at 911, and nowhere suggested that it rejected the principle underlying the majority's conclusion that the process due an alien apprehended at the border is the process provided by Congress.

DEFENDANTS' MOTION FOR
RECONSIDERATION - 5
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

But because A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J. were stopped at the border, these congressional choices are not subject to second guessing under the due process balancing approach set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Plaintiffs are not entitled to procedures Congress did not provide given their lack of entry. *See Mezei*, 345 U.S. at 212.[6] As *Angov* explained in distinguishing that alien's clear statutory rights—both the specific statutory protections governing section 1229a proceedings and the "full and fair hearing" under section 1229a(b)(4)—from a procedural due process right not provided by the statute against having Government evidence admitted against him without an opportunity to cross examine its author:

> Angov was clearly given fair access to all his statutory rights. What he asks for instead are due process protections that go beyond those which Congress has provided him. But, as an alien who has never entered the United States, those protections are unavailable to him.

*Angov*, 788 F.3d at 898 n.3. Plaintiffs' claim that the INA explicitly or implicitly provides them with a right to appointed counsel is no longer before this Court. Their constitutional claim, as in *Angov*, seeks a procedural protection that, on its face, goes far beyond—indeed, seeks to hold unconstitutional—what Congress provided them in the form of a right to representation "at no expense to the Government." *See* 8 U.S.C. § 1229a(b)(4)(A). Plaintiffs cited no authority, and none exists, indicating that aliens who never entered are entitled to procedures beyond what Congress set forth; indeed, established law says the opposite. As persons who are not "within the United States" for due process purposes, *Zadvydas*, 533 U.S. at 693, they categorically lack a due process right to a new procedure Congress explicitly rejected respecting their admission.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the claims of Plaintiffs A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J.

---

[6] *Mezei* was a 25-year lawful permanent resident who was still subject to the entry fiction. 345 U.S. at 207, 212. A.E.G.E., E.G.C., A.F.M.J., L.J.M., and M.R.J. had not spent a single day in the United States prior to their parole at the port of entry. To the extent that Mezei's claim is not analogous to Plaintiffs' claims, *see* ECF No. 264 at 13, it is because Mezei had equities in the U.S. supporting any due process claim, unlike Plaintiffs here. Similarly, *Oshodi v. Holder*, 729 F.3d 883 (9th Cir. 2013) (en banc), does not support Plaintiffs' claim because, unlike Plaintiffs, Oshodi entered the United States 25 years prior to his asylum proceedings. *Id.* at 885.

DEFENDANTS' MOTION FOR
RECONSIDERATION - 6
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

| | |
|---|---|
| Dated: April 29, 2016 | Respectfully submitted, |
| | BENJAMIN C. MIZER<br>Principal Deputy Assistant Attorney General |
| | LEON FRESCO<br>Deputy Assistant Attorney General |
| | WILLIAM C. PEACHEY<br>Director, District Court Section<br>Office of Immigration Litigation |
| | WILLIAM C. SILVIS<br>Assistant Director |
| | EREZ REUVENI<br>Senior Litigation Counsel |
| |  /s/ *Joseph A. Darrow*<br>JOSEPH A. DARROW<br>Office of Immigration Litigation—DCS<br>Civil Div., U.S. Department of Justice<br>P.O. Box 878, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel.:  (202) 598-2445<br>Fax:  (202) 305-7000<br>E-mail: joseph.a.darrow@usdoj.gov |
| | *Attorneys for Defendants* |

DEFENDANTS' MOTION FOR
RECONSIDERATION - 7
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day of April 29, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
Office of Immigration Litigation
District Court Section
Civil Division, U.S. Department of Justice   P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 598-2445
Fax: (202) 305-7000
E-mail: joseph.a.darrow@usdoj.gov