Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.L.B., a minor, by and through his Next Friend, Casey Trupin; et al.,

                Plaintiffs-Petitioners,

v.

Loretta E. LYNCH, Attorney General, United States; et al.,

                Defendants-Respondents.

Case No. 2:14-cv-01026-TSZ

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING COURT'S PROPOSED CLASS AND SUBCLASSES

PLS.' SUPP. BR.
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

# INTRODUCTION

Plaintiffs agree that this Court's Class and Subclasses, Dkt. 266, satisfy Rule 23(a) and (b)(2) and are appropriate for certification, with two caveats. *First*, the Court's restriction of the class to children potentially eligible for asylum and certain other relief excludes children who are eligible for forms of relief that *both parties* previously agreed should be included, such as relief for children abandoned or abused by their parents or for victims of human trafficking. The Court should modify that restriction consistent with the parties' prior positions.

*Second*, although Subclasses 2a and 2b likely satisfy Rule 23, certifying these Subclasses would run counter to the rationale of the Court's rulings rejecting the Government's motions to dismiss, as well as footnote 1 of the Main Class definition. Those rulings establish that the relevant distinction for due process purposes is whether a child is in removal proceedings before a judge (rather than in an expedited removal process). Whether the child is charged with a ground of removal based on inadmissibility or instead on deportability has no legal relevance, and therefore does not warrant the creation of Subclasses 2a and 2b.

Finally, Plaintiffs propose a modest notice plan that would serve the purposes of certification and comport with governing Ninth Circuit law in this context.

# ARGUMENT

## I. The Main Class Satisfies the Requirements of Rule 23(a) and 23(b)(2).

The Court's Main Class satisfies Rule 23's requirements, and in particular the commonality requirement. All children in the Court's Class are united by two key characteristics: they must stand before Immigration Judges ("IJs") pro se and litigate their cases against trained Government prosecutors; and they are children under 18, the most commonly-used age line across all legal systems involving youth. Indeed, Defendants have not identified *any other legal system in this country*, federal or state, where children under 18 are forced to litigate pro se against government lawyers. *See* Dkts. 253, 254. Consequently, all children in the Class share the common claim that the Due Process Clause requires the Government to

PLS.' SUPP. BR. - 1
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

ensure them legal representation. The commonality of the Class is unaffected by requiring that Class members be potentially eligible for certain forms of relief specified by the Court, *see infra* Part III. The relief limitation simply adds another common characteristic to this group.

As for numerosity, this Court has already recognized that Defendants initiate tens of thousands of immigration proceedings against children every year. *See* Dkt. 114 at 1 n.1; Dkt. 191 at 11-12. The Class remains numerous notwithstanding its restriction to the Ninth Circuit. As of March 2016, there were over 4,600 pro se children and over 7,400 pro se family units (i.e., at least one parent together with at least one child) with pending cases venued in the Ninth Circuit. *See* Seventh Declaration of Stephen Kang (7th Kang Decl.) ¶7, ¶12-13.

The potential relief limitation does not alter numerosity. A high percentage of these children have potential asylum claims. *See* Dkt. 234 ¶¶10-12 (legal service provider stating that "over 80%" of unaccompanied children have asylum or SIJS claims); Dkt. 230 at 18-19 (citing United Nations report finding that at least 58% of children in immigration proceedings surveyed had asylum claims); Dkt. 235 ¶8 (expert declaration noting that in a given month 30% of children in ORR custody were identified as asylum-eligible, and opining this is likely an underestimate). In addition, the vast majority of children in the Class are from El Salvador, Guatemala, and Honduras, which are experiencing unprecedented levels of violence. *See* 7th Kang Decl. ¶¶14-16. Indeed, even taking the lowest estimate of 30%, which is closer to the percentage of children whom the Government finds are *actually* (rather than potentially) eligible for asylum nationwide,[1] there are still more than 1,380 Class members in proceedings without parents, and another 2,220 in proceedings with family members. Taken together, these statistics and the reasonable inferences from them supply an ample basis for finding the Class

---

[1] *See* U.S. Citizenship and Immigration Services, *Refugees, Asylum and Parole System MPA and PRL Report 10/01/15-12/31/15* (Jan. 5, 2016), *available at* http://tinyurl.com/z2fv5rr (reflecting that during the last quarter of 2015, USCIS granted approximately 40% of asylum applications filed by children nationwide – including about 50% of those at the Los Angeles Asylum Office and about 80% of those at the San Francisco Asylum Office, which are the two offices with jurisdiction over children seeking asylum in the Ninth Circuit).

PLS.' SUPP. BR. - 2
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

numerous. *See Californians for Disability Rights v. California Dept. of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008) (explaining that "courts regularly rely on" statistical data and "common sense assumptions" in assessing numerosity).

In addition, all the Plaintiff children (other than J.R.A.P., who is in Florida) can serve as adequate and typical representatives for the Class, as Rule 23(a)(3) demands only that "[Plaintiffs'] claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014). Every remaining named Plaintiff child is indigent, pro se, in the Ninth Circuit, and potentially eligible for asylum or other qualifying relief. *See* Dkt. 207 ¶¶ 81-95, 108-119, 124-127.[2]

Finally, the Class – as a subset of Plaintiffs' original proposed Main Class, Dkt. 230 at 4 – satisfies Rule 23(b)(2)'s requirement that "injunctive or corresponding declaratory relief is appropriate for the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he primary role of [Rule 23(b)(2)] has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. Here, Plaintiffs seek relief from a systemic policy and practice that forces them to appear in immigration court in adversarial proceedings without counsel. *See* Dkt. 191 at 21-22. Plaintiffs have also shown that certification under Rule 23(b)(2) would serve multiple important purposes, including saving the parties the burden of litigating this claim in numerous individual cases, permitting adjudication of the common claim notwithstanding the mootness of some of the individual Plaintiffs' claims, and allowing children who otherwise would be unable to present this important challenge an opportunity to do so. *See* Dkt. 230 at 20-22.[3]

---

[2] The Ninth Circuit recently reaffirmed that even Plaintiffs whose claims have been dismissed as moot can serve as class representatives. *See Chen v. Allstate Insurance Co.*, __ F.3d ___, 2016 WL 1425869 at *5 (9th Cir. Apr. 12, 2016) ("Once the class has been certified, the case may continue despite full satisfaction of the named plaintiff's individual claim because an offer of judgment to the named plaintiff fails to satisfy the demands of the class.") (citation omitted). Thus, the F.M. siblings could serve as representatives here, under *Chen*.

[3] Plaintiffs hereby preserve their request for certification of the original class and subclasses they proposed. This briefing addresses only the Court's tentative certified class and subclasses because Plaintiffs read the Court's order as having rejected their original proposals to the extent it differs from them. *Compare* Dkt. 239 *with* Dkt. 266.

PLS.' SUPP. BR. - 3
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

## II. The Subclasses Also Satisfy Rule 23(a) and (b)(2).

<u>Subclass 1: children under the age of 14</u>. This Subclass satisfies commonality for the same reasons the Class is common. Although Plaintiffs maintain that governing law, the record in this case, and the state law consensus most strongly support drawing the line at 18, Dkt. 253 at 1-7, a Subclass of younger children necessarily satisfies commonality for the same reason that a Class of children under 18 would. Notably, while Defendants' expert has *suggested* that *some* children under 18 may be able to represent themselves, he does not opine that children under 14 – or children of any particular age – are able to do so. *See* Dkt. 237-1 ¶¶34-42.

There can be no dispute that Subclass 1 is so numerous that joinder is impracticable. Defendants themselves have represented that "[y]oung children comprise a substantially greater percentage of the subclasses than seventeen year-olds." Dkt. 238 at 16. Publicly-available data confirms this claim. Approximately 27% of children in immigration proceedings were 14 and under as of 2010. *See* Olga Byrne & Elise Miller, *The Flow of Unaccompanied Children Through the Immigration System,* Vera Institute of Justice (Mar. 2102), *available at* http://tinyurl.com/c6ace5s (estimating ages of children put into ORR custody from October 2008 through September 2010). News reports confirm that significant numbers of pro se children are 14 or younger, and that the number of young children fleeing persecution is increasing. *See* David Rogers, *Under 16 and ordered deported – with no lawyer*, Politico (Nov. 18, 2015), http://tinyurl.com/jx2hxjc (from mid-July 2014 through August 2015, "at least 392 children, all 14 or younger and without defense counsel, were ordered removed after a single hearing before an immigration judge").

Assuming the conservative estimates set forth above – that approximately 1,380 Class members are in proceedings by themselves, and another 2,220 are in proceedings with family members, *see supra* Part I – if even one-quarter of such children are under 14 it is reasonable to infer that about 345 children in Subclass 1 are in proceedings alone, and another 600 are in proceedings with family members. Such figures plainly establish numerosity.

PLS.' SUPP. BR. - 4
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

Finally, Plaintiffs A.E.G.E., A.F.M.J., L.J.M., M.R.J., E.G.C., and K.N.S.M. are all adequate and typical representatives of this Subclass, as each of them is under 14.

Subclasses 2a and 2b: children alleged to be inadmissible or deportable. While Plaintiffs agree that these Subclasses could satisfy Rule 23, Plaintiffs oppose their creation because both of the Court's rulings rejecting the Government's motion to dismiss (as well as footnote 1 to the Main Class) counsel against certifying them. As this Court's Main Class definition makes clear, the relevant question for due process purposes is whether a child is in removal proceedings before an IJ. *See* Dkt. 264 at 10 (explaining IIRIRA's merger of deportation and exclusion into "the broader category of 'removal proceedings'"); Dkt. 114 at 28-29 (same). After IIRIRA, all individuals in such proceedings are entitled to a fair hearing, and this Court's Main Class definition already excludes individuals not in such proceedings. *See* Dkt. 266 at 1 n.1 (observing that "Plaintiffs do not pursue a right-to-counsel claim on behalf of any juvenile aliens who are in 'expedited removal'").

That children are charged with inadmissibility as opposed to deportability grounds within the unified process of removal proceedings has no bearing on this fundamental shared characteristic. Nor does it reflect any other conceivably-relevant characteristic, such as whether a child is labeled as "arriving," or whether a child has recently entered the United States. For example, M.A.M. was living in this country for years before being placed in removal proceedings, but was charged as inadmissible. *See* Dkt. 191-1, Ex. B; *see also* Dkt. 207, ¶¶ 17, 86-89. The charging ground reflects only the difference between individuals who are or were at some point admitted to the United States (who are charged with deportability grounds) and individuals who were *never* admitted (who are charged as inadmissible). This fact has no legal relevance for due process purposes. As the Supreme Court has made clear, the fact that an individual is charged as inadmissible cannot strip them of due process protections. *See Landon v. Plasencia*, 459 U.S. 21, 33-34 (1982); *cf. Judulang v. Holder*, 132 S. Ct. 476 (2011)

PLS.' SUPP. BR. - 5
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

(rejecting as irrational Government's attempt to make charging decision dispositive of substantive rights, because "the Government has provided no reason to think that immigration officials must adhere to any set scheme in deciding what charges to bring . . . . So at base everything hangs on the fortuity of an individual official's decision.").

Nonetheless, if this Court wishes to create Subclasses based on the Government's charging decisions, Subclass 2a would plainly satisfy Rule 23(a) for the same reasons that the Main Class would: it consists of children in removal proceedings before an IJ, and who must litigate against a trained government prosecutor. Subclass 2a is also undeniably numerous; the vast majority of children in immigration proceedings are charged with grounds of inadmissibility. *See* Supplemental Declaration of Susan B. Long (Supp. Long Decl.) ¶¶7-8. In addition, all of the Plaintiffs (except J.R.A.P.) are adequate and typical representatives, as Defendants have alleged they are all inadmissible. Dkt. 191, Exs. A, C-G; Dkt. 229 at 1.

Subclass 2b presents a closer question. Government data shows that there were about 22 pro se children in the Ninth Circuit whose proceedings were initiated since FY 2014 who were alleged to be deportable. Supp. Long Decl. ¶8. This class may satisfy numerosity in part because "[this] class includes unnamed, unknown future members," *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986), and because these children cannot otherwise vindicate their counsel claims, the numerosity requirement is relaxed, *see Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010) (certifying class in part because of "the severe practical concerns that would likely attend them were they forced to proceed alone"). Courts have certified classes smaller than this for such reasons. *See Ark. Educ. Ass'n v. Board of Ed. of Portland*, 446 F.2d 763, 765-66 (8th Cir. 1971) (class of 17); *McMillon v. State of Haw.*, 261 F.R.D. 536, 542-43 (D. Haw. 2009) (class of 47, ten of whom had live claims); *cf. Jordan v. Los Angeles Cnty*, 669 F.2d 1311, 1319 (9th Cir. 1982) (class of 39), *vacated on other grounds*,

PLS.' SUPP. BR. - 6
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

459 U.S. 810 (1982). Presently, no named Plaintiff could serve as a representative, but Plaintiffs have sought to identify such a child through discovery. *See* 7th Kang Dec. ¶26.

In any event, because all children in Subclass 2b would be encompassed in the Court's Main Class, and because the strength of a child's due process interests cannot turn on their specific allegation of removability, Plaintiffs do not believe that Subclass 2b need be certified.

<u>Subclass 3: all children whose removal proceedings are consolidated with those of at least one parent or legal guardian</u>. This Court's recent denial of Defendants' motion to dismiss Plaintiffs A.F.M.J., L.J.M., and M.R.J. shows why this Subclass satisfies commonality. This Subclass shares with the Class the same legal claim for appointed legal representation. *See* Dkt. 230 at 14-15. As this Court has explained, these children's counsel claims are not defeated by the fact that they are in proceedings with their parents, given that a parent cannot act as a proper "representative" for the child. *See* Dkt. 264 at 16, 18-19.

This Subclass is also unquestionably numerous. Over 7,400 pro se family units are in proceedings in the Ninth Circuit. *See* 7th Kang Decl. ¶¶9-13; Dkt. 230 at 14 (citing DHS statistics on family apprehensions). An experienced legal services provider in Los Angeles who sees large numbers of pro se families where parents are in consolidated proceedings with their children, confirms that about 90% of them are prima facie eligible for asylum. *See* Declaration of Daniel J. Sharp in Support of Plaintiffs' Supplemental Brief Regarding Court's Proposed Class and Subclasses ¶10; *see generally R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164, 172 (D.D.C. 2015). Even applying a conservative 30% estimate related to asylum eligibility, *see supra*, this Subclass would contain over 2,200 of the children in these families.

Plaintiffs A.F.M.J., L.J.M., and M.R.J. are adequate and typical representatives, as all three of them are in consolidated proceedings with their mother. *See* Dkt. 230 at 15.

<u>Subclass 4: all children who qualify as an "unaccompanied child" as defined in 6 U.S.C. 279(g)(2)</u>. As with Subclass 3, the claims of "unaccompanied" children are common for the

PLS.' SUPP. BR. - 7
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

same reasons that the Class is common: they all share the same claim for legal representation. The children of this Subclass have the additional common trait that they are not in consolidated proceedings with their parents.[4]

This Subclass is numerous. Publicly-available statistics show that ORR releases tens of thousands of children designated as "unaccompanied" to sponsors in the Ninth Circuit. *See* Office of Refugee Resettlement, Unaccompanied Children Released to Sponsors By State, http://tinyurl.com/ol9wbre (last visited May 5, 2016). In the first half of FY 2016, ORR released over 3,000 children to California alone, and over 3,600 in the entire Ninth Circuit. While ORR's statistics do not say whether the child is pro se, representation rates indicate that substantial numbers of children in these states lack representation. *See* 7th Kang Decl. ¶¶17-22 (showing that historically, 35.8% of children litigate pro se in California, and 83% in Arizona). Assuming, again conservatively, that only 30% of those children are asylum-eligible, *see supra*, these figures more than suffice to establish numerosity as to this Subclass.

Plaintiffs F.L.B., E.G.C., and A.E.G.E. are typical and adequate representatives. Defendants designated F.L.B. and A.E.G.E. as unaccompanied when they arrived, and F.L.B. and E.G.C. are not currently living in the United States with a parent. All three therefore satisfy the federal definition of "unaccompanied" under Section 679(g)(2).

**III. This Court Should Include Children Eligible for Other Critical Forms of Relief Under the Immigration Statute in the Class.**

For three reasons, Plaintiffs respectfully propose that the Court amend the Class definition to include children eligible for forms of relief recognized by Congress as bases for

---

[4] Defendants' arguments prior to and during the March 24, 2016 hearing create some ambiguity about the scope of this Subclass. Plaintiffs presume the Court intends to follow the definition of "unaccompanied" child used in practice by the federal government – which treats a child as "unaccompanied" under Section 279(g)(2) if they were not accompanied at the time of their apprehension – even if they were later reunited with a parent. As Plaintiffs have explained, Dkt. 230 at 13 n.10, DHS affixes a "UAC status determination" to a child who meets the statutory definition upon *apprehension*. Only an official, subsequent action can strip that status from a child. *See id.*; Dkt 231, Ex. E at 1-2. Thus, the Government treats children as "unaccompanied" regardless of whether they are later reunited with a parent, and the Court should adhere to that definition.

PLS.' SUPP. BR. - 8
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

terminating removal proceedings. Plaintiffs therefore ask the Court to include children in the Class definition who are:

> potentially eligible for asylum under 8 U.S.C. 1158, withholding of removal under 8 U.S.C. 1231(b)(3), or protection under the Convention Against Torture, potentially able to make a claim of United States citizenship, *or potentially eligible for other remedies under the Immigration and Nationality Act*.

*First*, this change would be consistent with *both* parties' positions in their supplemental briefing. *See* Dkts. 253, 254. In their brief, Defendants observed that the class definition "should be anchored in statutory grounds for protection from removal" and that "[o]ther types of claims that might be appropriate for inclusion . . . are those that would lead to the termination of proceedings." Dkt. 254 at 9-10 & n.3. Plaintiffs took the same position, urging this Court to adopt a definition that included children eligible for "all remedies made available by Congress," and not exclude "several categories of children who plainly deserve protection, such as victims of crime and human trafficking in the United States." Dkt. 253 at 9-10 & n.6.

Were there any doubt as to the equivalence of the two parties' proposals, Plaintiffs would be amenable to limiting the Class to those children who are:

> potentially eligible for asylum under 8 U.S.C. 1158, withholding of removal under 8 U.S.C. 1231(b)(3), or protection under the Convention Against Torture, potentially able to make a claim of United States citizenship, or potentially eligible for other remedies under the Immigration and Nationality Act *that could lead to termination of proceedings*.

That definition would also permit counsel to vindicate other forms of relief recognized by Congress that would result in the child obtaining lawful status. The critical point is that *neither* party believed that the Class definition must be limited only to those with potential asylum or citizenship claims, to the exclusion of other Congressionally-recognized remedies.

*Second*, there is no doctrinal or practical rationale for such a limitation. Insofar as the Court is using potential asylum/citizenship eligibility as a proxy for harm, Congress has recognized (and Plaintiffs have shown) that injury to children comes in many other forms,

PLS.' SUPP. BR. - 9
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

including the possibility of being returned to countries where their families have abused or abandoned them. *See* Dkt. 235 ¶7; Dkt. 234 ¶¶10-12; Dkt. 232 ¶8. For example, F.L.B. suffered abuse at the hands of his father and neglect by his mother, while eleven-year-old E.G.C. was abandoned by both his parents. While they also both happen to be potentially eligible for asylum, their ability to join a class seeking appointed counsel should not turn on that fact. The immigration statutes recognize the variety of harms that children may suffer by providing pathways to lawful status for children who have been abused, abandoned, or neglected by their parents, as well as those who are victims of crime and trafficking. *See* Dkt. 235 ¶7; Dkt. 234 ¶¶10-12; Dkt. 232 ¶8. Modifying the Class definition would be entirely consistent with Congress' recognition that such children deserve protection.

*Third*, keeping such children in the Class would have no effect on commonality because such children are no differently situated than children with potential claims for asylum and its related protections, or U.S. citizenship. All of them share the same claim for legal representation, face similar prospects of harm sufficient to warrant Congressional recognition, and are unable to pursue these defenses without counsel. *See* Dkt. 230 at 17-19. For these reasons, the Court should certify a class that includes them.

**IV. This Court Should Require Defendants to Notify Class Members of This Litigation Through Relevant Agency Personnel.**

The Court should require Defendants to notify class members about this litigation and bear the costs of such notice. Defendants are uniquely positioned to identify class members, and without their cooperation, Class counsel will be unable to communicate with and protect the rights of Class members who may be affected by this lawsuit.

Under Rule 23, the Court is authorized to order "appropriate" notice in class actions certified under Rule 23(b)(2). *See* Fed. R. Civ. P. 23(c)(2)(A). In addition, Rule 23(d) grants the Court broad authority to issue a variety of orders to manage the litigation, including to "require – to protect class members and fairly conduct the action – giving appropriate notice to some or

PLS.' SUPP. BR. - 10
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

all class members of . . . any step in the action." Fed. R. Civ. P. 23(d)(1)(B)(i). Where "defendants may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff," the Court may order them, rather than the plaintiffs, to effect notice. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978). Most relevant here, the Ninth Circuit has interpreted Rule 23(d) to authorize requiring the Government to identify and inform immigrant class members of pending litigation to "prevent the irreparable harm of an erroneous deportation." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1236-37 (9th Cir. 1999). This was appropriate because (1) doing so would not be burdensome on the agency, (2) the agency was "uniquely positioned to ascertain class membership," and (3) notice was required to ensure that the agency did not "mistakenly deport a class member." *Id.* at 1237; *see also Barnes v. United States*, 72 Fed. Cl. 6, 9 (2006) (collecting cases in which defendants were ordered to identify class members or send them notice letters).

Here, Defendants should be ordered to provide notice in two simple and non-burdensome ways: First, by requiring IJs and other agency personnel who come into contact with potential class member children to inform them of this litigation and their possible class membership through a short notice that will include information for a website through which they can obtain information from Plaintiffs' counsel; and second, by requiring Defendants' agency personnel to inform Government counsel each time an IJ orders a class member removed, so that Government counsel can then communicate that information to Plaintiffs' counsel. *See* Ex. A (sample class member notice and IJ advisal letter).

This notice mechanism is appropriate and necessary for two reasons. *First*, once a class is certified, Plaintiffs' counsel have an attorney-client relationship with each Class member, and therefore a right (if not a duty) to communicate with them. "Class counsel represents all class members as soon as a class is certified." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985); *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir.

PLS.' SUPP. BR. - 11
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

1978) ("A certification under [then-Rule 23(c)] makes the Class the attorney's client for all practical purposes."); *Tedesco v. Miskin*, 629 F. Supp. 1474, 1483 (S.D.N.Y. 1986) ("A lawyer who represents the named plaintiff in a class which has been certified immediately assumes responsibility to class members for diligent, competent prosecution of the certified claims.").

Class counsel therefore have a right to communicate with their clients. Such communication is all the more critical here, where children could be ordered removed in violation of their right to appointed legal representation. Plaintiffs' proposed notice procedures would permit such children to be identified in time for Plaintiffs to protect their rights by providing timely information to them about this litigation.

*Second*, it is impossible for Plaintiffs' counsel to identify Class members without the cooperation of IJs and other government officials. The Class is comprised entirely of children, who lack the ability to self-identify as Class members, let alone to initiate contact with counsel. By contrast, Defendants have identifying information about all Class members; indeed, the Class is defined by reference to an action Defendants have taken in each child's case. *Cf. Barahona*, 167 F.3d at 1236-37 (observing that Government was "uniquely positioned to ascertain class membership"); *Barnes*, 72 Fed. Cl. at 9 (requiring Government to provide notice because they were in "sole possession of the relevant . . . records"). Similarly, IJs regularly encounter Class members in their courtrooms and can readily inform them about this ongoing litigation. Requiring agency officials to effect notice via the straightforward methods proposed here is therefore minimally burdensome upon Defendants. *Cf. Barahona*, 167 F.3d at 1237.

## CONCLUSION

Accordingly, Plaintiffs submit that this Court's Class and Subclasses satisfy the requirements of Federal Rule 23. Plaintiffs respectfully request that the Court affirm its tentative certification order with the modifications they have proposed, and that the Court order notice to the class.

PLS.' SUPP. BR. - 12
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

DATED this 6th day of May, 2016.

              NORTHWEST IMMIGRANT RIGHTS PROJECT

              By  s/ Matt Adams
                  Matt Adams, WSBA No. 28287
              Glenda M. Aldana Madrid, WSBA 46987
              615 2nd Avenue, Suite 400
              Seattle, WA 98104
              (206) 957-8611
              (206) 587-4025 (fax)
              Email: matt@nwirp.org
                     glenda@nwirp.org

ACLU IMMIGRANTS' RIGHTS PROJECT
ACLU OF SOUTHERN CALIFORNIA

By  s/ Ahilan Arulanantham
    Ahilan Arulanantham (*pro hac vice*)
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
Email: aarulanantham@aclusocal.org


Theodore J. Angelis, WSBA No. 30300
Todd Nunn, WSBA No. 23267
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 623-7580
Fax: (206) 623-7022
Email: theo.angelis@klgates.com
        todd.nunn@klgates.com


Cecillia Wang (*pro hac vice*)
Stephen Kang (*pro hac vice*)
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
(415) 343-0950 (fax)
Email: cwang@aclu.org
        skang@aclu.org

PLS.' SUPP. BR. - 13
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

Carmen Iguina (*pro hac vice*)
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
Email: ciguina@aclusocal.org

Kristen Jackson (*pro hac vice*)
Talia Inlender (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
(213) 385-9089 (fax)
Email: kjackson@publiccounsel.org
   tinlender@publiccounsel.org

Margaret Chen, WSBA No. 46156
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184
Email: mchen@aclu-wa.org

Kristin Macleod-Ball (*pro hac vice*)
Melissa Crow (*pro hac vice*)
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7500
(202) 742-5619 (fax)
Email: kmacleod-ball@immcouncil.org
   mcrow@immcouncil.org

Attorneys for Plaintiffs-Petitioners

PLS.' SUPP. BR. - 14
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

CERTIFICATE OF ECF FILING AND SERVICE

I certify that on May 6, 2016, I arranged for electronic filing of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record:

        s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
615 2nd Avenue, Suite 400
Seattle, WA 98104
(206) 957-8646
(206) 587-4025 (fax)
Email: glenda@nwirp.org

PLS.' SUPP. BR. - 15
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611