Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.L.B., a minor, by and through his Next Friend, Casey Trupin, et al.,

    Plaintiffs-Petitioners,

v.

Loretta Lynch, Attorney General, United States, et al.,

    Defendants-Respondents.

No. 2:14-cv-01026

DEFENDANTS' SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' FOURTH MOTION FOR CLASS CERTIFICATION

NOTING DATE: May 20, 2016

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

## INTRODUCTION

In its April 18, 2016 Order, the Court asked the parties to address whether a proposed class of minors in removal proceedings could be certified under Federal Rule of Civil Procedure 23(a) and (b)(2) to address Plaintiffs' Fifth Amendment right to counsel claim. *See* ECF 266 at 1. As demonstrated by the many rounds of briefing on this issue, it is exceedingly difficult to define a class of alien minors in removal proceedings that does not contain dispositive factual, legal, and procedural differences that render the constitutional claim incapable of common disposition. The varied factual differences in the proposed main class and subclasses are problematic because Plaintiffs' claim requires application of the highly-flexible and individualized due process analysis established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). Because the *Mathews* test does not lend itself to categorical class treatment, any class (or subclass) must be narrowed such that a decision on the claim of one class member is likely to decide the claims of all class members without further analysis of other factual differences between claims.

The proposed class does not share a common claim and, therefore, does not meet the requirements of Rule 23(a) and (b)(2). First, aliens apprehended at the border are not subject to the *Mathews* test because they are entitled only to the procedures authorized by Congress. As a result, the proposed class includes a category of individuals with claims that cannot be adjudicated under the same legal test as those who have entered the United States. Second, the main class includes all individuals under the age of eighteen without regard to variations in their age, intelligence, education, and ability to participate in removal proceedings. Third, the proposed class includes individuals who have no risk of an erroneous deprivation because no adverse action is being taken against them while they look for counsel. Finally, the proposed class contains subclasses that do not account for the interrelationship between the dispositive characteristics identified in the subclasses and instead focuses on age, admissibility, and accompanied status in isolation. The proposal is fundamentally flawed because it requires a misapplication of the *Mathews* test by ignoring dispositive factors and incorrectly assumes that these dispositive differences cannot impact the strength of an individual's due process claim.

Even if the Court determined that the constitutional claim could be commonly

1

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

adjudicated, Plaintiffs have not met their burden of identifying adequate representatives for the class and subclass claims. The overbreadth of the proposed class/subclasses makes it impossible to identify a representative able to account for the many often-conflicting factual differences between class/subclass members. Additionally, Plaintiffs do not have a representative for the "deportable" subclass, and do have a representative for the "unaccompanied" subclass who shares the most fundamental characteristic being "unaccompanied" class: having no family presence in the United States.

In the event the Court certifies a class, however, it would not be appropriate for the Court to require classwide notice at this time. Because class members cannot opt out of a Rule 23(b)(2) class, class notice is at the discretion of the Court. Here, providing notice will have no discernable impact on this litigation, risks creating a perverse incentive for potential class members to decline to seek out available pro bono representation, and will be a time-consuming and costly endeavor. Accordingly, Defendants respectfully request that the Court decline to require class notice at this time.

**I. The class proposed by the Court cannot be certified under Rule 23(a) or (b)(2) because Plaintiffs' Fifth Amendment right to counsel claim cannot be resolved as to the class (or subclasses) as a whole.**

As this Court has recognized, before it may certify a class, it is required to "'probe behind the pleadings' and engage in a 'rigorous analysis' as to whether the prerequisites for a class action have been satisfied." ECF 225 at 4 (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)). This "rigorous analysis" requires the Court here to consider the merits of the class claim to determine whether Plaintiffs have demonstrated that their common question (entitlement to counsel at tax-payer expense) can be answered on a class-wise basis for the entire proposed class. *Id.* at 4-5 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011)).

The Court acknowledged the inherent difficulty of this task where the constitutional claim is not one that is grounded in a uniform constitutional entitlement, but depends on a fact intensive inquiry under the due process analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The *Mathews* test requires the consideration of three factors: (1) the significance of the private interest at issue in the underlying proceeding; (2) the risk of an erroneous deprivation of

2
SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)
Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

that interest under the current procedures employed and the probable benefits of any additional procedural protections; and (3) the government's interest in avoiding the fiscal and administrative burdens that those additional protections would impose. *Id*. These factors each call for the Court to conduct a careful examination of the facts and circumstances surrounding an individual's removal case and their concomitant due process claim. It is well-settled that "the requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, (1972)).

The Court's proposed class remains overbroad in four important respects. It encompasses minors who: (1) have not entered the United States and, therefore, are not eligible for any protection beyond what was provided by Congress; (2) are over the age of fourteen; (3) do not face any risk of erroneous deprivation because they have not been required to proceed on the merits of their removal proceedings without counsel; and (4) do not share all of the relevant dispositive factors. Therefore, the class proposed by the Court is not sufficiently narrow to allow the Court to uniformly apply the relevant legal test to the main class or subclasses.

**A. The proposed class fails to properly account for well-established differences between individuals that have effected an entry into the United States and those who remain at the border.**

The Court's proposal misapplies the law regarding entry to the United States in two ways. First, the claims of the main class members are not capable of common adjudication because the class includes both individuals who have entered the United States and those who, in the eyes of the law, remain at the border. These two categories of individuals are not subject to the same constitutional analysis and therefore present claims that cannot be commonly adjudicated. Second, the proposed subclasses erroneously focus on "admissibility," rather than the constitutionally-significant question of "entry." The proposed class and subclasses are, therefore, not capable of certification.

Aliens apprehended at the border are legally considered to be detained at the border and, therefore, have never effected entry into this country; this is true regardless of the type of administrative proceeding in which the individual is placed and whether the individual is paroled

3
SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

pending the outcome of those proceedings. *Arango Marquez v. INS*, 346 F.3d 892, 895 (9th Cir. 2003); *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc); *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1440 (5th Cir.1993), *amend in part*, 997 F.2d 1122; *Garcia-Mir v. Smith*, 766 F.2d 1478, 1483-84 (11th Cir. 1985); *Am. Immigr'n Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 58-59 (D.D.C. 1998); *Arango Marquez*, 346 F.3d at 895; *Bertrand v. Sava*, 684 F.2d 204, 220 (2d Cir. 1982) (A paroled alien "gains no foothold in this country and is regarded as having been stopped at the threshold."). As a result, any procedural protections available to these aliens during removal proceedings are limited to those statutorily provided by Congress and cannot be changed under a *Mathews* analysis. *See Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004).

Individuals who have not entered the United States do not share a common legal question with the rest of the class because they are not subject to the *Mathews* test. *See Wal-Mart*, 131 S. Ct. at 2551-52 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."). Long-established Supreme Court precedent distinguishes among aliens who: (1) have been lawfully admitted; (2) are physically present in the United States, albeit illegally, for some meaningful period of time; and (3) have never entered. Those in the third category are not subject to the *Mathews* test because the Supreme Court has said they are not entitled to any protections beyond those expressly provided to them by Congress. *See Verdugo-Urquidez*, 494 U.S. at 270–71; *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953).

The Ninth Circuit has recently affirmed its recognition of the distinctions between the procedural due process rights afforded: (1) aliens identified while present within United States territory versus those who enter in the immigration adjudicatory process from outside the United States, even if later paroled in; and (2) aliens who entered illegally, even if present in the United States, depending on whether they are in criminal or civil proceedings. *See Angov v. Holder*, 788 F.3d 839, 898-99 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 896 (2016); *United States v. Barajas-*

4

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

*Alvarado*, 655 F.3d 107, 1084 (9th Cir. 2011); *Wong v. United States*, 373 F.3d 952, 971 (9th Cir. 2004). Indeed, the Ninth Circuit has held that there is no legal basis to support a claim that non-admitted aliens subject to the entry fiction "have a right to representation" in civil proceedings.[1] *See Barajas-Alvarado*, 655 F.3d at 1088; *Alvarez-Garcia*, 378 F.3d at 1097-98.

These cases demonstrate that there is a legal distinction between the concepts of entry and admission. The constitutionally-relevant distinction is between individuals who have entered the United States and those who have not. *See, e.g.*, *Mezei*, 345 U.S. at 212. Although, as the Court noted, the Immigration and Nationality Act ("INA") now focuses on whether the alien is admissible or deportable, the *statutory* change cannot alter the *constitutional* analysis. Therefore, the proposed deportable-inadmissible subclasses do not cure the overbreadth issue. Rather, they establish a divide that is unconnected to the constitutional claim. To the extent the Court finds a class capable of certification, it cannot include aliens subject to a different constitutional standard by virtue of their status as aliens who have not entered the United States.

**B.     The constitutional due process claim for counsel for minors of all ages and experiences are not capable of uniform resolution.**

Any analysis of this case must begin with the undisputed principle that removing an 18-year-old *pro se* alien after a hearing in accordance with the INA does not ordinarily violate the Fifth Amendment. *Skorusa v. Gonzales*, 482 F.3d 939, 943 n.1 (7th Cir. 2007) ("[A]n immigration hearing that satisfies the statutory requirements of § 1229a(b)(4)(B) also satisfies the requirements of the due process clause[.]"). An 18-year old *pro se* alien will likely not be an attorney versed in the intricacies of the INA, but that does not render the proceedings unconstitutional. Rather, it is the legal duty of the immigration judge to ensure the alien receives a fundamentally fair hearing by, for example, asking questions of that individual in order to

---

[1] Even if *Mathews* applied, these individuals still have a minimal interest as compared to the interest possessed by minors who have entered the country. *See Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (describing sliding scale and distinguishing between types of unlawful presence); *see also Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). Thus, in a merits determination, those minimal liberty interests would be differently balanced under *Mathews*, 424 U.S. 319, making these claims unsuitable for classwide resolution. *Wal-Mart Stores, Inc.,* 131 S. Ct. at 2551. Therefore, under any standard, these individuals do not raise claims that may be commonly adjudicated with the proposed class's claims.

5

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

develop the factual record and determine if there is any legal basis for providing relief from removal. *Pangilinan v. Holder*, 568 F.3d 708 (9th Cir. 2009); 8 U.S.C. § 1229a(b). Thus, the relevant legal question in this case is whether there are some minors for whom none of the existing procedural protections given to minors would be sufficient to allow an immigration judge obtain information regarding eligibility for relief.

Simply put, there is no uniform right to counsel for all children under the age of eighteen. *Mathews* requires that the Court evaluate the risk of an erroneous deprivation of the individual interest through the procedures currently in place, the probable value, if any, of additional or substitute procedural safeguards, and requires the Court to account for the varying abilities of juveniles based on their age, education, intelligence, language skill, experience, or background. *See Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004); *cf. Reno v. Flores*, 507 U.S. 292, 309 (1993) ("It has not been shown that all" plaintiffs, most of whom "are 16 or 17 years old" "are too young or too ignorant to exercise" the "right to a hearing before an immigration judge"). The substantial variations in intelligence and experience of individuals between the ages 14 and 18 make their constitutional claims unsuitable for classwide resolution. Because many of these individuals may function at the level of an adult, *see* 237-1 at 12, their due process claims will require a more robust showing on other factors to prove a right to counsel. Accordingly, these claims are fact-intensive and unsuitable for classwide resolution.[2] *Mathews,* 424 U.S. at 319.

**C. The class definition must take into account how safeguards operate in individual cases in order to uniformly apply the "risk of erroneous" deprivation factor.**

There can be no claim under *Mathew*s unless there is a risk of erroneous deprivation absent the individual being appointed counsel at taxpayer expense. Here, the overly-broad class sweeps in individuals who are not in any danger of an erroneous deprivation including (1) individuals who will be granted relief from removal before any adverse proceedings occur in immigration court (like J.E.F.M.); (2) individuals who begin removal proceedings without representation, but are matched with pro bono counsel before any adverse action was taken in

---

[2] To the extent, it is appropriate to establish a categorical age (rather than rely on an individualized assessment of capacity, the categorical age cannot be eighteen, and must be considered in conjunction with other relevant facts that go to a proper *Mathews* analysis. The exhaustive list of state laws previously relied upon by the Court in proposing a substantially lower age cut-off for the main class supports this point. ECF 248 at 2.

6

SECOND SUPPLEMENTAL BRIEF  
IN OPPOSITION TO CLASS CERTIFICATION  
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division  
P.O. Box 868, Ben Franklin Station  
Washington, D.C. 20044  
(202) 532-4700

immigration court; and (3) individuals who have been unable to find counsel, but who the government has elected not to move forward with proceedings until they find counsel. *See* ECF 254 at 5-7 (detailing various safeguards that may resolve the need for appointed counsel before any adverse action is taken in immigration court). This is important because the government must retain the ability to simply delay the proceedings brought against the class member if it is unable to secure paid representation for the class member. If the class is defined to include individuals who are not at risk of any adverse action, it necessarily includes individuals that do not share a common claim with other class members. Therefore, the class must be limited to individuals presently facing an erroneous deprivation.[3]

### D. Age, admission status, and parental presence must be considered together, not in isolation, to allow uniform application of all of the *Mathews* factors.

The proposed subclasses demonstrate the Court's agreement that age, admissibility, and accompanied status are facts that may be dispositive of a *Mathews* claim. Yet, rather than include all relevant, dispositive factors in the proposed definition(s), the subclasses each focus on only one of these factors in isolation. The subclasses ignore the important ways in which these highly-relevant factors interact to change the *Mathews* analysis. The question in *all* cases must be whether the totality of factors necessitates the appointment of counsel. For example, the relevance of admission status or accompanied status does not disappear simply because the child is under fourteen years old. Additionally, the mere fact that a child is thirteen years old does not eliminate the need to analyze all of the other factors relevant to the risk of an erroneous deprivation. Thus, it is not possible to properly apply *Mathews* in a common manner to a subclass that does not share dispositive characteristics. A proper application to such a heterogeneous subclass would not be a common application of *Mathews* and would not lend itself to a common resolution of the due process issue. It is simply not possible to say after

---

[3] Accounting for continuances as a reasonable accommodation in lieu of an attorney can be recognized by amending item number 2 of the proposed tentative class to read: "(2) without legal representation . . . at the time they are required to admit or deny the charges contained in their notice to appear and at all points during the removal proceeding thereafter." Plaintiffs cannot reasonably claim that a continuance to find counsel is an unreasonable accommodation given that they requested that very relief in their motion for a preliminary injunction. *See* ECF 24.

7

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

"rigorous analysis" that claims raised by the overly-broad subclasses are capable of a common answer despite the fact that they do not share numerous dispositive characteristics.

**II. Plaintiffs have not identified adequate representatives with claims typical of the subclasses they represent.**

Although the Court's order asks both parties to identify any problems with the proposed class, Defendants note that it is exclusively Plaintiffs' burden to affirmatively satisfy all of Rule 23's requirements, including the requirement that Plaintiffs identify an adequate class representative with a claim typical of the claims raised by members of the class. As the subclasses proposed by the Court are different from those proposed by Plaintiffs in the previous four motions to certify a class (as well as the two other classes proposed by this court), Plaintiffs have not offered or briefed any representatives for these classes. Plaintiffs must satisfy this requirement. Because they cannot do so, the Court must decline to certify its proposed class.

As an initial matter, this Court has already discussed the difficulty in identifying a typical class representative for the main class. ECF 225 at 6. In finding F.L.B. and M.A.M. to be unsuitable representatives for a class nearly identical to the main class, the Court noted at least two variables with the potential to create representational issues, neither of which are addressed by the Court's proposed main class definition. First, the Court noted that class members "nearing the age of 18" are not representative of "a large percentage of class members" who are too young to have legal capacity. *Id*. Second, the Court questioned whether an accompanied class member could serve as a representative for a class that contains unaccompanied children (or vice versa). The Court's logic applies with equal force here. Just as a seventeen year-old would not be an adequate representative for a claim brought by a two-year-old class member, neither can a class member present in the United States with family members (including those with legal status like A.E.G.E.'s mother) represent the claims of children present in the United States without any family support. The main class is simply too expansive for any of the named Plaintiffs to be adequate class representatives with claims typical of the class.

It is for the same reason that the proposed subclasses do not meet Rule 23's requirements. The first subclass includes individuals with a network of familial support as well as children who are unaccompanied; it includes individuals who have entered the United States with bona fide

8

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

entry documents, those who entered illegally by avoiding detection at the border, and those who remain at the border under the so-called entry fiction. As a result, there is simply no way that a determination of the constitutional entitlement of a fourteen-year-old child of a Lawful Permanent Resident, who was stopped at the border could necessarily resolve the same claim brought by a three-year-old unaccompanied fellow subclass member who entered the United States following a lawful admission. The sheer number of permutations of dispositive characteristics render the class mechanism useless. This is because the question for trial cannot be limited to the entitlement of the class representatives, but must instead probe every possible combination of relevant factors. In such a situation, class certification must be denied for lack of typicality.

In addition to suffering this same fundamental defect, the second subclass cannot be certified because Plaintiffs have never attempted to sort individuals by admission status, but instead offered subclasses based on the constitutionally relevant issue of entry status. Indeed, Defendants are not aware of any named Plaintiff who falls within proposed subclass 2b. Rather, all of the named Plaintiffs are inadmissible on the basis of their status as arriving aliens intercepted at the border or their illegal entry into the United States. *See* 8 U.S.C. § 1225(b). As a result, Plaintiffs have not satisfied their burden with respect to these subclasses.

Finally, Defendants have previously briefed a number of issues related to the adequacy and typicality of the representatives for the unaccompanied subclass. In opposition to Plaintiffs' Fourth Motion to Certify class, Defendants noted that all of the proffered representatives of this subclass reside with family in the United States who can assist them in answering the questions posed by the immigration judge in developing the record. *See* ECF 238 at 17-19. Therefore, the named Plaintiffs' claims are not typical of claims brought by children that are truly unaccompanied in the United States. These subclasses, therefore, cannot be certified.

### III. Providing notice to potential class members is not appropriate at this time under Fed. R. Civ. P. 23(c)(2)(A).

For classes certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure, "notice to the class is not required but may be appropriate depending on the circumstances." *Lyon v. I.C.E*, 300 F.R.D. 628, 643 (N.D. Cal. 2014), *modified sub nom. Lyon v. I.C.E.*, 308 F.R.D. 203

9
SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)
Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

1  (N.D. Cal. 2015) (citing Fed. R. Civ. P. 23(c)(2)(A)). This is due to the fact that "no one can opt out of a (b)(2) class." *Lewis v. City of Chicago, IlL.*, 702 F.3d 958, 962 (7th Cir. 2012). Rule 23's advisory committee notes state, in relevant part:

> The authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised *with care*. For several reasons, there may be less need for notice than in a (b)(3) class action. There is no right to request exclusion from a (b)(1) or (b)(2) class. The characteristics of the class may reduce the need for formal notice. The cost of providing notice, moreover, could easily cripple actions that do not seek damages. The court may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice.

Fed. R. Civ. P.23(c)(2)(2003 advisory committee notes) (emphasis added).

The Court asked the parties to address the issue of how notice to potential class members was to be provided pursuant to Rule 23(c)(2)(A). As a threshold matter, however, Defendants submit that notice to potential class members is not appropriate at this time. First, notice will not aid the resolution of the claims and does not provide class members will a litigation benefit. The sought-after relief is equitable and, if granted, would automatically apply to all individuals in the prevailing subclass(es) regardless of whether they were previously advised of this litigation. *See, e.g.*, *Newton-Nations v. Rogers*, 221 F.R.D. 509, 512 (D. Ariz. 2004). The participation of absent potential class members is not necessary to resolve or further develop this litigation and that participation, if sought, risks causing further delays to the very tight litigation schedule. The Ninth Circuit's holding in *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977), *rev'd in part on other grounds sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979), is applicable here. In that case, which dealt with the constitutional due process rights owed to a class of social security beneficiaries, the court affirmed the district court's decision not to require class notice:

> Only when necessary to provide class members an opportunity to signify whether representation by named plaintiffs is fair and adequate or to intervene to present additional claims or to otherwise come into the action to, for example, submit views as amici curiae, does due process require the direction of some sort of notice to absent members of a (b)(2) class . . . . When, as here, absent members' interests are adequately assured of being represented, no significant factual dispute is in need of resolution, the only issues raised are constitutional, and there is no serious question as to the competency of counsel, notice to the class serves no apparent purposes.

*Id.*

10

SECOND SUPPLEMENTAL BRIEF  
IN OPPOSITION TO CLASS CERTIFICATION  
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division  
P.O. Box 868, Ben Franklin Station  
Washington, D.C. 20044  
(202) 532-4700

Here, as in *Elliott*, no litigation purpose would be served by providing notice to potential class members and cannot justify the expenditure notice would require. Providig notice to potential class members at this stage of the litigation would require a premature diversion of already limited resources. Specifically, Defendants would need to set up a system to identify and contact all putative class members, whose membership in the proposed main class and subclasses is predicated upon, among other factors: age; geography; the procedural posture of their immigration proceedings; the viability of certain claims for relief from removal; and the date they entered immigration proceedings. This is complicated by the fact that class members are in the custody of at least three different components: Customs and Border Protection, Immigration and Customs Enforcement, and the Department of Health and Human Services. Some have been reunited with family, some are in family detention facilities, and some are in the care of private placements. Defendants should not have to incur the administrative costs to provide notice to all potential class members unless relief is mandated upon full evaluation of Plaintiffs' claims.[4]

These costs are not outweighed by any compelling need for notice. Just as there is no litigation benefit to notice, notice is similarly unnecessary to protect class member rights. Class members are not prejudiced by their lack of knowledge of this class action. Removal proceedings will continue to operate with a number of safeguards designed to ensure that proceedings are fairly conducted and that proceedings do not more forward where the immigration judge determines that there is no fair way to proceed.[5] Indeed, allowing all potential class members to

---

[4] Defendants interpret the proposed class to exclude those who are no longer in immigration proceedings. This interpretation is predicated upon this Court's (1) limitation of the tentative class to those who "are in" immigration proceedings in or after July 9, 2014, which, as a matter of construction, excludes those who "were in" such proceedings; (2) the Court's April 13, 2015 dismissal of G.J.C.P.,on the basis of her in absentia removal order, ECF 11, at 11; and (3) April 15, 2016 dismissal of J.E.V.G., on the basis that no removal proceedings are now pending against him, ECF 264, at 4. If, however, the class includes those who are no longer in proceedings, Defendants note that providing individual notice to these individuals will present a number of additional difficulties and object to including such individuals for the same reasons Defendants previously sought dismissal of the claims brought by J.E.V.G. and G.J.C.P. To avoid a host of problems regarding the finality of removal orders, the class definition should include only individuals in removal proceedings after the date of the class certification order.

[5] Plaintiffs have suggested that the only way to safeguard class member interests is to prohibit immigration judges from moving forward in any class member's case. This, however, is the functional equivalent of preliminary enjoining the government where no such injunction has been entered. The manner in which immigration proceedings are conducted is squarely within the executive's authority and cannot be subject to judicial interference—and certainly not without requiring Plaintiffs to satisfy the very high standard for obtaining injunctive relief. Therefore, Plaintiffs' suggestion that notice should be required so that class members may request to delay their proceedings is not a proper factor for the Court to consider in deciding whether to require notice.

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

11

Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

receive notice of any class certification before the outcome of this litigation is decided may create unintended incentives for those individuals as well as for any legal representatives presently available to assist them in their immigration proceedings. Specifically, potential class members may refrain from retaining presently available legal representatives while moving for continuances in immigration court, and/or presently available legal representatives would refrain from taking on cases from potential class members, in order to see whether this Court will mandate taxpayer-funded counsel in some form. Beyond this perverse incentive, such an outcome may also paralyze swaths of the immigration dockets within the Ninth Circuit's judicial boundaries pending the outcome of this litigation, which may take months to resolve. *Cf. Royster v. McGinnis*, 332 F. Supp. 973, 981 (S.D.N.Y. 1971), *rev'd on other grounds*, 410 U.S. 263 (1973) (deciding against providing notice in a pending Rule 23(b)(2) action because it would potentially be disruptive); *Johnson v. City of Baton Rouge, La.*, 50 F.R.D. 295, 302 (E.D. La. 1970) (same).

Because providing notice this stage of the litigation would provide no benefit in this lawsuit, prematurely divert administrative resources, and likely create unintended incentives and consequences, this Court should find that under Fed. R. Civ P. 23(c)(2)(A), providing notice to potential class members is not appropriate at this time. Should the Court find that providing notice upon class certification is nonetheless appropriate, for the reasons outlined above, it would be unduly burdensome for Defendants to provide individualized notice to potential class members. However, Defendants could provide a form of general or public notice to potential class members, for example by posting notices at immigration courts throughout the Ninth Judicial Circuit. This form of informal notice is contemplated in Rule 23's advisory notes and, to the extent that notice is appropriate at this time, befits the nature of this putative class action. *See, e.g.*, *Avagliano v. Sumitomo Shoji Am., Inc.*, 614 F. Supp. 1397, 1401 (S.D.N.Y. 1985); *Freeman v. Motor Convoy, Inc.*, 68 F.R.D. 196, 203 (N.D. Ga. 1974); *see also* Fed. R. Civ. P.23(c)(2)(2003 advisory committee notes) ("The characteristics of the class may reduce the need for formal notice.").

12

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

# CONCLUSION

Defendants respectfully request that the Court decline to certify a class at this time.

Dated: May 6, 2016                                    Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

LEON FRESCO
Deputy Assistant Attorney General
Office of Immigration Litigation

WILLIAM C. PEACHEY
Director, District Court Section

WILLIAM C. SILVIS
Assistant Director

VINITA ANDRAPALLIYAL
Trial Attorney

By:  */s/* Sarah Wilson
     SARAH WILSON
     Senior Litigation Counsel
     Office of Immigration Litigation,
     District Court Section
     United States Department of Justice
     P.O. Box 868, Ben Franklin Station
     Washington, DC 20044
     Phone: (202) 532-4700
     Sarah.S.Wilson@usdoj.gov

-1-

SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

/s/ Sarah Wilson
SARAH WILSON
Senior Litigation Counsel
United States Department of Justice

-1-
SECOND SUPPLEMENTAL BRIEF
IN OPPOSITION TO CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700