Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| F.L.B., a minor, by and through his Next Friend, Casey Trupin, et al., <br><br> Plaintiffs, <br> v. <br><br> LORETTA E. LYNCH, Attorney General, United States, et al., <br><br> Defendants. | No. 2:14-cv-01026 <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND SUPLEMENTAL BRIEF IN SUPPORT OF FOURTH MOTION FOR CLASS CERTIFICATION** |

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SECOND SUPPLEMENTAL BRIEF IN
SUPPORT OF FOURTH MOTION FOR CLASS
CERTIFICATION
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

## INTRODUCTION

The Main Class, as well as the subclasses, fail to account for the proper due process analysis required under *Mathews v. Eldridge*, 424 U.S. 319 (1976). Because the *Mathews* test carefully reviews the interactions of many individual facts and circumstances surrounding the alleged deprivation, a proper *Mathews* analysis cannot rely on any single factor to determine a class claim. Plaintiffs exacerbate this problem in their supplemental briefing by proposing additional expansions of both the Main Class and subclasses. These expansions are inconsistent with Federal Rule of Civil Procedure 23 and, if adopted, would make the proposed classes less cohesive and less amenable to common adjudication, and would prevent the Named Plaintiffs from serving as adequate class representatives. Defendants, therefore, maintain their position that the Main Class and subclasses may not be certified under Rule 23.

If, however, the Court certifies a class, class notice is not appropriate at this stage of the proceedings, especially in the form proposed by Plaintiffs. Plaintiffs have not shown that the litigation would be served by class notice at this time, much less that the benefits of Plaintiffs' proposed notice outweigh the substantive burden it will impose on the government's ability to continue to conduct removal proceedings. The Court should decline to exercise its discretion to order class notice be effectuated at this time.

**I.      The Main Class cannot not be certified under Rule 23.**

Plaintiffs' arguments in support of the Main Class demonstrate the Main Class's most fundamental problem: by adjudicating the claim of any individual Plaintiff, the Court is not "saving the parties the burden of litigating this claim in numerous individual cases." ECF No. 271 at 3. This is because it is simply not possible to determine the entire Main Class's entitlement to relief based on the claims of a handful of class representatives who share only a very broad age range. In this case, that presents two overlapping problems: (1) there is no Plaintiff with a claim that can be described as typical of the Main Class; and (2) the Main Class claims are not capable of a common resolution. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011). Rather than acknowledging these underlying concerns, as this Court has, *see* ECF No. 225 at 6, Plaintiffs continue to seek to expand the Main Class to individuals who do

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

1

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

not share a common *Mathews* claim with the proposed class. The Main Class cannot be certified under Rule 23(a) or (b)(2) and certainly should not be further expanded.

### A. The Main Class is too expansive to allow for common adjudication of the class claims and lacks a representative with a claim typical of the class.

The underlying purpose of this class action is served only if, in evaluating the claim of the class representatives, the Court is able to determine the government's obligations as to the class as a whole. *See* ECF No. 271 at 3 (Plaintiffs acknowledging this an "important principle" of Rule 23(b)(2)). However, all individuals under the age of eighteen do not share a common due process right to counsel claim. *See Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004); *cf. Reno v. Flores*, 507 U.S. 292, 309 (1993) ("It has not been shown that all" plaintiffs, most of whom "are 16 or 17 years old," "are too young or too ignorant to exercise" the "right to a hearing before an immigration judge . . . ."). To determine whether a due process right to counsel exists in a particular circumstance, the Court must apply *Mathews*' three-factored balancing test. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). As a balancing test, the weight accorded to each factor necessarily impacts the required showing as to other factors. *Id*. Therefore, in order to find the class certifiable, it is not enough that the class share the same general outcome on one of the same factors. Rather, the Court's "rigorous analysis" into the merits must convince the Court that the Main Class presents a common claim as to each factor of the *Mathews* test, so that the outcome of the class's claim can be determined by evaluating the class representative's claim. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

That is not possible here. The sheer breadth of the Main Class makes a common application of the *Mathews* test impossible. The members of the Main Class have different backgrounds and experiences that impact their ability to meaningfully interact with the immigration system. The children face very different risks of erroneous deprivation on the basis of their age, as well as the likelihood that an adult will be able to communicate their claims in immigration court. For example, the Court's determination of M.R.J.'s claim will in no way determine whether M.A.M. or F.L.B. is entitled to an attorney at taxpayer expense. *See* ECF No. 225 at 6 (the Court discussing why F.L.B. and M.A.M. are poor class representations of a class including small children). For the same reason, children sharing the characteristics of M.R.J. (a

2
SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

three year-old asylum seeker who resides with his grandmother) should not have to rely on an individual like M.A.M. (a now eighteen year-old and the beneficiary of an approved Special Immigrant Juvenile visa petition) to adequately represent their very different due process claims. Such a structure would prevent many class members' claims from being given the necessary individualized attention, thus excluding important dispositive factors from the *Mathews* analysis.

The scope of the Main Class, therefore, undermines the purpose of the class device, and renders each of the individual representatives an inadequate representative for any class member who falls at the other end of the very broad age range and who does not share key characteristics with that representative. At the conclusion of the trial, the Court will be left with individual determinations for a number of very different Main Class representatives with no way to determine which of these individual's claims should be used to determine the Main Class's entitlement to relief. Class certification, therefore, does not satisfy Rule 23 as to a Main Class of children ranging from 0 to 18 years in age. *See Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551–52 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (internal quotation marks omitted). Thus, the Main Class cannot be certified.

**B. The Main Class should not be further expanded as proposed by Plaintiffs.**

Plaintiffs' proposal regarding the Main Class only exacerbates these issues. Plaintiffs propose expanding the Main Class to include—in addition to individuals who face serious harm or torture upon return to their country of origin and individuals with citizenship claims—all individuals "potentially eligible for other remedies under the Immigration and Nationality Act." ECF No. 271 at 9. This proposal is inconsistent with *Mathews* or the requirements of Rule 23.[1]

Plaintiffs' proposed expansion fails under the first *Mathews* factor, which requires an inquiry into the significance of the private interest at issue in the underlying proceeding. *Mathews*, 424 U.S. 319 at 335–36.

---

[1] Contrary to Plaintiffs' suggestion, the government has never stated that all relief sought by an alien should be treated the same for purposes of the *Mathews* analysis.

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

3

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

The Court has already recognized this issue in finding that the seventeen-year-old Canadian foreign exchange student does not have the same private interest at stake as a class member seeking to avoid removal based on a well-founded fear of persecution. ECF No. 225. A similar private interest disparity is at issue when comparing the non-discretionary obligation the United States has under the Convention Against Torture ("CAT"), versus an interest remaining in the United States on a discretionary visa. Even if Plaintiffs could show that they have a "private interest" in a discretionary benefit, that private interest is not the same as an interest in being free from torture. As a result, there would be no way to commonly adjudicate those very different categories of claims. Even if all of the other factors were the same among those individuals, the scale will always be more sensitive in balancing additional factors for the class members with the more weighty private interests. This is especially true in light of the admonition in *Turner v. Rogers*, 564 U.S. __, 131 S. Ct. 2507 (2011), that the Supreme Court has only ever declared a right to counsel for indigent civil litigants in cases involving incarceration, and even then, not in all such cases.

Plaintiffs' proposed expansion also creates a conflict in the class regarding the second *Mathews* factor. *Mathews*, 424 U.S. at 321. The two broad categories of claims do not share a common "probable benefit" of counsel in removal proceedings, because Plaintiffs' proposal includes relief obtained outside of removal proceedings. For such benefits, there may be little reason to expend taxpayer resources on paid counsel in removal proceedings where the benefit Plaintiffs seek will not be applied for, adjudicated, or granted in a removal proceeding. Thus, for those plaintiffs, the probable value of an attorney in those proceedings is virtually zero. The claims of individuals with such widely varying *Mathews* factors cannot be commonly adjudicated and should not be subject to class treatment.

**II.     The Subclasses cannot be certified.**

    **A.     The "Fourteen and Under" Subclass is overly broad.**

Although the more limited age range employed by this subclass is a marked improvement over the age range proposed in the Main Class (and far more consistent with the expert opinions

4
SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

submitted in this case)[2], the subclass still fails to take into account the other relevant factors adopted in the other proposed subclasses. The mere fact that a child is thirteen years old does not absolve the Court from analyzing all of the other factors relevant under *Mathews*. This is because a finding that all children under the age of fourteen are entitled to a lawyer, regardless of any other circumstance, would be inconsistent with *Mathews* and wrongfully deprive the government of the opportunity to show that, in certain cases (for example, where a parent is present with the child at the proceeding), its procedures and safeguards result in a fair hearing for the child (and in many instances the child being granted relief from removal). *Cf. Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346, 358–363 (D.D.C. 2011). Such individuals are not entitled to relief under *Mathews* and are not appropriately included in a class of individuals with stronger claims for relief. Thus, this subclass lacks a common claim.

**B.    The Inadmissible and Deportable Subclasses are fundamentally flawed.**

As explained in Defendants' Supplemental Briefing, ECF No. 275 at 3–5, the relevant constitutional distinction is not between "inadmissible" and "deportable" aliens, but between aliens who have entered the United States and those that, by virtue of the entry fiction, remain outside of the United States. *See Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ("*Mezei* established what is known as the 'entry fiction,' which provides that although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country. . . . Noncitizens who are outside United States territories enjoy very limited protections under the United States Constitution.") (quoting *Barrera-Echavarria v. Rison*, 44 F.3d 1141, 1450 (9th Cir. 1995) (en banc)). If, however, the Court will not modify the class definition to recognize that individuals subject to the entry fiction are not entitled to the same constitutional protections as aliens who have entered the United

---

[2] Indeed, it would make more sense for the Main Class to be limited to children under the age of fourteen, as expert testimony suggests that children under the age of fourteen (unlike children between the ages of fourteen and eighteen) share some cognitive features. Limiting the Main Class to children under the age of fourteen would mitigate some of the over breadth, representational, and logistical concerns outlined *infra* Section I.A.

5

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

States, then the Court should limit the Main Class to "individuals who were not admitted to the United States and are alleged to be inadmissible under 8 U.S.C. § 1182." Such a modification would eliminate the need for the bifurcated second subclass, and narrow the litigation issues to more closely reflect the claims of the proposed class representatives.

Indeed, as a result of present enforcement priorities, it is very rare for a child to face removal based on being "deportable." Juveniles most commonly enter removal proceedings is as a result of their apprehension at or near the border within days of entry. It is far less common for removal proceedings to be initiated against children who have been present in the United States for an extended period of time and, in many instances, may be the result of the child being convicted of a serious crime. *See* U.S. DEP'T OF JUSTICE, POLICIES FOR THE APPREHENSION, DETENTION AND REMOVAL OF UNDOCUMENTED IMMIGRANTS (Nov. 2014), https://www.dhs.gov/sites/default/files/publications/14_1120_memo_prosecutorial_discretion.pdf. Plaintiffs themselves acknowledge that this is a very small class, estimating it at approximately one-tenth of one percent (0.1%) of the total class. ECF No. 271 at 6–7 (estimating 20 subclass members); ECF No. 2 (estimating 12,000 total class members). Therefore, the deportable subclass is unlikely to meet the numerosity requirement. *See* ECF 271, at 6–7. Deportable juveniles may also have a substantially different due process claim as they may (1) differ in terms of their ability to comprehend a proceeding (especially where they have been previously convicted of a crime); (2) their likelihood of obtaining relief; and (3) their interest in remaining in the United States. Thus, although the recognized constitutional distinction is between aliens who have entered and those who are subject to the entry fiction, eliminating "deportable" individuals from the subclass may serve a legitimate purpose by eliminating outliers who lack a claim that is common to the class.[3]

---

[3] Defendants continue to believe that the constitutional distinction between aliens recognized under law as being within the United States and those subject to the entry fiction warrants an additional limitation to any certifiable class. This Court may apply this distinction through an additional set of subclasses (inadmissible individuals identified at the border and inadmissible individuals identified in the United States). *See Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (describing sliding scale and distinguishing between types of unlawful presence).

6

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

Moreover, Plaintiffs have no "deportable" class representative and therefore no representative capable of representing the interest of these individuals. *See, e.g.*, *Bantolina v. Aloha Motors, Inc.*, 75 F.R.D. 26, 30 (D. Haw. 1977). As such, it makes little sense for the Court to stretch to include these individuals as part of a class where there is no class representative available to test the viability of that claim against the class's claim. Plaintiffs' proposal that the Court should abandon the 2b Subclass and leave deportable aliens as part of the Main Class is inferior to Defendants' alternative proposal. Plaintiffs' numerosity contention undermines any claim that these individuals should be fairly considered as part of this class given that they are in removal proceedings only under unusual circumstances. Accordingly, the Court should decline to determine rights and obligations as they pertain to absent members of an absent subclass by attaching them to the Main Class's claim.

**C.     The Unaccompanied and Consolidated Subclasses are structurally flawed.**

These two classes do not reflect the dispositive differences between individuals who are alone in the United States and those who have family—family who is presumed by law to act in their best interest—to help them through immigration court proceedings. The presence of family is an important fact that will weigh heavily under *Mathews* in determining the risk of erroneous deprivation. *See Mathews*, 424 U.S. 319. The proposed subclass misapplies this *Mathews* factor by dividing the subclasses in a way that does not capture the relevant inquiry: who is present in the United States to assist the child. It instead focuses on a characteristic that is not determinative of this factor by looking to whether the child's case has been consolidated with a parent's case. This is significantly under-inclusive in that it does not recognize the important role a non-consolidated parent (like K.N.S.M.'s mother, who is appearing for her proceedings despite not being in a consolidated proceeding) or a parent with lawful status has on the likelihood that the child will face an erroneous deprivation in their immigration court proceedings.

Plaintiffs' proposed clarification of the unaccompanied subclass further blurs the proper inquiry. In their apparent attempt to remedy their lack of a truly "unaccompanied" class

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

7

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

representative,[4] Plaintiffs suggest that the definition of this subclass should be expanded to include all individuals who are unaccompanied by a parent at the time they were apprehended at the border without regard to whether the child has been reunited with her parents. But the fact that a juvenile has been designated as "unaccompanied" pursuant to 6 U.S.C. § 279(g) because he or she was unaccompanied by a parent at the time of apprehension fails to address the core due process concern relevant to parental presence: whether the minor has a parent available to assist during removal proceedings. For the purpose of applying the *Mathews* analysis, children who are designated as unaccompanied at the time of apprehension but are later reunited with parents in the United States are not in the same position as a child who is present in the United States alone and without familial support.

Therefore, Plaintiffs' proposal to link the unaccompanied class to the definition of "unaccompanied child" in § 279(g) fails to address the core due-process concern relevant to parental presence. The Court should decline to certify any of the proposed subclasses.[5]

---

[4] Both E.G.C. and A.E.G.E. reside with family in the United States. In addition to E.G.C. and A.E.G.E., Plaintiffs also suggest that F.L.B. may be an adequate class representative, but this Court has separately recognized that he is poorly situated to act as a class representative for a class (or subclass) that includes much younger children. *See* ECF No. 225 at 6. Indeed, the experience and impact of being unaccompanied as a nearly-eighteen-year-old is plainly different from that of an unaccompanied five-year-old. Thus, F.L.B.'s claims are atypical of any class or subclass including children under the age of fourteen. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

[5] Defendants respectfully submit that no class should be certified for the reasons stated herein. Moreover, certification of the class and subclasses currently contemplated would render this case highly unmanageable, due to the infinite number of cross-permutations that exist among the subclasses. But if the Court decides that there is no persuasive argument that precludes class certification, the following class would create a more manageable class definition (subject to the identification of appropriate representatives for the class):

> All individuals under the age of fourteen (14) who: (1) qualify as an "unaccompanied alien child" as defined in 6 U.S.C. § 279(g)(2) and do not have a parent or legal guardian in the United States available to provide assistance; (2) are in removal proceedings, as defined in 8 U.S.C. § 1229a,1 on or after July 9, 2014, within the boundaries of the Ninth Judicial Circuit, (3) are without legal representation, meaning (a) an attorney, (b) a law student or law graduate directly supervised by an attorney or an accredited representative, or (c) an accredited representative, all as defined in 8 C.F.R. § 1292.1, at the time they are required to admit or deny the charges contained in their notice to appear and at all points during the removal proceeding thereafter; (4) are financially unable to obtain such legal representation; (5) are potentially eligible for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), or protection under the Convention Against Torture, or potentially able to make a claim of United States citizenship; (6) are not in removal proceedings that are consolidated with those of at least one parent or legal guardian; and (7) were placed into removal proceedings more than 14 days after effecting an entry and establishing physical presence.

8

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

### III. Plaintiffs' proposed notice is impracticable and should not be required at this time under Fed. R. Civ. P. 23(c)(2)(A).

Plaintiffs' arguments in favor of using taxpayer resources to provide immediate and individualized notice to all class members are unavailing. Plaintiffs do not sufficiently establish: the need to provide notice at this stage of the litigation or how their proposal for providing notice would be practically executed.

#### A. Plaintiffs do not adequately establish the need to provide notice to potential class members upon this class certification.

Plaintiffs do not offer a cogent purpose served by notice at this stage of the litigation. Plaintiffs cite to the general, elementary notion that Plaintiffs' counsel would have an attorney client relationship with all class members, ECF No. 271 at 11–12, but fail to specify how this relationship would be meaningfully furthered by effectuating immediate notice, or how the relationship would be harmed if notice was only effectuated upon the successful disposition of any of Plaintiffs' claims. On the other hand, Defendants have provided concrete arguments and examples for why notice at this point is unnecessary, premature, and may have a detrimental effect on the immigration system. *See* ECF No. 272, at 11–12.

Plaintiffs rely on *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1236–37 (9th Cir. 1999), for the proposition that Defendants are required "to identify and inform immigrant class members of pending litigation," ECF No. 271, at 12. But they ignore that case's significant distinguishing features. For one, the district court in *Barahona-Gomez* had already granted a preliminary injunction, not only indicating that Plaintiffs were likely to succeed on the merits of their case but also resulting in a stay of deportation for all class members who may be ordered deported after being denied suspension of deportation. *Id.* at 1233. Here, Plaintiffs' motion for a preliminary injunction was denied, ECF 81, meaning that (1) Plaintiffs have not proven at this stage in the litigation that they are likely to succeed in their claim[6] and (2) this litigation does

---

Although, theoretically, individual minors whom the Court may deem worthy of receiving taxpayer-funded counsel may be excluded from this alternative class, under *Jie Lin*, there is certainly not an entire class of minors outside this definition who would definitively be eligible for relief. *Jie Lin*, 377 F.3d at 1033.

[6] Further, to the extent that effectuating notice would have the effect of delaying immigration proceedings, Plaintiffs should not be able to end-run around the Court's denial of the preliminary injunction in such a way.

9

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

directly affect any potential class member at this point and will not do so even in the event that this Court ultimately certifies a class.

Second, in *Barahona-Gomez*, the nexus between providing notice and averting erroneous deportation was much stronger; in that case, at issue was an Executive Office of Immigration Review ("EOIR") policy freezing pending applications for suspension of removal, and notice was to be provided to all those whose suspension applications had been denied in light of the preliminary injunction precluding Defendants from deporting any class members who met the above criteria. *Id.* Therefore, notice in that case had the direct effect of apprising class members of the district court's order enjoining their deportation. *Id.* Here, however, any as-yet unproven connection between receiving notice of this pending litigation and preventing erroneous removal is attenuated, not least because, under Plaintiffs' own framework, any given removal could only be deemed erroneous if it could have been prevented by the services of taxpayer-funded counsel.

Finally, notice was considerably easier to effectuate in *Barahona-Gomez*; there, class members were defined as aliens for whom the Board of Immigration Appeals ("BIA") "or an immigration judge ["IJ"] has determined . . . qualify for a suspension of deportation, but the final adjudication has not yet occurred," and it was adjudged minimally burdensome for the Government to include a notice of the pending litigation with any suspension application denials to class members. *Id.* at 1233, 1237. Here, class membership cannot be ascertained so easily; rather, membership in the tentative main class and subclasses is predicated upon, among other factors: age; geography; the procedural posture of the juvenile's immigration proceedings; the viability of certain claims for relief from removal; and the date the juvenile entered proceedings. Meanwhile, providing notice to all juveniles who are in immigration proceedings and are unrepresented at any point would plainly be over-inclusive under the tentative class definition, potentially sowing confusion amongst those ultimately found not to fall within the class(es).

**B.  Plaintiffs' proposed plan imposes burdens on the agencies that cannot be justified in light of limited purpose the notices will serve.**

Plaintiffs' proposed plan for effectuating notice is impracticable because it is vague and burdensome. Plaintiffs propose requiring immigration judges (IJs) "and other agency personnel who come into contact with potential class member children to inform them of this litigation and

10
SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

their possible class membership." ECF No. 271, at 12. Specifically, Plaintiffs propose providing notice of this pending litigation to (1) IJs and other "relevant personnel," and (2) all presently unrepresented juveniles in immigration proceedings as well as their parents, guardians, and other adult custodians. ECF No. 271-1, at 2, 4. Both notices pose severe practicability problems.

As to the first notice, three federal agencies, including multiple sub-agencies, are Defendants in this case, and potential class members may come into contact with agency personnel in a variety of ways—for example, by being stopped at the border, being designated an unaccompanied minor, having applied for asylum, being apprehended in the interior, or appearing in immigration court. Plaintiffs wish for Defendants to advise the hundreds of federal agency personnel who may interact with potential class members—defined by Plaintiffs as all juveniles in immigration proceedings in the Ninth Judicial Circuit who are, at any point, unrepresented—to not only shoulder the responsibility of informing the potential class members of this pending litigation but also take on the duty of informing Defendants' counsel of the removal of any juveniles meeting the above definition of potential class member. Further, these tasks must presumably be monitored by Defendants' counsel while counsel simultaneously litigates the merits of this case. This requires Defendants to assume obligations that are simply too burdensome for them to bear in the absence of a merits determination of Plaintiffs' claims.

As to the contents of the second notice, in addition to the concerns about having agency personnel being made responsible for effectuating the notice at this stage of the litigation, Defendants also strongly object to the notice instructing potential class members to "ask your immigration judge about the *F.L.B. v. Lynch* lawsuit." ECF No. 272-1, at 4. Immigration judges cannot and should not be responsible for elaborating on any information to a potential class member about pending litigation in which their employing agency is a Defendant.[7] Further, because there is a lack of resolution at this stage of the litigation, potential class members are likely to have many questions about how they should interpret and react to the notice.[8]

---

[7] Notably, this situation is unlike in immigration court proceedings where the Immigration Judge is a neutral adjudicator who may appropriately take on the role of explaining proceedings and answering questions.

[8] Indeed, to the extent Plaintiffs base their claims in this litigation on the notion that unrepresented juveniles are incapable of understanding or protecting their legal rights without the benefit of legal representation, it is not clear

11

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

Entertaining any such questions during a potential class member's immigration proceedings would constitute an administrative burden on the immigration dockets in the Ninth Judicial Circuit. Finally, the proposed notice's statements to potential class members that "[i]f [they] are a member of the class, [they] do not need to sign up to be part of the lawsuit. [They] also cannot choose to be left out of the lawsuit," *id.*, affirm Defendants' argument that effectuating notice at this stage of the litigation is fruitless. No current or specific rights are created nor publicized through this proposed notice; yet, hundreds of agency personnel would have to be educated, assume multiple responsibilities, and expose themselves to questions about this litigation. Thus, the proposed notice is inappropriate. Fed. R. Civ. P. 23(c)(2)(A).

In light of these serious concerns, Defendants respectfully request that notice be deferred pending adjudication on the merits. In the alternative, Defendants submit that their alternative proposal of general or public notice represents a better fit between the imposed burden and reaped value. Ex. A; *see also* ECF No. 272 at 12. The notice would provide the class with access to any relevant information without placing Defendants' employees in the untenable position of appearing responsible for giving potential class members legal advice[9] in a case involving a lawsuit brought against them.[10]

---

that such individuals would be capable of understanding a notice informing them of their potential membership in a class action and acting to protect any rights at issue.

[9] For example, agency personnel, including IJs, may encounter questions about whether a given individual is a class member or whether or when that individual is going to get a lawyer.

[10] Finally, Defendants object to the recently submitted supplemental declaration by one of Plaintiffs' experts, Dr. Susan B. Long, in support of Plaintiffs' fourth motion for class certification. ECF No. 273. The declaration contains the results of Dr. Long's report in which she analyzes data from the Transactional Records Clearinghouse ("TRAC"). Id. at 2. To the extent this declaration may be considered an expert declaration, the supplemental declaration should be stricken as untimely and inadmissible, just as the Court struck the supplemental declaration of Professor Laurence Steinberg. Rule 26(e) merely contemplates supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Further, "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F.Supp. 2d 269, 278 (S.D.N.Y.2011); *see also Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Plaintiffs should not be accorded license to continually update their expert reports past the close of expert disclosures through supplemental declarations.

To the extent the declaration may be construed as a pure factual declaration, similar to the declarations of Plaintiffs' counsel after counsel ran queries through the TRAC database, *see* ECF 271, Declaration of Stephen Kang; ECF 231, Declaration of Glenda M. Madrid, Defendants do not object to it as an untimely and improper supplementation, but would object to any future characterization by Plaintiffs as an expert declaration.

SUPPLEMENTAL BRIEF
ON CLASS CERTIFICATION
(Case No. 2:14-cv-01026)

12

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

# CONCLUSION

Defendants respectfully request that the Court decline to certify a class at this time.

Dated: May 20, 2016                    Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

LEON FRESCO
Deputy Assistant Attorney General
Office of Immigration Litigation

WILLIAM C. PEACHEY
Director, District Court Section

WILLIAM C. SILVIS
Assistant Director

*/s/ Vinita Andrapalliyal*
VINITA ANDRAPALLIYAL
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 598-8085
Vinita.b.andrapalliyal@usdoj.gov

*/s/ Sarah Wilson*
SARAH WILSON
Senior Litigation Counsel
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4700
Sarah.S.Wilson@usdoj.gov

-1-

SUPPLEMENTAL BRIEF
ON CLASS CERT.
(Case No. 2:14-cv-01026)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

/s/ Vinita Andrapalliyal
VINITA ANDRAPALLIYAL
Trial Attorney
United States Department of Justice

SUPPLEMENTAL BRIEF
ON CLASS CERT.
(Case No. 2:14-cv-01026)

-1-

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700