1
2
3
4
5
6

Honorable Thomas S. Zilly

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16

F.L.B., a minor, by and through his Next Friend,
Casey Trupin; et al.; on behalf of themselves as
individuals and on behalf of others similarly
situated,

                    Plaintiffs-Petitioners,

        v.

Loretta E. LYNCH, Attorney General, United
States; et al.,

                    Defendants-Respondents.

Case No.   2:14-cv-01026-TSZ

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
September 2, 2016

ORAL ARGUMENT REQUESTED

17
18
19
20
21
22
23
24
25
26

PLS.' MOT. FOR SUMM. J.
Case No. 2:14-cv-01026-TSZ

**INTRODUCTION**

Plaintiffs move for summary judgment to end a shocking practice that appears to be unique among legal systems in this country, federal or state: children representing themselves against trained prosecutors.

There is no dispute of material fact as to whether any children in the class have the capacity to represent themselves in the legal maze that is immigration court. This is clearest from two striking facts about the state of the evidence: *First*, the only expert testimony from an individual with knowledge of children's immigration law comes from Plaintiffs' witness, Professor David Thronson, who testified unambiguously both that children cannot represent themselves and that none of the safeguards Defendants employ suffice to ameliorate the resulting unfairness. Defendants failed to present expert testimony rebutting Prof. Thronson's testimony. *Second*, with the exception of the now-notorious Assistant Chief Immigration Judge ("ACIJ") Jack Weil, *no witness*—whether fact or expert—with knowledge of immigration law has testified that children can represent themselves in immigration proceedings. In contrast, numerous witnesses have offered testimony to the contrary, and Defendants' own documents advise unrepresented children that "[i]f you think you might qualify for legal relief, it is very important that you speak with a lawyer," because "*only a lawyer* can tell you all of the rules that might go along with these kinds of relief." Dkt. 299, Ex. L at HHS4505 (emphasis added).

The conclusion to be drawn from this evidence—that children are unable to represent themselves in immigration court—is bolstered by the testimony of Plaintiffs' expert in child psychology, Dr. Laurence Steinberg. He found that, from a psychological perspective, children under 18 are not able to represent themselves in immigration proceedings. Defendants offered a rebuttal expert to Dr. Steinberg, but that individual expressly *disclaims* any opinion as to whether children under 18 generally lack such capacity, stressing that he "offers neither a stand-alone opinion nor an alternative methodology or analysis" on that question. Eighth

1   Declaration of Stephen Kang ("8th Kang Decl."),[1] Ex. P ("2nd Mack Report"), ¶2.

2          Defendants will likely resist summary judgment on the ground that their "safeguards"

3   ensure that children receive fair hearings, but they have presented no evidence that these

4   safeguards actually work to protect unrepresented children. Instead, the unrefuted evidence

5   from both Prof. Thronson and Plaintiffs' various fact witnesses establishes that, for

6   unrepresented children, those safeguards make the process even more complex by requiring

7   children to litigate before multiple agencies, and also give rise to due process violations by

8   allowing adults who are not attorneys to extinguish the rights of children whom they do not—

9   and cannot—legally represent.

10          Finally, Plaintiffs separately move for summary judgment on behalf of the Subclass. At

11   a minimum, because Defendants' psychology expert agrees that children under 14 cannot

12   represent themselves in immigration proceedings, they are entitled to summary judgment.

13                                        **ARGUMENT**

14          Summary judgment must be granted "if the movant shows that there is no genuine

15   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

16   R. Civ. P. 56(a); *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1152 (9th

17   Cir. 2012). To successfully oppose summary judgment, the nonmoving party must "go beyond

18   the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and

19   admissions on file, designate specific facts showing that there is a genuine issue for trial."

20   *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citations and quotation marks omitted).

21   **I.   The *Turner* Factors Show that Plaintiffs Are Entitled to Legal Representation.**

22          This Court has already held that the due process question in this case is governed by

23   *Turner v. Rogers*, 131 S. Ct. 2507 (2011), the Supreme Court's most recent case on civil

24   appointed counsel. *See* Dkt. 114 at 29-36 (discussing *Turner* prior to analyzing three factors of

25

26

---

[1] Unless otherwise noted, all citations to exhibits ("Ex.") in this brief refer to exhibits to the Eighth Declaration of Stephen Kang, filed concurrently herewith.

PLS.' MOT. FOR SUMM. J. - 2
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  test under *Mathews*). Although *Turner* declined to find that all adults in civil contempt

2  proceedings require appointed counsel, in doing so it explicitly left open whether counsel might

3  be categorically required in two other circumstances: "'in an unusually complex case' when the

4  individual 'can fairly be represented only by a trained advocate;'" and where "the government

5  has 'counsel or some other competent representative' in the proceeding." *Id.* at 30.

6       There is no genuine dispute that both those circumstances weigh in favor of appointed

7  counsel here: Removal proceedings involve a complex set of laws of procedures, and

8  Defendants pay a trained lawyer to represent their own interests in every removal hearing. [2]

9      **A. Immigration Law Is Too Complex for Pro Se Children to Navigate.**

10         **1. There is no genuine dispute that immigration law involves complicated
            substantive and procedural issues that children cannot master.**

11      This Court has rightly described Plaintiffs' legal claims as arising in "an immigration

12  maze." Dkt. 81 at 13. Other federal courts are in consensus, repeatedly explaining that "the

13  immigration laws have been termed second only to the Internal Revenue Code in complexity."

14  *See, e.g.*, *Baltazar-Alcanzar v. INS*, 386 F.3d 940, 948 (9th Cir. 2004).

15      The Ninth Circuit has recognized this complexity specifically with regard to children,

16  stating over a decade ago that "minors are entitled to trained legal assistance so their rights may

17  be fully protected," and that, as a result, an Immigration Judge (IJ) in a case involving a child

18  appearing with an insufficiently-prepared lawyer "had the obligation to suspend the hearing and

19  give [the child] a new opportunity to retain competent counsel or sua sponte take steps to

20  procure competent counsel to represent [the child]." *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033

21  (9th Cir. 2004) (quoting *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997)); *see*

22

23

24

25

26

---

[2] As a general matter, individuals in immigration proceedings are entitled to appointed counsel where needed to ensure a fair hearing. *See, e.g.*, *Aguilera-Enriquez v. INS*, 516 F.2d 565, 568 n.3 (6th Cir. 1975) ("Where an unrepresented indigent alien would require counsel to present his position adequately to an immigration judge, he must be provided with a lawyer at the Government's expense. Otherwise 'fundamental fairness' would be violated."). Plaintiffs contend that all pro se children in the class (and, indeed, all other pro se children under age 18) are within the group of individuals for whom counsel is required "to present [their] position adequately."

PLS.' MOT. FOR SUMM. J. - 3
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    *also id.* at 1033-34 ("[T]he IJ could not let Lin's hearing proceed without counsel").

2           Defendants could in theory argue that judges or other government officials can "teach"

3    children enough immigration law to allow them to represent themselves, but there is no genuine

4    dispute as to the invalidity of that claim. *Compare* Ex. A ("Weil Depo") at 69:23-70:3, 78:22-

5    79:8, 161:4-12,[3] *with* Ex. O ("Thronson Report") ¶¶15-20; Dkt. 234 ¶9 (averring that know-

6    your-rights (KYR) clinic "is a triage measure that does not provide a substitute for legal

7    representation"); Ex. B ("Thronson Depo") at 135:9-136:5; Dkt. 233 ¶20 (stating that children

8    who have received KYR presentations "retain only a cursory understanding of . . . their case").

9    Indeed, during the litigation of Plaintiff F.L.B.'s preliminary injunction motion, Defendants

10   never argued that he was capable of representing himself in his immigration proceedings, even

11   when faced with this Court's probing questions concerning the complexity of his immigration

12   case. *See generally* Dkt. 312; Ex. RR at 35:12-37:23.

13          That the parties do not materially dispute that the immigration law is too complex for

14   children to navigate on their own is also clear from the orientation materials that Defendants

15   give to children designated as "unaccompanied." These materials, which are intended to orient

16   children to what they will face in immigration court, emphasize that "[i]f you think you might

17   qualify for legal relief, it is very important that you speak with a lawyer," because "*only a*

18   *lawyer* can tell you all of the rules that might go along with these kinds of relief." Dkt. 299, Ex.

19   L at HHS4505 (emphasis added); *see also* Dkt. 299, Ex. M at 168:3-171:2; Dkt. 299, Ex. D at

20   22:2-19 (noting that legal orientation letter F.L.B. received while in ORR custody told him to

21   "[l]ook for a lawyer"); Ex. R ("KYR DVD") at 7:40 ("[T]here is *one* person who can help you

22   understand your rights, who understands how this process works, and who will guide you on

23

24   [3] ACIJ Weil's testimony regarding preschoolers has been widely discredited, including by, among others, his
     former colleagues. *See* Br. of Amicus Former Federal IJs ("IJs Amicus Brief") at 18 n.3, *J.E.F.M. v. Lynch*, 15-

25   35738 (9th Cir. Mar. 11, 2016), ECF 31. Defendants have not relied on his statements in this case, and have made
     no serious effort to defend his views. *See* Ex. C ("Mack Depo") at 113:17-25 ("Q: Do you agree with [ACIJ] Weil

26   children as young as three or four can be taught immigration law? A: No.").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

your journey. You should get a lawyer. Lawyers are very, very important."); *id.* at 17:09 ("Immigration law is very complicated, so you should find yourself a lawyer to help you."). Even Defendants' witnesses agree that these children "face a complicated legal system" that they cannot navigate on their own, Ex. D ("Swartz Depo") at 28:7-8, 29:12-17, and that the involvement of counsel helps the immigration courts "get to the truth," Ex. E ("Lang Depo") at 18:2-10.

### 2. There is no dispute of material fact that children, as a class, lack competencies necessary to represent themselves in immigration proceedings.

#### a. Decisions from the Supreme Court and Ninth Circuit as well as existing immigration laws make clear that children under 18 cannot exercise the competencies necessary to litigate pro se in immigration court.

In light of the Supreme Court's repeated statements concerning the capacities of children, there can be no dispute that children "as a class" "lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them." *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2403 (2011); *see, e.g.*, *In re Gault*, 387 U.S. 1, 40 (1967) (stating that a child needs the assistance of counsel "to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it"); *Eddings v. Oklahoma*, 455 U.S. 104, 115-16 (1982) ("Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults."); Dkt. 114 at 33 n.26 (noting that "[y]outh . . . generally correlates with a lack of proficiency in reading and comprehension" and children are less in control of various aspects of their lives, from their ability to receive mail to their capacity to arrange for their own transportation).

Defendants will likely contest the age line that Plaintiffs have drawn (and that this Court has drawn for purposes of class certification), but there is no genuine dispute of material fact that the age of 18 marks the boundary between children and adults in this context.

*First*, the Ninth Circuit has already acknowledged that children under 18 are unified by

their diminished ability to defend their interests in immigration proceedings. *Flores-Chavez v. Ashcroft* held that the immigration charging document for children under 18 must also be served on the adult to whom the child is released from custody, and rejected the Government's argument that special procedures are required only for children under 14. 362 F.3d 1150, 1157 (9th Cir. 2004). That decision is consistent with other immigration law rules that use 18 as the dividing line between children and adults. *See* Dkt. 191 at 15-16 (citing, inter alia, 8 C.F.R. 1240.10(c) (prohibiting "an unrepresented respondent who is . . . under the age of 18" from conceding removability, unless accompanied by a legal representative, near relative, guardian, or friend), 8 C.F.R. 1236.3(a) (setting forth special provisions governing the apprehension, detention, and release from custody of "juveniles," who are defined as "under the age of 18 years"), 8 U.S.C. 1182(a)(9)(B)(iii)(I) (stating that "[n]o period of time in which an alien is under 18 years of age shall be taken into account" when determining whether an immigrant is inadmissible to the United States for unlawful presence)).

   *Second*, outside the immigration context, this country's legal systems also use the age of 18 more consistently than any other when marking the boundary between childhood and adulthood. *See Roper v. Simmons*, 543 U.S. 551, 569 (2005) (stating that "almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent"); *id.* at 581-87 (appendices to Court's opinion cataloguing various state laws on age of voting, jury service, and marriage).[4]

   **b.  The testimony of the parties' experts shows that there is no genuine dispute**

---

[4] Since *Roper,* the Supreme Court has reaffirmed in four cases that juveniles under 18 have diminished capacities: *Graham v. Florida*, 560 U.S. 48, 68 (2010) (juvenile offenders cannot be sentenced to life imprisonment without parole for non-homicide offenses); *Miller v. Alabama*, 132 S. Ct. 2455, 2468 (2012) (juvenile offenders cannot be sentenced to life imprisonment without parole for any offense because "[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features – among them, immaturity, impetuosity, and failure to appreciate risks and consequences"); *J.D.B.,* 131 S.Ct. at 2403 (age must be considered in determining custody for *Miranda* purposes because children "as a class" "lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them."); *Montgomery v. Louisiana,* 136 S. Ct. 718, 724 (2016) (applying *Miller* retroactively as the decision was based on "how children are constitutionally different from adults in their level of culpability").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**that children lack the competencies necessary to litigate in immigration proceedings pro se.**

The indisputable legal conclusion arising from the authorities cited above is borne out by the undisputed evidence, including the testimony of Prof. Thronson, Plaintiffs' expert on children's immigration proceedings, and Dr. Steinberg, Plaintiffs' psychological expert. Their testimony and reports leave no doubt that children under 18 cannot represent themselves.

Prof. Thronson's detailed expert reports and deposition testimony demonstrate that "immigration proceedings involving children are extremely complex, that children cannot undertake the tasks needed to represent themselves . . . , and that the various safeguards short of counsel . . . cannot serve as substitutes for representation." Thronson Report, ¶14; *id.*, ¶¶21-65. *See also* Thronson Depo at 68:14-69:11; 70:21-71:20; 88:21-89:21; 127:10-24.

Similarly, Plaintiffs' fact witnesses with extensive knowledge of the immigration court system testified that children simply cannot represent themselves. *See, e.g.*, Dkt. 33 ¶8 ("A child appearing unrepresented would rarely if ever know that she had the right to deny the allegations and put the government to its burden."), ¶11 ("[C]hildren appearing unrepresented at a removal hearing tend to be wholly unfamiliar with the forms of relief available, much less state their interest in applying for such relief."), ¶14; Dkt. 61 ¶16 ("Without counsel, it is virtually impossible for most children to successfully pursue the immigration relief for which they may be eligible."); Dk. 57 ¶11 (similar); Dkt. 233 ¶¶9, 35, 43, ¶46 ("I cannot fathom that a child would be in a position to identify and/or articulate [] arguments" seeking suppression of certain evidence and/or termination of proceedings), ¶48 ("my clients would not have been equipped to successfully navigate any of the contested issues that rose in their hearings."); Dkt. 300 ¶12 ("The compound and complex substantive legal standards for each element of asylum often elude even the most seasoned practitioners. . . . In my experience, children are not capable of taking advantage of support resources . . . ."); *see also* Dkt. 170 ¶13 (discussing inability of children to pursue SIJS relief pro se); Dkt. 171-1 ¶17 (same).

PLS.' MOT. FOR SUMM. J. - 7
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Perhaps most important for summary judgment, *none* of Defendants' witnesses with knowledge of immigration law—other than ACIJ Weil—has stated that children can represent themselves.[5] They offered no expert responsive to Prof. Thronson, and one of their Rule 30(b)(6) witnesses, as well as a number of their policy statements, have strongly supported his claims. Defendant EOIR's Rule 30(b)(6) witness Steven Lang explained that attorneys for children make it possible for the IJ to "get to the truth"—i.e., avoid error—and help the judge "effectively adjudicate the case to ensure the [child's] rights are being protected, proper forms of relief are being identified and pursued." Lang Depo at 18:2-8; *id.* at 20:7-15 ("[C]hildren due to their age . . . are more vulnerable in the proceedings if they are not represented . . . Vulnerable to not understanding the nature and purpose of the proceedings.").

Numerous other statements in Defendants' own memoranda, policy documents, and trainings speak to the unique vulnerabilities of children and the resulting need for counsel. *See, e.g.*, Dkt. 299, Ex. M at 27:25-28:8, 29:12-17; Dkt. 299, Ex. U at EOIR336 ("It is also very important to find a licensed attorney who can represent the child in immigration court . . . A qualified attorney can help you and the child understand what the child's legal options are."); Dkt. 299, Ex. L at HHS4505; Dkt. 299, Ex. M at 28:17-29:17, 169:24-170:2 ("A child may not know if they're eligible for relief, and so it's in their best interest to speak to a lawyer.").

The testimony of child psychology expert Dr. Steinberg, whose work has been repeatedly cited by the Supreme Court, provides further support for Plaintiffs' position.[6] Dr. Steinberg opined that it is "impossible to imagine" that any child under 18 has the abilities needed to satisfy the applicable pro se competency standard. Ex. MM ("1st Steinberg Report"),

---

[5] Defendants' other witnesses with familiarity with the immigration system either testified that attorneys substantially improved the efficiency and fairness of immigration court proceedings (without testifying as to whether children could represent themselves), *see, e.g.*, Lang Depo 18:2-8, 20:7-15; Swartz Depo at 28:7-11, 29:12-17; or declined to state any opinion on the question whether children could represent themselves on privilege grounds, as did the new IJ witnesses.

[6] *See, e.g., Roper*, 543 U.S. at 569-70, 573; *Miller*, 132 S. Ct. at 2464.

PLS.' MOT. FOR SUMM. J. - 8
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    ¶45; Ex. F ("Steinberg Depo") at 37:3-37:9, 80:14-82:20, 88:19-89:2, 98:6-99:3. The Supreme

2    Court has similarly recognized that "developments in psychology and brain science continue to

3    show fundamental differences between juvenile and adult minds." *Graham*, 560 U.S. at 68.

4         In rebuttal, Defendants will no doubt cite the testimony of their expert Dr. Mack, who

5    stated that "*some* persons under the age of 18" can represent themselves, Ex. P ("1st Mack

6    Report"), ¶11 (emphasis added), but this circumscribed opinion cannot create a genuine issue

7    of disputed fact, for five reasons. *First*, Dr. Mack—who has conducted *no actual research* in

8    child psychology—expressly *disclaims* any opinion as to whether children under 18 generally

9    lack such capacity, stressing that he "offers neither a stand-alone opinion nor an alternative

10   methodology or analysis" on that question. Ex. Q ("2nd Mack Report"), ¶2.

11        *Second*, even as to his criticisms of Dr. Steinberg's opinion, Dr. Mack was careful *not*

12   to suggest that all—or even most—children ages 14 and older can represent themselves. *See*

13   *also* 1st Mack Report, ¶11 ("*[S]ome persons* under the age of 18 are indeed able to perform

14   those tasks necessary for self-representation.") (emphasis added); 2nd Mack Report, ¶17

15   (opining that "there are individuals under 18 who *would probably possess* the mental functions

16   needed to fulfill the *Franco* criteria") (emphasis added); Ex. C ("Mack Depo") at 111:25-112:8

17   ("There would be some children under 18 who would not be able to do these tasks, and I think

18   that's consistent with the opinion as written."); *see also infra*, Argument III.[7]

19        *Third*, Dr. Mack repeatedly relies on the *wrong competency standards* in forming his

20   opinions. He argues, for example, that some children are competent to represent themselves

21   because they can make certain medical decisions and receive driver's licenses. 1st Mack

22   Report, ¶¶35-36. But both experts agree that competency standards depend on context, and the

23

24   ---
     [7] The parties have not disputed that the appropriate test for determining whether a child is competent to represent
     herself can be derived from the test to which the parties acceded in the *Franco* litigation concerning adults with
25   serious mental disorders in immigration proceedings. *Compare* 1st Steinberg Report, ¶¶38-44, *with* 1st Mack
     Report, ¶8 & n.1; Mack Depo at 48:7-22 (stating that he has no opinion as to whether *Franco* standard is
26   inappropriate in this context); *see also, e.g.*, 2nd Mack Report, ¶17 (basing opinion on *Franco* standard).

PLS.' MOT. FOR SUMM. J. - 9
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   fact that children have the capacity to make certain important *choices* does not mean that they

2   have the ability to litigate pro se in *adversarial proceedings* involving complex areas of law.

3   *See* 2nd Steinberg Report, ¶¶14-19; Steinberg Depo at 66:18-68:11. Similarly, Dr. Mack

4   repeatedly references the legal standard for competence to stand trial, *see, e.g.*, 1st Mack

5   Report, ¶¶32-33, 37-38; 2nd Mack Report, ¶23, but that is contrary to governing Supreme

6   Court precedent establishing that a defendant may have "sufficient mental competence to stand

7   trial" yet "lack[] the mental capacity to *conduct his trial defense* unless represented." *Indiana v.*

8   *Edwards*, 554 U.S. 164, 174 (2008) (emphasis added). That a child is competent to stand trial

9   *with an attorney* does not answer the entirely separate question of whether that child is able to

10  proceed pro se.

11      *Fourth*, Dr. Mack's testimony rests on unsupported assumptions about the nature of

12  children's immigration proceedings. *See* 1st Mack Report ¶12-17; Mack Depo at 53:11-13 ("Q:

13  [D]o you think immigration law is complex, legally complex? A: I do not have an opinion on

14  that."). His understanding of immigration proceedings depends almost entirely on information

15  he received from Defendants, including ACIJ Weil. *See also* Mack Depo at 111:8-13 ("I think,

16  as my report said, *in the context of the protections and the other unique characteristics of these*

17  *immigration proceedings for these respondents*, there are some individuals under 18 who do

18  have the mental functions required to be able to do these tasks."). *See also id.* at 55:11-21,

19  56:19-57:7, 57:19-58:7, 58:25-60:1. When questioned on the efficacy of the safeguards relied

20  upon in his report, he could not explain how they provide "enhanced procedural protections."

21  1st Mack Report ¶12. *See, e.g.*, Mack Depo at 91:8-25 (stating, as to ban on accepting

22  admissions from pro se children, "I'm not able to speak to what the court did and whether the

23  court did something right or wrong or hewed to its own policies"). Thus, Dr. Mack's testimony

24  cannot suffice to establish a genuine issue of fact absent evidence that Defendants' portrayal of

25  immigration courts reflects reality—which, as Plaintiffs have shown, it does not.

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

*Finally*, while Dr. Mack does not disagree with Dr. Steinberg's testimony that juveniles under 18 "are inherently less able than adults" to "regulate their impulses," consider the "longer-term consequences of their decisions," "attend to the risks as well as the rewards of their options," and "resist the coercive influence of others," Mack Depo at 145:1-18, Dr. Mack asserts without *any* support that these functions are not necessary for competency to represent oneself in immigration court. Mack Depo at 137:6-140:14, 149:14-154:7. Thus, the experts do not dispute that all juveniles have diminished emotional capacity that impairs their ability to exercise key functions such as impulse control, appropriate balancing of the consequences of making decisions, and resisting coercive influence of adults. Rather, Dr. Mack concluded that those capacities are unnecessary to self-representation in immigration court, but did so without any knowledge of how immigration court actually works.

### c. At a Minimum, It Is Undisputed that the Subclass of Children Under the Age of 14 Cannot Represent Themselves in Immigration Proceedings.

Even if the Court finds that there is a genuine dispute as to the Class as a whole, it should still grant summary judgment for the Subclass, because Dr. Mack testified that even under his (flawed) understanding of the competencies necessary to self-representation in immigration court, children under 14 almost certainly lack those abilities. *See* Mack Depo at 119:4-6 ("14, 15, 16, is the place where people sufficiently have developed in that area of cognition" such that they can represent themselves); *see also id.* at 117:15-19 ("Q: Do you believe some ten and eleven-year-old children may have the capacity to represent themselves in immigration proceedings? A: No. Ten and eleven, no."), *and* 116:16-24 (explaining that "the movement into the capacity for abstract thinking or hypothetical thinking and reasoning" in order to perform "these courtroom tasks" "would be something that *starts* around age twelve") (emphasis added). Thus, even if the Court were to credit Dr. Mack's testimony, there is still no genuine dispute as to whether children under 14 can represent themselves. Thus, at a minimum, the Court should grant summary judgment as to that Subclass.

PLS.' MOT. FOR SUMM. J. - 11
Case No. 2:14-cv-01026-TSZ

Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**B. There Is an Asymmetry of Representation in Cases Involving Children.**

Nor is there any genuine dispute that the second factor highlighted in *Turner*—the asymmetry of representation—weighs strongly in favor of Plaintiffs. *Turner* relied heavily on the fact that providing counsel to the plaintiff "could create an asymmetry of representation" that "could make the proceedings less fair overall," yet declined to rule out a categorical right to appointed counsel in proceedings where "the prosecution is presented by experienced and learned counsel." 131 S. Ct. at 2519-20 (internal quotation marks and citation omitted).

Here, unlike in *Turner*, the Government is represented by a trained prosecutor in every removal proceeding, including those in which a child is pro se. *See, e.g.*, Ex. M ("Fehlings Depo") at 27:15-28:14. The undisputed evidence shows that these trained prosecutors pursue cases against children in exactly the same manner as they do for adults, and make no allowances specific to children. *See id.* at 65:16-66:8, 88:23-91:16, 77:11-13; Dkt. 303 at 5-7 (Defendants offering to stipulate that they will not rely on "any policies, procedures, training, guidance, or uniform practices applicable specifically to ICE attorneys' handling of cases of unrepresented children"). In fact, Plaintiff M.A.M.'s case shows that the Government aggressively prosecutes cases involving children, and indeed opposes termination of proceedings in cases where even the IJ is inclined to be lenient. *See* Dkt. 270-1, Ex. A at EOIR1237-38; Ex. OO at EOIR1659 (guidance acknowledging that in cases like M.A.M.'s, "DHS prefers to keep the matter on the Court's calendar or have the Court enter an order of removal against the respondent").

Moreover, *Turner's* attention to the importance of representational asymmetry is particularly relevant in cases involving children. In other court systems involving children, *see, e.g.*, Dkt. 248 at 2; Dkt. 253 at 6, if a child must litigate against the state in adversarial proceedings where the state is represented, the child *always has representation*. *See, e.g.*, RCW 13.32A.160(1)(c) (requiring appointed counsel in Child in Need of Services); RCW

13.32A.192(1)(c) (requiring appointed counsel in At-risk Youth proceedings); RCW

13.34.100(7) (youth under 18 receive counsel upon request); RCW 13.34.267(6) (requiring

counsel be appointed for youth ages 18-21 in extended foster care); RCW 13.34.215(3)

(requiring counsel be appointed for a child filing a petition to reinstate parental rights); *see also*

Dkt. 253 at 5-8 & n.2 (collecting other state statutes). Defendants have never identified another

legal system that permits trained prosecutors to litigate against pro se children.

The absence of counsel for the child Class members creates the exact asymmetry that

the Supreme Court referenced in *Turner*, and therefore weighs heavily in Plaintiffs' favor.

### C. None of Defendants' Substitute Procedural Safeguards Meaningfully Mitigate the High Risk of Error.

In a context where neither side had an attorney, *Turner* also analyzed whether there

were "substitute procedural safeguards" that could "significantly reduce the risk of an

erroneous deprivation of liberty." *Id.* at 2519. Even assuming that the possibility of such

safeguards remains relevant even where only the government has an attorney, the extensive

evidence makes clear that no set of safeguards can condense the complexity of immigration

proceedings—including the rules governing service, the rules for different forms of relief that

must be pursued before different agencies, and the exceedingly complex substantive law—into

a form comprehensible to children. As Professor Thronson and other experienced legal services

providers have explained, the law is far too complex to be reduced in a way that would make it

meaningful to pro se children. *See supra* Argument, I.A.1. [8]

### 1. Defendants' minor alterations to the operation of the immigration courts cannot mitigate the risk of error.

During this litigation, Defendants have pointed to a series of purported safeguards as

sufficient to ensure that Class members will receive a fair hearing. However, the procedural

---

[8] *See also Kenny A. v. Perdue*, 356 F. Supp. 2d 1353, 1361 (N.D. Ga. 2005) ("Contrary to County Defendants' argument, juvenile court judges, court appointed special advocates . . . and citizen review panels do not adequately mitigate the risk of such errors. Judges, unlike child advocate attorneys, cannot conduct their own investigations and are entirely dependent on others to provide them information about the child's circumstances.").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   niceties on which Defendants rely fail to protect children's rights, even when correctly applied.

2   *See, e.g.*, Dkts. 57; 59; 61; 101; 233 (declarations of experienced children's immigration

3   attorneys discussing various problems with existing safeguards). The record confirms that none

4   of these safeguards constitutes an adequate substitute for counsel.

5           *Duty to develop record*. There is no genuine dispute that IJs' legal obligation to

6   "develop the record" is insufficient to safeguard children's due process rights. Defendants

7   assert that IJs can fully develop the record for pro se children, Dkt. 197 at 15, but no witness

8   has testified that this actually occurs in practice, and the Government's own materials

9   describing the importance of counsel belie the claim. *See supra* Section I.A.1; Thronson Report

10  ¶48 ("[IJs] are not in a position to devote multiple days to each . . . unrepresented child's case

11  in an attempt to ensure comprehension of the proceedings and draw out all relevant facts."); *see*

12  *also* Br. of Amicus Former Federal IJs ("IJs Amicus Brief") at 7-9, *J.E.F.M. v. Lynch*, 15-

13  35738 (9th Cir. Mar. 11, 2016), ECF 31 (noting that realities of immigration court practice and

14  caseloads "precludes anything more than cursory inquiries" by IJs). Similarly, regulatory

15  requirements that IJs use "non-technical language" when reading charges against the immigrant

16  and elicit testimony on possible avenues for relief, *see* Dkt. 197 at 15, apply to *all* immigrants

17  regardless of age. As this Court has already explained, if they were sufficient there would be no

18  need even for the existing child-specific protections. *See* Dkt. 114 at 33 n.26; *see also* Dkts. 33

19  ¶10-14; 34 ¶6; 59 ¶15 (legal services providers and expert discussing children's inability to

20  articulate claims for relief to IJs); Dkt. 233 ¶16 ("[I]t is more the exception than the rule that a

21  judge explains the proceedings or any particular issue in a way that a child (including

22  adolescents) understand."), ¶17 ("I often observe judges get frustrated with the child—for

23  example, because they perceive that the child is purposefully non-responsive, where the lack of

24  response or inappropriate response was due to a child's misunderstanding of the judge's

25  question or explanation. It is not uncommon for judges to be stern with children in this

26

PLS.' MOT. FOR SUMM. J. - 14
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  circumstance, which can cause the child to become more nervous."), ¶¶31-32 (noting that, in

2  eight years of practice, she has never witnessed IJs screen for SIJS, T-visa or U-visa, and "very

3  few hearings in which a judge screened a child for asylum eligibility"). Indeed, IJs in this case

4  have failed to identify citizenship claims, SIJS claims, and other forms of relief for which the

5  Named Plaintiffs were eligible. *See, e.g,* Dkt. 299, Ex. C at EOIR 38-45 (IJ's failure to identify

6  F.L.B.'s eligibility for SIJS).

7       Defendants have also pointed in the past to training that IJs receive for conducting

8  proceedings with pro se children, but there is no evidence that these trainings produce better

9  outcomes. Moreover, ACIJ Weil, who *remains* ultimately responsible for that training to this

10 day, repeatedly claimed during his deposition that children as young as three or four can be

11 taught immigration law. *See* Weil Depo at 69:23-70:10; 78:24-79:3; 161:4-162:19.

12      *Continuances to find attorneys*. That some judges allow some children additional time

13 to find lawyers is irrelevant to those who remain class members—i.e., without representation—

14 and therefore has no bearing on summary judgment. Moreover, Defendants have never disputed

15 Plaintiffs' evidence that many children do not make it to court—obviously through no fault of

16 their own—and thereafter are ordered removed in absentia without representation. *See, e.g.*, Ex.

17 PP at EOIR1181-85. Nor have they disputed Plaintiffs' evidence establishing that children face

18 significant legal consequences even at their initial immigration court hearings. *See*, *e.g.,* Ex. K

19 ("Stotland Depo") at 41:1-45:25. Again, F.L.B. presents a paradigmatic example of this type of

20 harm, although other Named Plaintiffs have also suffered such consequences. *See* Dkt. 299, Ex.

21 C at EOIR37-44; Dkt. 298 at 15-16; Dkt. 270 at 3-4 (showing prejudice to M.A.M. due to lack

22 of attorney despite continuances).

23      *"Child-friendly" immigration court regulations and practices*. The various child-

24 friendly practices utilized in some of the children's dockets, such as not wearing robes, do not

25 fundamentally change the nature of immigration court proceedings for children, as Defendants'

26

---

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

own witnesses have admitted. *Compare* Ex. U (Weil Depo, Ex. 11) at 6, *with* Weil Depo at
25:18-26-11.

Defendants have also pointed to the regulatory protections that forbid certain
unrepresented children from conceding removability and govern service of children's charging
documents, but uncontested evidence establishes that those regulations are routinely ignored or
circumvented. Nothing forbids an IJ from taking factual admissions from a child to establish
removability (as in F.L.B.'s case), or from using a child's out-of-court statements to
immigration authorities to do so (as in G.J.C.P.'s case). *See Matter of Amaya*, 21 I. & N. Dec.
583, 587 (BIA 1996); Dkt. 299, Ex C. at EOIR38:14-41:8; Ex. QQ, EOIR1172-73; Ex. PP,
EOIR1183-84; *see also* Thronson Report ¶¶21-25; Thronson Depo at 120:19-122:11
(discussing failures to comply with Ninth Circuit law governing service). Moreover, the Rule
30(b)(6) witness for DHS "responsible for national policy related to unaccompanied minors"
and authorized to speak for DHS on how it "proceed[s] with the service of the notice to
appear," was unaware of Ninth Circuit law governing the service of children's charging
documents within the Circuit. *See* Ex. G ("Antkowiak Depo") at 10:25-11:1, 20:7-8, 78:2-4.

*Friend of the Court Program:* There is no dispute that Friends-of-the-Court models are
not an effective substitute for legal representation. The record is devoid of evidence showing
that these programs reach all or even most unrepresented children, let alone that they improve
outcomes. *See* Lang Depo at 79:2-5, 81:13; *see also id.* at 69:6-7 ("The Friend of the Court
does not have a legal duty to a child."). Even where they exist, Defendants' own guidelines bar
a "friend" from taking any substantive steps in the child's case. *See* Ex. S, EOIR247-48 ("the
Friend of the Court is not a substitute for a legal representative," and the "Friend of the Court is
without authority to accept or concede service, admit factual allegations, enter pleadings,
request a removal order, seek relief (including voluntary departure), or exercise or waive rights
on behalf of the respondent."); Dkt. 233 ¶¶29-30.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## 2. The presence of parents or other non-attorney adults cannot safeguard children's rights.

Defendants will likely point to the presence of non-attorney adults who "speak on behalf of" the child as a significant "safeguard"; however, as this Court has already suggested, that safeguard fails as a matter of law and indeed creates its own very serious due process problems. To the extent this Court does not agree that the issue can be resolved on purely legal grounds, the extensive discovery on the role of parents and guardians reveals no dispute as to their ability to ameliorate the due process problem caused by the absence of legal counsel.

This Court has already held that the mere presence of parents or other non-attorney adults cannot safeguard children's rights in immigration court. *See* Dkt. 264 at 16-19.[9] This may well be true as a matter of law, as their serving as children's attorneys would violate the rule against such representation established in *Johns*, 114 F.3d at 877. The Ninth Circuit has rejected the notion that a parent's presence can "cure" a child's incapacity. *See Jie Lin*, 377 F.3d at 1025 (noting, in child's deportation case, that "the right of minors to competent counsel is so compelling that we have joined other circuits in holding that 'a guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a lawyer'" (quoting *Johns*, 114 F.3d at 876)). In precluding a parent from acting as a child's lawyer, the Court was guided by its earlier ruling that "a non-lawyer 'has no authority to appear as an attorney for others than himself.'" *Johns*, 114 F.3d at 876 (quoting *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)). Neither parenthood, guardianship, nor Office of Refugee Resettlement sponsorship transforms non-attorney adults into legal representatives for children.

This Court already rejected reliance on the out-of-circuit cases Defendants cited to counter the Ninth Circuit's rule in *Johns*, finding that none "stand for the proposition that a parent may or must represent his or her child in removal proceedings." Dkt. 264 at 16-18

---

[9] The Court reached this conclusion as to cases where a parent was formally part of the removal proceedings along with her children, as with Named Plaintiffs A.F.M.J., L.J.M., and M.R.J. That conclusion applies with much greater force where the adult is not a party in the child's case, and thus has no legal obligation to appear in court.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

(analyzing Fifth, Seventh, and Eleventh Circuit cases). The Court properly found that the single cited case involving a child in removal proceedings runs *counter* to Defendants' position: there, the Fifth Circuit held that neither the child's caretakers nor biological mother could represent the child's interests in court. *See id.* at 18-19. Unsurprisingly, no Ninth Circuit case has created an exception to *Johns*' rule in the immigration context.

To the extent these precedents do not resolve the issue as a matter of law, the record reveals no dispute of fact on the question of whether parents and other non-attorney adults can safeguard children's rights in immigration court, for four basic reasons.

*First*, it is uncontroverted that HHS Defendants do not screen parents or other adults to whom they release children for their ability to effectively represent a child in immigration court or for conflicts of interest. *See* Swartz Depo at 194:6-195:24; Thronson Report ¶55; *see also* Antowiak Depo at 98:4-19 (same as to DHS); Fehlings Depo at 84:8-21 (same).[10] Similarly, Defendant EOIR has no policy or procedure requiring such screening. *See* Weil Depo at 85:24-90:10. These adults, moreover, are not required to attend immigration court under the terms of the HHS' Sponsor Care Agreement. *See* Swartz Depo at 200-04; Ex. X at 14-15; Lang Depo at 105:14-106:12; *see also* Thronson Report ¶55. Indeed, there is no dispute that some adult custodians are in fact reluctant to attend immigration court, and that this leads to removal orders against unrepresented children through no fault of their own. *See* Swartz Depo at 195:25-196:9; Weil Depo at 129:30-131:5; Ex. T at EOIR232; Thronson Report ¶55; Fehlings Depo at 103:16-23 (noting no policy prevents ICE trial attorneys from seeking a removal order in that instance); *see also* Ex. Z, EOIR1540-41 (IJ threatening that he will deport A.E.G.E., despite waiving the boy's presence, if A.E.G.E.'s mother did not return to court).

---

[10] As a result, the record contains striking evidence of adult custodians who know nothing about the children's immigration cases. To give but one example, K.N.S.M.'s mother did not understand that K.N.S.M. was not asserting a claim to U.S. citizenship in her immigration case. *See* Ex. H ("Sevilla Depo") at 17:22-18:7 (suggesting that K.N.S.M. has a citizenship claim due to conditions in Honduras).

*Second*, there is no dispute that the Legal Orientation Program for Custodians ("LOPC") is wholly insufficient to train parents or other caretakers to represent children in immigration court. *See* Lang Depo at 92:3-93:16 (EOIR 30(b)(6) witness acknowledging that the LOPC does not train the custodian to represent the child, including "further litigating the case, appearing in court and speaking on the child's behalf as an attorney would do"); Thronson Report ¶56; *see also* Dkt. 234 ¶¶7-9. Defendant EOIR does not consider the program mandatory, and more than half of the adults to whom HHS releases children never attend (including the sponsors of at least some Named Plaintiffs). *See* Lang Depo at 81:22-83:10; *see also* Swartz Depo at 217:7-16 (HHS takes no action against sponsors who do not attend the LOPC). Even for those who do, LOPC itself advises that any child seeking relief should speak with a lawyer to understand her options. *See* Lang Depo at 98:19-101:2. This is consistent with HHS' message to children in their KYR handout. *See* Swartz Depo at 168:7-171:2; Ex. W ("You should always speak with a lawyer to see if you qualify for legal relief."); KYR DVD at 7:49 ("You should get a lawyer. Lawyers are very, very important.").

*Third*, even were adult custodians capable of providing meaningful legal assistance to children, any such "assistance" is wholly unregulated. There are simply *no rules* governing the authority of parents and other non-attorney adults' conduct in immigration court proceedings involving children. In practice, they enter no formal appearances in the immigration court proceedings of the children on whose behalf they purport to speak, effectively flouting 8 C.F.R. 1292.1 and 1003.17(a). *See* Weil Depo at 141:25-143:1. Indeed, one of Defendants' own 30(b)(6) witnesses readily acknowledges that EOIR has *no policies or procedures* dictating what role parents or other non-attorney adults can play in children's immigration cases. *See id.* at 86:14-23 ("I'm not aware of any law that really speaks directly to that issue."); *id.* 86:24-87:19 ("I'm not aware of specific definitions or terms that take and categorize people that may appear with a respondent and say this category of person can do this and this one cannot do

PLS.' MOT. FOR SUMM. J. - 19
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

that."); *id*. 101:17-22 ("[T]here's nothing in that regulation as drafted that says what the role is or it doesn't even define the categories listed."). This is true even if the child and parent are in consolidated removal proceedings. *See id*. 88:9-89:9 ("I'm not aware of anything that expressly authorizes the parent in the proceedings to make a pleading for a child."). As a result of this lack of policies, judges permit parents and other non-attorney adults to take significant, unauthorized legal actions for children in immigration court, many of which severely harm the chances of success. *See, e.g.*, Ex. Y at EOIR 1588-1591 (mother of A.F.M.J., L.J.M., and M.R.J. entering pleadings for her children—including the two with U.S. citizenship claims).

*Fourth*, there is no dispute that parents in proceedings with their children, like parents acting merely as custodians, may have conflicts of interest with those children that go entirely unexamined under the present system. Prof. Thronson establishes that these "conflicts of interest are not merely theoretical, but instead predictable" and cites, as an example, "a parent's unwillingness to disclose, or allow the child to disclose, sensitive facts supportive of relief." Thronson Report ¶52. Defendant DHS's own asylum materials acknowledge that such conflicts can exist between parents and children. *See* Ex. V at 19 (describing conflicts between child's and parents' interests); *see also* Ex. CC at 14-17 (recognizing that parents' interests may conflict with those of their children in asylum context). So, too, do Defendants' 30(b)(6) witnesses. *See* Swartz Depo at 210:7-211:9; Lang Depo at 106:13-107:18; Weil Depo at 90:20-91:7. And no evidence contradicts the fact that these conflicts can exist regardless of the child's age. *See, e.g.*, Thronson Depo at 74:7-24 (an attorney for a non-verbal child "would see if there are any reasons in which a parent's interests diverge from the child's interests"); *see also* Dkt. 233 ¶¶33-34 (noting the case of a child who was present in court with her mother and whose record raised concern of abuse in the home); Ex. N ("Annobil Depo") at 77:5-10.

Similarly, it is undisputed that children in proceedings with parents may have claims for relief independent of their parents' claims (whether or not accompanied by conflicts). EOIR's

PLS.' MOT. FOR SUMM. J. - 20
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

30(b)(6) witness acknowledged this, admitting that "[o]ftentimes when a child's case is consolidated with an adult . . . [t]he child no longer pursues their own independent claim for relief." Lang Depo at 42:7-20. Similarly, Prof. Thronson, as well as DHS's 30(b)(6) witness, confirms that a child may have independent claims for child-specific relief, like SIJS, or based upon an asylum theory distinct from that of the parent, *see* Thronson Depo at 75:25-76:5 ("For example, in an asylum claim, a parent who is persecuted on account of [a] non-protected ground under our refugee law might fail in her claim, yet the child might face persecution on account of membership in a particular social group, the family, [and] might have a viable claim."); Antowiak Depo at 105:13-106:15 (children in family units "can make claims independent of the parent"). *See also* Dkt. 300 ¶31 (practitioner has encouraged attorneys to file independent asylum applications for children in consolidated proceedings with parents). Independent claims can exist for children of any age who are in proceedings with their parents, as the U.S. citizenship claims of A.F.M.J. and L.J.M. make plain. *See* Ex. II ("Plaintiffs' Class Interrogatory Responses"), Att. B at ii, vi-vii.

For all of these reasons, parents and other adults cannot substitute for legal counsel, regardless of whether proceedings have been consolidated.

### 3.   There is no genuine dispute that the TVPRA's special "protections" fail to protect unaccompanied children's due process rights.

The TVPRA contains certain limited protections for unaccompanied children, *see* 8 U.S.C. 1158(a)(2)(E), (b)(3)(C), 1232(c)(6), but there is no genuine dispute that these protections are in no way a substitute for legal counsel and plainly insufficient to protect children's due process right to a fair hearing.

Most important, it is undisputed that the central safeguard of the TVPRA—which provides children designated as unaccompanied the option to apply for asylum through a non-adversarial process before USCIS—is not meaningfully accessible to pro se children. 8 U.S.C. 1158(b)(3)(C). As a result, the overwhelming majority of such children do not access this

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

process. *See* Ex. DD at USCIS163 ("Consistently, a small percentage of UACs apprehended each year apply for asylum," including only 7% for FY 2015, 16% for FY 2014, and only 1% for the second quarter of FY 2016). The vast majority of children who benefit from the TVPRA's processes are *represented*. *See* Ex. AA at USCIS166 (showing that in last fiscal year, 92% of children who sought asylum before USCIS under initial jurisdiction provision were represented). That this process is largely inaccessible to pro se children, as it was to F.L.B., is unsurprising given that the asylum application itself, and its accompanying instructions, do not contain information regarding UCs' ability to file with USCIS. *See* Kim Depo at 41:21-43:5; *see also* Dkt. 299, Ex. C at EOIR41:13-23, 43:9-17.

There is also no dispute that applying for asylum, no matter the forum, is incredibly complex. *See* Thronson Report ¶¶37-40 ("[a]sylum law is intricate and subtle"); Dkt. 233 ¶43 (longtime legal services provider observing that "[e]ven [] experienced and skilled attorneys . . . find navigating our immigration laws challenging"); Dkt. 300 ¶¶9-17; Thronson Depo at 97:8-100:14 (confirming that "[a] 17-year-old without representation cannot be expected to effectively comprehend asylum law"); *id.* at 101:2-102:1. Pursuing an asylum application with USCIS while in removal proceedings also introduces complexity because it requires an understanding of the interplay between two separate federal agencies. A child in immigration court who appears to be designated "unaccompanied" and wishes to apply for asylum is *supposed* to receive a "UAC Instruction Sheet," which sets out an involved, multi-step process, in which the child must not only complete and send a copy of an asylum application to USCIS, but also submit proof to USCIS that she is, in fact, an unaccompanied child. *See* Ex. BB. Those knowledgeable about the process describe it as "procedurally complicated," Dkt. 233 ¶40; "add[ing] to the already-complex process of applying for asylum," Thronson Report ¶39, and "involv[ing] multiple steps that are confusing even to attorneys," Dkt. 300 ¶ 23; *see also* Thronson Depo at 106:24-107:22. And in practice, some children who seek this safeguard are

PLS.' MOT. FOR SUMM. J. - 22
Case No. 2:14-cv-01026-TSZ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

denied it. *See* Thronson Report ¶40; Weil Depo at 136:1-14 (ACIJ explaining how some IJs continued to proceed in cases in which USCIS had initial jurisdiction). *See generally* Kim Depo at 44:8-73:21 (discussing USCIS's asylum filing and biometrics procedures, child's burden to arrange interpretation and transportation, and interplay with court proceedings, among others).

The TVPRA also provides for "child advocates" to assist in some cases, but there is no dispute that there are only enough of them to assist about 300 children. *See* Swartz Depo at 143:11-144:10 (estimating approximately 300 children nationwide will be appointed child advocates); Thronson Report ¶59 ("[O]nly a very small percentage of children are appointed a child advocate."); Dkt. 233 ¶27 ("Appointment of a child advocate for a child in removal proceedings in this region is relatively rare."). None of the Named Plaintiffs in this case who passed through ORR care have been assigned child advocates.

Even in the tiny number of cases where child advocates appear, there is no dispute that they are not an effective substitute for legal representation, as they are tasked only with advocating for the best interests of certain particularly "vulnerable" unaccompanied children, not legally representing them. Ex. CC at 21. Thus, the function of child advocates is, by design, entirely separate from the function of legal counsel. Swartz Depo at 131:20-21 (ORR 30(b)(6) witness explaining a "child advocate is someone who's different than a lawyer"). And by the Government's own concession, there is no evidence that child advocates improve case outcomes for children.[11] *See* Swartz Depo at 155:14-18.

---

[11] Nor is there any dispute that the KYR presentations and legal screenings children receive in ORR custody do not adequately substitute for counsel. Within 48 hours of entering ORR custody, children are given an orientation and written guide including "general legal information," often while "disoriented and recovering from their journeys to the United States." Thronson Report ¶62 (describing how his clinic "ha[s] not encountered even a single child who has exhibited even a basic understanding of her legal situation as a result of the orientation and guide"). Some children also receive "informational presentations," *see* Swartz Depo at 38:10-11 (describing presentations as a "supplement"), that "attempt to provide basic orientation on the Immigration Court process . . . but leave children woefully unaware of the complexity of their legal cases." Thronson Report ¶63. Finally, some children receive a limited legal screening, in which representatives do an "initial identification" of potential relief. *See* Swartz Depo at 68; *see also* Thronson Report ¶64 (explaining that these "legal assessments . . . cannot transform a child into her own legal representative"); Thronson Depo at 137:7-18 (describing how screenings involve a "cursory review of usually a very incomplete file of documents and not a lot of information you can garner from a child" whom the

\*               \*                \*

For these reasons, *Turner* strongly counsels in favor of summary judgment.

## II. Application of the *Mathews* Test Confirms That Due Process Requires Legal Representation for the Plaintiff Class.

The basic doctrinal test for assessing whether appointed counsel is required in a civil context comes from *Mathews v. Eldridge. See, e.g.*, Dkt. 114 at 6, 28-36.

### A. The Private Interests at Stake Are Weighty.

There can be no serious dispute that Plaintiffs and all the children in the Class face grave harm upon deportation. Decades of case law confirm that deportation can result in serious and irreparable injuries, *see, e.g.*, Dkt. 85 at 22 (citing *Bridges v. Wixon*, 326 U.S. 135, 164 (1945) ("The impact of deportation upon the life of an alien is often as great if not greater than the imposition of a criminal sentence. . . . Return to his native land may result in poverty, persecution, even death."), and *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947) ("[d]eportation can be the equivalent of banishment or exile")), and that children are uniquely and particularly vulnerable to those harms, *see, e.g.*, Dkt. 10 at n.5 (citing *Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042, 1045-46 (9th Cir. 2007)). In the case of children who are potentially eligible for asylum or have potential citizenship claims, it is even more readily apparent that the private interests implicated are extremely weighty. As the Supreme Court has held in the asylum context, "[d]eportation is always a harsh measure; it is all the more replete with danger when the alien makes a claim that he or she will be subject to death or persecution if forced to return to his or her home country." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). As to children with citizenship claims, "[t]o deport one who so claims to be a citizen obviously deprives him of liberty." *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922).[12]

_____

screener does not represent, in a non-confidential setting). Some children leave ORR custody without ever accessing KYR presentations or screenings. *See* Swartz Depo at 69:2-9 (ORR 30(b)(6) deponent noting that "there were probably a number of children [who] left [ORR] without getting that one-on-one sort of screening").

[12] Plaintiffs maintain that children in immigration proceedings face a myriad of harms other than those set forth above. Those include the serious risk that they will undermine any basis for remaining safely in the United States,

The experiences of the named Plaintiffs are emblematic of all these harms. All face persecution in their home countries, including the risk of torture and death. *See* Ex. II ("Plaintiffs' Class Interrogatory Responses"), Att. B (describing facts of Plaintiffs' asylum claims); *see also* Exs. EE-HH. Some, like E.G.C. and F.L.B., have effectively been abandoned or neglected by their family members and will no doubt face additional serious privation if deported. *See* Ex. II, Att. B at iii-iv. Yet others, like M.A.M., face the added prospect of lengthy or even permanent separation from family members in the United States, or the severing of longstanding ties resulting from years spent in this country. *Id*. at vii. And still others, like A.F.M.J. and L.J.M., face expulsion from their country of citizenship—the U.S. *Id*. at ii, vi. Their private interests are great indeed.

**B. Without Legal Representation, the Risk of Erroneous Deprivation is Grave.**

Unrefuted evidence—much of which comes from Defendants themselves—confirms that the second *Mathews* factor weighs heavily in Plaintiffs' favor: for children going through the immigration system, legal representation makes all the difference. Without it, the risk that a court will erroneously order a child deported to her home country—when that child is otherwise eligible to remain in the U.S.—is extremely high. Defendants' own documents repeatedly acknowledge the critical importance of legal counsel in ensuring against error, as "only a lawyer can tell you all of the rules [for various forms of relief]." Dkt. 299-1, Ex. L at HHS4505 (emphasis added). *See also* Ex. JJ at HHS002521 ("Without dedicated, professional legal counsel to write persuasive, detailed applications, gather supporting documentation, and in some cases, provide compelling oral arguments, [unaccompanied children] may have very limited success in obtaining relief in immigration court."); Dkt. 312-5, Ex. E at HHS004684-85 (acknowledging that unaccompanied children face "a complicated legal system," and stating

---

the threat of separation from family members and communities in the United States, including family members with lawful status. Some children also face a distinct deprivation of freedom because they are detained during the pendency of their immigration proceedings. *See* Br. of Amicus States of Washington and California at 10-11, *J.E.F.M. v. Lynch*, 15-35738 (9th Cir. Mar. 11, 2016), ECF 30.

that professional legal representation "increases the ability of [unaccompanied children] to obtain the relief for which they qualify," in addition to increasing the efficiency of the immigration court process); Swartz Depo at 28:18-29:17. *See also supra* Argument, I.A.1.

The statistical data further supports this uncontested fact: children who are pro se in their immigration proceedings fare much worse than their represented counterparts. Using data collected by the Government, Plaintiffs' statistical expert concluded that whereas 89.5% of pro se children are ordered deported, only 38.2% of represented children suffer that fate. *See* Ex. KK ("1st Long Report") at 9-10. That is, pro se children were 2.3 times more likely to be ordered deported than represented children. *See id.* at 10.[13] Moreover, pro se children are significantly more likely to be ordered removed in absentia than children with counsel: while approximately two thirds of unrepresented children—or 64.6%—were ordered removed in absentia, only 5.2% of represented children were ordered removed in that manner. *See id.* at 13.

Defendants attempt to rebut these stark statistical disparities by arguing that the effect is explained by attorney selection bias—that is, that represented cases have higher success rates only because attorneys screen for and select all of the "worthy" cases for representation, leaving only children with "unworthy" cases to navigate the immigration courts alone. But Defendants have failed to establish a triable issue of fact as to whether this factor explains the dramatic outcome disparity between represented and unrepresented children, for four reasons.

*First*, Defendants' assertion ignores evidence provided to the Government by its own legal services contractors, which shows that outcome disparities persist even amongst children screened for relief eligibility. A report by the Vera Institute of Justice—which administers a legal representation program on behalf of the Government—reports that, from August 2009

---

[13] These numbers likely under-represent the true effect of representation because the cohort included both pending and completed cases (although the outcomes are measured only as to completed cases). When looking at cases based only on case completion date, Plaintiffs' expert found the effect of representation is even larger: whereas 86-91% of unrepresented children receive deportation orders, only 16% of represented children were ordered deported. *See* 1st Long Report at 11-12.

until January 2015, 76% of unrepresented children in one of their sub-programs "ended up with legal case outcomes that required return to their home country," whereas only 8% of represented children in the same program did. *See* Dkt. 202, Ex. G at HHS2875-76. Critically, all of these children were screened as relief-eligible. *Id.* at HHS2876 ("[T]he reality is that without counsel, it is extremely difficult for children to establish the proof necessary to obtain legal relief, even when they are eligible for such relief."); *see also id.* at HHS2892-95.

*Second*, Defendants present *no evidence* to support their assertion that all or even most attorneys screen for "worthiness." Instead, Defendants' expert relied on an incomplete review of limited deposition testimony in this case to support that claim, along with her own personal experience that her "lawyer friends" select cases based on "worthiness." *See* Ex. L ("Pan Depo") at 163:7-165:19, 174:15-178:4. In contrast, uncontroverted evidence establishes that several large legal service providers funded by the Government's own programs provide universal representation regardless of relief eligibility. *See* 8th Kang Decl. ¶47. And a complete review of the testimony provided by attorneys and legal services providers makes clear that while some attorneys choose not to represent children who have little or no likelihood of success, others do not make representation contingent on the results of such screening. *See id.*; Ex. J ("Nguyen Depo") at 50:14-51:8, or apply an expansive definition of "success," Thronson Depo at 24:2-17 ("[T]here is always some hope of relief in a case."); Stotland Depo at 28-29.

*Third*, Defendants' alternative explanation for the dramatic outcome disparity between represented and unrepresented children fails to account for the fact that attorneys have no clear way to distinguish between "worthy" and "unworthy" cases, both because initial screenings often do not reveal the complete picture of a case and because discretion is often a key factor in determining whether a child will win or lose. *See* Dkt. 233 ¶12; *see also* Thronson Depo at 24:9-15; 8th Kang Decl. ¶47.[14] The "worthiness" of a case also cannot be measured in the

---

[14] Notably, Defendants' expert failed to consider the discretionary nature of case "worthiness" when analyzing its

1    abstract because some adverse outcomes are worse than others. For example, voluntary

2    departure may be preferable to a deportation order for some children, but a child who is only

3    eligible for voluntary departure would still be considered "unworthy" by most measures,

4    because the likely outcome is adverse: having to leave this country. *See also* Pan Depo at

5    122:7-16 (acknowledging that different attorneys might measure worthiness differently).

6            *Fourth*, this argument—that attorney selection bias can explain the significant

7    differences in outcomes between represented and unrepresented children—wrongly assumes

8    that there is an adequate supply of attorneys to represent children in immigration proceedings

9    both nationwide and in specific geographic areas, when that is plainly not the case. *See* 1st

10   Long Report at 18-20. Uncontested data—as presented in both sides' statistical reports—

11   establishes that nationwide representation rates decrease as the number of cases entering the

12   immigration court system increases, demonstrating that there is a shortage of attorneys to take

13   on these cases. *See id.* at 19-20; *see also* Ex. LL ("2nd Pan Report") at 15 (Figure 2). The data

14   also show significant disparities in representation rates by geography, which would be entirely

15   inexplicable if attorneys were selecting cases based on worthiness. *See* 1st Long Report at 20.

16          Defendants' expert's only response to this data was unsupported speculation that

17   geographic disparities could be due to more "unworthy" children being in one region than

18   another, *see* Pan Depo at 233, but speculation cannot suffice to create a genuine dispute at

19   summary judgment. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir.

20   1996) (noting that "mere allegation and speculation do not create a factual dispute for purposes

21   of summary judgment"). That rule has particular force here, where Defendants' speculative

22   explanation is contradicted by the testimony of legal service providers that they regularly turn

23   away children with viable claims because of resource shortages. *See, e.g.*, Dkt. 234 ¶¶4-6;

24   Stotland Depo at 32:21-34:6. Thus, many relief-eligible children do not secure representation.

25
_____

26   significance in her report. *See* Pan Depo at 116:6-120:22.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Finally, in contrast to the overwhelming evidence—statistical, testimonial, and expert—that represented children win at far higher rates, Defendants have presented *no evidence* that any of the safeguards they advocate actually produce more favorable outcomes. The evidence supports only one conclusion: without legal representation, the risk of error is extremely high.

**C. Defendants' Competing Interests Do Not Outweigh Those of the Plaintiffs.**

Defendants will likely claim that Plaintiffs' interests are outweighed by the fiscal interests of the Government. But there can be no genuine dispute that this competing interest cannot outweigh the child Plaintiffs' interests in representation—a fact best evidenced by Defendants' spending millions of dollars providing legal representation for children. *See, e.g.*, Dkt. 299, Ex. J at 24:1-26:2 (discussing EOIR-funded counsel programs); Dkt. 299, Ex. W at EOIR522 (announcing "justice Americorps" program to provide legal services to unaccompanied children under the age of 16 in certain geographic locations); Dkt. 312-5, Ex. E at HHS4669-4675, 4685 (describing FY2016 $8.3 million budget for direct representation of children in the Ninth Circuit). The Government would have no reason to spend so many resources if it did not have a significant interest in counsel for children. *See* Dkt. 299, Ex. X at HHS002875-76 (comparing case outcomes for children by representation status).

Providing counsel for children actually *advances* several governmental interests, such as efficiency increases in the immigration court system, Dkt. 312-5, Ex. E at HHS004685, that offset to some extent the cost of providing legal representation to children. For example, represented children are less likely to fail to show up to court and receive in absentia orders, *see supra* Argument, II.B, and the Government has an interest in increasing the integrity of the removal hearing process by ensuring that children appear in court.

In addition, the Government's interest in the fair and accurate adjudication of immigration cases also weighs in favor of the child Plaintiffs. The public has an interest in the welfare of children who are living in the United States and seeking protection within its

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98101
Tel. (206) 957-8611

borders. *See, e.g.*, Br. of Amicus States of Washington and California at 3, *J.E.F.M. v. Lynch*, 15-35738 (9th Cir. Mar. 11, 2016), ECF 30 ("As *parens patriae*, the amici States are concerned that children residing within our State borders—especially those a State has already deemed to be dependent—will continue to be forced to represent themselves in immigration court, in proceedings where there is no other party arguing on behalf of the child and where the child's best interest is not the governing standard."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Defendants' own IJs share this interest in accurate and just adjudication of cases. *See* Lang Depo at 18:2-8; Weil Depo at 78:18-24. And because the Plaintiff Class includes children who are potentially eligible for relief from persecution, the nation as a whole has a deep interest in seeing that its commitment to refugee protection and its duty of non-refoulement under the Convention Against Torture are met. *See* Br. of Human Rights Watch as Amicus Curiae at 12-14, *J.E.F.M. v. Lynch*, 15-35738 (9th Cir. Mar. 14, 2016), ECF 39-2.

*          *          *

For all of these reasons, analysis of the *Mathews* factors reveals no genuine dispute as to Plaintiffs' Due Process claim.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' motion for summary judgment and find that the Due Process Clause entitles the Plaintiff Class to appointed legal representation in their immigration proceedings. Alternatively, the Court should grant summary judgment and find that the Due Process Clause entitles the Subclass of children under 14 to appointed legal representation in their immigration proceedings.[15]

DATED this 11th day of August, 2016.

---

[15] Plaintiffs do not seek summary judgment on their statutory claim, which this Court has dismissed. Should the Ninth Circuit reverse that dismissal, Plaintiffs reserve the right to move for summary judgment on that claim here.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1

2          ACLU IMMIGRANTS' RIGHTS PROJECT
           ACLU OF SOUTHERN CALIFORNIA
3

4          By  s/ Ahilan Arulanantham
               Ahilan Arulanantham (*pro hac vice*)
5          1313 West 8th Street
           Los Angeles, CA 90017
6          (213) 977-5211
           (213) 417-2211 (fax)
7          Email:  aarulanantham@aclusocal.org

8

9          NORTHWEST IMMIGRANT RIGHTS
           PROJECT
10
           By   s/ Matt Adams
11             Matt Adams, WSBA No. 28287
           Glenda M. Aldana Madrid, WSBA 46987
12         615 2nd Avenue, Suite 400
           Seattle, WA 98104
13         (206) 957-8611
           (206) 587-4025 (fax)
14         Email: matt@nwirp.org
                  glenda@nwirp.org
15

16         Theodore J. Angelis, WSBA No. 30300
           Todd Nunn, WSBA No. 23267
17         K&L GATES LLP
           925 Fourth Avenue, Suite 2900
18         Seattle, WA  98104
           Phone:  (206) 623-7580
19         Fax:  (206) 623-7022
           Email: theo.angelis@klgates.com
20                todd.nunn@klgates.com
21

22         Cecillia Wang (*pro hac vice*)
23         Stephen Kang (*pro hac vice*)
           ACLU IMMIGRANTS' RIGHTS PROJECT
24         39 Drumm Street
           San Francisco, CA 94111
25         (415) 343-0770

26

(415) 343-0950 (fax)
Email: cwang@aclu.org
      skang@aclu.org


Carmen Iguina (*pro hac vice*)
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211
(213) 417-2211 (fax)
Email: ciguina@aclusocal.org


Kristen Jackson (*pro hac vice*)
Talia Inlender (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
(213) 385-9089 (fax)
Email: kjackson@publiccounsel.org
        tinlender@publiccounsel.org


Margaret Chen, WSBA No. 46156
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
(206) 624-2184
Email: mchen@aclu-wa.org


Melissa Crow (*pro hac vice*)
Kristin Macleod-Ball *(pro hac vice)*
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7500
(202) 742-5619 (fax)
Email: mcrow@immcouncil.org
        kmacleod-ball@immcouncil.org

*Attorneys for Plaintiffs-Petitioners*

1

CERTIFICATE OF ECF FILING AND SERVICE

2

3
I certify that on August 11, 2016, I arranged for electronic filing of the foregoing document
with the Clerk of the Court using the CM/ECF system, which will send notification of such
4
filing to all parties of record:

5

6
   s/ Glenda M. Aldana Madrid
7
Glenda M. Aldana Madrid
615 2nd Avenue, Suite 400
8
Seattle, WA 98104
(206) 957-8646
9
(206) 587-4025 (fax)
Email: glenda@nwirp.org

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLS.' MOT. FOR SUMM. J. - 33
Case No. 2:14-cv-01026-TSZ