1

2

3

4

5

6

7

8

9

Honorable Thomas S. Zilly

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.L.B., a minor, by and through his Next
Friend, Casey Trupin, et al.,

Plaintiffs,

v.

LORETTA E. LYNCH, Attorney General,
United States, et al.,

Defendants.

No. 2:14-cv-01026

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
September 2, 2016

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

## INTRODUCTION

For the Court to grant Plaintiffs' motion for summary judgment, it must reach five separate conclusions, each of which is contrary to precedent and the undisputed record evidence.[1]

First, the Court would have to issue an advisory opinion striking down three unambiguous acts of Congress[2] in the absence of *any* record evidence that unaccompanied minors who show up to immigration court are being erroneously removed without counsel in the Ninth Circuit[3]. Second, the Court would have to unprecedentedly declare that taxpayers are required to fund legal representation to individuals in civil administrative proceedings where physical liberty is not at issue. Third, even if a right to counsel could be found where physical liberty is not at stake, the Court would have to further negate precedent to declare that named Plaintiffs—non-admitted aliens, many of whom were apprehended at the port of entry and at the border, are undisputedly at the lowest ebb of the procedural due process spectrum—nonetheless have a liberty interest in being granted relief from removal that is so significant as to constitutionally mandate the provision of taxpayer-funded counsel.[4]

Fourth, the Court would have to find that the record evidence undisputedly shows that the vast array of existing procedural protections is insufficient to protect any rights of Plaintiffs, even though the undisputed record evidence shows that (1) immigration courts within the Ninth

---

[1] These five conclusions do not include the decision to disregard Congress's clear statement in 8 U.S.C. § 1252(b)(9) that all questions of law and fact arising from removal proceedings must be brought as part of a petition for review of a final order of removal. The Court can and should revisit this decision in light of Plaintiffs' statement that "if you just take the last ten years, there's been about 22,000 children—pro se children who have been ordered removed. That's a lot of time for one child to file any issue, a petition for review pro se, and it has never happened . . . ," ECF 110 at 43, despite counsel for Plaintiffs having previously raised the same constitutional claim they raise here in a petition for review on behalf of a previously *pro se* juvenile in *Guzman-Heredia v. Gonzalez*, No. 04-72769 (9th Cir.), failing to argue there that the Ninth Circuit was an inadequate forum for such claims. *See* Ex. A, Petitioner's Opening Brief, Reply Brief, *Guzman-Heredia*, No. 04-72769.

[2] *See* 8 U.S.C. §§ 1229a(b)(4); 1232(c)(5), 1362.

[3] Defendants' response limits its discussion to facts within the Ninth Circuit because this is the geographical scope of the class certified by the Court and other circumstances may exist in other circuits. *See* ECF 309.

[4] The Third Circuit recently reiterated the Supreme Court dictate that aliens seeking initial admission, such as Plaintiffs, and apprehended at or within mere hours of crossing the border "'ha[ve] no constitutional rights regarding their admission.'" *Castro v. United States Dep't of Homeland Sec.*, No. 16-1339, __F.3d__, slip op. at 67-68 (3d Cir. Aug. 29, 2016) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 1
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

Circuit successfully use existing procedural protections to safeguard minors' rights and (2) minors succeed in obtaining relief from removal under existing procedural protections.[5]

Finally, the Court would have to find—based on inadmissible expert and fact testimony and despite no evidence that unrepresented minors lacking adult assistance are being erroneously ordered removed on the merits of their cases—that every minor should be treated identically no matter their age or mental capacity, despite governing case law holding that procedural due process issues must be decided on a case-by-case basis. Given that none of these conclusions can permissibly be reached, the Court should deny Plaintiffs' motion for summary judgment.

## ARGUMENT

As the party with the burden of persuasion at trial, to prevail on summary judgment, Plaintiffs "must establish *beyond controversy* every essential element" of their claim. *S. Cal.Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (emphasis added). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

### I.     A Constitutional Right to Taxpayer-Funded Counsel in Civil Removal Proceedings Where Physical Liberty is Not at Issue is Wholly Unprecedented.

Contrary to Plaintiffs' assertion, no precedent holds that individuals in civil or administrative proceedings where physical liberty is not at stake have a categorical right to taxpayer-funded counsel. The one case Plaintiffs cite for this proposition, *Turner v. Rogers*, 564 U.S. 431 (2011), actually *supports* Defendants' position. To the extent Plaintiffs would have it otherwise, they rely on glancing and distinguishing statements clearly made in *dicta*.

First, under *Turner*, a categorical entitlement to appointed counsel for an entire class of litigants who do not face a loss of physical liberty is inappropriate. As *Turner* explained, Supreme Court precedent firmly indicates that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty," *id.* at 442–43. Further, a right to counsel exists "only in cases involving incarceration, not that a right to counsel

---

[5] This evidence underscores the fact that Plaintiffs' case is based entirely on speculation about what *might* happen in hypothetical minors' cases. Mere theoretical discussions are an insufficient basis for creating a significant new taxpayer liability that substantially infringes on the Government's ability to enforce the immigration laws.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 2
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

exists in all such cases."[6] *Id.* at 443. Indeed, *Turner* declined to hold that appointed counsel was required in all civil contempt cases even where incarceration was at stake. Here, Plaintiffs do not face imprisonment, but rather denial of admission to the United States in civil proceedings. *Turner* also recognized "that sometimes assistance other than purely legal assistance . . . can prove constitutionally sufficient" to protect whatever interest may be at stake in specific situations, even where only one party has counsel. *Turner*, 131 S. Ct. at 2519. Therefore, *Turner* supports Defendants' position that the Constitution does not mandate a categorical right to appointed counsel for all minors in removal proceedings.[7]

Nonetheless, Plaintiffs appear to claim that language in *Turner*, not implicated in its holding, established an additional procedural due process standard that governs this case. According to Plaintiffs, in any case where complex laws are involved in a proceeding and only one side is represented, *Turner* suggests that appointed counsel is required. However, the relevant language in *Turner* established no such rule and is wholly inapplicable here. Rather, *Turner* states:

> We do not address civil contempt proceedings where the underlying child support payment is owed to the State, for example, for reimbursement of welfare funds paid to the parent with custody . . . . Those proceedings more closely resemble debt-collection proceedings. The government is likely to have counsel or some other competent representative. . . . And this kind of proceeding is not before us. Neither do we address what due process requires in an unusually complex case where a defendant "can fairly be represented only by a trained advocate."[8]

---

[6] After reiterating this general rule, *Lassiter v. Dep't of Soc. Servs of Durham Cnty., N.C.*, 452 U.S. 18 (1951), did allow that in individual parental-rights termination proceedings where "the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak," this presumption could be overcome. *Id.* at 31. However, *Lassiter* only did so because, among other factors, it reasoned that "the parent's interest is an extremely important one (and may be supplemented by the dangers of criminal liability inherent in some termination proceedings)" and the state had a weak pecuniary interest. *Id.* Here, Plaintiffs do not establish strong private interests, *see infra* Sec. II, and Defendants face an extreme economic burden, *see infra* Sec. V. Thus, the occasional possibility of an exception to the general rule that due process requires counsel only where physical detention is at stake recognized in *Lassiter* does not encompass Plaintiffs' claim for appointed counsel.

[7] Cases recognizing a deprivation associated with removal addressed *deportation*, not denial of admission. *See, e.g.*, *Costello v. I.N.S.*, 376 U.S. 120, 128 (1964) ("'[D]eportation is a drastic measure and at times the equivalent of banishment or exile . . . . It is the forfeiture for misconduct of a residence in this country.'") (quoting *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948)); *Castro*, No. 16-1339, slip op. at 58–63. Plaintiffs, however, are newly arriving aliens who have never been lawfully admitted to the United States. They are not like the aliens in these cases who have established significant roots in the United States.

[8] Plaintiffs at times refer to these two considerations as "case complexity" and "asymmetry of representation," but the latter term is inaccurate. *Turner* referred to "asymmetry of representation" when discussing custody proceedings

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 3
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

564 U.S. at 449 (internal citation omitted). As *Turner* explicitly recognized, such situations did *not* pertain to the case at bar. *Id.* Thus, any throwaway, speculative statements the Court made in *Turner* about other types of proceedings clearly lack precedential value. *United States v. Armijo*, 5 F.3d 1229, 1233 (9th Cir. 1993) (statements comprising dicta are not binding).

Further, these considerations noted in *Turner* pertain to proceedings significantly different from immigration court. First, where the government itself enforces a child support obligation, the Defendant faces the possibility of criminal charges leading to imprisonment or restitution, *see, e.g.*, Cal. Penal Code § 270, in addition to civil contempt imprisonment until the debt is paid.[9] In state court, civil contempt defendants can receive up to the same degree of protection as an ordinary criminal defendant. *See, e.g.*, *Hicks v. Feiock*, 485 U.S. 624, 647 (1988) ("California courts have held that civil contempt proceedings are quasi-criminal under state law"); *cf. In re Gruntz*, 202 F.3d 1074, 1086 (9th Cir. 2000) (upholding state criminal conviction of Chapter 11 debtor for child-support delinquency and noting "any criminal prosecution of the debtor is on behalf of all the citizens of the state, not on behalf of the creditor"). Whatever their label, Government-initiated proceedings against child-support delinquents are clearly far closer to criminal proceedings than are the removal proceedings at issue in this case. *See Hicks*, 485 U.S. at 646 ("The substance of particular contempt proceedings determines whether they are civil or criminal, regardless of the label attached by the court conducting the proceedings. . . . Civil contempt proceedings are primarily coercive; criminal contempt proceedings are punitive." (internal citations omitted).

First, it is undisputed that the Plaintiffs do not face incarceration or restitution payments as a result of their removal proceedings. Second, although Immigration and Customs Enforcement ("ICE") attorneys represent the Government's interest in immigration court, they are not

---

initiated by a complaining parent, and clearly held there that appointing counsel for the complainant would not be warranted because it would disadvantage one private party over another and possibly "make the proceedings less fair overall." 564 U.S. at 447; *see State, Dep't of Family Servs. v. Currier*, 295 P.3d 837, 842–43 (Wyo. 2013).

[9] It is unclear whether such proceedings could properly even be termed "civil." Courts apply a functional test to differentiate the two and look to the justifications for the contempt proceedings to determine their character. *See Hicks*, 485 U.S. at 646; *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 847 (1994) (Ginsburg, J., concurring).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 4
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

prosecutors, *see* Ex. B, Deposition of Gregory Fehlings, at 29:22–24; Black's Law Dictionary (10th ed. 2014) (defining a publicly employed prosecutor as a "legal officer who represents the state or federal government in criminal proceedings"),[10] and their role in immigration court is not as adversarial as that of a prosecutor in criminal prosecutions. Plaintiffs provide no evidence to genuinely dispute that proceedings in an immigration court can vary from adversarial, non-adversarial, to inquisitorial, "depending upon the particular matter before the Court and the stage of the proceeding." Ex. B, at 30:9–18. An immigration court proceeding is less adversarial and more inquisitive than an Article III court proceeding. *Id.* 31:1–10; *see Fisher v. I.N.S.*, 79 F.3d 955, 972 (9th Cir. 1996) (en banc) (explaining that an IJ is "in a position analogous to that of an administrative law judge hearing a Social Security claim. The [IJ] has, analogously, the 'special duty to fully and fairly develop the record' (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). This is especially true at the scheduling, or master calendar hearing, stage. Ex. B, at 31:9–10. While developing the record, an IJ has a duty to inform an alien when the record evinces "apparent eligibility" for relief. 8 C.F.R. § 1240.11(a)(2); *United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010). As a result, ICE attorneys will affirmatively volunteer such information to the court where it might otherwise be overlooked. Ex. B, at 33:1–12. Further, ICE attorneys will not oppose a motion to reopen alleging that the respondent was inadequately advised of relief options if they agree that it was inadequate. Ex. B, at 39:16–22. This undisputed evidence indicates that ICE attorneys do not play a traditionally prosecutorial, fully adversarial role. The quasi-criminal, prosecutor-driven proceedings *Turner* references in dicta is thus inapposite.

As for the *Turner* court's passing reference to "an unusually complex case," the Court did not elaborate. Regardless, Plaintiffs proffer no evidence showing that the named Plaintiffs or class members have "unusually complex" immigration cases. Plaintiffs argue that immigration law is categorically complex, and cite a federal court's comparison of immigration law with federal tax

---

[10] They have some prosecutorial characteristics, however, in that they exercise prosecutorial discretion to close or dismiss cases, and they are shielded by the doctrine of prosecutorial discretion. Ex. B, at 29:20–30:7. These "prosecutorial" characteristics, however, are not adversarial, *id.* 31:16–23, and are either unrelated to or beneficial to the interests of minors in removal proceedings.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 5
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

law. ECF 342 at 3 ((quoting *Baltazar-Alcanzar v. INS*, 386 F.3d 940, 948 (9th Cir. 2004)).[11]

Plaintiffs, however, fail to complete the syllogism. If legal complexity was determinative of a right to appointed counsel, such a right would be more necessary in Tax Court proceedings than in immigration court. However, there has never been a due process right to appointed representation in tax proceedings. *See Crane-Johnson Co. v. Comm'r of Internal Revenue*, 105 F.2d 740, 744 (8th Cir. 1939); *Boyd v. C.I.R.*, 117 T.C. 127, 133 (2001);[12] *Olympic Shipping Lines, Inc. v. C. I. R.*, 62 T.C.M. (CCH) 1546 (T.C. 1991). Indeed, under Plaintiffs' logic, if the complexity of the governing law, and the petitioner's lack of mastery over it, dictated a right to appointed counsel on its own, such a right would necessarily extend to all lay adults in removal proceedings, and indeed, in all administrative proceedings—such as tax, Social Security, veterans' benefits, etc.—where potentially pro se, lay applicants navigate nuanced agency requirements for obtaining public benefits.

However, even though courts recognize the complexity of the proceedings, Ninth Circuit precedent clearly establishes that there is no right to appointed counsel in removal proceedings (for adults at the least). *United States v. Cerda-Pena*, 799 F.2d 1374, 1376 n.2 (9th Cir. 1986); *United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir. 1975).[13] Further, adults generally do not enjoy a right to appointed counsel in similar administrative adjudications. *See, e.g.*, *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990) (noting that "Social Security benefits law involves a complex statutory and regulatory framework"); *Bagby v. Harris*, 650 F.2d 836,

---

[11] For its part, *Baltazar-Alcanzar* did *not* find that the complexity of immigration laws inherently necessitated appointed counsel. *See* 386 F.3d at 944–45.

[12] Plaintiffs note that Defendants undertake extensive efforts to inform aliens of their right to retain counsel and have made statements regarding the potential benefits of doing so. ECF 342 at 5. However, it does not follow that, because Defendants ensure that aliens know of their statutory right to counsel or state that counsel can improve the efficiency of proceedings, counsel is constitutionally required at taxpayer expense. Indeed, Plaintiffs fail to point to any legal authority suggesting otherwise. Due process does not dictate that there is only "one constitutionally acceptable method" to achieve fair proceedings; the Constitution does not prevent the Government from employing "alternative means to achieve that goal." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

[13] Indeed, these cases spoke categorically and did not distinguish between adults and minors, ECF 51-1 at 10 (*Machado v. Ashcroft*, No. CS-02-066 (E.D. Wash. June 18, 2002)), and thus should bar at least Plaintiffs' categorical, class-wide claim. Further, Congress clearly created a limited right to be represented by an attorney in immigration proceeding at no government expense. 8 U.S.C. §§ 1229a(b)(4), 1232(c)(5).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 6
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

839 (6th Cir. 1981) (Social Security Administration has no due process duty to appoint counsel for each claimant); *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 331–34 (1985) (fee limitation on retention of counsel in veterans' benefits proceedings did not violate due process, despite "complex issues of causation" in some veterans' cases and evidence showing that represented claimants had higher success rates); *Boyd*, 117 T.C. at 133. Plaintiffs point to states' provision of counsel to minors in wholly inapposite state proceedings such as those concerning criminal and parental rights' issues, ECF 342 at 12–13, based on state rules that merely conform with the dictates of the Supreme Court. *See, e.g.*, *Lassiter*, 452 U.S. at 32; *In re Gault*, 387 U.S. 1, 41(1967) (providing for appointment of counsel in child juvenile proceedings where the minor faces detention). Plaintiffs have not cited any categorical right of minors to appointed counsel in comparable federal administrative adjudications, such as is immigration court—where the Supreme Court has not mandated appointed counsel. *See, e.g.*, *Machadio v. Apfel*, 276 F.3d 103, 107 (2d Cir. 2002) (holding that "non-attorney parent may bring an action on behalf of his or her child without representation by an attorney"); *Johnson ex rel. Johnson v. Barnhart*, 348 F. Supp. 2d 1284, 1291 (M.D. Ala. 2004) (minor's due process rights were not violated as a result of failure to procure counsel in social security benefits proceeding because administrative judge provided sufficient notice to parent of right to retain counsel).

Finally, contrary to Plaintiffs' assertion, *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004), does not suggest otherwise. *Jie Lin* held that permitting the alien minor to be represented by an obviously unprepared attorney violated his statutory right to retained counsel "at no expense to the Government," and the court should have continued the hearing until Jie Lin could obtain new, competent counsel. *Id.* at 1027, 1033–34. *Jie Lin* said the IJ might also have "sua sponte taken steps to procure competent counsel." *Id.* at 1034. Here, such precautions and affirmative steps to help minors obtain counsel as suggested by *Jie Lin* are being taken, *see* ECF 346, at 10–27; *see also infra*. Finally, as is the rule with procedural due process claims, *see, e.g.*, *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1085 (9th Cir. 1996), *Jie Lin* addressed such a claim on a case-by-case basis and found that the minor had been prejudiced because Lin had "a plausible claim for relief" that his counsel's incompetence prevented him from raising. *Id.*

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 7
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

at 1027–31. Plaintiffs have produced no evidence that any named Plaintiff or class member has been prejudiced thus far in their proceedings due to the absence of counsel.[14]

## II.  Plaintiffs' Private Interest in Appointed Counsel is Low.

Plaintiffs claim that their private interests are weighty, but produce insufficient competent evidence to establish the lack of a genuine issue of material fact or a right to judgment. *See Celotex Corp.,* 477 U.S. at 322. First, they claim that Plaintiffs have a liberty interest in avoiding removal, but cite a case addressing the pre-IRIRA concept of deportation, which does not apply to Plaintiffs.[15] ECF 342 at 24 (citing *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987)). The named Plaintiffs and class members are not legally admitted aliens, but aliens who have not yet been admitted and would have been considered excludable, not deportable, under the pre-IRIRA regime. Deportation is a severe consequence because an alien stands to forfeit her residence in and possibly years of accumulated connections during previously lawful status in the United States. *See Costello v. I.N.S.*, 376 U.S. 120, 128 (1964); *Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950). However, non-admitted aliens only recently come to the country, who are only allowed inside to participate in their removal proceedings, such as Plaintiffs, lack the time and legal authorization to establish such relationships and material connections, separation from which would make exit from the United States a deprivation. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Castro*, No. 16-1339, slip op. at 58-63; *Wilson v. Zeithern*, 265 F. Supp. 2d 628, 634–35 (E.D. Va. 2003). To the extent that any liberty interest in avoiding denial of admission exists, Plaintiffs cite to no precedent in support of such an interest, and it is necessarily far less weighty than a lawfully admitted alien's interest in avoiding deportation.

While an alien claiming to be a U.S. citizen may have a stronger interest in avoiding removal, *see Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922),[16] Plaintiffs have produced

---

[14] Further, minors who ultimately gain representation would have the same rights to pursue ineffective assistance of counsel claims as those discussed in *Jie Lin*.

[15] *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34 n.1 (2006).

[16] *Nung Fu Ho* addressed whether aliens claiming U.S. citizenship were entitled to judicial review at all, not whether they were entitled to such additional benefits as appointed counsel. 259 U.S. at 282. Moreover, *Nung Fu Ho* explicitly conditioned its conclusion on the fact that, unlike Plaintiffs, the aliens there were initially legally admitted,

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

insufficient evidence that any named Plaintiffs have plausible citizenship claims. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). Here, Plaintiffs appear to refer to the allegations concerning A.F.M.J. and L.J.M. in an attachment to interrogatory responses submitted on the final day of discovery, ECF 346-8 at Att. B, p ii, vi, and representations that the siblings' mother has made to the immigration court. However, despite a robust presence of counsel in the instant case, Plaintiffs have failed to produce any documentary evidence in this case to sufficiently substantiate these citizenship allegations throughout the course of discovery. Such unsupported assertions are insufficient to establish a viable claim to citizenship at the summary judgment stage. *See Nelson*, 83 F.3d at 1081–82.

Second, in an attempt to establish their interests in avoiding removal, Plaintiffs make conclusory claims relying on these eleventh-hour narratives they attached to their discovery responses. *See* ECF 342 at 25. At least in some instances, the information contained in these narratives directly contradicts responses provided by the named Plaintiffs or their next friends during deposition testimony. To the extent that these responses conflict with this prior deposition testimony, they should be ignored for summary judgment purposes. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). Specifically, neither F.L.B. nor E.G.C.'s next friend, Sonia McLeod, testified to any circumstances suggesting "additional serious deprivation" if denied admission and removed. ECF 346 at 9–11, 21–23. Further, the only claim for relief Plaintiff Marvin Aguilar Mendoza has raised—adjustment based on Special Immigrant Juvenile status—is a discretionary determination in which he necessarily lacks a liberty interest. ECF 346 at 13; *I.N.S. v. Abudu*, 485 U.S. 94, 105 (1988). Finally, Plaintiffs' conclusory claim that "A.F.M.J. and L.J.M., face expulsion from their country of citizenship," ECF 342 at 25, is not only premature—as their citizenship is far from established—

and not non-admitted aliens stopped at the border or who entered illegally, in which case "the mere fact that they claimed to be citizens would not have entitled them under the Constitution to a judicial hearing." *Id.*

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 9
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

but, as noted, evidence has not been provided to sufficiently support this assertion. In sum, Plaintiffs' evidence of their private interests fall far short of entitling them to summary judgment.

### III. Plaintiffs Cannot Establish that the Existing Safeguards, Taken Together, Fail to Sufficiently Prevent a Risk of Erroneous Deprivation

Plaintiffs argue that none of Defendants' procedural safeguards, operating individually, constitute an adequate substitute for counsel. Plaintiffs, however, incorrectly apply the second prong of *Mathews* to this case. The issue is not whether any particular procedural safeguard acts as the equivalent of appointed counsel, but rather whether the existing procedural safeguards, viewed collectively, are so inadequate as to subject Plaintiffs to a meaningful *risk of erroneous deprivation* of any cognizable due process rights. Here, the government has implemented meaningful procedural safeguards protecting minor's due process rights throughout the course of their removal proceedings, some of which are highlighted below. *See also* ECF 346, at 25–28. Tellingly, Plaintiffs overlook the facts as they pertain to the named Plaintiffs, current and former, and class members. Those facts demonstrate that any risk of erroneous deprivation is, at best, theoretical. Indeed, despite many named Plaintiffs having entered removal proceedings years ago, *none* have even been forced to proceed to merits hearings without representation.[17]

First, for an unaccompanied alien child ("UAC"), the Government's procedural safeguards begin when the UAC is encountered and placed in the custody of the Department of Health and Human Services' ("HHS"), Office of Refugee Resettlement ("ORR"). HHS, in accordance with the TVPRA as set forth in 8 U.S.C. § 1232(c)(5), funds programs that provide attorneys for unaccompanied minors in removal proceedings in California, Nevada, Arizona, Washington, Oregon, Idaho, Alaska and Hawaii, for the current fiscal year.[18] ECF 312-5, at 2, 8. In fiscal year 2016, HHS provided total funding of $12,681,701.66 for these programs. *Id.* at 2.Even following release from ORR care and custody, HHS continues to provide pro bono and direct representation efforts for UACs. *Id.* at 18. Specifically, legal services provided for UACs

---

[17] Indeed, Plaintiff Marvin Aguilar Mendoza, who is now 18, has continued to obtain continuance after continuance even after reaching the age of majority. See ECF 346, at 12–15.

[18] ORR directs that legal service providers conduct legal screening and "Know Your Rights" presentation within seven to ten days of UAC admission into ORR care. ORR obtains direct representation for UACs who lack reunification options (regardless of whether any relief from removal can be identified).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 10
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

currently or formerly in ORR custody include: (1) pro bono representation to the greatest extent practicable, (2) direct representation to the greatest extent practicable, (3) screenings for legal relief and for human trafficking concerns, (4) Friends of the Court ("FOC") services where applicable, and (5) Know Your Rights presentations. *Id.* at 18–24. Notably, ORR also directs that legal service providers provide direct representation to UACs who were released in Los Angeles and Phoenix. *Id.* at 18. Further, ORR directs that the legal service providers must collaborate with the Executive Office for Immigration Review ("EOIR") in providing legal orientation presentations to UAC sponsors. *Id.*

Second, the immigration courts in the Ninth Circuit have taken a number of steps to facilitate *pro bono* representation for all cases, including those involving children. *See generally* ECF 346-10, Declaration of Assistance Chief Immigration Judge Rodin Rooyani; ECF 346-11, Declaration of Assistant Chief Immigration Judge Amy C. Hoogasian. For example, IJs in the Los Angeles immigration court regularly meet with advocacy organizations and pro bono attorneys to facilitate access to counsel, expand the pro bono resource network, and monitor the capacities of various organizations providing pro bono services. *See* ECF 346-11, ACIJ Rooyani Decl. at ¶ 6. The San Francisco immigration court coordinates with the Bar Association of San Francisco to implement a pro bono "attorney of the day" program, so that an attorney is present at many of the UAC and adults with children master calendar dockets.[19] *See* ECF 346-10, Hoogasian Decl. at ¶ 7.

EOIR also operates several initiatives throughout the Ninth Circuit that encourage legal access for UACs and supplement pro bono services. For example, EOIR offers legal orientation presentations to the adult custodians of unaccompanied alien children (and often to the children themselves) in removal proceedings through its Legal Orientation Program for Custodians of Unaccompanied Children ("LOPC"). ECF 238-4, EOIR's Office of Legal Access Programs (Oct. 22, 2014). In addition, the IJs in the San Francisco and Los Angeles immigration courts share

---

[19] For its part, the Seattle immigration court has also taken steps to facilitate representation for minors by working with various legal service providers who desire to represent or assist unrepresented minors appearing before the court. *Id.* at 8.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 11
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

calendaring information pertaining to the unaccompanied children and juvenile dockets with LOPC providers and other interested *pro bono* organizations, which allows those providers to be present at initial master calendar hearings on those dockets. ECF 346-10, ACIJ Hoogasian Decl. at ¶ 10; ECF 346-11, ACIJ Rooyani Decl. at ¶ 8. The Courts also make courtroom space available to the LOPC providers so that they can meet with the children and their sponsors, provide legal orientations, and help connect them with pro bono organizations and services. *Id.*

Due to this coordination, IJs are acutely aware of the resources and needs of the pro bono organizations available to immigrant minors and take steps to respond to those needs. *See* ECF 346-10 at ¶ 12; ECF 346-11 at ¶ 7. Most importantly, IJs grant appropriate continuances to allow unrepresented UACs to take advantage of these various pro bono resources and EOIR initiatives. *See id.*; *see also* Office of the Chief Immigration Judge ("OCIJ"), Operating Policy and Procedures Memorandum 08-01 (2008) at 4, 8.[20] Indeed, the OCIJ has made clear that "nothing in the priority scheduling of cases involving [unaccompanied children] . . . for a first master calendar should inhibit a judge's discretion to reset the case to obtain representation." ECF 238-2, OCIJ, Docketing Practices Relating to Unaccompanied Children Cases (Mar. 24, 2015).

The prevalence and effectiveness of these practices can be seen in the number of dismissed Plaintiffs who found counsel after a series of continuances. *All* named Plaintiffs have received continuances, preventing them from moving forward to merits hearings in the absence of counsel. ECF 346, at 10–24. Further, after receiving continuances, both J.E.V.G. and S.R.I.C. both obtained counsel in their removal proceedings; S.R.I.C.'s proceedings were terminated upon filing an application to adjust status. Ex. C, S.R.I.C. Order.

Third, in all cases, IJs have constitutional, statutory and regulatory duties to protect an alien's statutory right to a full and fair hearing. These include: (1) advising aliens of their right to counsel at their own expense and the availability of free legal services; (2) explaining the factual allegations and charges in the alien's Notice to Appear; (3) refusing to accept admissions from an unrepresented individual under the age of 18 who is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend; (4) asking questions to elicit testimony

---

[20] This memorandum is available at https://www.justice.gov/sites/default/files/eoir/legacy/2008/04/24/08-01.pdf.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 12
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

on possible avenues of relief available to the alien and providing the opportunity to apply for forms of relief for which she may be eligible, and (5) otherwise fully developing the record. ECF 346, at 25–26; 8 C.F.R. § 1240.10(a), (c); 8 C.F.R. § 1240.11(a)(2); *United States v. Lopez-Velasquez*, 629 F.3d 894, 897 & n.2 (9th Cir. 2010).

Here, the record evidence clearly demonstrates how IJs fulfill these duties. Here, F.L.B. contacted NWIRP from the list of legal services providers given to him at the outset of his removal proceedings. ECF 346-13, at 16–17, and K.N.S.M., A.F.M.J., L.J.M., M.R.J., and J.R.A.P.'s parents and Next Friends all acknowledge receiving such a list. ECF 346-3, at 48–49, 55, 82, 85; ECF 346-5, at 26, 47; ECF 346-6 at 48–57. Further, in A.F.M.J. and L.J.M.'s cases, the IJ inquired and learned about their potential citizenship claims and, as a result, revoked his prior findings of removability at their last hearing. ECF 346-6, at 139–43.

Fourth, the presence of Friends of the Court also creates efficiencies in the courtroom and may enhance children's comprehension of their proceedings. *See* ECF 283-3; ECF 346, at 26–27. Although IJs remain responsible for explaining courtroom procedures and the child's rights in removal proceedings, an FOC can reinforce this information, answer questions, or alert the IJ if the FOC learns that the minor does not understand what is being said. *See generally* ECF 343-2, at 119–124. An FOC can also gather and convey basic information regarding the status of minors' cases to the court and help to connect minors to available community resources by, for example, referring minors and their custodians to pro bono legal and social service providers. *Id.* Here, counsel for Plaintiffs have availed themselves of the immigration courts' flexibility in accepting case information from third parties by submitting letters to the IJs about the underlying facts of some of the Plaintiffs' cases, *see, e.g.*, ECF 312-4, and, in some cases, officially appearing as FOC or otherwise making their assistance known to the IJ. ECF 346-3, at 67–70; ECF 346-6, at 130–131.

Fifth, the TVPRA provides additional protections for UACs applying for asylum by providing USCIS asylum officers with initial jurisdiction over any asylum application filed by an a UAC, including applications filed by UACs in removal proceedings. 8 U.S.C. § 1158(b)(3)(C); Ex. D, Declaration of Ted Kim. This provides those UACs with a non-adversarial asylum

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 13
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

1    interview and determination before USCIS. In proceedings involving an unrepresented UAC, the

2    IJ inquires as to whether the child has a fear of persecution or harm upon return to any country to

3    which the child might be removed. If the child expresses a fear of persecution or harm, the IJ (1)

4    advises the child that he or she may apply for asylum with USCIS, (2) makes available the

5    appropriate application and forms (i.e. Form I-589) and (3) explains the procedures for filing the

6    asylum application with USCIS. Once a UAC files an asylum application with USCIS, the IJ

7    may either continue the proceedings for that process to occur or administratively close the child's

8    immigration court case.

9        Notably, the Court has limited the theoretical reach of any right to counsel claims in this

10   matter to claims involving threat of persecution or torture upon removal.[21] *See* ECF 309 at p. 2.

11   In light of the TVPRA's protections, the supposed "asymmetry of representation" that Plaintiffs

12   claim is essential to their right to counsel claim *does not exist* with regard to these claims of

13   persecution or torture. Removal proceedings only serve as a "second-bite at the apple" where

14   minors can again make their asylum claim in the event they are denied asylum during the non-

15   adversarial USCIS process.[22] Here, J.E.F.M., J.F.M., D.G.F.M., and G.M.G.C. availed

16   themselves of the TVPRA's grant of initial jurisdiction over any asylum claim filed by an

17   unaccompanied minor; the F.M. siblings had their removal proceedings administratively closed

18   pending the outcome of their asylum applications, and G.M.C.G. received asylum through that

19   non-adversarial process. Ex. E, F.M. Administrative Closure Orders; Ex. F, G.M.G.C. Motion to

20   Terminate. Indeed, despite the fact that 95 percent of minors appearing before USCIS nationwide

21   are represented, 134 unrepresented UACs originally placed into removal proceedings

22   successfully obtained asylum from USCIS between October 1, 2014 and March 31, 2016. Ex. D,

23   Kim Decl. ¶¶ 10, 11.

24

25   _____

26   [21] As Defendants discussed in their motion for summary judgment, because asylum is discretionary relief, no alien
     has a constitutional right to discretionary relief and such, the only relevant relief at issue under the *Mathews* analysis
     would be withholding of removal and CAT relief.

27   [22] The totality of this process cannot be unconstitutional if the adversarial hearing only occurs as a "second bite,"
     given that the "first bite" is a non-adversarial hearing with no asymmetry of representation.

28

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 14
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

Finally, minors' parents are permitted to and often attend immigration court and assist or speak for their child and can serve as one effective safeguard to protect the child's interests.[23] ECF 346, at 28; *see, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012); *see also* ECF No. 289 at 8-9. Here, M.A.M., K.N.S.M., A.F.M.J., L.J.M., M.R.J., and A.E.G.E., and J.R.A.P. have all had the benefit of their mothers appearing in immigration court on their behalf.[24] ECF 346, at 12–22.

In sum, Plaintiffs' assertion that no genuine issues of disputed fact exist as to the efficacy of existing safeguards in preventing a risk of erroneous deprivation of Plaintiffs' cognizable interests is strongly contradicted by the evidence of record.

### IV.   Plaintiffs' Arguments Regarding the Per Se Mental Capacity of Minors and the Statistical Value of Attorneys are Misplaced and Insufficiently Supported.

Plaintiffs make blanket statements about the capacity of immigrant minors to represent themselves in removal proceedings and favorable outcomes arising from representation, but they fail to set forth any evidence that any class of unaccompanied minors is actually being forced to proceed *pro se* on the merits of their removal proceedings without adult assistance. Thus, their arguments about capacity are inapposite, because they fail to show that there is anything but a theoretical risk of erroneous deprivation in the event that the existing safeguards fail.[25] *See Nelson*, 83 F.3d at 1081–82 ("allegation and speculation" insufficient on summary judgment).

Regardless, Plaintiffs' evidence regarding the capacity of minors and the statistical value of attorneys, mostly set forth by their experts, David B. Thronson, Dr. Laurence Steinberg, and Susan Long, is fundamentally flawed; all three experts' testimony should be stricken for

---

[23] While parents or adult sponsors are generally expected to safeguard the child's best interest, IJs remain aware that in exceptional circumstances a sponsor or parent may not be looking out for the best interests of the child and they remain sensitive and keenly attuned to any signs of abuse or neglect, and address such issues, as appropriate, if and when they arise. *See, e.g.*, ECF 346-11, ACIJ Rooyani Decl. at ¶ 14.

[24] *See* IMMIGRATION AND NATIONALITY SERV., Office of the General Counsel, Elian Gonzalez Memorandum, Jan. 3, 2000, *available at* https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Archive%201998-2008/2000/ins_counsel_elian_gonzalez.pdf (addressing who has authority to speak for a child on immigration matters).

[25] Indeed, Plaintiffs have failed to provide evidence that even a single unaccompanied minor under the age of 14 in the Ninth Circuit has ever been required to proceed at a merits hearing without counsel, much less has been ordered removed erroneously. Therefore, Plaintiffs' motion for summary judgment on the Subclass should be denied.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 15
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

purposes of summary judgment or, alternatively, accorded minimal weight. Further, Plaintiffs'

lay witnesses offer improper testimony, by testifying to facts outside their personal knowledge.

Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Ninth Circuit has "interpreted Rule 702 to require that expert testimony

be both relevant and reliable." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th

Cir.), *cert. denied*, 135 S. Ct. 55 (2014). To aid courts in exercising its role as a "gatekeeper" to

the admission of expert testimony, the Supreme Court has suggested a flexible, non-exclusive list

of factors that a court may consider when determining the reliability of expert testimony.

*Daubert*, 509 U.S. at 592–94; *Messick*, 747 F.3d at 1197. While *Daubert* focuses on the

principles and methodology underlying an expert's testimony, not on the expert's conclusions,

509 U.S. at 595, "conclusions and methodology are not entirely distinct from one another." *Gen.

Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). As such, "[a] court may conclude that there is

simply too great an analytical gap between the data and the opinion proffered." *Id.*

Expert testimony "based directly on legitimate, preexisting research unrelated to the litigation

provides the most persuasive basis for concluding that the opinions [ ] expresse[d] were 'derived

by the scientific method.'" *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir.

1995) ("*Daubert II*"). Where not based on independent research, the testimony must be

supported by objective, verifiable evidence that it rests on scientifically valid principles, such as

peer review and publication in a reputable scientific journal. *Id.* at 1317–18. In the absence of

independent research or peer review, experts must explain the process by which they reached

their conclusions and identify some type of objective source demonstrating their adherence to the

scientific method. *Id.* at 1318–19; *Domingo v. T.K.*, 289 F.3d 600, 605–06 (9th Cir. 2002).

    A.   *David Thronson Cannot Be Considered An Expert, and His Conclusions are Insufficiently Supported.*

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 16
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

1    Plaintiffs tout the opinions reached by their proffered expert David B. Thronson, a clinical

2   law professor, in support of their arguments regarding the complexity of removal proceedings

3   and the capacity of minors to participate in such proceedings. However, Thronson's

4   qualifications and testimony plainly fail to meet the standards outlined in Rule 702.

5    As a threshold matter, to the extent Thronson offers opinions regarding the nature of removal

6   proceedings as they relate to minors, this Court does not need the assistance of an expert to

7   understand such commonplace administrative proceedings. *Washburn v. Gymboree Retail Stores,*

8   *Inc.*, No. C11-822RSL, 2012 WL 3908333, at *1 (W.D. Wash. Sept. 7, 2012) ("'Each courtroom

9   comes equipped with a "legal expert," called a judge. . . .'") (quoting *Burkhart v. Wash. Metro.*

10  *Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997); *United States v. Scholl*, 166 F.3d 964,

11  973 (9th Cir. 1999), *as amended on denial of reh'g* (Mar. 17, 1999).

12   Second, to the extent Thronson offers opinions regarding the mental and/or psychological

13  capacity of minors to proceed *pro se* in removal proceedings, Thronson, as a law professor and

14  practicing attorney, lacks the qualifications to opine on such a matter.[26] *See* ECF 212-1, at 80

15  Thronson Expert Rep., at 1. Even if he did have the requisite qualifications, his testimony is

16  based in insufficient facts and data as well as on unreliable methods. *See* FED. R. EVID. 702(1),

17  (2). His opinions are largely based on limited anecdotal information drawn from his personal

18  experiences representing minors in removal proceedings and hearsay from talking to other

19  advocates. *E.g.*, Ex. G, Deposition of David Thronson, at 97: 20–22, 98:22–99:9, 131:21–134:24.

20  Further, his opinions are necessarily informed by his subjective beliefs and financial stake in the

21  outcome of this litigation; his legal clinic is almost fully funded by ORR for the representation of

22  unaccompanied minors, Ex. G, at 53: 6–54:12, 154:3–17, and he repeatedly states his preference

23  _____

24  [26] Plaintiffs may point to Thronson's undergraduate degrees in mathematics and education, earned thirty one years

25  ago, his master's degree in mathematics education, earned twenty six years ago, and his three-year career as a high
    school mathematics teacher from 1988–1991 as somehow qualifying him to opine on the mental and psychological

26  capacities of immigrant minors as a whole. ECF 212-1, at 111, 113. However, any limited training on child
    psychology and childhood development he may have received as a student regarding mathematics education, and his

27  brief time as a high school teacher, cannot seriously be considered as sufficient expertise on which he may base his
    sweeping conclusions about how minors *per se* navigate removal proceedings.

28

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 17
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

for appointed counsel for all individuals under 21, *id.* 72:7–14 ("I prefer the . . . definition of a child which goes up to 21 because I'll take as much as I can get here."); *id.* 155:19–22.

Anecdotal information and subjective beliefs of this nature cannot properly form the basis of expert opinions of this magnitude, regarding the *per se* capacity of all minors and the wholesale state of affairs at immigration courts throughout the Ninth Circuit. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity."); *see also, e.g.*, *Democratic Party Washington State v. Reed*, No. C00-5419FDB, 2002 WL 32925223, at *15 (W.D. Wash. Mar. 27, 2002) ("[R]ather than the factual underpinnings consisting of empirical data, the witnesses' conclusions are supported by their experience (an amorphous matter in most cases), isolated anecdotal evidence, or belief. This kind of evidence going to critical aspects of this case does not make for proper opinion testimony—lay or expert—and it must be excluded.") (citing *Hestor v. BIC Corp.*, 225 F.3d 178, 182 (2d Cir. 2000)). Further, Thronson may not properly opine on the capacity of a *pro se* minor to receive a full and fair hearing at his or her removal proceeding because he concedes that he has *never* observed a *pro se* minor proceed beyond the preliminary master calendar stage of removal proceedings.[27] Ex. G, at 58:4–11, 116:12–15.

Even in the event that this Court chooses to consider Thronson's testimony, his conclusions should be accorded minimal weight, because they are founded on limited anecdotal information from his personal experiences representing minors in removal proceedings and anecdotal hearsay, as opposed to rigorous, testable analysis. His analysis of Defendants' safeguards as they relate to the Ninth Circuit, which is where all class members and all but one named Plaintiff is located, is particularly limited in utility, because he has not practiced immigration law anywhere in the Ninth Circuit in the past six years, Ex. G, at 34:11–14, a period in which the Ninth Circuit's immigration courts have seen significant changes in their caseloads and the enactment of the TVPRA's additional safeguards, which have impacted each court's conditions differently.

---

[27] He also failed to name a single situation in which he observed a young child even appearing at a master calendar hearing without the assistance of an adult. *See* Ex. G, at 55:24–56:3, 56:18–58:3, 109:16–22. .

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 18
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

Thronson's conclusions, even if accepted at face value, do not compel judgment in Plaintiffs' favor. At most merely create a genuine issue of disputed fact, given conflicting evidence in the record regarding (1) the collective value of the existing safeguards, and (2) Plaintiffs' failure to demonstrate that *pro se* minors are being required to proceed on the merits of their removal cases without the benefit of adult assistance at any measurable rate.

### B.  Dr. Laurence Steinberg's Research and Expertise is Inapposite to the Conclusions He Reaches in this Case.

Plaintiffs proffer the opinions reached by Dr. Laurence Steinberg, their psychological development expert, in support of their arguments that children under 18 are categorically unable to proceed *pro se* in removal proceedings. Defendants do not dispute that Dr. Laurence Steinberg is an expert on adolescent psychological development. However, Dr. Steinberg has neither studied nor tested the capacity of juveniles to proceed *pro se* in civil removal proceedings, nor properly applied his prior research to the facts at issue. Instead, he has bypassed the analysis components of his opinion and jumped to his conclusion, which he bases on studies unrelated to civil removal proceedings. Indeed, his ultimate conclusion was developed expressly for the purposes of testifying in this case. Further, he fails to explain how a minor (and their potentially their adult relative) would have the capacity to answer an attorney's questions about her case but lack the capacity to answer an IJ's questions. Thus, Dr. Steinberg's opinion and analysis do not satisfy the standards for admissible expert testimony.

Dr. Steinberg reached his conclusion that individuals under the age of 18 are categorically unable to proceed *pro se* in civil removal proceedings on his past research on adolescent development, specifically adolescent judgment and decision making, and his familiarity with the *Dusky* standards.[28] Ex. H, Steinberg Dep. 37: 16–25, 38:2–10. He admitted that he is unaware of the procedures involved removal proceedings. ECF 276-2, at Steinberg Supp. Rep., ¶ 5 ("I am not qualified to opine on how removal proceedings operate in practice."). His only understanding of immigration court proceedings was based on conversations with Plaintiffs' counsel and his review of Thronson's expert report. Ex. H, at 52: 7–21. The latter proffered a subjective opinion

---

[28] *Dusky v. United States*, 362 U.S. 402, 402 (1960) (articulating the standard for competency to stand trial in a criminal proceeding).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 19
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

in support of Plaintiffs' arguments regarding the complexity of removal proceedings and the capacity of minors to participate in such proceedings. *See, e.g.*, *Perry v. Berkley*, 996 A.2d 1262, 1271 (Del. Supr. 2010) ("When the expert's opinion is not based upon an understanding of the fundamental facts of the case, however, it can provide no assistance to the jury and such testimony must be excluded."). Because Dr. Steinberg has not studied removal proceedings, witnessed civil removal proceedings, examined the safeguards available to juveniles in these proceedings, or reviewed the individual Plaintiffs' record of proceedings, his conclusions are based upon sufficient facts and data and, therefore, must be excluded.

Second, Dr. Steinberg's ultimate conclusion was developed expressly for the purposes of testifying in this case. None of his prior research involved removal proceedings or the *Franco* pro se mental illness competency standard, nor did it involve setting a bright-line for competency to proceed *pro se* at 18 years of age. ECF 212-1, at ¶ 29. Dr. Steinberg has never studied, analyzed, or hypothesized, until now, about the competencies of children who appear in removal proceedings. Indeed, he readily acknowledges this fact. *Id.* at ¶ 30 ("Although these studies have not directly examined competence to waive rights or proceed pro se in immigration court, it is almost certain that the conclusions of these studies of adolescents' competence in juvenile and criminal court apply to the immigration court context.").

A full examination of Dr. Steinberg's research reveals that his conclusion on juveniles in removal proceedings has been unjustifiably extrapolated from an accepted premise to an unfounded conclusion. Dr. Steinberg has not used relevant evidence to support his conclusions and has ignored his prior works which come to different conclusions on juvenile's capacities at different ages. For example, Dr. Steinberg's indicates "[g]enerally speaking, by age 15 or so, adolescents perform as well as adults on tasks measuring logical reasoning, information processing, and risk perception." *See* Laurence Steinberg, The Dual Systems Model: Review, Reappraisal, and Reaffirmation, 104 (Developmental Cognitive Neuroscience, 2016); *see also* Laurence Steinberg, Are Adolescents Less Mature Than Adults? Minors' Access to Abortion, the Juvenile Death Penalty, and the Alleged APA "Flip Flop," 586 (American Psychologist, 2009) ("Adolescents attain levels of competence to stand trial somewhere around age 15. In further

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 20
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

contrast to the conclusions drawn in this case, Dr. Steinberg authored articles explaining circumstances in which a juvenile's decision-making processes are positively influenced by adults and authority figures. For example, Dr. Steinberg argues that the waiting-period before having an abortion which includes consulting with a judge discourages shortsighted acts and "creates circumstances under which adolescents have been shown to be just as competent at making decisions as adults." Laurence Steinberg, Should the Science of Adolescent Brain Development Inform Public Policy?, 71 (Issues in Science and Technology, 2014). Yet, he argues in his reports that the presence and influence of a judge in an immigration proceeding would likely have adverse effects on a juvenile's comprehension and decision-making abilities. ECF 212-1, at ¶ 22. Because Dr. Steinberg admittedly lacks a foundational understanding of removal proceedings, he fails to reconcile his body of research with his conclusions here.

Moreover, Plaintiffs misconstrue the opinions and conclusions reached by Defendants' expert Dr. Avram Mack. ECF 342, at 1. Dr. Mack's reports were not proffered as stand-alone opinions addressing whether children under 18 generally lack the capacity to proceed pro se in removal proceedings. Rather, Dr. Mack concluded that, after reviewing Dr. Steinberg's reports and research cited, he disagreed with Dr. Steinberg's conclusions because he believes that (1) there are individuals under 18 who would probably possess the mental functions needed to meet the *Franco* standard; and (2) universal, bright-line conclusions as to competency of individuals under the age of 18 cannot be made. Dr. Steinberg admitted that "there is no scientific basis for drawing [the bright-line] at 18." Ex. H, at 98: 6–7. Pointedly, when asked whether some persons under 18 could possess the capacity to proceed without representation in removal proceedings, Dr. Steinberg acknowledged that it would be pure speculation for him to answer and such an assessment must be done on a case-by-case basis. Thus, Dr. Mack found that Dr. Steinberg's prior research contradicts his bright-line conclusions.

In sum, Dr. Steinberg's opinion is contradictory to his prior research and demonstrates his inherent bias in favor of the Plaintiffs' arguments by cherry picking from his research to find evidence that aligns with Plaintiffs' claims. However, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Accordingly, because Dr. Steinberg relies upon insufficient facts and data in reaching his conclusions, the Court should strike this testimony. *See Lang*, 217 F.3d at 924.

### C.  Susan B. Long's Testimony is Based on Flawed Methodology and Data.

Plaintiffs cite the conclusions of Long, an associate professor of managerial statistics at Syracuse University and co-director of the Transactional Records Access Clearinghouse ("TRAC"), for the propositions that (1) taxpayer-funded counsel to all class members is the only way to ensure against an erroneous deprivation; and (2) without taxpayer-funded counsel, the risk that an immigration court will erroneously order the removal of a child legally entitled to remain in the United States is "extremely high."[29] ECF 342 at 25–28; Ex. I, Long Rep., at 2; Ex. J, Long Dep., at 19, 32–36. Long, who has not published any peer-reviewed articles in the past ten years, relied on data from CASE, EOIR's case management database, to form her conclusions. Ex. I at 2, 6; Ex. J, at 60:6–22 & Dep. Ex. A (publication list); Ex. K, Decl. of Jean C. King (Aug. 29, 2016) ¶ 6. Long observed that unaccompanied children in removal proceedings who are not represented by counsel have a two-to-twenty-fold increased probability of receiving a removal order. Ex. I, at 9–18. Based on this observation, Long concluded that legal representation had a "dramatic" or "very substantial" impact upon the outcome of children's immigration court proceedings. *Id.* at 3–4, 9, 13, 15. Long did not report observations on the myriad of other factors that may affect the outcome of an individual's proceedings in immigration court, such as potential citizenship or relief eligibility, whether the child applied for asylum and the basis of the claim, or the presence of family members with lawful immigration status in the United States.[16] She did not compare grant rates between represented and unrepresented children who applied for asylum. She included *in absentia* removal orders, which the Court explicitly excluded from this case. *See* Ex. I, at 9–15. For the reasons set forth below, the Court should strike Long's report.

---

[29] Plaintiffs have served and filed two reports by Long, one on December 23, 2015 and a "supplemental" report on May 9, 2016. *See* Dkts. 212-1 at 126–64 & 271-1. Plaintiffs do not rely on Long's second report in their motion for summary judgment. Defendants therefore will not address Long's second report here.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 22
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

First, the Court should strike Long's report because it ignores the oft-cited premise of statistical research that correlation does not imply causation.[30] *See* Federal Judicial Center, Reference Manual on Scientific Evidence (3d ed.) (2011) ("Manual")[31] 217–22; Ex. L, Pan Rep. at 17 (providing citations). Long states that her study was designed to determine the impact of legal representation on immigration court outcomes, Ex. I, 3–4, and purports to have done an observational study, Manual at 217–22.[32] While observational studies can establish an association between two factors, additional work is needed to bridge the gap between association and causation. *Id.* at 217–18. In this regard, Long's study is incomplete.

In observational studies, the treatment and control groups are likely to differ with respect to influential factors other than the one of primary interest. Manual at 219. These factors are called confounding variables. *Id.* For example, when evaluating the health effects of living near power lines, exposures to other health hazards are possible confounders. *Id.* "Confounding remains a problem to reckon with, even for the best observational research." *Id.* The major confounder in Long's report is case worthiness, or each case's merits. Several of Plaintiffs' witnesses who represent children in immigration proceedings testified that they screen cases for worthiness before deciding whether to offer legal representation.[33] Long herself concedes that attorneys

---

[30] For example, ice cream sales correlate with drowning deaths in the sense that both increase in warm weather, but nobody would plausibly suggest that ice cream sales *cause* drowning deaths. Decl. of Qing Pan; Ex. M, Pan Decl. at 17. *See also* Spurious Correlations, available at http://www.tylervigen.com/spurious-correlations.

[31] Available at http://www.fjc.gov/public/pdf.nsf/lookup/SciMan3D07.pdf/$file/SciMan3D07.pdf

[32] The other type of study design helpful in evaluating causation is the randomized control experiment or randomized control trial, which is generally accepted in the statistics field as the gold standard. Ex. L, at 16. In a randomized control trial, investigators assign subjects to treatment or control groups at random. *See* Manual at 218, 220, 222; *see also* Ex. L, at 16, 19–21. A randomized control trial would not be workable here, because it would be unethical to assign children in removal proceedings to either a legally-represented experimental group or an unrepresented control group. Ex. L, at 16.

[33] *See* Ex. N, Deposition of Daniel Sharp, at 73–77 (testifying that before adopting a universal representation model in mid-2015 his organization turned away people who did not appear to have a meritorious claim); Ex. G, at 8–9, 21:8–25 ("We are screening to see if there's potential legal relief for [the] child."); *id.* at 22:9–21, 24:18–25, 25:1–14 (his clinic considers the length of time and expenditure of resources that would be required to represent an individual for whom there exists minimal possibility of relief and therefore case strength factors into decisions on whether to offer representation); Ex. O, Deposition of Eve Stotland, at 25:1–12 (her organization screens to determine which children live within the geographic area for which the organization receives funding); *id.* at 27:16–25 (a merits screening is used to determine whether to offer representation to children outside of the organization's catchment area); *id.* at 28:1–10 (screens for viable claims for relief and prosecutorial discretion eligibility); *id.* at

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 23
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

screen cases for worthiness. Ex. J, at 59:18–21 (testifying that attorneys are "perfect" at screening). Thus, a child with a meritorious claim for relief is not only more likely to succeed in immigration court but also more likely to be represented by counsel. But Long's study did not control for case worthiness.[34]

Second, underlying the unreliability of Long's study is the unsuitability of the data for which Long used them. Before evaluating the effect of a particular variable on an outcome, the investigator must identify the major factors that may influence the outcome and then identify the type of data necessary and appropriate for answering the question under investigation. Manual at 219–22 & nn. 21, 23 & 25; Pan Rep. at 17–18. CASE does not include information critical to evaluating the efficacy of legal representation or the impact of confounding variables, such as the merits or worthiness of individual cases, or other information that would enable an investigator to ascertain worthiness, such as the alien's experiences in her home country or the documentary evidence the alien submitted to the immigration court. ECF 237-2, Decl. of Benjamin B. McDowell (Feb. 16, 2016) ¶¶ 2, 6, 7. Nor does it include any evaluations, rankings, or qualitative data regarding the worthiness or merits of individual cases. *Id.* ¶ 5.

In addition the fact that CASE does not include information that is critical to determining the effectiveness of legal representation, there are serious questions concerning the accuracy of the data that she used. Specifically, in response to an inquiry from the July 7, 2016 oral argument

29:22–25 (would not offer to represent child if "neither eligible for relief nor eligible for prosecutorial discretion"); *id*. at 30:1–25; Ex. P, Deposition of Jojo Annobil, at 35:11–22, 37:12–25, 38:1–25, 39:9–18, 40:1–25, 43:14–25, 44, 18–25, 45:15–25, 46:1–5 (organization screens before offering legal representation and extends offers to an fifty percent of children it screens); *id*. at 50:9–19 (the existence of a viable form a relief determines whether his organization offers legal representation), *id*. at 51:7–25 (specifically explaining how his organization makes a determination of existence of viable relief claim); *id*. at 52–53 (when a minor lacks a viable claim for relief, his organization does not offer representation); Ex. Q, Deposition of William O. Holston, Jr., ("[W]e really don't represent children that don't, in our view, have legal relief available to them. So we screen for available legal—legal relief"); *id*. at 51:8–12, 52:1–22 (his organization screens prospective clients for asylum eligibility and family–based relief); *id*. at 27: 18–20 (his organization would decline to represent a client charged with removability on the basis of a criminal conviction).

Some attorneys screen for other factors, such as sympathetic clients. Ex. R, Deposition of Tin Thanh Nguyen, at 49:13 18; *id*. at 51:19 25; *id*. at 52:1–4, 18–25, 53:1–2, 54:2–7, 64:13–25, 65. But the point is: attorneys screen cases before offering legal representation.

[34] Plaintiffs cite no peer-reviewed articles based on observational studies, where investigators evaluated the efficacy of legal representation without controlling for confounders, such as worthiness, or examining alternative and competing explanations for observed outcomes.

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

panel, in *J.F.M. v. Lynch*, Nos. 15-35738, 15-35739 (9th Cir.), the government offered to assist in the identification of a test case in which an unrepresented child who is ordered removed by an Immigration Judge could seek redress by filing an appeal with the Board of Immigration Appeals, the procedure mandated by Congress in 8 U.S.C. § 1252. *See* Ex. S, Oral Arg. Tr. at 26-29, 53-59, 72-74. In an effort to identify such a test case, EOIR initially reviewed the dataset of any minor within the Ninth Circuit who, from June 20 to July 20, 2016 was: (1) placed in non-consolidated removal proceedings; (2) ordered removed in the merits while unrepresented and under the age of 18; and (3) not ordered removed *in absentia*. *See* Ex. T, Rule 28(j) Letter, Nos. 15-35738, 15-35739 (July 20, 2016); Ex. K, ¶¶ 4, 9, 10. Thereafter, and in preparation for Plaintiffs' requested depositions in this case, EOIR expanded the search to cover the period of July 1, 2014 to July 26, 2016. Ex. K, ¶¶ 11-12. That expanded dataset contained 477 unique cases that fit the above query. *Id*. ¶ 12. However, after reviewing the official record in each of the cases, EOIR discovered that only two of the 477 cases actually met the search criteria. *Id*. ¶¶ 4, 12, 14. Neither minor was below the age of 14. *Id*. ¶¶ 16–17.

The 477-to-two discrepancy is due to CASE's design and use for case tracking and management, instead of for scientific study. Ex. K, ¶ 6 (stating that "the CASE database is an informational resource management system designed primarily for providing EOIR with case tracking and management information, *e.g.*, for scheduling immigration court cases and tracking the workload of immigration courts."). Due to the way data are captured in CASE, the procedural postures of some cases designated as removal orders may not be accurately reflected, such as whether: the removal order was entered *in absentia*; an attorney was present at the merits hearing; the alien was a minor at the time of the removal order; or the case was consolidated with that of a parent. Ex. K, ¶¶ 10, 14 & nn. 5–8. For example, given the fluid nature of proceedings, the reports from CASE would not necessarily capture when a child reaches the age of 18 or when a representative withdraws at the conclusion of an individual hearing. *Id*. nn. 6 & 7. In addition, immigration court employees do not always record particular refinements in data, such as whether a removal ordered was entered in-person or *in absentia*. *Id*. n. 5. As a result, Long's conclusions are not properly supported. But, more importantly, because Long relied only on

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 25
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

CASE data and did not collect the additional data necessary to evaluate and control for confounders such as case worthiness, her report does not adhere to accepted study design methodology and fails to comply with Rule 702(1)'s requirement that expert testimony be based on sufficient facts or data.

Finally, the Court also should strike Long's report for not meeting the *Daubert* requirement of relevancy. As a general matter, flaws in a proffered expert's analysis typically go to weight, rather than admissibility. But, "in some cases . . . the analysis may be 'so incomplete as to be inadmissible as irrelevant.'" *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 973 (C.D. Cal. 2012) (citing *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (quoting *Bazemore v. Friday*, 478 U.S. 385, 400, n. 10 (1986))). Statistical analyses that omit major, relevant variables are not probative and should be excluded on relevance grounds. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 449 (2d Cir. 1999) (excluding, in case alleging racial discrimination in tenure promotion, regression analysis that did not account for two major variables, teaching and service); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d at 973 (excluding report by economist who analyzed whether anticompetitive behavior caused increase in concert ticket prices without considering any other factors, such as artist popularity).

Plaintiffs argue that without taxpayer-funded counsel, children who otherwise are entitled to relief from removal will be ordered removed. ECF 346, at 25. Inherent in the "erroneous deprivation" argument is the assumption that the individual will be deprived of relief for which he or she is eligible. The Court certified a class limited to children who are potentially eligible for certain forms of relief or protection from removal or who have a potentially colorable citizenship claim. ECF 309, at 2. Therefore, case worthiness is a critical factor in this case. However, Long's report does not control for case worthiness,[35] thereby omitting a major,

---

[35] Plaintiffs repeat their now-discredited contention there is a shortage of attorneys willing and able to represent relief-eligible children in removal proceedings. ECF 342 at 29. They cite to the table contained in Long's report, prepared in October 2014, shortly after the border surge, showing that representation rates, including those of pending cases, appeared to fall to under 20 percent. *Id.* at App. B, Fig. 3. A more accurate measure of representation rates is to look at completed, rather than pending, cases, because children may obtain legal representation later in their proceedings. Ex. L, at 27, Fig. 4 (showing a steady increase in representation rates, such that, in April 2015, 90 percent of children were represented, excluding *in absentia* removal orders). Separately, Long claims that case worthiness is not a significant factor because of the supposed attorney shortage. Ex. I, at 18–20. As discussed more fully in Pan's supplemental expert report, attorney scarcity does not eliminate the effect of attorney selection bias.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 26
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

relevant variable. Thus, not only is Long's report unreliable *and* irrelevant here.

Finally, even if the Court considers Long's report and testimony and accepts her conclusion—premised on flawed data and methodology—that counsel can improve the outcomes of removal proceedings, it does not logically entail that counsel is constitutionally required at taxpayer expense, or that universally guaranteeing such is the only way to ensure the fairness of removal proceedings. *See supra* note 12.

### D. *Plaintiffs' Fact Witnesses Should Not Be Relied Upon.*

Plaintiffs also rely on the declarations of several lay witnesses who improperly attempt to testify beyond the permissible scope of the Federal Rules of Evidence. Plaintiffs specifically rely on declarations made by: (1) Eve Stotland, (2) Jojo Annobil, (3) William Holston, (4) Rebekah Fletcher, (5) Blaine Bookey, (6) Helen Lawrence, and (7) Angie Junck, all of whom seek to offer general opinions, based on their experience practicing immigration law, that immigration law involves complex legal concepts and that minors as a whole cannot successfully navigate removal proceedings. ECF 342, at 8. However, lay witnesses must have *personal* knowledge of the matters to which they testify, even when they are offering opinion testimony. Fed. R. Evid. 602; *Universal Engraving, Inc. v. Metal Magic, Inc.*, 602 Fed. App'x 367, 370 (9th Cir. 2015) ("A lay witness may only offer opinion testimony if it is based on personal knowledge."). Here, where Plaintiffs' declarants cursorily state, for example, that "[a] child appearing unrepresented would rarely if ever know" a particular fact, that it is "virtually impossible for most children to successfully pursue the immigration relief for which they may be eligible" and that "[t]he compound and complex substantive legal standards for each element of asylum often elude even the most seasoned practitioners," the foundation for such sweeping opinions cannot be their personal knowledge. Therefore, the statements cited by the above-mentioned declarants must be disregarded.[36] *See, e.g.*, *Bistro Exec., Inc. v. Rewards Network, Inc.*, No. CV 04-4640 CBM MCX, 2006 WL 6849825, at *17 (C.D. Cal. July 19, 2006).

---

*See* Ex. U, Pan Supp. Rep. at 9–10 & Table 1. Plaintiffs have not refuted this or offered any counter-explanation.

[36] The Court already ruled that Bookey's testimony would be considered "only to the extent appropriate as lay testimony" in ruling on Plaintiffs' preliminary injunction motion, ECF 322. Defendants ask for Bookey's testimony to be treated the same way for the purposes of summary judgment.

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 27
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

**V.      Plaintiffs Fail to Show That Their Interests Outweigh the Burdens They Seek to Impose on the Government.**

Finally, Plaintiffs fail to show the absence of a genuine issue of material fact or a right to judgment regarding the third *Mathews* factor, which considers the "interest of the government in using the current procedures rather than additional or different procedures" and the fiscal and administrative cost of any additional procedures. *Landon*, 359 U.S. at 34. Critically, this factor functions more favorably to the Government in the immigration context than in other contexts. *See id.* ("The Government's interest in efficient administration of the immigration laws at the border also is weighty[;] . . . it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the Executive and the Legislature."). Accordingly, in the immigration context, the court's role "is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." *Id.* at 34–35; *see also Weiss v. United States*, 510 U.S. 163, 177 (1994) (in such instances, the Government's interest may only be overcome where "the factors militating in favor [of the added procedure] are so extraordinarily weighty as to overcome the balance struck by Congress"); *Galvan v. Press*, 347 U.S. 522, 531 (1954) (the Due Process Clause is at issue in no way "qualifies the scope of political discretion heretofore recognized as belonging to Congress in regulating the entry and deportation of aliens").

Plaintiffs contend that the "millions of dollars" Defendants *already* spend "providing legal representation for children," PMSJ at 29, somehow show that Defendants must spend *even more* to implement a vast new program of government-funded legal representation for all indigent minors in the Ninth Circuit. However, Plaintiffs are mistaken. First, while Plaintiffs acknowledge some of the government's interests at stake here in the progress and outcome of removal proceedings, *see* ECF 342, at 29–30, they have not shown any prejudice that they have suffered under the current system for providing representation. Thus, Plaintiffs ask this Court to "impos[e] deportation procedures" that supplant the political branches' exercise of their plenary authority over immigration matters, *see Landon*, 359 U.S. at 35, without demonstrating that they

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 28
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

have suffered any, let alone the requisite, prejudice as a class "so extraordinarily weighty" as to tip the scales against sovereign interests and the choices of the political branches.

Second, even assuming some marginal benefit from Plaintiffs' proposed procedures, the extent of the burden Plaintiffs seek to impose is overwhelming and disproportionate in light of Defendants' current substantial efforts to promote representation. As Plaintiffs acknowledge, the government *already* spends at least $8.3 million annually to support direct representation of minors in the Ninth Circuit. ECF 342, at 29; *see also* ECF 207, ¶¶ 66–67. However, Plaintiffs would have the government provide counsel to *every* unrepresented minor presently in removal proceedings in the Ninth Circuit at an additional cost of approximately $19.3 million to $38.5 million (based on 7,705 juveniles in proceedings, with an estimated expenditure of between $2,500 and $5,000 per minor). *See* ECF 346-12, Decl. of Steven Lang, ¶¶ 7–8. Still further, there are approximately 10,880 minors currently represented in removal proceedings in the Ninth Circuit (by a mix of pro bono volunteer attorneys, attorneys compensated through pro bono organizations, and private paid counsel), some of whom might well opt for government-funded counsel if it were ordered because pro bono organizations would likely shift scarce resources elsewhere if the government must pay for lawyers. *Id.* ¶ 8. Moreover, minors who currently pay for counsel out-of-pocket (or with the assistance of relatives) would likely opt for government-funded counsel in order to avoid the costs of private counsel. *Id.* Assuming they did so, that would amount to $27.2 million to $54.4 million in costs, based on current estimates. The total expense based on current statistics, therefore, could run between $46.5 million and $92.9 million. Further, these sums do not account for the fact that the number of unaccompanied children being apprehended continues to climb and could climb further if a categorical ban on removals absent counsel is put into place and the funds necessary to provide counsel are not appropriated – an appropriation that Congress has thus far refused make.[37]

Meanwhile, the high-end estimate of $92.9 million based on current conditions amounts to over 22.1% of EOIR's entire, nationwide 2016 Congressional funding of $420.3 million. *See*

---

[37] *See* U.S. CUSTOMS & BORD. PROT., *Southwest Border Unaccompanied Alien Children Statistics FY 2016*, https://www.cbp.gov/site-page/southwest-borderunaccompanied-alien-children-statistics-fy-2016

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 29
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

EOIR, FY Budget Request at a Glance, at https://www.justice.gov/jmd/file/821961/download. Absent further appropriations from Congress—which Congress to date continues to decline to provide—these costs will require EOIR to shift resources from other mission-critical areas and cripple EOIR's budget and its ability to effectively oversee the immigration courts. This documented cost must weigh heavily in favor of the Government, where Plaintiffs have failed to identify any meaningful number of minor aliens with meritorious claims who were nevertheless ordered removed due to lack of appointed counsel.

Finally, in proposing that every indigent minor in removal proceedings be appointed counsel, Plaintiffs encroach on the government's substantial interest in deterring illegal immigration to the United States. The current system where counsel may be obtained on a case-by-case basis means that the availability of counsel is unlikely to be perceived as a benefit of illegally immigrating to this country. This approach is consistent with Congress's statements of national policy. *See* 8 U.S.C. § 1601(2)(B) (stating policy that "the availability of public benefits not constitute an incentive for immigration to the United States"), (6) ("remov[ing] the incentive for illegal immigration provided by the availability of public benefits" is a "compelling government interest"). In seeking summary judgment, Plaintiffs fail to show that, by automatically providing counsel in removal proceedings without consideration of a case's merits, their proposal would not invite irresponsible overseers of alien minors to send children on hazardous journeys to this country expecting and even promoting (reasonably or not) that an attorney will be appointed for them and enable them to remain here. That possibility is a further burden on the government that Plaintiffs' summary judgment motion unreasonably excludes.

In sum, Plaintiffs fail to show the absence of a genuine issue or a right to judgment regarding the third *Mathews* factor. Evidence and reason instead show that the government's interest in the current procedures, as opposed to the costly and burdensome procedures proposed by Plaintiffs, is substantial and sufficient to show that the status quo comports with due process.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment should be denied.

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 29, 2016                          Respectfully submitted,

                                                BENJAMIN C. MIZER
                                                Principal Deputy Assistant Attorney General

                                                LEON FRESCO
                                                Deputy Assistant Attorney General

                                                WILLIAM C. PEACHEY
                                                Director, District Court Section
                                                Office of Immigration Litigation

                                                WILLIAM C. SILVIS
                                                Assistant Director

                                                MANNING EVANS
                                                Senior Litigation Counsel

                                                JOSEPH A. DARROW
                                                Trial Attorney

                                                NICOLE N. MURLEY
                                                Trial Attorney

                                                CHRISTINA PARASCANDOLA
                                                Trial Attorney

                                                 /s/ Vinita B. Andrapalliyal
                                                VINITA B. ANDRAPALLIYAL
                                                Trial Attorney
                                                Office of Immigration Litigation—DCS
                                                Civil Div., U.S. Department of Justice
                                                P.O. Box 878, Ben Franklin Station
                                                Washington, D.C. 20044
                                                Tel.:  (202) 598-8085
                                                Fax:  (202) 305-7000
                                                E-mail: Vinita.b.andrapalliyal@usdoj.gov

                                                *Attorneys for Defendants*

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 31
Case No. 2:14-cv-01026

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 598-2445
FACSIMILE: (202) 305-7000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day of August 29, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

By:  */s/ Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Trial Attorney
Office of Immigration Litigation
District Court Section
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel.:  (202) 598-8085
Fax:  (202) 305-7000
E-mail: Vinita.b.andrapalliyal@usdoj.gov