# **<u>EXHIBIT K</u>**

1

Honorable Thomas R. Zilly

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

F.L.B., et al.,

Plaintiffs,

10

v.

11

LORETTA E. LYNCH, et al.,

12

Defendants.

13

No. 2:14-cv-01026

DECLARATION OF JEAN C. KING

14

I, Jean King, declare as follows:

15

16      1.      I am the General Counsel for the Department of Justice, Executive

17  Office for Immigration Review ("EOIR") in Falls Church, Virginia, a position I have

18  held since 2015. The General Counsel's Office ("OGC") provides legal counsel on

19  matters pertaining to the Immigration and Nationality Act and other laws and

20  procedures as they relate to EOIR, among other duties. OGC also provides litigation

21  support and assistance in federal court actions filed against EOIR.

22

23      2.      I submit this declaration in support of the Government's reply to

24  Plaintiffs' motion for summary judgment in *FLB v. Lynch*, Case No. 2:214-cv-01026.

25

26      3.      I have personal knowledge of the facts set forth herein and could testify

DECLARATION OF JEAN C. KING
Case No. 2:14-cv-01026

to the following information if called at trial.

4.     On July 7, 2016, the Ninth Circuit Court of Appeals heard argument on the Government's interlocutory appeal in the above captioned case. As a result of that argument, the Government agreed to provide Plaintiffs' counsel with a list[1], every twenty (20) days, until December 31, 2016, of any unrepresented minor alien within the Ninth Circuit of which the Government is aware who: 1) was placed in non-consolidated removal proceedings[2]; and 2) was ordered removed on the merits while unrepresented and under the age of eighteen; and 3) was not ordered removed in absentia. The purpose of this undertaking was to refer any such minor alien who meets the above criteria to Plaintiffs' counsel so that they may help the minor file a petition for review as mandated by Congress under 8 U.S.C. § 1252.

5.     In order to facilitate identification of such cases, if any, OGC asked EOIR's Office of Policy, Analysis, and Statistics ("OPAS") to query the agency's electronic database ("CASE") every 20 days (until December 31, 2016) to identify any alien who meets the above criteria.

6.     It is important to note that the official record of an alien's removal proceedings is the administrative paper file known as the Record of Proceedings ("ROP") in addition to the audio recordings associated with each hearing, not the electronic data in the CASE database. Rather, the CASE database is an informational resource management system designed primarily for providing EOIR with case

---

[1] EOIR is providing this information consistent with its privacy obligations under the Privacy Act and other related statutes, regulations, and Department of Justice obligations.

[2] This declaration uses the word "unaccompanied minor" to distinguish children who are not in consolidated proceedings with a parent or family member but are in proceedings alone.

DECLARATION OF JEAN C. KING
Case No. 2:14-cv-01026

1  tracking and management information, *e.g.*, for scheduling immigration court cases
2  and tracking the workload of immigration courts. Therefore, the raw data entered into
3  CASE by court personnel should not be understood as a substitute for the information
4  contained in an alien's ROP or the digital audio recording ("DAR") of the alien's
5  hearings.

6
7      7.      I understand, however, that the Plaintiffs' statistical expert, Professor
8  Susan Long, relied on the raw data contained in EOIR's CASE database to produce
   her statistical report in this case. *See* Expert Report of Dr. Susan Long at 5 ("The
9  results presented in this report are based upon the case-by-case records in the
10 cumulative electronic dump of the CASE database system that EOIR prepared at the
11 end of August 2015."). Specifically, Professor Long used EOIR's juvenile case
12 identifier codes ("J-codes") and the "UC priority codes" to "identify the specific court
13 cases involving unaccompanied children that [she] analyzed in [her] report." *See id.* at
14 6. It is EOIR's position that the juvenile codes and the UC priority codes do not
15 necessarily track every juvenile case and should not be used as a proxy for all
16 juveniles in removal proceedings.[3]

17
18     8.      Nevertheless, in the interest of being consistent with Plaintiffs' chosen
19 methodology for identifying juveniles in removal proceedings, for purposes of the
20 query referenced in paragraph 5, OGC asked OPAS to query the CASE database to
21 identify any alien's case that met the following criteria: 1) the alien's case contains one
22 or more of EOIR's case identifier codes associated with juveniles ("J-codes") and/or
23 any case containing the priority code "UC," which relates to certain cases designated
   by the Department of Homeland Security ("DHS") as involving unaccompanied
24

25 ─────────────
   [3] See Declaration of Benjamin McDowell, (February 16, 2016); Declaration of Benjamin
26 McDowell, (May 5, 2016); and EOIR's Response to Request for Production No. 16-19.

DECLARATION OF JEAN C. KING
Case No. 2:14-cv-01026

children; 2) the alien was not represented; 3) the alien's removal case was completed by an immigration court located in the Ninth Circuit; 4) the alien was ordered removed; and 5) the alien was not ordered removed *in absentia*.

9.     On July 20, 2016, we received the results of the requested query from Benjamin McDowell, a program analyst with OPAS. The results seemed to indicate that seventeen (17) unrepresented minors had been ordered removed on the merits by immigration courts located in the Ninth Circuit between June 20, 2016 and July 20, 2016.

10.    In order to check the accuracy of the data provided in the list, two OGC attorneys listened to the DARs of the 17 cases.[4] Upon review, none of the 17 individuals actually met the criteria described in paragraph 4. Rather, they were ultimately determined to not meet the criteria because the cases involved, for example, an *in absentia* removal order,[5] a minor who was represented at his or her final merits hearing,[6] an individual who had turned eighteen by the time his or her removal case was completed,[7] and/or the individual was not an unaccompanied minor (*i.e.* was in

---

[4] Immigration Judges are required to record all removal proceedings. Certain EOIR employees can access the digital audio recordings of hearings through the CASE database.

[5] When a removal order is entered into EOIR's CASE database, the information that the order was entered *in absentia* is not always captured. However, the information contained in this field is distinct from, and has no effect on, the physical *in absentia* order of removal that is signed by the Immigration Judge and placed in the ROP, the official record of an alien's removal proceedings.

[6] The representation status of a respondent may be fluid throughout the course of his or her removal proceedings. For example, an attorney may represent a respondent during his or her master calendar and individual calendar hearings, but withdraw as counsel prior to the issuance of a final decision in the respondent's case. Based on the timing and nature of the specific query run in this case, the full scope of a given respondent's representation history may not be conveyed by the statistical reporting.

[7] One of EOIR's juvenile codes ("J-codes") is reserved for cases where "court staff or the

1  consolidated proceedings with his or her adult parent(s)).[8] In the process of preparing
2  this declaration, I spot checked the work of the OGC attorney to ensure that it was
3  accurate and I found no inaccuracies.

5      11.    Thereafter, in preparation for the depositions of Assistant Chief
6  Immigration Judge ("ACIJs") Amy Hoogasian and Rodin Rooyani, and based on the
7  expressed interest of these Immigration Judges to confirm via statistics what they
8  believed to be true based on their on-the-ground supervisory experience—*i.e.* that they
9  did not expect to find any significant number of cases within the Ninth Circuit where
10  an unaccompanied minor would have proceeded on the merits without
   representation— OGC decided to expand the previous query to cover the period of
11  July 1, 2014 to July 26, 2016. Specifically, on July 26, 2016, OGC asked OPAS to
12  query the CASE database and provide a list of all cases flagged with a juvenile ("J-
13  code") and/or a "UC code" that were completed by an Immigration Judge located in
14  the following immigration courts: Los Angeles, San Francisco, Seattle, Portland,
15  Tucson, Phoenix, Florence, San Diego, Los Angeles, Las Vegas, and Honolulu.[9]
16  Additionally, we asked OPAS to filter the results based on the same criteria listed

---

18  judge become aware that the child has been released from DHS custody or ORR custody to a
   sponsor, parent or legal guardian . . . [or] *if an unaccompanied alien child attains the age of*
19  *18 while still in proceedings*." Office of the Chief Immigration Judge, Operating Policies and
   Procedures Memorandum 07-01 (2007) available at
   https://www.justice.gov/sites/default/files/eoir/legacy/2007/05/22/07-01.pdf.

20  [8] Another one of EOIR's J-codes is a broad identifier capturing all cases "where a child in
21  proceedings has a parent or legal guardian in the United States who is providing care and
   physical custody." Office of the Chief Immigration Judge, Operating Policies and Procedures
22  Memorandum 07-01 (2007) available at
   https://www.justice.gov/sites/default/files/eoir/legacy/2007/05/22/07-01.pdf.

23  [9] The remaining immigration courts located in the judicial boundaries of the Ninth Circuit are
24  located in Eloy, Arizona; Adelanto, California; Imperial, California; Otay-Mesa, California;
   Saipan, Northern Mariana Islands, and Tacoma, Washington. These Immigration Courts were
25  excluded because they do not have juvenile dockets, see RFP 17-19, and/or they are "detained
   courts" that typically only hear cases of adult detained aliens.

DECLARATION OF JEAN C. KING
Case No. 2:14-cv-01026

1  above—i.e. to include cases only where: 1) the alien was unrepresented; 2) the

2  Immigration Judge entered a decision of "remove"; and 3) the removal order was not

3  entered *in absentia*.

4

5      12.    On August 3, 2016, Lamont Taylor,[10] a program analyst with OPAS,

6  provided a list of four hundred and seventy-seven (477) unique cases that fit the above

7  query.[11] Based on the discrepancies contained within the July 20, 2016 list identified

8  by OGC and information that OGC received from ACIJs Hoogasian and Rooyani who

9  told us that the Immigration Judges that they supervise could not recall ordering any

10  unrepresented unaccompanied child removed on the merits, OGC decided to listen to

   the DARs for each of these 477 cases.

11

12      13.    In order to do so, an attorney and a paralegal with OGC listened to the

13  DARs in each of these cases. These employees listened to the final hearing where the

14  alien was ordered removed (or the hearing that immediately preceded the date of the

15  removal order).  In a handful of cases it was necessary to listen to additional hearings

16  to determine if the alien was actually a juvenile.

17

18      14.    The result of this review revealed that only two cases, out of the 477

19  cases identified by the July 26, 2016 query, actually involved an unrepresented

20  unaccompanied minor ordered removed on the merits by an immigration judge located

21  [10] Benjamin McDowell, the OPAS program analyst who has fielded requests for statistics in

22  connection with the above captioned litigation, was on leave during the week that the July 26
   list was created.  After returning to the office, Mr. McDowell consulted with Mr. Taylor and

23  confirmed that the list Mr. Taylor produced was created using the same methodology that Mr.
   McDowell would have used had he run the query himself.

24  [11] There was one case in this list of approximately 477 cases that was identified as involving

25  an unrepresented unaccompanied minor ordered removed on the merits on July 20, 2016
   which was not identified in the July 20, 2016 data run. It appears that the July 20, 2016 list

26  was run a few hours before this case was entered into the CASE database as a removal order.

DECLARATION OF JEAN C. KING
Case No. 2:14-cv-01026

1   in the Ninth Circuit during the period July 1, 2014 to July 26, 2016. As with the July
2   20, 2016 query, these aliens were determined to not meet the criteria described above
3   because their cases involved an *in absentia* removal order,[12] a minor who was
4   represented by counsel at his or her final merits hearing,[13] an individual who had
5   turned eighteen by the time his or her removal case was completed[14] and/or an
6   individual who was not an unaccompanied minor (*i.e.* was in consolidated
7   proceedings).[15] In the process of preparing this declaration, I spot checked the work of
    the OGC staff to ensure that it was accurate and I found no inaccuracies.
8
9        15.   The two cases that were identified involved removal orders (not *in*
10  *absentia*) entered by Immigration Judges in the Los Angeles Court. They are briefly
11  described below.[16]
12
13       16.   In the first case, the respondent was at fifteen years old at the time of his
14  final removal hearing on February 26, 2016. After being granted four continuances
15  over the span of nearly two and a half years to obtain an attorney, the respondent
16  decided to move forward with his case *pro se* with the assistance of his mother. With
17  his mother's assistance, the respondent admitted that he was born in Honduras and had
18  no claim to United States citizenship. He filed an application for asylum and the
19  Immigration Judge conducted an asylum hearing questioning the respondent and his
20
    _____
21  [12] *See* footnote 6, *supra.*
22  [13] *See* footnote 7, *supra.*
23  [14] *See* footnote 8, *supra.*
24  [15] *See* footnote 9, *supra.*
25  [16] The case descriptions do not contain any Personally Identifiable Information and therefore
    they do not implicate any privacy concerns or obligations.
26

DECLARATION OF JEAN C. KING
Case No. 2:14-cv-01026

mother about the facts underlying his asylum claim.[17] The Immigration Judge denied the application as a matter of law after finding that the respondent's fear of gangs was not a basis for asylum. Subsequently, the respondent filed an appeal *pro se* with the Board of Immigration Appeals and later found paid counsel to represent him on appeal. The appeal is currently pending.

17.     In the second case, the respondent was seventeen years old at the time of her final hearing. At each hearing she appeared with her sponsor (her aunt). She was given multiple continuances to find an attorney, but her aunt informed the Immigration Judge that no attorney would represent the respondent unless she agreed to return to her aunt's custody. The respondent explained to the Immigration Judge that she was no longer living with her sponsor but instead left the home and began living with her boyfriend after she became pregnant. At the final hearing, which was held on October 17, 2015, the Immigration Judge took a short adjournment to allow the respondent to meet with a *pro bono* attorney who was in court at the time. After the adjournment the attorney informed the court that his organization would not represent the respondent unless she agreed to return to her aunt's home. The respondent stated that she desired to continue living with her boyfriend and the Immigration Judge found that she had no option but to proceed in the respondent's case.[18]  The respondent stated that she came to the United States illegally to obtain work and go to school; that she did not have a fear of returning to her home country where her parent's lived; and that she did not have any avenue to remain lawfully in the United States. At the conclusion of the

---

[17] The respondent was not an unaccompanied child within the meaning of 8 U.S.C. § 1232(g) because he was apprehended attempting to cross the United States border while accompanied by his mother. Therefore, he was not eligible for the special procedures for asylum applications filed by unaccompanied children, *see* 8 U.S.C. § 1158(b)(3)(C).

[18] The Immigration Judge also found that the respondent's sponsor was looking out for the respondent's best interests particularly in light of the fact that the sponsor attended every one of the respondent's immigration proceedings.

1   hearing the Immigration Judge entered a removal order. The respondent has not filed
2   an appeal. I understand from DHS that the respondent has not been removed from the
3   country at this time.

4

5

6   I declare under penalty of perjury that the foregoing is true and correct to the best of
7   my knowledge and belief.

8
    Date: August 29, 2016
9

10   _Mann. Km)_
11   Jean C. King
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF JEAN C. KING
Case No. 2:14-cv-01026