**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| J. E. F.M., a minor, by and through his Next Friend, Bob Ekblad; J. F.M., a minor, by and through his Next Friend Bob Ekblad; D. G. F.M., a minor, by and through her Next Friend, Bob Ekblad; F. L.B., a minor, by and through his Next Friend, Casey Trupin; G. D.S., a minor, by and through his mother and Next Friend, Ana Maria Ruvalcaba; M. A.M., a minor, by and through his mother and Next Friend, Rose Pedro; J. E. V.G.; A. E. G.E.; G. J. C.P., *Plaintiffs-Appellees/ Cross-Appellants*, | Nos. 15-35738 15-35739 D.C. No. 2:14-cv-01026-TSZ OPINION |
| v. | |
| LORETTA E. LYNCH, Attorney General; JUAN P. OSUNA, Director, Executive Office for Immigration Review; JEH JOHNSON, Secretary, Homeland Security; THOMAS S. WINKOWSKI, Principal Deputy Assistant Secretary, U.S. Immigration and Customs | |

Enforcement; NATHALIE R.
ASHER, Field Office Director,
ICE ERO; KENNETH HAMILTON,
AAFOD, ERO; SYLVIA M.
BURWELL, Secretary, Health and
Human Services; ESKINDER
NEGASH, Director, Office of
Refugee Resettlement,
                    *Defendants-Appellants*
                    *Cross-Appellees.*

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted July 7, 2016
Seattle, Washington

Filed September 20, 2016

Before: Andrew J. Kleinfeld, M. Margaret McKeown,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge McKeown;
Concurrence by Judge McKeown;
Concurrence by Judge Kleinfeld

# SUMMARY[*]

## Immigration

The panel affirmed in part and reversed in part the district court's jurisdictional determinations in a class action brought by indigent minor immigrants alleging that they have due process and statutory rights to appointed counsel at government expense in immigration proceedings.

The panel affirmed the district court's dismissal for lack of jurisdiction of the minors' statutory claims for court-appointed counsel. The panel held that because the right-to-counsel claims "arise from" removal proceedings, they must be raised through the administrative petition for review process pursuant to 8 U.S.C. §§ 1252(b)(9) and 1252(a)(5).

The panel reversed the district court's determination that it had jurisdiction over the minors' constitutional claims. The panel held that the district court erred in finding that an exception to the Immigration and Nationality Act's exclusive review process provided jurisdiction over the due process right-to-counsel claims. The panel held that the district court incorrectly found that the claims challenged a policy or practice collateral to the substance of removal proceedings, and that because an Immigration Judge was unlikely to conduct the requisite due process balancing the administrative record would not provide meaningful judicial review.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Specially concurring, Judge McKeown, joined by Judge M. Smith, wrote to highlight the plight of unrepresented children in immigration proceedings, and to underscore that the Executive and Congress have the power to address this crisis without judicial intervention.

Specially concurring, Judge Kleinfeld agreed that it is unlikely that children or even adults can protect all their rights in deportation proceedings without a lawyer. Judge Kleinfeld wrote that solving the representation problem is a highly controversial political matter, and that advocating for a particular reform is unnecessary and better left to the political process.

## COUNSEL

Erez Reuveni (argued), Senior Litigation Counsel; Leon Fresco, Deputy Assistant Attorney General; Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellants/Cross-Appellees.

Ahilan Thevanesan Arulanantham (argued), ACLU Immigrants' Rights Project, ACLU of Southern California, Los Angeles, California; Heidi Craig Garcia, Todd Nunn, and Theodore J. Angelis, K&L Gates LLP, Seattle, Washington; Glenda M. Aldana Madrid and Matt Adams, Northwest Immigrant Rights Project, Seattle, Washington; Cecillia Wang and Stephen Kang, ACLU Immigrants' Rights Project, San Francisco, California; for Plaintiffs-Appellees/Cross-Appellants.

Marsha Chien, Assistant Attorney General; Colleen Melody, Civil Rights Unit Chief; Robert W. Ferguson, Attorney General; Office of the Attorney General, Seattle, Washington; Kamala D. Harris, Attorney General; Office of the Attorney General, Sacramento, California; for Amici Curiae States of Washington and California.

Charles G. Wentworth, The Law Office of Lofgren & Wentworth P.C., Glen Ellyn, Illinois; Charles Roth, National Immigrant Justice Center, Chicago, Illinois; for Amici Curiae National Immigrant Justice Center; American Immigration Lawyers Association; Ayuda; Capital Area Immigrants' Rights Coalition; Catholic Legal Immigration Network, Inc; Community Legal Services in East Palo Alto; Diocesan Migrant & Refugee Services, Inc; First Focus; Florence Immigrant and Refugee Rights Project; Hebrew Immigrant Aid Society—Pennsylvania; Human Rights Initiative of North Texas; Immigrant Defenders Law Center; Immigrant Law Center of Minnesota; National Immigration Law Center; National Justice for Our Neighbors; Pangea Legal Services; Pennsylvania Immigrant Resource Center; Puentes: Advocacy, Counseling & Education; Refugee and Immigrant Center for Education and Legal Services; the Advocates for Human Rights; Unlocal, Inc.; and U.s. Committee for Immigrants and Refugees.

Paul W. Rodney, Holly E. Sterrett, and R. Reeves Anderson, Arnold & Porter LLP, Denver, Colorado; Sally L. Pei, Arnold & Porter LLP, Washington, D.C.; for Amici Curiae Former Federal Immigration Judges.

Elisa S. Solomon, Covington & Burling LLP, New York, New York; Risa E. Kaufman, Human Rights Institute,

Columbia Law School, New York, New York; for Amicus
Curiae Human Rights Watch.

## OPINION

McKEOWN, Circuit Judge:

This interlocutory appeal requires us to answer a single
question: does a district court have jurisdiction over a claim
that indigent minor immigrants without counsel have a right
to government-appointed counsel in removal proceedings?
Our answer to this jurisdictional query is no. We underscore
that we address only the jurisdictional issue, not the merits of
the claims. Congress has clearly provided that all
claims—whether statutory or constitutional—that "aris[e]
from" immigration removal proceedings can only be brought
through the petition for review process in the federal courts
of appeals. 8 U.S.C. §§ 1252(a)(5) & (b)(9). Despite the
gravity of their claims, the minors cannot bypass the
immigration courts and proceed directly to district court.
Instead, they must exhaust the administrative process before
they can access the federal courts.

## BACKGROUND

The appellees (collectively the "minors" or "children")
are immigrant minors, aged three to seventeen, who have
been placed in administrative removal proceedings. The
children are at various stages of the removal process: some
are waiting to have their first removal hearing, some have
already had a hearing, and some have been ordered removed
in absentia. None of the children can afford an attorney, and

each has tried and failed to obtain pro bono counsel for removal proceedings.

The children, suing on behalf of themselves and a class, claim a due process[1] and statutory right to appointed counsel at government expense in immigration proceedings.[2] They claim that, as minors, they "lack the intellectual and emotional capacity of adults," yet are "force[d] . . . to appear unrepresented in complex, adversarial court proceedings against trained [government] attorneys." According to the complaint, this lack of representation "ensure[s] that [they and] thousands of children [are] deprived of a full and fair opportunity to identify defenses or seek relief for which they qualify" in immigration court.

The children acknowledge that, generally, an immigrant who has been placed in removal proceedings can challenge those proceedings only after exhausting administrative remedies and filing a petition for review (PFR) in a federal court of appeals. But they argue that this case falls outside the general rule because, in light of the complex nature of removal proceedings and the appeals process, minors cannot

---

[1] Immigration proceedings are civil, not criminal, in nature. Thus, the right-to-counsel claims invoke the Fifth Amendment's due process requirement, not the Sixth Amendment's right-to-counsel provision, which is reserved for criminal proceedings.

[2] This appeal was taken from the district court's order dismissing the second amended complaint, which was brought on behalf of all minors without counsel. The district court denied the government's motion to stay the proceedings pending resolution of the interlocutory appeal. After the briefs were filed in this case, the minors filed a third amended complaint, redefined the proposed class to include an indigency limitation, and dismissed some of the named plaintiffs. None of this activity affects our analysis.

effectively raise right-to-counsel claims through the PFR process. As a result, they conclude, they would be denied meaningful judicial review of their right-to-counsel claims if the district court lacked jurisdiction to hear the case.

The government moved to dismiss the complaint on multiple grounds, including ripeness (because in some cases the removal proceedings had not commenced and in others they had not concluded at the time the complaint was filed) and jurisdiction (because the Immigration and Nationality Act (INA) channels judicial review of claims arising out of removal proceedings through the PFR process. 8 U.S.C. §§ 1252(a)(5) & (b)(9)). The district court granted the government's motion in part and denied it in part. As to ripeness, the court dismissed for lack of jurisdiction the named parties "against whom removal proceedings have not yet been initiated," reasoning that "[r]emoval proceedings might never be commenced." The other children's claims were ripe because the agency did not have authority to appoint counsel or to declare a statute barring government-funded counsel unconstitutional, and "[e]xhaustion is not required to make a claim ripe when the agency lacks authority to grant relief."

The district court then turned to the government's jurisdictional challenge. The court recognized that the INA's judicial review mechanism, 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), "is broad in scope" and was "designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeal." (quoting *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007) (emphasis in original)).

Despite the statutory strictures, the district court identified an exception to the INA's exclusive review process and concluded that it had jurisdiction over the minors' due process right-to-counsel claims. Citing *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), and *City of Rialto v. West Coast Loading Corporation*, 581 F.3d 865 (9th Cir. 2009), the court explained that the due process claims challenged a procedure or policy collateral to the substance of removal proceedings and, in light of the fact that "an immigration judge is unlikely to conduct the requisite [due process] balancing, the administrative record would be insufficient to provide a basis for meaningful judicial review." Conversely, the district court held that it lacked jurisdiction over the statutory right-to-counsel claims, in part because "the [constitutional] balancing standard does not apply and . . . concerns about the adequacy of the administrative record are not warranted."

The government filed this interlocutory appeal, challenging the district court's determination that it had jurisdiction over the constitutional claims. The minors cross-appealed, disputing, among other issues, the district court's dismissal of the statutory claims.

## ANALYSIS

## I. The Immigration and Nationality Act Provides Exclusive Judicial Review through the Petition for Review Process.

This appeal turns on our interpretation of two provisions of the INA, so we begin with the statute.[3]  The section titled "Exclusive means of review," 8 U.S.C. § 1252(a)(5), prescribes the vehicle for judicial review: "[A] petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ."  Lest there be any question about the scope of judicial review, § 1252(b)(9) mandates that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order . . . ."

Section 1252(b)(9) is, as the First Circuit noted, "breathtaking" in scope and "vise-like" in grip and therefore swallows up virtually all claims that are tied to removal proceedings.  *See Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007).  Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR process.  *See Viloria v. Lynch*, 808 F.3d 764, 767 (9th Cir. 2015) ("It is well established that this court's jurisdiction over removal proceedings is limited to review of final orders of removal."); *cf. Bibiano v. Lynch*, — F.3d —, 2016 WL 4409351, at *5 (9th Cir. 2016) (holding that 8 U.S.C. § 1252(b)(2)'s venue provision is not jurisdictional, but contrasting the venue statute with other statutes in the INA that use the terms "judicial review" or "jurisdiction").

---

[3]  Section 1252(b)(9) encompasses both the statutory and constitutional claims, which the parties acknowledge stand or fall together.

Although §§ 1252(a)(5) and 1252(b)(9) might seem draconian at first glance, they have two mechanisms that ensure immigrants receive their "day in court." *Singh v. Gonzales*, 499 F.3d 969, 979 (9th Cir. 2007). First, while these sections limit *how* immigrants can challenge their removal proceedings, they are not jurisdiction-stripping statutes that, by their terms, foreclose *all* judicial review of agency actions. Instead, the provisions channel judicial review over final orders of removal to the courts of appeals. *See Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2132 (2012) (explaining that heightened scrutiny is not appropriate where Congress channels judicial review of constitutional questions to a particular court but does not deny all judicial review of those questions). The Supreme Court has thus characterized § 1252(b)(9) as a "'zipper' clause,"[4] *Reno v. Am.-Arab Anti-Discrimination Comm. (AAADC)*, 525 U.S. 471, 483 (1999), explaining that the statute's purpose "is to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals[.]" *INS v. St. Cyr*, 533 U.S. 289, 313 & n.37 (2001).

Second, and equally importantly, § 1252(b)(9) has built-in limits. By channeling only those questions "arising from any action taken or proceeding brought to remove an alien," the statute excludes from the PFR process any claim that does not arise from removal proceedings. Accordingly, claims that are independent of or collateral to the removal process do not fall

---

[4] "The term 'zipper clause' comes from labor law, where it refers to a provision in a collective bargaining agreement that prohibits further collective bargaining during the term of the agreement or, more generally, that limits the agreement of the parties to the four corners of the contract." Gerald L. Neuman, *Jurisdiction and the Rule of Law After the 1996 Immigration Act*, 113 Harv. L. Rev. 1963, 1984–85 (2000).

within the scope of § 1252(b)(9). *See Torres-Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011) ("Ancillary determinations made outside the context of a removal proceeding, however, are not subject to direct review."); *Aguilar*, 510 F.3d at 11 (reading "arising from" "to exclude claims that are independent of, or wholly collateral to, the removal process"); *see also City of Rialto*, 581 F.3d at 874 (recognizing that *McNary* allowed the petitioners to challenge a policy that was collateral to their substantive eligibility for relief).

Thus, we have distinguished between claims that "arise from" removal proceedings under § 1252(b)(9)—which must be channeled through the PFR process—and claims that are collateral to, or independent of, the removal process. *See Aguilar*, 510 F.3d at 11; *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006); *Singh*, 499 F.3d at 979. For example, in *Nadarajah v. Gonzales*, we held that an immigrant could challenge his five-year administrative detention by filing a petition for a writ of habeas corpus in district court, notwithstanding § 1252(b)(9). 443 F.3d at 1075–76. Nadarajah had "prevailed at every administrative level of review," had been granted asylum, and had "never been charged with any crime," yet was being held in detention "without any established timeline for a decision on when he may be released from detention." *Id.* at 1071, 1075. We explained that § 1252(b)(9) "does not apply to federal habeas corpus provisions that do not involve final orders of removal." *Id.* at 1075. Because "Nadarajah ha[d] prevailed at every administrative level" and been granted asylum, his petition did not involve a final order of removal, and § 1252(b)(9) did not channel jurisdiction to the courts of appeals. *Id.* at 1076.

Similarly, in the unique situation in *Singh v. Gonzales*, we recognized that the district court had jurisdiction over the petitioner's ineffective-assistance-of-counsel claim that arose after his attorney failed to file a timely PFR. 499 F.3d at 980. We noted that Singh's claim could not have been raised before the agency because it arose after a final order of removal was entered and, absent habeas review, Singh would have had no legal avenue to obtain judicial review of this claim. We therefore concluded that his petition did not challenge a final order of removal under § 1252(b)(9). *Id.* at 979. We did not, however, allow Singh to raise a different ineffective assistance of counsel claim that arose before a final order of removal entered and that could and should have been brought before the agency. *Id.* at 974; *cf. Skurtu v. Mukasey*, 552 F.3d 651, 658 (8th Cir. 2008) (distinguishing *Singh* and holding that a right-to-counsel claim must be brought through the PFR process because the claim is a "direct result of the removal proceedings").

In contrast, in *Martinez v. Napolitano*, we held in the context of a district court challenge under the Administrative Procedure Act that "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." 704 F.3d 620, 623 (9th Cir. 2012).

In light of §§ 1252(b)(9) and 1252(a)(5) and our precedent, the children's right-to-counsel claims must be raised through the PFR process because they "arise from" removal proceedings. The counsel claims are not independent or ancillary to the removal proceedings. Rather, these claims are bound up in and an inextricable part of the administrative process. The First Circuit was the first court

to consider whether a right-to-counsel claim falls outside the scope of § 1252(b)(9). The court unequivocally said no. Thus, we agree with the court's analysis in *Aguilar* that, "[b]y any realistic measure, the alien's right to counsel is part and parcel of the removal proceeding itself. . . . [A]n alien's right to counsel possesses a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned." *Aguilar*, 510 F.3d at 13.

Right-to-counsel claims are routinely raised in petitions for review filed with a federal court of appeals. *See, e.g.*, *Ram v. Mukasey*, 529 F.3d 1238, 1242 (9th Cir. 2008) (holding that the petitioner did not knowingly and voluntarily waive the right to counsel); *Zepeda-Melendez v. INS*, 741 F.2d 285, 289 (9th Cir. 1984) (holding that the INS's deportation of an immigrant without notice to counsel violated the immigrant's statutory right to counsel). In part, this is because immigration judges have an obligation to ask whether a petitioner wants counsel: "Although [immigration judges] may not be required to undertake Herculean efforts to afford the right to counsel, at a minimum they must inquire whether the petitioner wishes counsel, determine a reasonable period for obtaining counsel, and assess whether any waiver of counsel is knowing and voluntary." *Biwot v. Gonzales*, 403 F.3d 1094, 1100 (9th Cir. 2005). An immigration judge's failure to inquire into whether the petitioner wants (or can knowingly waive) counsel is grounds for reversal. *See id.* As we discuss below, special protections are provided to minors who are unrepresented. *See infra* at pp. 21–22.

The legislative history of the INA, as well as amendments to § 1252(b)(9), confirm that Congress intended to channel all claims arising from removal proceedings, including right-to-counsel claims, to the federal courts of appeals and bypass the

district courts. Consolidation of the review process for immigration orders of removal began in 1961, when Congress amended the INA to channel immigrants' challenges to their removal proceedings to the courts of appeals via the PFR.[5] H.R. Rep. No. 87-1086, at 22 (1961), *as reprinted in* 1961 U.S.C.C.A.N. 2950, 2966; *see also Magana-Pizano v. INS*, 152 F.3d 1213, 1220 (9th Cir. 1998) (recognizing 1961 changes to INA), *vacated on other grounds*, 526 U.S. 1001 (1999) (mem.). The change was intended to "create a single, separate, statutory form of judicial review of administrative orders for the [removal] of aliens from the United States" and to shorten the time frame for judicial review of deportation orders by "eliminat[ing] . . . a suit in a District Court." H.R. Rep. No. 109-72, at 172 (2005) (Conf. Rep.), *reprinted in* 2005 U.S.C.C.A.N. 240, 297–301 (citations omitted).

Congress continued to streamline judicial review of immigration proceedings in 1996, when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3546 (1996). IIRIRA "repealed the old judicial-review scheme . . . and instituted a new (and significantly more restrictive) one in

---

[5] The text of the 1961 statute differs from the text of §§ 1252(a)(5) and 1252(b)(9). It reads: "[The petition for review process] shall apply to, and shall be the exclusive procedure for, the judicial review of all final orders of deportation . . . made against aliens within the United States pursuant to administrative proceedings . . . ." 8 U.S.C. § 1105a(a) (1964). As we explained in *Magana-Pizano*, the statute was subject to various "interim measures" from 1961 to 1996. 152 F.3d at 1220. In 1996, Congress repealed § 1105a(a) and enacted § 1252(b)(9). *AAADC*, 525 U.S. at 475. It enacted § 1252(a)(5) in 2005 as part of the REAL ID Act. *Singh*, 499 F.3d at 977. In each of these amendments, Congress has consistently sought to channel judicial review of immigration proceedings through the PFR process.

8 U.S.C. § 1252." *AAADC*, 525 U.S. at 475. The new judicial review provisions were designed to make perfectly clear "that only courts of appeals—and not district courts—could review a final removal order," that "review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding," and that the statute was "intended to preclude all district court review of any issue raised in a removal proceeding."[6] H.R. Rep. No. 109-72, at 173.

When it enacted § 1252(b)(9) in 1996, Congress was legislating against the backdrop of recent Supreme Court law. In 1991, in *McNary v. Haitian Refugee Center*, the Court offered a blueprint for how Congress could draft a jurisdiction-channeling statute that would cover not only individual challenges to agency decisions, but also broader challenges to agency policies and practices. A group of immigrants, who applied unsuccessfully for amnesty under the special agricultural workers (SAW) program (or thought they would be unsuccessful in the future), filed an action in district court, alleging injuries caused by "unlawful practices

---

[6] In the REAL ID ACT of 2005, Congress amended § 1252(b)(9) to clarify that federal courts lack habeas jurisdiction over orders of removal. The statute now contains an additional sentence on habeas jurisdiction, but the operative jurisdiction-channeling language has not changed from 1996. The 2005 amendment provides that: "Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9). Congress amended the statute in response to *St. Cyr*, in which the Supreme Court held that the pre-2005 version of § 1252(b)(9) did not clearly strip the courts of habeas jurisdiction over immigrants who had committed crimes. *See* H.R. Rep. No. 109-72, at 173.

and policies adopted by the INS in its administration of the SAW program." 498 U.S. at 487. The Court held that, under the governing statute, the district court had jurisdiction to hear a challenge to INS practices and policies because the statute channeled only individual—not wider policy—claims through the PFR process.[7]

Of significance to our analysis, the Court explained that Congress *could have* crafted language to channel challenges to agency policies through the PFR process if it had chosen to do so:

> [H]ad Congress intended the limited review provisions of § 210(e) . . . to encompass challenges to INS procedures and practices, it could easily have used broader statutory language. Congress could, for example, have . . . channel[ed] into the Reform Act's special review procedures "all causes . . . arising under any of the provisions" of the legalization program. It moreover could have . . . referr[ed] to review "on all questions of law and fact" under the SAW legalization program.

*Id.* at 494 (citations omitted).

In *McNary*, the Court did everything but write the future statute and so it makes sense to presume that Congress was aware of this precedent when it amended the INA in 1996.

---

[7] The operative language in the statute at issue in *McNary* provided that "judicial review of a determination respecting an application for adjustment of status" must be brought through a PFR. *Id.* at 486, 491.

*See United States v. Wells*, 519 U.S. 482, 495 (1997) ("[W]e presume that Congress expects its statutes to be read in conformity with [the Supreme Court's] precedents. . . ."). With this presumption in mind, we note that § 1252(b)(9) neatly tracks the policy and practice jurisdiction-channeling language suggested in *McNary*: the amended section channels review of "all questions of law and fact" to the courts of appeals for all claims "arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Thus, the legislative history and chronology of amendments to § 1252(b)(9) confirm the plain meaning of the statute. We conclude that §§ 1252(a)(5) and 1252(b)(9) channel review of all claims, including policies-and-practices challenges, through the PFR process whenever they "arise from" removal proceedings. Because the children's right-to-counsel claims arise from their removal proceedings, they can only raise those claims through the PFR process. *Aguilar*, 510 F.3d at 13.

## II. The Minors Have Not Been Denied All Forms of Meaningful Judicial Review.

The minors do not seriously dispute that the plain text of § 1252(b)(9) prohibits them from filing a complaint in federal district court. Instead, they attempt to get around the statute by claiming that they have been (or will be) denied meaningful judicial review in light of their juvenile status. In other words, they argue that § 1252(b)(9), as applied in this context, creates a Catch-22 that effectively bars all judicial review of their claims.

The argument goes as follows: Minors who obtain counsel in their immigration proceedings will be unable to raise right-to-counsel claims because they have no such

claim. As a practical matter, children who lack counsel will be unable to reach federal court to raise a right-to-counsel claim because they are subject to the same exhaustion requirements and filing deadlines that apply to adults. Even if an unrepresented child were able to navigate the PFR process, the child would still be deprived of meaningful judicial review, because the record on appeal would be insufficient to sustain review. Because, according to the minors, their right-to-counsel claims will never see the light of day through the PFR process, the panel should construe § 1252(b)(9) as not covering these claims.

The assertion that the minors will be denied meaningful judicial review stems from dicta in *McNary*. In *McNary*, the Court noted that the SAW regime imposed several practical impediments to judicial review. Most importantly, SAW procedures "d[id] not allow applicants to assemble adequate records" for review.[8] 498 U.S. at 496. Agency interviews were neither recorded nor transcribed, and SAW applicants had "inadequate opportunity" to present evidence and witnesses on their own behalf. *Id.* Because the administrative record was minimal, the courts of appeals "[had] no complete or meaningful basis upon which to review application determinations." *Id.* As a result, if the workers were "not allowed to pursue their claims in the District Court, [they] would not as a practical matter be able to obtain meaningful judicial review of their application denials or of

---

[8] The Court cited two other aspects of the SAW program that were problematic but are not pertinent here: first, under the statute, judicial review was available only if immigrants voluntarily surrendered themselves for deportation after being denied relief, and second, the plaintiffs "adduced a substantial amount of evidence, most of which would have been irrelevant in the processing of a particular individual application." 498 U.S. at 496–97.

their objections to INS procedures." *Id.* Citing the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action," the Court concluded that it is "most unlikely that Congress intended to foreclose all forms of meaningful judicial review." *Id.*

The difficulty with the minors' argument is that *McNary* was, at its core, a statutory interpretation case involving a completely different statute.[9] *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 14 (2000) (declining to apply *McNary* because it "turned on the different language of that different statute," and noting that "the Court suggested that statutory language similar to the language at issue here—any claim 'arising under' . . . —would have led it to a different legal conclusion"). The point in *McNary* was that Congress used language ("a determination respecting an application" for SAW status) that did not encompass the constitutional pattern and practice claims urged by the workers. As a consequence, their claims fell outside of the narrow channeling provisions of the statute.

---

[9] Because this case turns on the interpretation of the statute, the district court's reliance on cases involving different statutes is misplaced. *See Proyecto San Pablo v. INS*, 189 F.3d 1130 (9th Cir. 1999) (holding that the district court had jurisdiction to hear challenges to agency policies under a statute that read "[t]here shall be judicial review of a [denial of an application for adjustment of status by the agency] only in the judicial review of an order of deportation," 8 U.S.C. § 1255a(f)(4)(A)); and *Ortiz v. Meissner*, 179 F.3d 718 (9th Cir. 1999) (holding that the district court had jurisdiction to hear policies and practices challenge under 8 U.S.C. §§ 1255a(f) and 1160(e), which provided that "[t]here shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation[.]"). Neither case involved the zipper clause of § 1252(b)(9) or the "arising from" language. Both *Proyecto* and *Ortiz* analyzed *McNary* only in the context of the Immigration Reform and Control Act.

In providing two alternative formulations of channeling language, the Court more than foreshadowed what language would be "expansive" enough to remove district court jurisdiction. Thus, the Court's note to Congress laid out the language necessary to limit "challenges to INS procedures and practices." *McNary*, 498 U.S. at 494. *McNary* does not provide an avenue for litigants to circumvent an unambiguous statute.

We would be naive if we did not acknowledge that having an unrepresented minor in immigration proceedings poses an extremely difficult situation. But we are not convinced that agency removal proceedings raise the same concerns that were present in the SAW proceedings. Unlike the SAW program, removal hearings are recorded and transcribed and provide a basis for meaningful judicial review. Immigration judges are both trained and required to probe the record and to ask questions to elicit information about possible avenues of relief. *See* 8 U.S.C. § 1229a(b)(1) (detailing immigration judges' obligation to "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses"). Immigration judges must "adequately explain the hearing procedures to the alien," *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002), and where immigrants proceed pro se, the judges have a duty to "fully develop the record." *Id.* (quoting *Jacinto v. INS*, 208 F.3d 725, 733–34 (9th Cir. 2000)). They are also required to inform immigrants of any ability to apply for relief from removal and the right to appeal removal orders. *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004).

Unrepresented minors receive additional special protections in removal proceedings. Unless the child is accompanied by "an attorney or legal representative, a near

relative, legal guardian, or friend," the immigration judge cannot accept the child's admission of removability. 8 C.F.R. § 1240.10(c). Immigration judges also must ensure that any waiver of the right to counsel is knowing and voluntary; on review, we can "indulge every reasonable presumption against waiver," *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 756 (9th Cir. 2015) (citation omitted), and when the petitioner is a minor, we factor "the minor's age, intelligence, education, information, information, and understanding and ability to comprehend" into our analysis. *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004). Further, recognizing "a growing need for support systems the courts can use to effectively and efficiently manage the cases of unaccompanied minors," in 2014, the Office of the Chief Immigration Judge provided guidelines for "The Friend of the Court Model for Unaccompanied Minors in Immigration Proceedings." Although the friend of the court does not act as a representative, the friend's assistance role can be critical in monitoring the proceedings. These protections distinguish removal proceedings from the SAW program, and the concerns highlighted by *McNary* are not in play.

At argument, counsel for the children claimed that it was essentially impossible to get the right-to-counsel claim before a federal court. This assertion is belied by the fact that the minors' counsel has previously raised a right-to-counsel claim through the PFR process. *See Guzman-Heredia v. Gonzales*, No. 04-72769 (9th Cir.). In *Guzman-Heredia*, the petitioner was a fourteen-year-old boy who was placed in removal proceedings. He explained to the immigration judge "that he had been unable to find an attorney to represent him and requested that the Immigration Judge appoint an attorney for him." The judge denied the request, stating that he could not "give people a free lawyer." The immigration judge then

ordered the petitioner removed, and the Board of Immigration Appeals affirmed.  At this stage, the petitioner obtained pro bono counsel, who argued in a PFR that:

> Petitioner's Fifth Amendment right to due process was violated when the Immigration Judge refused to appoint an attorney to represent him in removal proceedings. Because Petitioner is an unaccompanied child of 14 years of age, he is of limited cognitive abilities and lacks understanding of legal process.  Due to the seriousness of the proceedings against him and the importance of the interest at stake, namely immigration proceedings in which the government seeks to remove Petitioner from his family, home and school in the United States, the Constitution compels that Petitioner have been afforded the protection of appointed counsel at public expense.

*Id.*  Although the case ultimately settled, *Guzman-Heredia* lays rest to the contention that right-to-counsel claims will never surface through the PFR process.

The reality is that current counsel for the minors are in a unique position to bring multiple test cases on the counsel issue.[10]   The claim in this suit is that indigent minors are

---

[10] Following discussion at oral argument, to facilitate a test case, through December 2016 the government is providing the children's counsel with notice of any minor without counsel that the government is aware of ordered removed by an immigration judge following a merits hearing.  To take the government at its word that it is willing to cooperate

entitled to government-provided counsel as a matter of constitutional and statutory right. For accompanied minors, a parent could make the claim or, for unaccompanied minors, a next friend could help them do so.[11] Even better, the IJ and the government could acknowledge that absent a knowing and voluntary waiver, a minor proceeding without counsel has de facto requested a right to court-appointed counsel.

Under any of these scenarios, a right-to-counsel claim is teed up for appellate review. It is true that at present neither the immigration judge nor the Board of Immigration Appeals has authority to order court-appointed counsel. But the question at hand is a legal one involving constitutional rights. Even if not raised in the proceedings below, the court of appeals has authority to consider the issue because it falls within the narrow exception for "constitutional challenges that are not within the competence of administrative agencies to decide" and for arguments that are "so entirely foreclosed . . . that no remedies [are] available as of right" from the agency.[12] *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004) (first quotation); *Alvarado v. Holder*, 759 F.3d 1121,

---

with counsel, the government should continue such notice.

[11] The Friend of the Court Model for Unaccompanied Minors can provide an avenue for counsel to play a role in individual proceedings. For example, one of the children's counsel appeared as a friend in an individual immigration proceeding in July 2016 and stated that although he did not represent the child, "for whatever value it has in the record that [the minor] does I know want appointed counsel." *See* Attachment to Government's Letter to the Court, dated August 18, 2016.

[12] Under the statute, immigrants in removal proceedings have "the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing." 8 U.S.C. § 1229a(b)(4)(A). Agency regulations recognize the same privilege. 8 C.F.R. § 238.1(b)(2).

1128 (9th Cir. 2014) (second quotation; quotation marks and citation omitted, first alteration in original); *see also, e.g.*, *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (recognizing exception to exhaustion requirement for constitutional challenges to agency procedures and the statute the agency administers).

We recognize that a class remedy arguably might be more efficient than requiring each applicant to file a PFR, but that is not a ground for ignoring the jurisdictional statute. Indeed, should a court determine that the statute barring payment for counsel does not mean what it says—a position taken by the minors—that statute would be "infirm across the circuit and in every case." *Naranjo-Aguilera v. INS*, 30 F.3d 1106, 1114 (9th Cir. 1994). We also recognize that there are limited— and already more than stretched—pro bono resources available to help unaccompanied minors navigate the removal process. But these considerations cannot overcome a clear statutory prescription against district court review. Relief is through review in the court of appeals or executive or congressional action.

In sum, the minors' claim that they are entitled to court-appointed counsel "arises from" their removal proceedings and §§ 1252(a)(5) and 1252(b)(9) provide petitions for review of a removal order as the exclusive avenue for judicial review. The district court lacks jurisdiction over the minors' claims.[13]

---

[13] Because the district court lacks jurisdiction, we do not reach the other issues the minors raise on cross-appeal.

**AFFIRMED as to the statutory claim; REVERSED as to the constitutional claim. The parties shall each bear their own costs on appeal.**

McKEOWN, Circuit Judge, with whom M. SMITH, Circuit Judge, joins, specially concurring:

Jurisdictional rulings have an anodyne character that may suggest insensitivity to the plight of the parties, particularly in a case involving immigrant children whose treatment, according to former Attorney General Eric Holder, raises serious policy and moral questions.[1] But we must heed the Supreme Court's admonition that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). We did not reach the merits here because we hewed to the statute channeling federal court jurisdiction. That said, I cannot let the occasion pass without highlighting the plight of unrepresented children who find themselves in immigration proceedings. While I do not take a position on the merits of the children's constitutional and statutory claims, I write to underscore that the Executive and Congress have the power to address this crisis without judicial intervention. What is missing here? Money and resolve—political solutions that fall outside the purview of the courts.

---

[1] Attorney General Eric Holder, Remarks at the Hispanic National Bar Association 39th Annual Convention (Sept. 12, 2014), *available at* https://www.justice.gov/opa/speech/remarks-attorney-general-eric-holder-hispanic-national-bar-association-39th-annual.

In fiscal year 2014, more than 60,000 unaccompanied minors made their way to the United States,[2] prompting the Department of Homeland Security to declare a crisis at our southern border.[3] Although the numbers dropped in fiscal year 2015, the surge has now reappeared. According to the Pew Research Center, "[t]he number of apprehensions of unaccompanied children shot up by 78%" during the first six months of fiscal year 2016.[4] Indeed, earlier "some Members of Congress as well as the Administration characterized the issue as a humanitarian crisis."[5] The border crisis created what has been called a "perfect storm" in immigration courts, as children wend their way from border crossings to immigration proceedings.[6] The storm has battered immigration "courtrooms crowded with young defendants but

---

[2] William Kandel, *Unaccompanied Alien Children: An Overview*, Congressional Research Service, 1 (May 11, 2016), *available at* https://fas.org/sgp/crs/homesec/R43599.pdf.

[3] Julia Preston, *U.S. Setting Up Emergency Shelter in Texas as Youths Cross Border Alone*, N.Y. Times, May 16, 2014, *available at* http://www.nytimes.com/2014/05/17/us/us-sets-up-crisis-shelter-as-children-flow-across-border-alone.html?_r=0.

[4] Jens Krogstad, *U.S. Border Apprehensions of Families and Unaccompanied Children Jump Dramatically*, Pew Research Center, May 4, 2016, *available at* http://www.pewresearch.org/fact-tank/2016/05/04/u-s-border-apprehensions-of-families-and-unaccompanied-children-jump-dramatically/.

[5] *See* Kandel, *supra* note 2, at 1.

[6] ABA Commission on Immigration, *A Humanitarian Call to Action: Unaccompanied Children in Removal Proceedings Present a Critical Need for Legal Representation*, 1 (June 3, 2015), *available at* http://www.americanbar.org/content/dam/aba/administrative/immigrati on/UACSstatement.authcheckdam.pdf (internal quotation marks omitted).

lacking lawyers and judges to handle the sheer volume of cases."[7]

The net result is that thousands of children[8] are left to thread their way alone through the labyrinthine maze of immigration laws, which, without hyperbole, "have been termed second only to the Internal Revenue Code in complexity." *Castro-O'Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1987) (internal quotation marks omitted); *see also Baltazar-Alcazar v. INS*, 386 F.3d 940, 948 (9th Cir. 2004) (emphasizing the complexity of immigration laws and noting that lawyers may be the only ones capable of navigating through it). This reality prompted the Chief Immigration Judge to acknowledge that "[t]he demands placed on the [immigration] courts are increasing due to the unprecedented numbers of unaccompanied minors being placed in immigration proceedings. As a result there is a growing need for support systems the [immigration] courts can use to effectively and efficiently manage the cases of unaccompanied minors."[9]

---

[7] Liz Robbins, *Immigration Crisis Shifts from Border to Courts*, N.Y. Times, Aug. 23, 2015, *available at* http://www.nytimes.com/2015/08/24/nyregion/border-crisis-shifts-as-undocumented-childrens-cases-overwhelm-courts.html.

[8] According to the Transactional Records Access Clearinghouse at Syracuse University, between 2011 and 2014, the number of juvenile cases in immigration courts leaped from 6,425 in 2011 to 59,394 in 2014. As of September 2015, children in more than 32,700 pending immigration cases were unrepresented.

[9] Memorandum from the Executive Office for Immigration Review, The Friend of the Court Model for Unaccompanied Minors in Immigration Proceedings (Sept. 10, 2014).

Given the onslaught of cases involving unaccompanied minors, there is only so much even the most dedicated and judicious immigration judges (and, on appeal, members of the Board of Immigration Appeals) can do. *See* Amicus Curiae Brief of Former Federal Immigration Judges at 7. Immigration judges are constrained by "extremely limited time and resources." *Id.* at 4. Indeed, those judges may sometimes hear as many as 50 to 70 petitions in a three-to-four hour period, *id.*, leaving scant time to delve deeply into the particular circumstances of a child's case.

In light of all this, it is no surprise that then-Attorney General Holder took the position in 2014 that "[t]hough these children may not have a Constitutional right to a lawyer, we have policy reasons and a moral obligation to ensure the presence of counsel."[10] But Congress has clearly—and repeatedly—indicated that these policy and moral concerns may not be addressed in the district court. Rather, these issues come initially within the Executive's purview as part of the administrative removal process, with review available in the Courts of Appeals through the petition for review process.[11] *See* Maj. Op. at 14–17.

To its credit, the Executive has taken some steps within this process to address the difficulties confronting unaccompanied and unrepresented minors. Through the

---

[10] *See supra* note 1.

[11] As discussed in the majority opinion, under the current statutory scheme, Congress has recognized the "privilege of being represented, at no expense to the Government, by counsel." 8 U.S.C. § 1229a(b)(4)(A). Implementing regulations enacted by the Executive recognize the same limited privilege. *See* 8 C.F.R. § 238.1(b)(2).

Justice AmeriCorps program, the government awarded $1.8 million to support living allowances for 100 legal fellows who will represent children in removal proceedings.[12]  The government has also partnered with the United States Conference of Catholic Bishops and the United States Committee for Refugees and Immigrants to provide legal representation to unaccompanied children.[13]  The Executive Office for Immigration Review offers legal orientations for custodians of unaccompanied children in removal proceedings and it launched a pilot program to provide legal services to unaccompanied minors.[14]

Yet these programs, while laudable, are a drop in the bucket in relation to the magnitude of the problem—tens of thousands of children will remain unrepresented. A meritorious application for asylum, refuge, withholding of removal or other relief may fall through the cracks, despite the best efforts of immigration agencies and the best interests of the child.  Additional policy and funding initiatives aimed at securing representation for minors are important to ensure

---

[12] *See* Press Release, Department of Justice, Justice Department and CNCS Announce $1.8 Million in Grants to Enhance Immigration Court Proceedings and Provide Assistance to Unaccompanied Children (Sept. 12, 2014), *available at* https://www.justice.gov/opa/pr/justice-department-and-cncs-announce-18-million-grants-enhance-immigration-court-proceedings.

[13] *See* Announcement of Award of Two Single-Source Program Expansion Supplement Grants To Support Legal Services to Refugees Under the Unaccompanied Alien Children's Program, 79 Fed. Reg. 62,159–01 (Oct. 16, 2014).

[14] *See* Press Release, Department of Justice, EOIR Expands Legal Orientation Program Sites (Oct. 22, 2014), *available at* https://www.justice.gov/eoir/pr/eoir-expands-legal-orientation-programs.

the smooth functioning of our immigration system and the fair and proper application of our immigration laws.

Eventually, an appeal asserting a right to government-funded counsel will find its way from the immigration courts to a Court of Appeals through the petition for review process. It would be both inappropriate and premature to comment on the legal merits of such a claim.  But, no matter the ultimate outcome of such an appeal, Congress and the Executive should not simply wait for a judicial determination before taking up the "policy reasons and . . . moral obligation" to respond to the dilemma of the thousands of children left to serve as their own advocates in the immigration courts in the meantime.  The stakes are too high.  To give meaning to "Equal Justice Under Law," the tag line engraved on the U.S. Supreme Court building, to ensure the fair and effective administration of our immigration system, and to protect the interests of children who must struggle through that system, the problem demands action now.

---

KLEINFELD, Senior Circuit Judge, specially concurring:

I agree with my colleagues that a child (or for that matter, an adult) is unlikely to be able to protect all his rights in a deportation proceeding unless he has a lawyer.  Many advocacy groups are deeply involved in immigration issues, including the ones who provided counsel in this one, and because the solution to the representation problem is a highly controversial political matter, I think our own advocacy of some particular reform measure is unnecessary and the matter is better left to the political process.